IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| WOW TECH INTERNATIONAL GMBH, | ) | |
| WOW TECH USA, LTD., | ) | |
| WOW TECH CANADA, LTD. | ) | |
| and NOVOLUTO GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiff EIS Inc. ("EIS" or "Plaintiff"), for its Complaint against Defendants WOW Tech

International GmbH, WOW Tech USA, Ltd., WOW Tech Canada, Ltd., and Novoluto GmbH,

(collectively "WOW Group" or "Defendants"), hereby alleges as follows:

### <u>THE PARTIES</u>

1.      Plaintiff EIS is a Delaware corporation, having a principal place of business at

110 Wall Street, New York, New York, 10005.

2.      On information and belief, Defendant WOW Tech International GmbH ("WOW

Tech") is a company organized and existing under the laws of Germany, with an address at

Friedenstraße 91-91a, 10249, Berlin, Germany.

3.      On information and belief, Defendant WOW Tech USA Ltd. ("WOW Tech

USA") is a Delaware corporation.  WOW Tech USA has a registered agent for service of process

at 1209 Orange Street, Wilmington, Delaware, 19801, and a mailing address at 103 Foulk Road,

Suite 202, Wilmington, Delaware, 19803.

4.      On information and belief, Defendant WOW Tech Canada Ltd. ("WOW Tech Canada") is a company organized and existing under the laws of Canada, with a mailing address at 330-1130 Morrison Drive, Ottawa ON K2H 9N6, Canada.

5.      On information and belief, Defendant Novoluto GmbH ("Novoluto") is a company organized and existing under the laws of Germany, with a principal place of business at Friedenstraße 91/91a, 10249 Berlin, Germany.

6.      On information and belief, WOW Tech USA, WOW Tech Canada, and Novoluto are wholly owned subsidiaries of WOW Tech.

7.      On information and belief, Defendant WOW Tech, itself and through its wholly owned subsidiaries (including WOW Tech USA) and agents, is doing business throughout the United States, including in Delaware.

8.      On information and belief, Defendants conduct business in interstate commerce in the United States and the State of Delaware; the claims alleged herein arise from Defendants' acts or omissions in the United States and the State of Delaware; Defendants have purposefully directed their activities to residents in the United States and the State of Delaware; and Defendants' acts or omissions have damaged EIS Inc. and its property in the United States and the State of Delaware.

## JURISDICTION AND VENUE

9.      This civil action arises under the laws of the United States, Lanham Act § 43(a), 15 U.S.C. § 1125(a), and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This action additionally asserts state statutory and common law claims for unfair and deceptive trade practices and tortious interference for which this Court has jurisdiction pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over WOW Tech USA because WOW Tech USA is a Delaware corporation.

11.     This Court has personal jurisdiction over WOW Tech by virtue of, *inter alia*, the fact that it has committed, aided, abetted, contributed to, and/or participated in the commission of, tortious acts of unfair competition that have led to foreseeable harm and injury to Plaintiff in the United States and in this District.

12.     This Court has personal jurisdiction over WOW Tech Canada by virtue of, *inter alia*, the fact that it has committed, aided, abetted, contributed to, and/or participated in the commission of, tortious acts of unfair competition that have led to foreseeable harm and injury to Plaintiff in the United States and in this District.

13.     Moreover, this Court's personal jurisdiction over WOW Tech USA also confers upon it personal jurisdiction over WOW Tech and WOW Tech Canada.  Upon information and belief, WOW Tech USA is a corporate alter ego of WOW Tech and WOW Tech Canada.

14.     On information and belief, WOW Tech USA is a sales arm for WOW Tech and WOW Tech Canada in the United States.  On information and belief, WOW Tech and WOW Tech Canada have common board members.  On information and belief, WOW Tech controls, or jointly with WOW Tech Canada controls, WOW Tech USA.

15.     On information and belief, WOW Tech and WOW Tech Canada 1) make strategic business decisions involving WOW Tech USA, 2) control and pay for the development and manufacture of products sold by WOW Tech USA 3) exert influence and control over WOW Tech USA, and 4) are involved in WOW Tech USA's employee hiring decisions.[1]  This Court

---

[1] *See* Ex. 1 (WOW Tech lists career opportunities worldwide on a single forum at https://wowtech.com/career/).

also has personal jurisdiction over WOW Tech and WOW Tech Canada for the additional acts set forth below.

16.     This Court has personal jurisdiction over Novoluto by virtue of, *inter alia*, the fact that it has committed, aided, abetted, contributed to, and/or participated in the commission of, tortious acts of unfair competition that have led to foreseeable harm and injury to Plaintiffs in the United States and in this District.  This Court also has personal jurisdiction over Novoluto for the additional acts set forth below.

17.     Venue is proper in this district under 28 U.S.C. § 139l(b) and (c) because WOW Tech USA is incorporated in Delaware, and the acts complained of occurred and are occurring in the United States and in this District.

## ACTS GIVING RISE TO THIS ACTION

18.     EIS is a market leader that provides sexual wellness products to consumers and resellers in the United States and in this District.

19.     EIS currently sells a wide variety of products, but is best known for its Satisfyer product line, incorporating its proprietary Air Pulse technology.

20.     EIS's primary competitor in the sexual wellness market is WOW Group, which sells products under the We-Vibe and Womanizer brands.

### WOW Tech Has Systematically Employed Unfair Competitive Methods Against EIS and its Corporate Family Worldwide

21.     Defendants have a history of engaging in unfair and deceptive trade practices with the intent to prevent or limit the commercial success of Plaintiff's products in the United States and abroad.

22.     On information and belief, Defendant Novoluto holds the intellectual property rights for WOW Group.  In August 2016, Novoluto filed a lawsuit in Germany alleging that the

Satisfyer Pro 2 product, sold by EIS GmbH (the parent company of Plaintiff EIS), infringed Novoluto's German patent No. DE 10 2013 110 501 B4.

23.     Novoluto's German patent was directed toward a device that used a two-chamber assembly to generate puffs of air.  An excerpt from Fig. 3 of Novoluto's patent depicts that two chamber structure (chambers 3 and 4 are connected by narrow passage element 5):



Excerpt of Fig. 3 of Novoluto's German Patent
(Exhibit 2 at 17)

24.     Plaintiff's accused product, by contrast, utilized a single-chamber structure, as shown below:



Cross-section of Satisfyer Pro 2 (Exhibit 3 at 10)

25.     Despite the clear differences in structure—and the distinct lack of a dual-chamber design in Plaintiff's products—the German Regional Court found that the accused products

infringed Novoluto's German patent.  Confident that the Regional Court had erred, EIS GmbH promptly appealed the decision.

26.     Novoluto's German patent was challenged in opposition proceedings before the German Patent and Trademark Office, which subsequently determined it was invalid in view of the prior art.  On April 17, 2018, the German Patent and Trademark Office issued a decision revoking Novoluto's patent.

27.     In light of the decision revoking Novoluto's patent in the opposition proceeding, the Higher Regional Court in Germany issued a decision suspending the patent infringement proceeding.

28.     Defendant Novoluto made numerous public statements, concurrent with the challenge to Novoluto's patent, regarding the outcome of the German patent infringement proceedings, stating, among other things, that EIS GmbH was liable for past and future damages totaling in the millions and that Novoluto would file suit against distributors and retailers of the Satisfyer Pro 2 products.  (Exhibit 3 at 3-9.)  These statements were false, at least because (as discussed below) EIS GmbH had already discontinued the Satisfyer Pro 2 when these statements were made.

29.     In view of Novoluto's public statements and the opposition proceedings at the German Patent and Trademark Office, EIS GmbH brought a suit in Germany seeking to enjoin Novoluto from making any such statements and for damages suffered as a result of such statements.  The German court subsequently entered an injunction prohibiting Novoluto and Orion Versand GmbH (a primary distributor for WOW Tech) from making such statements. (Exhibit 4 at 1-6.)

30.     Although EIS GmbH firmly believed that the Satisfyer Pro 2 did not infringe Novoluto's patent throughout the German proceedings, by mid-2017 it had already ceased production and sales of the accused products and developed a new, superior product utilizing a revolutionary design, known as the Satisfyer Pro 2 Next Generation.

31.     The Satisfyer Pro 2 Next Generation (and related products) utilizes a proprietary Air Pulse technology developed by EIS GmbH that maximizes performance, durability, and personal hygiene.  EIS's technology is the subject of patents and patent applications around the world (*e.g.*, patents AU 2018200317 B2, EP 3 228 297, CA 2 943 097 C, and MX 363 260 B, German utility models DE 20 2016 008414 U1 and DE 20 2016 008435 U1; and pending patent applications BR 10 2016 023617 A2, CN 107280939 A, EP 19173156.1, JP 2017 185220 A, RU 2016150905, ZA 2017/00224 and US 2017-281457 A1).

32.     The Satisfyer Pro 2 Next Generation quickly became a commercial success in the U.S. and around the world.  Since its launch, EIS has launched over a dozen related products using the same proprietary Air Pulse technology in the U.S. market.

33.     EIS sells variations of its Satisfyer products at multiple price points in the U.S. Although its high-end luxury models, crafted from brushed aluminum and leather, currently retail at prices as high as $149.95, its entry-level models are available at prices as low as $19.95. EIS aims to offer a range of products at price points accessible to everyone.

34.     Defendant Novoluto's competing product is sold under the brand name "Womanizer." According to the Womanizer.com website, Novoluto currently sells six variations of its Womanizer product, ranging in price from $79.00 to $219.00.[2]

---

[2] Ex. 5 (Womanizer Duo, $219), available at https://www.womanizer.com/us/womanizer-duo-bordeaux; Ex. 6 (Womanizer Starlet, $79.00), available at https://www.womanizer.com/us/womanizer-starlet-snow.

**Defendants Posted False Reviews of Plaintiff's Products on Amazon**

35.     On information and belief, beginning as early as June 2016 and continuing through at least December 2016, individuals acting on behalf of Defendant WOW Tech (formerly We-Vibe) posted false reviews on Amazon.com (Amazon's US website) and Amazon.de (Amazon's German website) disparaging the performance and functionality of Plaintiff's Satisfyer product line.  On information and belief, these reviews contained materially false statements, including statements that Plaintiff's products were not waterproof, performed poorly, were painful to use, and/or smelled of chemicals:

- "Very bad quality! No waterproof! After 10 minutes in water the device was dead."[3]

- "100% waterproof - no way! We had the Satisfyer 2 once in the tub. The next day it was dead! Water was running out of the device at the battery contacts. Totally bad buy!"[4]

- "After it was used for the first time in the bath tub, water was running out of the device and the electronics had had it! Totally bad buy! The device is not as waterproof as advertised."[5]

- "Performance absolutely dissatisfying. Very loud and difficult to operate. Hurts sometimes, too hard at the contact surface. Definitely a bad buy as far as I'm concerned."[6]

---

[3] Ex. 7 (Amazon.com review by DerTester (pseudonym for WE-VIBE/WOW Tech)), available at https://www.amazon.com/gp/customer-reviews/R2U8W4VDGBSRQQ/.

[4] Ex. 8 (Amazon.de review by WE-VIBE), available at https://www.amazon.de/gp/customer-reviews/R33KWKQKYQYKWP.

[5] Ex. 9 (Amazon.de review by WE-VIBE), available at https://www.amazon.de/gp/customer-reviews/R1P9I0FL2OE04F.

[6] Ex. 10 (Amazon.de review by WE-VIBE), available at https://www.amazon.de/gp/customer-reviews/ROC058U3BKWMZ.

- "Am very disappointed! Very loud, and the product stinks terribly of chemicals when you unpack it. Very difficult to control. Definitely a bad buy."[7]

36.     On information and belief, these false reviews were not posted by bona-fide consumers.  Amazon has not marked any of the reviews as written by verified purchasers.  On information and belief, these reviews were posted by, at the request of, or in exchange for payment from, WOW Tech and/or its agents.

37.     The statements in the reviews were false and misleading.  On information and belief, the statements contained in these reviews were known by WOW Tech to be false and/or misleading when made.

38.     The false review posted on Amazon.com was authored under the pseudonym "DerTester":



DerTester Amazon.com Review for Satisfyer Pro 2 (Exhibit 7)

39.     The username "DerTester" is linked to an account on Amazon.com named "WE-VIBE."  Specifically, clicking on the username "DerTester" shown in the above screenshot leads to the Amazon.com account profile shown below.  This profile indicates that the review posted

---

[7] Ex. 11 (Amazon.de review by WOW Tech), available at https://www.amazon.de/gp/customer-reviews/R2NM4CSJUWAZ2W.

on Amazon.com was authored under an account named "WE-VIBE" using the username "DerTester."  This account profile also lists the following URL: www.wowtech.com.[8]



WE-VIBE/WOW Tech Account Profile on Amazon.com (Exhibit 12)

---

[8] Ex. 12 (We-Vibe Account Profile on Amazon.com (U.S.)), available at
https://www.amazon.com/gp/profile/amzn1.account.AFP2MGY2RUXH3J324CPOGA4I4WSQ/.

40.     The reviews posted on Amazon.de were authored under a nearly-identical account named "WE-VIBE" on Amazon.de, which also lists the following URL: www.wowtech.com:[9]



WE-VIBE Account Profile on Amazon.de (Exhibit 13)

41.     Both the Amazon.com and Amazon.de WE-VIBE profiles are "Amazon verified"; denoted by the blue check mark next to the account name:



42.     On information and belief, the WE-VIBE/WOW Tech accounts on Amazon.com and Amazon.de are owned, managed, and controlled by Defendants.  On information and belief,

---

[9]     Ex.   13   (We-Vibe   Account   Profile   on   Amazon.de   (German)),   available   at https://www.amazon.de/gp/profile/amzn1.account.AFP2MGY2RUXH3J324CPOGA4I4WSQ/.

the website located at the URL www.wowtech.com is owned, managed, and controlled by Defendants.

43.     Defendants' false Amazon reviews have harmed and continue to harm EIS, because its potential customers are exposed to Defendants' false statements at the very moment they are deciding whether to purchase EIS's Satisfyer products.  On information and belief, EIS lost sales as a result of Defendants' false reviews.

**Defendants Wrongfully Accused Plaintiff's Customers of Patent Infringement**

44.     On information and belief, beginning at least as early as July 2016 and continuing through at least March 2018, Defendant Novoluto, directly or through its agents, began contacting individual retailers and distributors of the Satisfyer Pro 2 throughout the United States and abroad.   In those communications, Defendant Novoluto demanded that retailers and distributors cease and desist their sales of the Satisfyer products on the basis that they infringed Novoluto's (since revoked) German patent No. DE 10 2013 110 501 B4.

45.     On information and belief, Defendant Novoluto, directly or through its agents, contacted Eldorado Trading Company in Broomfield, Colorado, in or around July 2016.  In that communication, Novoluto accused Eldorado Trading Company of infringing its patent rights by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product.  On information and belief, Defendants knew that the two-chamber design of its Womanizer products was not patented in the United States at the time it communicated with Eldorado Trading Company.[10]

46.     Defendants, directly or through their agents, accused Eldorado Trading Company of infringing Defendants' patent rights by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product even though Defendants did not have enforceable patent rights in the United States at that time.

_____

[10] *See* Ex. 14 (U.S. Patent 9,763,851, assigned to Novoluto GmbH, issued September 19, 2017).

47.     Defendants knew they did not have enforceable patent rights in the United States when making that statement.  Thus, Defendants and/or their agents, willfully and knowingly made literally false, misleading, and disparaging statements about Plaintiff, Plaintiff's business, and Plaintiff's products to Eldorado Trading Company with the intent to damage Plaintiff.

48.     Defendants' false and misleading statements deceived Eldorado Trading Company about the character of Plaintiff's products and Plaintiff's business because Eldorado Trading Company asked EIS for a letter of assurance that EIS's products did not infringe Defendants' patents.

49.     On information and belief, Defendants knew or should have known that Novoluto's German patent was invalid in view of the prior art when it engaged in these communications.

**Defendants Coerced Distributors and Retailers to Stop Carrying Plaintiff's Products**

50.     On information and belief, WOW Group has taken additional steps to discourage retailers from carrying EIS products that go beyond acceptable competitive behavior.

51.     At least as early as 2017, on information and belief, WOW Group placed restrictions in its supply agreements preventing some retailers and distributors that carry its products from also carrying EIS's products, including the Satisfyer product line.  For other retailers and distributors, WOW Group threatened them and demanded they stop selling EIS's products outright.  On information and belief, these coercive communications with EIS's retailers and distributors included false statements regarding the quality of EIS's products and the scope of WOW Group's intellectual property rights in the U.S.

52.     To enforce its demands, WOW Group threatened to raise the price it charged non-compliant retailers and distributors for its own products, effectively rendering them unable to compete against other stores, or to block retailers and distributors from selling its products

altogether, unless and until they refrained from carrying EIS's competing products.   Wow Group's coercive actions caused harm to EIS, EIS's distributors, EIS's retailers, and EIS's actual and potential customers.

**Defendants Engaged an Industry Insider to Publish False Statements about Plaintiff**

53.     On information and belief, Defendants, directly or through its agents, hired or otherwise directed Zoë Ligon to publish false, disparaging, and defamatory statements about EIS and its Satisfyer products.   Ms. Ligon is the owner of a well-known sexual wellness store, Spectrum Botique, in Detroit, Michigan, with a substantial social media following of nearly 70,000 subscribers on its Instagram account (@shopspectrumboutique).

54.     During or around April 2019, Ms. Ligon published false statements on Spectrum Boutique's Instagram account—visible to all its subscribers and the general public—stating, *inter alia*, that EIS "ripped off the . . . technology of Womanizer" and encouraged retailers to pull EIS products from their stores:



Screenshots from the @shopspectrumboutique Instagram account (Exhibit 15)

-14-

55.     EIS responded by mailing Ms. Ligon a cease and desist letter on April 16, 2019.

**Defendants' Improper Acts Are Harming EIS**

56.     On information and belief, each of Defendants' improper acts was designed to deprive EIS of sales and damage its reputation with consumers in Delaware and throughout the United States.  Defendants' false reviews are misleading EIS's potential customers and harming EIS's reputation.  Its false and misleading statements to retailers and distributors are harming its business relationships and depriving EIS of sales.   And Defendants' false advertising and disparaging public statements, such as those made through Zoë Ligon, continue to cause financial and reputational damage to EIS on an ongoing basis.

57.     Defendants, through their ongoing unlawful campaign against EIS have, among other things, willfully and in bad faith misled and deceived the public with false or misleading statements of material fact about EIS and its products, harmed EIS's goodwill and business reputation, and caused EIS financial losses through decreased sales.

**FIRST COUNT**
**UNFAIR COMPETITION**
**LANHAM ACT, § 43(A), 15 U.S.C. § 1125(A)**

58.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

59.     Defendants and/or their agents or other persons acting on their behalf, willfully made false or misleading statements of fact regarding Plaintiff, Plaintiff's business, and Plaintiff's Satisfyer products.

60.     Defendants violated Section 43(a)(1)(B) of the Lanham Act by publishing false and misleading reviews of Plaintiff's products on Amazon, by making false statements about alleged infringement of invalid and non-existent patent rights, and by paying an industry insider to make false and misleading statements on Instagram about Plaintiff, Plaintiff's business, and Plaintiff's products to the public, as set forth above.

61.     Defendants' false and misleading statements were publicly disseminated through the internet (via Instagram and Amazon), where they were available to EIS's actual and potential customers, and the public at large. Defendants' statements deceived or were likely to deceive EIS's actual and potential customers, and the public, in a material way because the statements were likely to influence purchasing decisions.

62.     Ms. Ligon, an industry insider, and the owner of a well-known boutique specializing in sexual wellness products, published false statements on the internet about Plaintiff and its products at Defendants' direction, which she presented as facts.  Her statements were likely to deceive the public because a person in her position (*i.e.* a specialist or industry insider) is expected to have objective opinions on products and companies that were not secretly provided in exchange for payment.

63.     Similarly, Defendants' false Amazon reviews are likely to deceive the public and influence the purchasing decisions of Plaintiff's potential customers.  The public expects that product reviews are written by purchasers and/or users of the products, and as such would be deceived by Defendants' false reviews posted for the purpose of damaging Plaintiff's business.

64.     Defendants also falsely informed Plaintiff's distributors and retailers that Plaintiff's products infringe or may infringe Defendants' patents, which were found to be invalid in Germany and which did not exist in the United States.  Such statements were likely to deceive Plaintiff's distributors and retailers about the character and quality of Plaintiff's products and its business.

65.     Defendants' false statements were made in connection with interstate commerce and entered into interstate commerce because they were disseminated nationwide through

Amazon and Instagram.  Further, Plaintiff distributes its products nationwide and its interstate sales were affected by Defendants' false statements.

66.     As a result of Defendants' acts, EIS has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants' continue to unfairly derive income, profits, and business opportunities from their unfair acts.

67.     As the acts alleged herein constitute unfair competition through the use of false and misleading descriptions and representations of fact under 15 U.S.C. § 1125, EIS is entitled to monetary damages and other remedies provided by 15 U.S.C. § 1117, including Defendants' profits, Plaintiff's damages, reasonable attorney's fees, costs, and prejudgment interest.

**SECOND COUNT**
**DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**6 DEL. C. § 2531 ET SEQ.**

68.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

69.     Defendants and/or their agents or other persons acting on their behalf, willfully and knowingly made literally false, misleading, and disparaging statements about Plaintiff, Plaintiff's business, and Plaintiff's products with the intent to damage Plaintiff.

70.     Defendants' statements deceived or were likely to deceive EIS's actual and potential customers, and the public, in a material way because the statements were likely to influence customers' and potential customers' purchasing decisions.  Ms. Ligon, an industry insider, and the owner of a well-known boutique specializing in sexual wellness products, published false statements on the internet about Plaintiff and its products at Defendants' direction, which she presented as facts.  Her statements were likely to deceive the public because a person in her position (*i.e.* a specialist or industry insider) is expected to have objective opinions on products that were not secretly made in exchange for payment.

71.     Similarly, Defendants' false Amazon reviews are likely to deceive the public and influence the purchasing decisions of Plaintiff's potential customers.  The public expects that product reviews are written by purchasers and/or users of the products, and as such would be deceived by Defendants' false reviews posted for the purpose of damaging Plaintiff's business.

72.     Defendants' false and misleading statements were publicly disseminated through the internet (via Amazon and Instagram), and were likely to deceive the public about the character and quality of Plaintiff's products and its business.

73.     Defendants also falsely informed Plaintiff's distributors and retailers that Plaintiff's products infringe or may infringe Defendants' patents, which were found to be invalid in Germany and which did not exist in the United States.  Such statements were likely to deceive Plaintiff's distributors and retailers about the character and quality of Plaintiff's products and its business.

74.     As a result of Defendants' acts, EIS has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants continue to unfairly derive income, profits, and business opportunities from their unfair acts.

75.     Defendants' acts constitute unfair methods of competition, and unfair or deceptive acts or practices under the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532.

76.     EIS is informed and believes, and on that basis alleges, that Defendants' actions, as alleged herein, show that they willfully violated the Delaware Uniform Deceptive Trade Practices Act.  EIS therefore is entitled to an award of attorneys' fees and costs pursuant to 6 Del. C. § 2533.

**THIRD COUNT**
**DELAWARE COMMON LAW UNFAIR COMPETITION**

77.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

78.     Defendants and/or their agents or other persons acting on their behalf, made false, misleading, and disparaging statements about Plaintiff, Plaintiff's business, and Plaintiff's Satisfyer line of products, with the intent to damage Plaintiff.

79.     Defendants attempted and intended to deceive the public about the character and quality of Plaintiff's products and its business, and thereby interfere with Plaintiff's business interests.  Each of Defendants' unfair acts intended this result: 1) false and misleading Amazon reviews were intended to deceive EIS's potential customers such that they would not purchase EIS's Satisfyer products; 2) Ms. Ligon's Instagram posts about EIS and its Satisfyer products were intended to convince her subscribers, the public, and other retailers not to do business with EIS; and 3) Defendants falsely informed EIS's distributors and retailers that EIS's products infringed or likely infringed Defendants' patents (which had not yet been granted in the U.S. and which were found invalid in Germany), to convince those customers to cease doing business with EIS.

80.     As a result of Defendants' acts, EIS has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants continue to unfairly derive income, profits, and business opportunities from their unfair acts.

**FOURTH COUNT**
**DELAWARE COMMON LAW TORTIOUS INTERFERENCE**
**WITH BUSINESS RELATIONS**

81.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

82.     Upon information and belief, Defendants themselves, and/or through their subsidiaries and/or agents, intentionally and knowingly made false or misleading statements of fact regarding Plaintiff's products and Defendants' patents, with the intent to damage Plaintiff by interfering with its business relations.

83.     Specifically, Defendants falsely informed EIS's distributors and retailers that EIS's products infringed or likely infringed Defendants' patents (which had not yet been granted in the U.S. and which were found invalid in Germany), to convince those customers to cease doing business with EIS.

84.     Defendants also placed restrictions in their supply agreements preventing retailers that carry its products from also carrying EIS's products, demanded retailers stop selling EIS's products, and threatened to raise its prices or cease sales to coerce non-compliant retailers to stop selling EIS's competing products.

85.     Defendants knew that EIS had ongoing business relationships with its distributors and retailers, or Defendants would not have made the statements detailed.   Furthermore, Defendants' statements constitute a knowing and willful attempt to interfere with Plaintiff's business relations in violation of Delaware common law.

86.     As a result of Defendants' acts, EIS has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants continue to unfairly derive income, profits, and business opportunities from their unfair acts.

**FIFTH COUNT**
**COLORADO CONSUMER PROTECTION ACT**
**COLO. REV. STAT. § 6-1-105**

87.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

88.     Defendants directly or through its agents, accused EIS's customer, Eldorado Trading Company in Broomfield, Colorado, in or around July 2016 of infringing Defendants' patent rights by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product.

89.     Defendants knew they did not have enforceable patent rights in the United States when they made the statement.  Thus, Defendants and/or their agents, willfully and knowingly made literally false, misleading, and disparaging statements about Plaintiff, Plaintiff's business, and Plaintiff's products to Eldorado Trading Company with the intent to damage Plaintiff.

90.     Defendants' false and misleading statements deceived Eldorado Trading Company about the character of Plaintiff's products and Plaintiff's business because Eldorado Trading Company asked EIS for a letter of assurance that EIS's products did not infringe Defendants' patents.

91.     As a result of Defendants' acts, EIS has suffered and will continue to suffer injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants unfairly derived income, profits, and business opportunities from their acts.

92.     Defendants' acts constitute unfair methods of competition, and unfair or deceptive acts or practices under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105.

93.     EIS is informed and believes, and on that basis alleges, that Defendants' actions, as alleged herein, show it willfully violated the Colorado Consumer Protection Act.  EIS therefore is entitled to an award of attorneys' fees and costs pursuant to Colo. Rev. Stat. § 6-1-113.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

A.      That Defendants' statements about Plaintiff and Plaintiff's products were false and misleading under federal, state, and common law;

B.      That Defendants' statements constitute unfair competition and unfair trade practices under federal, state, and common law;

C.      That this is an exceptional case within the meaning of 15 U.S.C. § 1117 and that Defendants' acts of unfair competition were knowing and willful;

D.      That, as to all claims, Plaintiff be awarded Defendants' profits, compensatory damages, punitive damages, reasonable attorney's fees, costs, and prejudgment interest in an amount to be ascertained pursuant to applicable laws including, without limitation, 15 U.S.C. § 1117, 6 Del. C. § 2533, and Colo. Rev. Stat. § 6-1-113;

E.      That, as to all claims, Plaintiff be awarded injunctive relief barring Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert or participation with any of them, from making false, misleading, and/or disparaging statements to the public or to Plaintiff's customers, retailers, and/or distributors, about Plaintiff, Plaintiff's business, and/or Plaintiff's products, including by posting false and misleading product reviews and stating that Plaintiff's products infringe Defendants' patents; and

F.      That Plaintiff be granted such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Plaintiff*

OF COUNSEL:

Naveen Modi
Tad Richman
David Valente
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC 20008
(202) 551-1700

June 28, 2019