# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

Jack B. Blumenfeld
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

December 5, 2019

The Honorable Leonard P. Stark                    *VIA ELECTRONIC FILING*
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE  19801

Re:    *EIS, Inc. v. WOW Tech Int'l GmbH*; C.A. No. 19-1227 (LPS)

Dear Chief Judge Stark:

Plaintiff EIS, Inc., alleges that WOW Tech Canada, Ltd. ("WTC"), WOW Tech International GmbH ("WTI"), Novoluto GmbH ("Novoluto") (collectively, "Foreign Defendants"), and WOW Tech USA, Ltd. ("WTU") have engaged in a pattern of unfair competition, inequitable conduct before the USPTO, and associated *Walker Process* fraud, in an improper attempt to drive EIS out of the U.S. market. It is undisputed that personal jurisdiction over WTU is proper because it is a Delaware corporation. All three Foreign Defendants have moved to dismiss, however, in part for lack of personal jurisdiction, *see* D.I. 17 at 4, and submitted supporting declarations, *see* Exs. 1-3 (D.I. 18-20). However, Defendants' own websites, exhibits to EIS's Complaint, and recently discovered evidence all appear to contradict the purported facts and conclusory statements in those declarations. *See* Ex. 4 (Atty Decl.) and attached Exs. A-1 to A-29. Even when confronted with these inconsistencies during meet-and-confers, Defendants refused to provide any voluntary discovery. *See* Exs. A-30, A-31. Jurisdictional discovery is warranted for the reasons herein.

## 1.  EIS's Jurisdictional Allegations Are Not Clearly Frivolous

"[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir. 2003). A claim is not clearly frivolous when allegations "suggest with reasonable particularity the possible existence of the requisite contacts between [the defendant] and the forum state," *id.*, or provide a "colorable basis for the potential exercise of personal jurisdiction," *MIG Investments LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 509 (D. Del. 2012).

With respect to the Foreign Defendants, EIS alleges personal jurisdiction for its *Walker Process* claim under 15 U.S.C. § 22. "[P]ersonal jurisdiction in federal antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the United States as a whole." *In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 298 (2004); *see also* 15 U.S.C.

The Honorable Leonard P. Stark
December 5, 2019
Page 2

§ 22 ("antitrust [suits] against a corporation may be brought . . . in any district where it . . . transacts business"). As detailed below, the Foreign Defendants transact business in Delaware.

EIS alleges that exercising personal jurisdiction over the Foreign Defendants for EIS's remaining claims is similarly proper under multiple theories, including minimum contacts sufficient to support specific personal jurisdiction, an alter-ego theory, an agency theory, and/or pendent personal jurisdiction, in part for the reasons discussed below.

EIS alleges that WTU is a mere façade for the Foreign Defendants and that Defendants have co-mingled their various corporate entities. *See* D.I. 9 (Amended Complaint) at ¶¶ 17, 21. Indeed, WTU's Delaware Tax Reports specify that WTU's place of business is "c/o WOW Tech Canada" with an address in Ottawa, a phone number with a 613 (Ottawa) area code, and mailing addresses for its officers in Canada ("c/o WOW Tech Canada") and Germany ("c/o WOW Tech Europe"). *See* Ex. A-1. Although import records and invoices from WTU list three Delaware addresses, *see* Ex. A-5; Ex. A-16 at 2; Ex. A-17 at 3, WTU does not have an office at any of these locations or apparently anywhere else, *see* Ex. 5 (Stitik Decl.).

Likewise, Defendants' U.S. sales are managed by the Foreign Defendants. For example, an invoice *from WTU* to a U.S. distributor required *payment to be remitted to WTC* – an odd arrangement for two companies that supposedly maintain separate accounts and are not co-mingling funds. Ex. A-5. On the retail side, although Defendants indicate that U.S. orders are fulfilled by WTU, *see* Ex. A-8, Defendants' order confirmation emails list *only* WTC's Canadian address and phone number, *see* Exs. A-6, A-7. Similarly, packing slips for orders from Defendants' websites and Amazon.com identify *only* Standard Innovation Corporation (WTC's former name). Exs. A-12–A-14. Defendants' retail packaging similarly provides: "USA & Canada distributor: Standard Innovation Corporation, Phone: 1-855-258-6678" (a toll-free number for WTC). Ex. A-15. Moreover, Defendants' own job listings make clear that the Foreign Defendants (1) manage all aspects of WTU's Amazon.com storefront, including merchandising strategies and service issues, *see* Ex. A-19 at 6-7, and (2) are responsible for "all third-party warehouse functions in the United States," including "proactively manag[ing] . . . 3PL partners located in Los Angeles," *id.* at 4-5. Finally, public import records indicate that the Foreign Defendants import products into the United States, including to at least two Delaware entities: WTU and NPS USA (an unknown third party). Exs. A-16–A-18.

Finally, the Foreign Defendants also appear to exercise total control over WTU. *See* D.I. 9 at ¶¶ 18-19, 23. For example, although Mr. Plettenberg's declaration identifies him only as a Director of WTI, *see* Ex. 3 at ¶ 2, he is also a director of Novoluto, WTC, and WTU, *see* Exs. A-1–A-3, and holds himself out as the CEO of both "WOW Tech Group," Ex. A-21, and Novoluto, Exs. A-22–A-24. Similarly, the LinkedIn page for an HR Manager at "WOW Tech Group" states that she is responsible for "all aspects of HR including talent acquisition, talent management . . . compensation planning, incentive plans, and total rewards" for North America. Ex. A-20. A similar job listing for an "HR Coordinator" suggests that the Foreign Defendants are responsible for all aspects of hiring North American employees. *See* Ex. A-19 at 11. These facts suggest that the Foreign Defendants are responsible for WTU's day-to-day management and support EIS's allegation that WTU is a mere façade through which the Foreign Defendants conduct business. *See* D.I. 9 at ¶¶ 18, 20-23.

The Honorable Leonard P. Stark
December 5, 2019
Page 3

**2. Jurisdictional Discovery Should Be Ordered to Evaluate the Foreign Defendants' Declarations and Assess the Scope of Their Delaware Contacts and Control of WTU**

Jurisdictional discovery should be ordered so EIS can obtain jurisdictionally relevant information that is solely in Defendants' possession. *See Rocke v. Pebble Beach Co.,* 541 Fed. App'x. 208, 212-13 (3d Cir. 2013). Here, Defendants' factual declarations—referring to underlying documents and information in their exclusive control—appear to be plainly contradicted by public records.

First, each declarant states that the Foreign Defendants do not sell or export any products into Delaware, engage in business in Delaware, or earn income in Delaware. *See* Ex. 1 at ¶¶ 5-6; Ex. 2 at ¶¶ 4-5; Ex. 3 at ¶¶ 5-6. But public import records indicate that the Foreign Defendants have shipped products to the U.S., including to Delaware, Exs. A-16–A-18, retail orders shipped from Amazon.com and Defendants' websites to customers in Delaware are fulfilled by Kintetsu World Express (KWE), a 3PL in Los Angeles managed by WTC, *see* Exs. A-9–A-14; Ex. A-19 at 4-5, and retail order confirmations for the same orders shipped to Delaware list the Canadian address and phone number for WTC (not WTU), *see* Exs. A-6, A-7.

Second, each declarant states that the Foreign Defendants maintain separate bank accounts from WTU and "strictly observe" corporate formalities, Ex. 1 at ¶¶ 20, 22; Ex. 2 at ¶¶ 18, 20; Ex. 3 at ¶¶ 21, 23, but payment for wholesale orders from WTU appears to be remitted directly to WTC, *see* Ex. A-5, and Defendants' appear to have a profit-sharing agreement, *see* Ex. A-4.

Third, although each declarant represents that day-to-day management for each entity is separate, Ex. 1 at ¶ 22; Ex. 2 at ¶ 20; Ex. 3 at ¶ 23, publicly available job postings and LinkedIn pages indicate that the Foreign Defendants exercise complete control over WTU, *see* Exs. A-19–A-20, and WTU does not appear to have any independent presence (much less management) in the U.S., *see* Ex. 5.

Fourth, although the declarants represent both that they "strictly observe" corporate formalities and that neither Novoluto nor WTC has entered into any contracts with Delaware entities, Ex. 1 at ¶ 13; Ex. 2 at ¶ 12, Novoluto and WTC own patents and trademarks used by Defendants (including the trademark for "WOW Tech"), Exs. A-26–A-29. Either Novoluto and WTC have IP licenses with WTU (i.e., contracts with a Delaware entity) *or* they have failed to observe corporate formalities vis-à-vis WTU; both of Defendants' statements cannot be true.

In each of the above examples, without jurisdictional discovery, it is impossible for EIS (or this Court) to square the public records with the declarants' statements. Jurisdictional discovery should be ordered so EIS may further explore Defendants' contacts with the United States and Delaware, the Foreign Defendants' control over WTU, the manner by which sales revenue is collected and distributed among Defendants, Defendants' profit-sharing agreement, WTU's role in the WOW Tech corporate structure, and other conduct relevant to the alter ego and agency factors. EIS respectfully requests that the scope of discovery encompass all such information, consistent with the written discovery requests it previously outlined for Defendants. *See* Ex. A-30. Defendants also respectfully request a deposition of each declarant, as well as a corporate representative from WTU, to verify any jurisdictionally relevant statements in their declarations.

The Honorable Leonard P. Stark
December 5, 2019
Page 4

Respectfully,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

JBB/bac
Attachments

cc:    Clerk of Court (via hand delivery; w/attachments)
       All Counsel of Record (via electronic mail; w/attachments)