IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1227 (LPS) |
| | ) | |
| WOW TECH INTERNATIONAL GMBH, | ) | |
| WOW TECH USA, LTD., | ) | |
| WOW TECH CANADA, LTD. | ) | |
| and NOVOLUTO GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF EIS'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' REVISED MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

OF COUNSEL:

*Attorneys for Plaintiff*

Naveen Modi
Tad Richman
David Valente
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC  20008
(202) 551-1700

February 25, 2020

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

III.  SUMMARY OF ARGUMENT ......................................................................... 1

IV.  STATEMENT OF FACTS ................................................................................ 3

V.  ARGUMENT ..................................................................................................... 4

    A.  Patent Law Does Not Preempt EIS's Unfair Competition Claims because EIS Alleges that WOW Tech Asserted Patent Rights in Bad Faith ..................... 5

    B.  EIS's Lanham Act Claim is Actionable and Sufficiently Pled ............................. 6

        1.  WOW Tech's Fake Amazon Reviews are Commercial Speech ................ 7

        2.  The Instagram Story is Commercial Speech ................................................ 8

        3.  EIS Adequately Alleges That the Instagram Story and Fake Amazon Reviews Contain False or Misleading Statements ...................... 9

    C.  EIS Sufficiently Pled its Delaware Uniform Deceptive Trade Practices Act Claim ................................................................................................................. 11

    D.  EIS Sufficiently Pled its Delaware Common Law Unfair Competition Claim ................................................................................................................. 12

    E.  EIS Sufficiently Pled its Tortious Interference with Business Relations Claim ................................................................................................................. 13

    F.  EIS Sufficiently Pled its Colorado Consumer Protection Act ("CCPA") Claim ................................................................................................................. 14

    G.  EIS Pled its Inequitable Conduct Claim with Particularity ................................. 15

        1.  Who ............................................................................................................ 16

        2.  What and Where ......................................................................................... 18

        3.  When .......................................................................................................... 19

        4.  Why and How ............................................................................................ 19

        5.  Specific Intent to Deceive ......................................................................... 20

H.      EIS Sufficiently Pled its Walker Process Claim ...................................................... 22

VI.     CONCLUSION ............................................................................................................. 24

TABLE OF AUTHORITIES

Page(s)

**Cases**

*AC Media Grp. v. Macchia*,
No. 19-CV-1861-JPS, 2020 WL 109789 (E.D. Wis. Jan. 9, 2020) ..........................................8

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
581 F. Supp. 2d 654 (D. Del. 2008)..................................................................................13

*Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*,
768 F.3d 1185 (Fed. Cir. 2014)........................................................................................20

*Andrulis Pharms. Corp. v. Celgene Corp.*,
No. 13-1644-RGA, 2015 WL 4366118 (D. Del. July 16, 2015) ....................................19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................4

*Atofina v. Great Lakes Chem. Corp.*,
441 F.3d 991 (Fed. Cir. 2006)..........................................................................................20

*Avid Identification Sys., Inc. v. Crystal Import Corp.*,
603 F.3d 967 (Fed. Cir. 2010).................................................................................... 15-18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................4

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007)....................................................................................... 22-24

*Cmty. Legal Aid Society, Inc. v. Coupe*,
No. 15-688-GMS, 2016 WL 1055741 (D. Del. Mar. 16, 2016) ...........................................4

*Conley v. Gibson*,
355 U.S. 41 (1957)..............................................................................................................4

*Cornell Univ. v. Illumina, Inc.*,
No. 10-433-LPS-MPT, 2016 WL 3046258 (D. Del. May 27, 2016)....................................21

*Deston Therapeutics LLC v. Trigen Labs. Inc.*,
723 F. Supp. 2d 665 (D. Del. 2010)..................................................................................13

*EIS GmbH v. Novoluto GmbH*,
IPR2019-01302, Paper No. 17 (P.T.A.B. Jan. 13, 2020).....................................................20

*Exergen Corp. v. Wal-Mart Stores, Inc*,
  575 F.3d 1312 (Fed. Cir. 2009)...............................................................15-16, 18-20

*Facenda v. N.F.L. Films, Inc.*,
  542 F.3d 1007 (3d Cir. 2008)...........................................................................7

*Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*,
  859 F.Supp. 1521 (S.D.N.Y. 1994)...............................................................7, 8

*GPNE Corp. v. Fleetmatics USA, LLC*,
  No. 13-2049-SLR-SRF, 2015 WL 730046 (D. Del. Feb. 20, 2015).......................13

*Grand Ventures, Inc. v. Whaley*,
  632 A.2d 63 (Del. 1993) .................................................................................11

*Hall v. Walter*,
  969 P.2d 224 (Colo. 1998)...............................................................................15

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
  700 F. App'x 251 (4th Cir. 2017) ......................................................................7

*Hydril Co. LP v. Grant Prideco LP*,
  474 F.3d 1344 (Fed. Cir. 2007).........................................................................22

*IBM Corp. v. Priceline Grp. Inc.*,
  No. 15-137-LPS-CJB, 2017 WL 1349175 (D. Del. Apr. 10, 2017) .......................16

*Incarcerated Entm't, LLC v. CNBC LLC*,
  331 F. Supp. 3d 352 (D. Del. 2018)..................................................................6, 7

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) ................................................................................4

*LEO Pharma A/S v. Actavis Labs. UT, Inc.*,
  No. 16-333-JFB-SRF, 2018 WL 1045816 (D. Del. Feb. 26, 2018) .......................19

*Lipson v. Anesthesia Servs., P.A.*,
  790 A.2d 1261 (Del. Super. 2001).....................................................................13

*Medtronic, Inc. v. Bos. Sci. Corp.*,
  587 F. Supp. 2d 648 (D. Del. 2008)....................................................................4

*NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*,
  No. 09-CV-05783, 2012 WL 607975 (E.D. Pa. Feb. 27, 2012) ...........................7, 8

*Optium Corp v. Emcore Corp.*,
  603 F.3d 1313 (Fed. Cir. 2010).........................................................................20

*Phillips v. Allegheny*,
    515 F.3d 224 (3d Cir. 2008)..................................................................4, 24

*QVC, Inc. v. Your Vitamins, Inc.*,
    714 F. Supp. 2d 291 (D. Del. 2010)..................................................11

*Romeo & Juliette Laser Hair Removal Inc. v. Assara I LLC*,
    No. 08-0442 (DLC), 2016 WL 815205 (S.D.N.Y. Feb. 29, 2016).........................10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)...............................................2, 16, 20, 22

*Total Care Physicians, P.A. v. O'Hara*,
    798 A.2d 1043 (Del. Super. Ct. 2001) ................................................12

*TransWeb, LLC v. 3M Innovative Properties Co.*,
    812 F.3d 1295 (Fed. Cir. 2016)........................................................22

*TransWeb, LLC v. 3M Innovative Properties Co.*,
    No. 10-4413 (FSH), 2011 WL 2181189 (D.N.J. June 1, 2011).........................23, 24

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*,
    898 F.2d 914 (3d Cir.1990)...........................................................7

*Vitamins Online, Inc. v. HeartWise, Inc.*,
    207 F. Supp. 3d 1233 (D. Utah 2016).................................................7, 8

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007).........................................................5

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
    No. 09-955-LPS, 2012 WL 600715 (D. Del. Feb. 3, 2012) ..............................20

*Zadro Prod., Inc. v. SDI Techs., Inc.*,
    No. 17-1406 (WCB), 2019 WL 1100470 (D. Del. Mar. 8, 2019) .........................21

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999)......................................................5, 6

**Statutes**

15 U.S.C. § 1125(a)(1)................................................................. 9-10

35 U.S.C.§ 102......................................................................20

35 U.S.C.§ 103......................................................................20

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................15, 20

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 4

**Regulations**

37 C.F.R. § 1.56(c)(3) ............................................................................................. 16-18

**Other Authorities**

Colorado Consumer Protection Act, CCPA § 6-1-105(1) ............................................14

Uniform Deceptive Trade Practices Act, 6 Del. C § 2532..................................2, 11, 14
    § 2532(a)(8) ........................................................................................................11
    § 2532(a)(12) ......................................................................................................11

*Online Influencers Tell You What to Buy, Advertisers Wonder Who's Listening*,
    Wall St. J. (Oct. 20, 2019) (https://www.wsj.com/articles/online-influencers-
    tell-you-what-to-buy-advertisers-wonder-whos-listening-11571594003)...............................8

## I.    <u>INTRODUCTION</u>

Plaintiff EIS, Inc. ("EIS"), alleges that WOW Tech Canada, Ltd. ("WTC"), WOW Tech International GmbH ("WTI"), Novoluto GmbH ("Novoluto") (collectively, "Foreign Defendants"), and WOW Tech USA, Ltd. ("WTU") engaged in a pattern of unfair competition, inequitable conduct before the United States Patent and Trademark Office ("PTO"), and associated *Walker Process* fraud, in an improper attempt to damage EIS's reputation, diminish its sales, and drive it out of the U.S. market.  EIS's First Amended Complaint, D.I. 9 ("FAC"), with its thirty-one exhibits, details the pattern of false product reviews, unsubstantiated threats to customers regarding non-existent patent rights, and intentional withholding of prior art from the PTO, that underlie EIS's claims. EIS's claims are properly pled and should not be dismissed.

## II.    <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

The Foreign Defendants initially moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and all Defendants moved to dismiss pursuant to Rule 12(b)(6).  *See* D.I. 17.  After a telephone conference on December 9, 2019, this Court ordered Defendants to provide jurisdictional discovery.  After producing a limited number of documents over the course of nearly two months, Defendants withdrew their personal jurisdiction arguments, D.I. 34, and filed a revised motion to dismiss under Rule 12(b)(6), D.I. 35 ("MTD").

## III.    <u>SUMMARY OF ARGUMENT</u>

1.    Defendants contend that Counts 1-5 are preempted by patent law to the extent they rely on infringement threats against Plaintiff and Plaintiff's customers.  That is wrong.  Defendants' threats concerned non-existent and/or unenforceable patent rights, and thus were made in bad faith. Claims for such bad-faith threats of infringement are not preempted.

2.    EIS states a Lanham Act claim for unfair competition (Count 1) because Defendants posted fake Amazon reviews for EIS's products, and engaged an Instagram influencer to post false

or misleading information about EIS's products.  Both the Amazon reviews and Instagram posts satisfy the Third Circuit's three-part test for commercial speech because they constitute advertisements that reference specific products and were economically motivated.  Thus, the statements were commercial speech actionable under the Lanham Act.

3. EIS's Delaware Uniform Deceptive Trade Practices Act claim (Count 2) pled that Defendants' fake Amazon reviews and certain Instagram posts contained materially false or misleading statements and falsely purported to be reviews from bona fide customers of EIS.  That is sufficient to state a claim.

4. EIS's Delaware Common Law Unfair Competition claim (Count 3), Tortious Interference with Business Relations claim (Count 4), and CCPA claim (Count 5) pled sufficient injury in the form of financial and reputational damage.  Defendants' contention that EIS's tortious interference claim (Count 4) did not plead the existence of a contract misconstrues the legal basis for EIS's claim, which does not require an underlying contract or breach thereof.

5. EIS's Inequitable Conduct claims (Counts 6-8) are pled with sufficient particularity because EIS identified the individual who withheld material information, what information was material, why it was material and non-cumulative, when it was withheld, how an examiner would have used it in assessing patentability, and underlying facts from which this Court can infer that Defendants knew of the material information and withheld it with a specific intent to deceive the PTO.  Defendants' extensive reliance on *Therasense*—which involved the review of a district court decision after a bench trial—is misplaced at the pleading stage.

6. EIS's Walker Process claim (Count 9) plausibly alleges how Defendants attempted to monopolize the market with their fraudulently procured patents, and pleads specific facts showing Defendants' anticompetitive conduct (its threatened enforcement of fraudulent patents), a specific

intent to monopolize (its attempt to force EIS out of the U.S. market), and a dangerous probability of achieving monopoly power (EIS is Defendants' only major competitor in the U.S. and the market is difficult to enter).

## IV.  STATEMENT OF FACTS

EIS's FAC, including its thirty-one exhibits, alleges in great detail Defendants' history of engaging in unfair and deceptive trade practices with the intent to prevent or limit the commercial success of EIS's products.  FAC ¶ 29.  EIS's claims generally arise from Defendants' (1) false and misleading statements made on the Internet and to distributors relating to EIS's products and Defendants' non-existent patent rights, (2) fraudulent procurement of three patents,[1] and (3) efforts to leverage those patents to monopolize the market for sexual wellness devices incorporating air pulse technology in the United States.

Specifically, Defendants posted fake reviews of EIS's products on Amazon that purported to be reviews from actual customers.  FAC ¶¶ 43-51.  Defendants similarly directed an industry insider and Instagram influencer to publish false and disparaging statements about EIS's products.  FAC ¶¶ 61-63.  Defendants also accused EIS's customers of infringing patents that did not exist or were not enforceable in the United States, FAC ¶¶ 52-57, and pressured EIS's retailers and distributors not to do business with EIS by threatening, *inter alia*, to raise prices on those retailers if they continued to carry EIS's products.  FAC ¶¶ 58-60.

Finally, Defendants fraudulently procured the Patents-in-Suit by withholding two English translations of a material prior art reference from the PTO.  FAC ¶¶ 66-96.  That reference—and its materiality—was known to Defendants, because it was concurrently implicated in a German Patent Office Proceeding that resulted in a determination that defendant Novoluto's German patent was

---

[1]    U.S. Patent Nos. 9,763,851 (the '851 Patent), 9,937,097 (the '097 Patent), and 9,849,061 (the '061 Patent) (collectively, "the Patents-in-Suit")

invalid. *Id.* Defendants nonetheless accused EIS of infringing the Patents-in-Suit and tried to leverage the fraudulent patents to monopolize the United States market. FAC ¶¶ 97-107.

Defendants simply ignore most of these detailed allegations to argue that not a single one of EIS's claims meets the required pleading standards. Defendants are wrong across the board.

## V.  **ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain "'only a short and plain statement of the claim . . . in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In analyzing whether a complaint should be dismissed pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Cmty. Legal Aid Society, Inc. v. Coupe*, C.A. No. 15-688-GMS, 2016 WL 1055741, at *2 (D. Del. Mar. 16, 2016) (quoting *Phillips*, 515 F.3d at 233); *see also Medtronic, Inc. v. Bos. Sci. Corp.*, 587 F. Supp. 2d 648, 654 (D. Del. 2008) ("The purpose of a [12(b)(6)] motion to dismiss is . . . not to resolve disputed facts or decide the merits of the case.") (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).

A.      **Patent Law Does Not Preempt EIS's Unfair Competition Claims because EIS Alleges that WOW Tech Asserted Patent Rights in Bad Faith**

Defendants argue that patent law preempts EIS's Lanham Act, Delaware state law, and Colorado Consumer Protection Act claims (Counts 1-5) to the extent they rely on Defendants' patent infringement threats.  MTD at 5.  As Defendants acknowledge, however, such claims are not barred when the infringement communication is made in bad faith.  *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1342-43 (Fed. Cir. 1999) (affirming denial of motion to dismiss plaintiff's Lanham Act and state unfair competition claims as barred by patent laws because plaintiff alleged that infringement threats to potential customers were made in bad faith).  Here, EIS alleges that Defendants' threats to its customers concerned non-existent and unenforceable patent rights, and thus were made in bad faith.  *See id.* at 1354 ("Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out."); *see also* FAC ¶¶ 52-57, 110, 123, 129, 133, 139.

EIS alleges that, "Defendant Novoluto generally told Eldorado and other unnamed retailers and distributors that it had patent rights and that Novoluto believed certain EIS products infringed those rights."  MTD at 7; FAC ¶¶ 52-55.  Defendants gloss over the fact that EIS also alleges that Defendants knew they had no enforceable patent rights in the United States when they threatened Eldorado in 2016.  FAC ¶¶ 53-55.  Indeed, Novoluto's first U.S. patent did not issue until 2017, the year *after* Defendants threatened Eldorado.  FAC ¶ 53.

Defendants argue that they were not acting in bad faith because Defendant Novoluto had a German patent at the time of the communications.  MTD at 7.  Even if Novoluto did have a valid German patent, such a patent is not enforceable in the United States.  *See Voda v. Cordis Corp.*, 476 F.3d 887, 901 (Fed. Cir. 2007) ("A patent right is limited by the metes and bounds of the

5

jurisdictional territory that granted the right to exclude.").  The fact that certain products were later found to infringe Novoluto's German patent (unenforceable in the United States, and later found invalid in Germany) is irrelevant.  MTD at 7; FAC ¶¶ 33–39.

Thus, Defendants' infringement threats could not have been made in good faith prior to September 19, 2017, because Defendants knew they did not possess any enforceable patent rights in the United States when the statements were made.[2]  *See* FAC ¶¶ 53-55.  EIS pled sufficient facts from which this Court may plausibly conclude that Defendants' threats to EIS's customers were made in bad faith. Thus, its Lanham act, Delaware state law, and Colorado Consumer Protection Act claims (Counts 1-5) are not preempted.

### B.    EIS's Lanham Act Claim is Actionable and Sufficiently Pled

EIS pled that Defendants violated the Lanham Act by 1) publishing false and misleading reviews of Plaintiff's products on Amazon, 2) making false statements about alleged infringement of invalid and non-existent patent rights, and 3) hiring or otherwise directing an industry insider to make false and misleading statements on Instagram.  FAC ¶¶ 108-117; *see also id.* at ¶¶ 43-57, 61-65.  Defendants argue that (1) neither the Instagram posts nor the fake Amazon reviews are actionable under the Lanham Act because they were not commercial speech, and (2) EIS did not adequately allege the falsity of those statements.[3]  *See* MTD at 8-12.  Neither of Defendants' arguments have merit.

---

[2]    Moreover, because EIS alleges that the Patents-in-Suit are unenforceable due to Defendants' intentional misrepresentations before the PTO, as discussed *infra* at § V.G, *see also* FAC ¶¶ 66-95, EIS sufficiently pled that any later threats of infringement of the Patents-in-Suit were also made in bad faith.  *See Zenith*, 182 F.3d at 1354 (Fed. Cir. 1999).

[3]    Aside from their preemption argument, Defendants' do not challenge EIS's Lanham Act claim to the extent it is based on statements made to distributors and retailers.  *See* FAC ¶¶ 52-57, 114.

The Lanham Act regulates statements that constitute "commercial advertising or promotion." *See Incarcerated Entm't, LLC v. CNBC LLC*, 331 F. Supp. 3d 352, 358–59 (D. Del. 2018). Whether a statement is "commercial speech" is a secondary inquiry under the broader question of whether it is "commercial advertising or promotion."[4] Defendants' sole challenge with respect to whether the statements identified in EIS's complaint are actionable under the Lanham Act is that those statements do not constitute commercial speech. *See* MTD at 8-11. The Third Circuit has adopted a 3-factor test to resolve this question: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008) (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 933 (3d Cir. 1990)).

### 1.    WOW Tech's Fake Amazon Reviews are Commercial Speech

Fake internet reviews are actionable commercial speech under the Lanham Act. *See NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*, No. 09-CV-05783, 2012 WL 607975, at *7 (E.D. Pa. Feb. 27, 2012) (holding that fake internet reviews written by defendant, warning plaintiff's potential customers of its purported poor quality goods and workmanship, and suggesting that customers take their business elsewhere were commercial speech) (citing *Facenda.,* 542 F.3d at 1017–18); *see also Vitamins Online, Inc. v. HeartWise, Inc.*, 207 F. Supp. 3d 1233, 1242 (D. Utah 2016) (holding that defendant's employees' manipulation of Amazon reviews by voting that positive reviews on its own

---

[4]    Commercial advertising or promotion is "(1) **commercial speech**; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendants goods . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* (quoting *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1535-36 (S.D.N.Y. 1994)) (emphasis added). Note that recent changes in the law have prompted some circuits to remove or refuse to adopt the second factor (commercial competition). *See e.g., Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.,* 700 F. App'x 251, 256 (4th Cir. 2017). Regardless, whether the first factor (commercial speech) is satisfied is the only issue properly raised by Defendants.

products were helpful and negative reviews were unhelpful, "constitutes commercial advertising or promotion") (*vacated in part on other grounds on reconsideration*, No. 2:13-CV-982-DAK, 2017 WL 2733867 (D. Utah May 11, 2017)); *id.* at 1245–46 ("The broad language of Section 43(a) of the Lanham Act should serve as a warning to online retailers that they should leave customer reviews to customers.").

EIS sufficiently pled each of the commercial speech factors.  First, Defendants' Amazon reviews are advertising because they were disseminated over the internet and warned EIS's potential customers of its purportedly defective and poor quality products.  FAC ¶¶ 43-51, 110-111, 113; *see NTP Marble*, 2012 WL 607975, at *7.  Second, the reviews were posted on Amazon's product pages for EIS's Satisfyer products, and thus reference those products.  FAC ¶¶ 43, 51.  Third, as EIS's primary competitor in the market, Defendants had an economic motivation for deterring customers from purchasing EIS's products because that would drive more sales to WOW Tech's competing Womanizer product line.  FAC ¶ 105, 116; *see NTP Marble*, 2012 WL 607975, at *7.  Thus, the fake Amazon reviews constitute commercial speech.

### 2.      The Instagram Story is Commercial Speech

Although Instagram may not be a traditional advertising medium, such as television, radio, newspapers or magazines, where a paid advertisement is unquestionably commercial speech, *see Gordon & Breach*, 859 F. Supp. at 1532, popular Instagram personalities (colloquially called "influencers") are one of the most popular new advertising avenues of the 21st century.[5]  Here, EIS

---

[5]      *See, e.g., Online Influencers Tell You What to Buy, Advertisers Wonder Who's Listening*, Wall St. J. (Oct. 20, 2019) (https://www.wsj.com/articles/online-influencers-tell-you-what-to-buy-advertisers-wonder-whos-listening-11571594003) ("Advertisers can't ignore social media. Instagram alone has more than 1 billion monthly users. Mediakix, an influencer marketing agency, estimates companies will spend between $4.1 billion and $8.2 billion globally in 2019 on influencers."); *see also AC Media Grp. v. Macchia,* No. 19-CV-1861-JPS, 2020 WL 109789, at *1 (E.D. Wis. Jan. 9, 2020) (explaining that "Instagram is a photo-sharing application that is commonly leveraged by

alleges that an Instagram "story" posted by an industry insider and Instagram influencer—Ms. Ligon—was commercial speech because it was an advertisement, it referred to both EIS's products and WOW Tech's competing products, and Ms. Ligon had an economic motivation for her post. FAC ¶¶ 61-65, 112.

First, Ms. Ligon's posts were public advertisements; her Instagram account is not private and anyone can view her posts. FAC ¶ 62. Indeed, as EIS alleges, she has 70,000 followers, i.e., people who have signed up to see *everything* she posts when they open Instagram. FAC at ¶ 61. In that respect, Instagram is no different from traditional advertising venues. Any member of the public may choose to view a particular Instagram account, just like tuning to a radio or television station, or opening a newspaper.

Second, Ms. Ligon referred to both parties' specific products. For instance, she compared EIS's "Satisfyer" product line to Defendants' "Womanizer" product line, when she stated that EIS "ripped off the . . . technology of Womanizer." FAC at ¶ 62.

Third, EIS alleges that Ms. Ligon's post was economically motivated. FAC at ¶ 61. Specifically, EIS alleges that Defendants "hired or otherwise directed" Ms. Ligon to post on Instagram, which would include compensation by way of direct payment, product discounts, sponsorship, endorsements, and the like. *Id.* Thus, the Instagram story was commercial speech.

### 3. EIS Adequately Alleges That the Instagram Story and Fake Amazon Reviews Contain False or Misleading Statements

Section 43(a) of the Lanham Act proscribes any "false or misleading description of fact, or false or misleading representation of fact, which . . . misrepresents the nature, characteristics [or]

---

users and companies for advertisements. Instagram users with sizeable followings may be contacted by companies to promote products in exchange for money. Instagram users who receive money to advertise products via posts try to maximize the interactions that their posts receive in order to garner additional paid promotions.").

qualities . . . of . . . another person's goods, services, or commercial activities."   15 U.S.C. § 1125(a)(1).  Defendants argue that EIS failed to plead that Ms. Ligon's Instagram posts and WOW Tech's Amazon reviews were false or misleading.  MTD at 11-12.

With respect to WOW Tech's statements in its fake Amazon product reviews, EIS pled both that those reviews (1) were materially false, and (2) were not posted by bona-fide customers.  FAC ¶¶ 43-44.  To support these allegations, EIS explained that Amazon had not marked "WOW Tech" as a verified purchaser for any of the reviews it posted – i.e., the reviews were not authored by a person who actually purchased the product.  *Id.* at ¶ 44.  Thus, every statement in WOW Tech's Amazon reviews was false or misleading because they were not written by persons who had purchased EIS's Satisfyer products and formed an opinion as to their performance or quality.  *See Romeo & Juliette Laser Hair Removal Inc. v. Assara I LLC*, No. 08-0442 (DLC), 2016 WL 815205, at *7 (S.D.N.Y. Feb. 29, 2016).

With respect to the Instagram story, EIS similarly alleges that Ms. Ligon's statements did not reflect her own opinions or experiences because she was "hired or otherwise directed" to post negative statements about EIS and its Satisfyer products.  FAC ¶¶ 61, 112.  By presenting her Instagram posts as reflecting her own opinions, Ms. Ligon, on behalf of Defendants, made false or misleading representations of fact.  FAC ¶ 112.  Moreover, Ms. Ligon's statement that EIS "ripped off" WOW Tech's Womanizer product line was false or misleading because the term "ripped off" insinuates that EIS stole WOW Tech's property or otherwise engaged in illegal conduct, which it did not.  FAC ¶ 62.

Thus, WOW Tech's reviews and Ms. Ligon's Instagram posts were false or misleading at least because they purported to be the independent opinions of retailers or consumers of EIS's products, when they were not.  *See Romeo & Juliette*, 2016 WL 815205, at *7 (distinguishing

10

between online reviews that (1) "described persons who were not [plaintiff's] customers and experiences with the plaintiff's services that those fictitious customers did not have" and (2) were posted by the owner of a competing business that described his actual experiences, and holding the first category of statements actionable under the Lanham Act because they "were literally false as a factual matter").

### C.   EIS Sufficiently Pled its Delaware Uniform Deceptive Trade Practices Act Claim

The Uniform Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2532, "is intended to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993).  Under the DTPA, "[a] person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (8) [d]isparages the goods, services, or business of another by false or misleading representation of fact," or "(12) [e]ngages in  . . . conduct which similarly creates a likelihood of confusion or of misunderstanding."  6 Del. C. § 2532(a)(8), (12); *see also QVC, Inc. v. Your Vitamins, Inc.*, 714 F. Supp. 2d 291, 298 (D. Del. 2010).

Defendants contend that EIS did not plead falsity in their Amazon reviews or in Ms. Ligon's Instagram posts, MTD at 12, or sufficiently allege damages, MTD at 13.  EIS's DTPA claim (Count 2), like its Lanham Act claim, relates to Defendants' fake Amazon reviews and Ms. Ligon's Instagram posts.  FAC ¶ 119-25.  EIS did in fact plead that such statements constitute a false or misleading representation of fact that disparages EIS and its Satisfyer products as explained above. *See supra* at § V.B; *see also* FAC ¶¶ 43, 62.

In addition to literal falsity, Defendants' fake Amazon reviews and Ms. Ligon's posts create a likelihood of confusion or of misunderstanding.  For instance, Defendants' reviews purport that, among other things, EIS's Satisfyer products are not waterproof as advertised which would mislead

11

potential customers into thinking EIS's products are inferior or faulty, or that EIS has itself engaged in false advertising, none of which are true.  *See* FAC ¶ 43.  Moreover, Ms. Ligon's statement that EIS "ripped off" WOW Tech's Womanizer product line is also likely to confuse customers or cause a misunderstanding because the term "ripped off" insinuates that EIS stole WOW Tech's designs or otherwise engaged in illegal conduct, which it did not.  *See* FAC ¶ 62.  Similar to Defendants' fake reviews, the term "ripped off" is also likely to mislead potential customers into thinking that EIS's products are inferior, which they are not.  *See id*.

### D.   EIS Sufficiently Pled its Delaware Common Law Unfair Competition Claim

EIS pled facts sufficient to support its common law unfair competition claim (Count 3).  FAC ¶¶ 127-130; *see also id.* at ¶¶ 43-57, 61-65.  A Delaware common law unfair competition claim requires that "the plaintiff has a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057 (Del. Super. Ct. 2001).  Defendants contend that EIS failed to adequately identify any unfair acts or a defeated expectancy.

EIS identified three categories of Defendants' intentional misconduct that constitute wrongful interference: 1) the false and misleading Amazon reviews, 2) Ms. Ligon's Instagram story, and 3) falsely, and in bad faith, informing EIS's distributors and retailers that EIS's products infringed or likely infringed Defendants' patents.  FAC ¶ 129.  The first two categories are unfair acts for the reasons discussed at length above with respect to EIS's Lanham act claim.  *See supra* at § V.B.  The third category is an unfair act because, as discussed above with respect to preemption, Defendants' infringement threats concerned non-existent or unenforceable patent rights and thus were made in bad-faith.  *See supra* at § V.A.

12

Moreover, EIS sufficiently pled that each of Defendants' unfair acts defeated a legitimate expectancy and caused EIS harm.  For instance, EIS explained how its Amazon customers were exposed to Defendants' misrepresentations "at the very moment they are deciding whether to purchase EIS's Satisfyer products" and that EIS lost sales as a result.  FAC ¶¶ 51, 64-65.  EIS also pled that Ms. Ligon's Instagram story encouraged retailers to pull EIS products from their stores, causing financial and reputational damage.  FAC ¶¶ 62, 64-65.  And EIS pled that Defendants' infringement threats were designed "to convince [its] customers to cease doing business with EIS," and that as a result, EIS suffered lost sales and profits.  ¶¶ 129-30.

EIS's pleadings are more than sufficient to support its unfair competition claims. This Court does not require a more rigorous factual pleading at this stage.  *Cf. GPNE Corp. v. Fleetmatics USA, LLC*, No. 13-2049-SLR-SRF, 2015 WL 730046, at *9 (D. Del. Feb. 20, 2015) (denying motion to dismiss common law unfair competition claim where plaintiff pled that "it had a reasonable expectancy of entering and continuing its valid business relationships with its customers" and "[defendant's] actions defeated [plaintiff's] expectancy and caused harm by preventing [defendant] from earning revenue"); *Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665, 676 (D. Del. 2010) (denying motion to dismiss where plaintiff alleged that sales of its competing product had "eroded" "as a result of Defendants' false marketing").

### E.     EIS Sufficiently Pled its Tortious Interference with Business Relations Claim

Defendants moved to dismiss a supposed claim for "tortious interference with contractual relations" that EIS did not plead, on the basis that EIS did not allege the existence of a contract or a breach thereof.  *See* MTD at 14.  However, the claim EIS did plead—tortious interference with *business relations* (count 4)—does not require a contract.  *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 664 (D. Del. 2008) (stating the elements as: "(1) the reasonable probability of a business opportunity; (2) intentional interference; (3) proximate

13

causation; and (4) damages, 'all of which must be considered in light of defendant's privilege to compete . . . in a fair and lawful manner.'") (quoting *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1285 (Del. Super. 2001)).

EIS's tortious interference claim relates to Defendants' threats to retailers that carry EIS's products. FAC ¶¶ 52-60, 132-136. The facts underlying EIS's tortious interference with business relations claim are substantially the same as those for its common law unfair competition claim, *see supra* at § V.D, and this claim is also adequately pled.

### F. EIS Sufficiently Pled its Colorado Consumer Protection Act ("CCPA") Claim

EIS sufficiently pled that Defendants false and bad faith allegations to EIS's distributor Eldorado Trading Company ("Eldorado") regarding patent infringement constitute a violation of the CCPA (Count 5). FAC ¶¶ 52-57, 137-143. Defendants contend that EIS failed to adequately plead 1) "specifics as to the actual representations that were allegedly made or by whom" and 2) injury in fact to a legally protected interest. MTD at 15.

EIS alleges that Defendants contacted Eldorado in or around July 2016 and accused it of "infringing [Novoluto's] patent rights by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product." FAC ¶¶ 53-55, 138. Given that Defendants had no United States patent rights when they made such allegations to Eldorado (a U.S. company in Colorado), FAC ¶¶ 54-55, EIS could not have pled which specific U.S. patent(s) Defendants claimed Eldorado infringed because there were no such patents.[6]

With respect to the injury element, the CCPA provides a legally protected interest that is identical to the DTPA, discussed *supra* at § V.C. *See* CCPA § 6-1-105(1) ("A person engages in a

---

[6]   Defendants' suggestion that it would not have been false or misleading to accuse Eldorado of infringing Novoluto's German patent, *see* MTD at 15, is incorrect, as it would have been misleading for Defendants to suggest to a United States distributor that a German patent was enforceable against that distributor in the United States.

deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . . (h) Disparages the goods, services, property, or business of another by false or misleading representation of fact."). Thus, because Defendants made a false representation of fact to Eldorado (i.e., that it was infringing Defendants' patents by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product, FAC ¶ 54), Defendants violated EIS's legally protected interest in fair competition absent such disparaging statements. *See id.* Moreover, EIS pled that this injury to its legally protected interest caused it to suffer an injury in fact, in the form of lost income, lost sales, lost profit, and damage to its goodwill associated with its brand and the Satisfyer product line. FAC ¶ 141; *cf. Hall v. Walter*, 969 P.2d 224, 237 (Colo. 1998) (finding injury-in-fact where "[b]ecause of the defendant's misrepresentations, [Plaintiff's] business lost its customers and, ultimately, its value.")

### G.   EIS Pled its Inequitable Conduct Claim with Particularity

EIS alleges that the Patents-in-Suit are unenforceable because Defendant Novoluto's Executive Director, Mr. Plettenberg, engaged in inequitable conduct before the PTO (Counts 6-8). FAC ¶¶ 66-96, 144-161. "If an individual who is substantively involved in the preparation or prosecution of an application fails to comply with his duty of candor, then that individual's misconduct is chargeable to the applicant . . . and the applicant's patent is held unenforceable." *Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967, 973 (Fed. Cir. 2010).

Defendants contend that EIS failed to "prove" that 1) Mr. Plettenberg owed a duty of disclosure to the PTO, 2) the withheld prior art reference was material, and 3) Mr. Plettenberg had a specific intent to deceive the PTO. MTD at 15-17. In fact, EIS need not *prove* anything at the pleading stage. The Federal Circuit laid out the pleading standard for inequitable conduct in *Exergen Corp. v. Wal-Mart Stores, Inc*:

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific **who, what, when, where, and how** of the material misrepresentation or omission committed before the PTO. Moreover, although **"knowledge" and "intent" may be averred generally**, a pleading of inequitable conduct under Rule 9(b) must include **sufficient allegations of underlying facts** from which a court may reasonably infer that a specific individual (1) **knew of the withheld material** information or of the falsity of the material misrepresentation, and (2) **withheld or misrepresented this information with a specific intent to deceive** the PTO.

575 F.3d 1312, 1328-29 (Fed. Cir. 2009) (emphasis added).  Defendants' reliance on *Therasense, Inc.v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-92 (Fed. Cir. 2011) (en banc), and related cases applying the *Therasense* standard to *decisions on the merits* is misplaced.  *See IBM Corp. v. Priceline Grp. Inc.*, No. 15-137-LPS-CJB, 2017 WL 1349175, at *5 (D. Del. Apr. 10, 2017) ("[u]nlike *Exergen*, which specifically outlined the requirements for *pleading* inequitable conduct, *Therasense* involved the review of a district court decision as to inequitable conduct made after a bench trial").

Following *Exergen's* guidance, EIS pled who, what, when, where, and how Defendants made a material omission before the PTO by withholding an English translation of *Guan* (a Chinese-language prior art reference), and by failing to disclose a German Patent Office proceeding that ultimately revoked a German Patent related to Defendants' then-pending United States patent applications.  EIS also pled facts from which this Court can infer Mr. Plettenberg knew of *Guan* and withheld it with a specific intent to deceive the USPTO.

### 1.    Who

EIS specifically identified Novoluto's Executive Director, Johannes Plettenberg, as having violated his duty of disclosure to the PTO.  *See, e.g.,* FAC ¶¶ 72-76.  Indeed, Defendants do not contest that EIS identified *who* engaged in the inequitable conduct, but instead raise a factual dispute as to whether Mr. Plettenberg had a duty of disclosure such that he could have committed inequitable conduct – a dispute which must be resolved in EIS's favor on a motion to dismiss.

16

The Federal Circuit has opined on which persons are substantively involved in patent prosecution and thus have a duty to disclose material information to the PTO under 37 C.F.R. § 1.56(c)(3). *See Avid Identification,* 603 F.3d at 974 (defining "substantive involvement" broadly to mean "that the involvement relates to the content of the application or decisions related thereto, and that the involvement is not wholly administrative or secretarial in nature."). In *Avid*, the Federal Circuit affirmed a district court ruling that a company president, Dr. Stoddard, who was not an inventor and did not actively participate in patent prosecution, nevertheless owed a duty to disclose prior art to the PTO. *Id.* at 974-75. With respect to § 1.56(c)(3)'s first requirement (substantively involved in the preparation or prosecution of the application), "Dr. Stoddard was involved in all aspects of the company's operation, from marketing and sales to research and development," and he was copied on two emails regarding a European Patent filing referring to the same subject matter as the pending U.S. application. *Id.* at 974-75. Taken together, these findings contributed to the inference that Dr. Stoddard was substantively involved in patent matters and thus owed a duty of disclosure. *Id.* at 975. The Court noted that "to accept [Defendant's] argument that a person such as Dr. Stoddard owes no duty of candor would allow intentional deception by the types of people most likely to have knowledge of § 102(b) prior art, i.e., those on the commercial side of patented product development." *Id.* at 976.

Unlike the plaintiff in *Avid*, EIS has not yet had the opportunity to seek discovery to ascertain the precise extent of Mr. Plettenberg's involvement in patent prosecution. Nonetheless, EIS reasonably concluded that Mr. Plettenberg was aware of both Novoluto's pending U.S. patent applications and the German Patent Office proceedings given his extensive involvement with the operations of each of Defendants' entities. For example, Mr. Plettenberg is a director of WTU, D.I. 29 at 2, a director of WTC, and an executive director of Novoluto, WTI, and WOW Tech Europe,

FAC ¶ 19.  As such, he should be aware of pending patent litigation and know about design, development, and patent activity in the relatively small group of companies he oversees, just like Dr. Stoddard was aware of the goings-on in the closely held company over which he presided. Indeed, EIS also alleges facts indicating that Mr. Plettenberg was aware of the scope of both Novoluto's issued patents and its pending patent applications.  FAC ¶ 98-99.  As an executive director of assignee Novoluto, Mr. Plettenberg also qualifies as a person associated with an assignee, satisfying § 1.56(c)(3)'s second requirement.  *See* § 1.56(c)(3) (duty of disclosure applies to a person "associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application").  Thus, in view of *Avid*, EIS sufficiently pled that Mr. Plettenberg owed a duty of disclosure to the PTO.

### 2.      What and Where

To satisfy *Exergen's* "what" and "where" requirements, a plaintiff must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found."  *Exergen*, 575 F.3d at 1329.  EIS pled that Mr. Plettenberg had a duty to disclose 1) an English translation of *Guan* in his possession, and 2) a German Patent Office proceeding that was instituted to resolve the validity of Novoluto's '501 German Patent over *Guan* and Novoluto's arguments therein.  FAC ¶¶ 72-76, 80, 83, 84, 90, 94-95, 147-149, 153-155, 159-161.  EIS further pled that Novoluto's material omission of those materials related to at least claim 1 of each of the '851, '097, and '061 Patents.  FAC ¶¶ 87-88, 90, 92, 94, 149, 155, 161.  For the '851 Patent, EIS identified the pertinent limitations as those in claim 1 relating to a drive unit and stimulation device having no valves.  FAC ¶¶ 92, 94.  For both the '097 and '061 Patents, EIS identified the pertinent limitation in claim 1 as generating pulsating positive and negative pressures.  FAC ¶¶ 87-88, 90.

Moreover, EIS identified where in *Guan* the material disclosures can be found.  For instance, EIS pled that *Guan's* disclosures related to the '851 Patent's claimed drive unit and stimulation device having no valves are on page 1 and in its only figure, where *Guan* discloses a structure driven by an electromagnet without any valves.  FAC ¶ 93.  EIS further pled that *Guan's* disclosures related to the '097 and '061 Patents' claimed pulsating pressures are on page 3, where *Guan* uses the term "pulsating air pressure" several times.  FAC ¶ 89.

### 3.    When

The "when" element requires a plaintiff to allege "'when' the omission occurred." *Andrulis Pharms. Corp. v. Celgene Corp.*, No. 13-1644-RGA, 2015 WL 4366118, at *4 (D. Del. July 16, 2015).  EIS pled that Mr. Plettenberg's material omission occurred on February 7, 2017, when it submitted an Information Disclosure Statement ("IDS") to the PTO in connection with the prosecution of the '061 Patent, FAC ¶ 77; when it submitted an IDS on February 10, 2017, in connection with the prosecution of the '851 Patent, FAC ¶ 78; and when it submitted an IDS on April 13, 2017, in connection with the prosecution of the '097 Patent, FAC ¶ 79.

### 4.    Why and How

A plaintiff must plead "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30 (Fed. Cir. 2009); *see LEO Pharma A/S v. Actavis Labs. UT, Inc.*, No. 16-333-JFB-SRF, 2018 WL 1045816, at *5 (D. Del. Feb. 26, 2018) (holding why and how adequately pled by allegation that omitted information is "material because it purportedly renders the [patents] invalid as anticipated or obvious" and "that the relevant limitations disclosed in [the omitted reference] are otherwise absent from the prosecution history."); *Andrulis*, 2015 WL 4366118, at *5-6 (holding inequitable conduct adequately pled by alleging that but-for the omission of certain information, "the patent would not have issued").

19

Here, as in *LEO Pharma*, EIS pled both why and how for each Patent-in-Suit.  For instance, EIS pled that Novoluto obtained each patent by, *inter alia*, successfully arguing to the examiner that another prior art reference (*Fang*) did not disclose certain elements of the then-pending claims in Novoluto's applications.  FAC ¶¶ 87-88, 91-92, 94.  However, the claim elements absent from the prior art before the examiner, including *Fang*, were present in *Guan*.  FAC ¶¶ 89-94.  Moreover, as in *Andrulis*, EIS alleges that at least claim 1 in each of the Patents-in-Suit would not have issued (i.e., the pending claims would have been unpatentable under 35 U.S.C. §§ 102 and/or 103) had Mr. Plettenberg disclosed a complete English translation of *Guan* to the patent examiner. [7]  Thus, EIS sufficiently alleges both why and how.

## 5. Specific Intent to Deceive

EIS pled facts from which this court can infer Mr. Plettenberg knew of and withheld *Guan* with a specific intent to deceive the PTO.  At the pleading stage, "'knowledge' and 'intent' may be averred generally," but "an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b)." [8] *Exergen*, 575 F.3d at 1328, 1329 n.5; *see also Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955-LPS, 2012 WL 600715, at *7 (D. Del. Feb. 3, 2012), *report and recommendation adopted*, No. 09-955-LPS, 2012 WL 749378 (D. Del.

---

[7]    Plaintiff's parent, EIS GmbH, recently petitioned the Patent Trial and Appeals Board ("PTAB") to institute *inter partes* review ("IPR") of Novoluto's U.S. Patent No. 9,937,097, citing *Guan* among other prior art references in its petition.  Although the PTAB declined to institute IPR, *EIS GmbH v. Novoluto GmbH*, IPR2019-01302, Paper No. 17 (P.T.A.B. Jan. 13, 2020), that decision cannot determine materiality before this court because "to assess materiality, the court must look to the [lower] standard used by the [Patent Office] to allow claims during examination." *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 768 F.3d 1185, 1189 (Fed. Cir. 2014).

[8]    Citing the wrong legal standard, Defendants argue that EIS failed to meet the standard for prevailing on the merits, not the considerably lower standard for surviving a motion to dismiss. MTD at 20 (citing *Exergen*, 575 F.3d at 1329 n.5).  Thus, defendants' cited precedent, namely *Optium Corp v. Emcore Corp.*, 603 F.3d 1313 (Fed. Cir. 2010), and *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 1000 (Fed. Cir. 2006), which involve decisions on the merits, are distinguishable on that basis alone.

Mar. 1, 2012) ("[I]n order to adequately plead the intent prong of . . . inequitable conduct . . ., the claimant need only allege facts from which the Court could *reasonably infer* that the patent applicant made a deliberate decision to deceive the PTO."). Notably, "in this district, an inequitable conduct claim is rarely disallowed at the pleading stage due to the failure to adequately allege scienter." *Zadro Prod., Inc. v. SDI Techs., Inc.*, No. 17-1406 (WCB), 2019 WL 1100470, at *5 (D. Del. Mar. 8, 2019) (citing *Cornell Univ. v. Illumina, Inc.*, No. 10-433-LPS-MPT, 2016 WL 3046258, at *9 n. 89 (D. Del. May 27, 2016). For instance, in *Zadro*, Defendant's allegation "that the withheld prior art . . . would have undercut Zadro's arguments during prosecution" was sufficient to infer deceptive intent. *Id*., n.4 ("it is reasonable to infer that an applicant who is aware of material prior art and the possible adverse effect that disclosure could have on the application would have an incentive to conceal the prior art.").

Here, as in *Zadro*, EIS alleges that "Mr. Plettenberg intentionally withheld the existence and substance of the German Opposition Proceeding and misled the PTO about the content of *Guan* during the pendency of the Novoluto Applications, because disclosing them would have prevented one or more of Novoluto's pending claims from issuing." FAC ¶¶ 80-84, 95, 159-60. EIS further alleges that Mr. Plettenberg knew the partial English translation of *Guan* submitted to the PTO was intentionally misleading, at least because the submitted portion did not disclose all the technical details of *Guan's* apparatus. FAC ¶¶ 82-83. In view of EIS's allegations that Novoluto had been involved in ongoing proceedings before the German Patent Office regarding the validity of a related patent over *Guan*, FAC ¶¶ 34, 69-72, 76, and that Novoluto withheld a full English translation of *Guan* from the PTO despite knowledge of its materiality from that proceeding, FAC ¶¶ 80-84, 95, 159-60, EIS pled sufficient facts for this court to reasonably infer that Mr. Plettenberg was aware of *Guan's* materiality, and that his intent in withholding it was to deceive the PTO.

### H.     EIS Sufficiently Pled its Walker Process Claim

EIS alleges that Defendants obtained the Patents-in-Suit by fraud and used them to seek a

monopoly in violation of the Sherman Act (Count 9).  FAC ¶¶ 66-107, 162-171.

> "In order to prevail on a *Walker Process* claim, the antitrust-plaintiff must show two
> things: first, that the antitrust-defendant obtained the patent by knowing and willful
> fraud on the patent office and maintained and enforced the patent with knowledge of
> the fraudulent procurement; and second, all the other elements necessary to establish
> a Sherman Act monopolization claim."

*TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016).  Defendants

argue that EIS's inequitable conduct claim and the fraud component of EIS's *Walker Process* claim

fail for the same deficiencies.  MTD at 20-21.  Thus, for the reasons EIS sufficiently pled inequitable

conduct, *see supra* at § V.G, it also sufficiently pled the fraud component of its *Walker Process*

claim.[9]

"A claim of attempted monopolization under § 2 of the Sherman Act must allege '(1) that the

defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to

monopolize and (3) a dangerous probability of achieving monopoly power.'" *Broadcom Corp. v.

Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007).

Here, EIS alleges that Mr. Plettenberg accused EIS's Air Pulse products of infringing the

Patents-in-Suit.  FAC ¶ 98.  Threatened enforcement of a fraudulently procured patent against a

plaintiff or its customers is sufficient anticompetitive conduct to state a valid *Walker Process* claim.

*See Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344, 1350 (Fed. Cir. 2007).  Relying on his

infringement accusations, Mr. Plettenberg sought to either purchase EIS or convince EIS to leave the

United States market in exchange for a licensing deal for the rest of the world.  FAC ¶ 99.  As a

result of Defendants' infringement threats, EIS has withheld products from the United States market

---

[9]  "After *Therasense,* the showing required for proving inequitable conduct and the . . . fraud
component of *Walker Process* liability may be nearly identical." *TransWeb*, 812 F.3d at 1307.

to reduce its chances of being sued for allegedly infringing Novoluto's unenforceable patents.  FAC ¶¶ 170-71.  Mr. Plettenburg similarly engaged in anticompetitive behavior when he asked Mr. Geske (of EIS GmbH, EIS's parent company) to engage in price fixing, which Mr. Geske refused to do. FAC ¶ 100.

Likewise, threatened enforcement of a fraudulently procured patent is sufficient to show a specific intent to monopolize.  For instance, the court in *TransWeb, LLC v. 3M Innovative Properties Co.*, No. 10-4413 (FSH), 2011 WL 2181189, at \*16 (D.N.J. June 1, 2011), found that an allegation that 3M "attempted to enforce [its fraudulently procured] patents to push TransWeb out of the oil resistant respirator market," was sufficient to plead specific intent.  *Id*.  Here, similar to *Transweb*, Mr. Plettenberg tried to use Novoluto's fraudulently procured patents to either purchase EIS or push it from the U.S. the market for sexual wellness devices incorporating pulsating air for clitoral stimulation, as explained above.  *See* FAC ¶ 99.  Thus, EIS sufficiently alleges that Novoluto had a specific intent to monopolize the relevant market.

EIS also sufficiently alleges that Defendants had a dangerous probability of achieving monopoly power.  FAC ¶¶ 102-107, 162-171.

> In a determination of dangerous probability . . . factors such as significant market share coupled with anticompetitive practices, barriers to entry, the strength of competition, the probable development of the industry, and the elasticity of consumer demand may be considered. No single factor is dispositive.

*Broadcom*, 501 F.3d at 318 (noting dangerous probability is "particularly fact-intensive" and that "[c]ourts typically should not resolve this question at the pleading stage 'unless it is clear on the face of the complaint that the dangerous probability standard cannot be met as a matter of law'").

In *TransWeb*, for example, the plaintiff alleged that "few other manufacturers" produced products within the defined market, and that it and 3M were the only suppliers of the primary product type in that market.  2011 WL 2181189, at \*18.  TransWeb further alleged that 3M had a

dominant share of the sales, but did not set forth specific market share data. *Id.* TransWeb alleged that elimination of it as a supplier would destroy competition in the market. *Id.* Finally, TransWeb alleged that there were barriers to entry in the market and that there had been no new suppliers in the market since its own entry. *Id.* On these allegations, the court held that TransWeb had set forth plausible allegations of a dangerous probability of monopoly power. *Id.* (citing *Broadcom*, 501 F.3d at 318).

Here, Defendants do not dispute that the relevant market is the market for sexual wellness devices incorporating pulsating air for clitoral stimulation in the United States. FAC ¶ 104. Within the defined market, EIS's allegations mirror those in *TransWeb* and are similarly sufficient for this Court to find that EIS set forth plausible allegations that Defendants reached a dangerous probability of monopoly power. For example, like TransWeb, EIS alleges that it and Defendants are the primary competitors in the market, with only a trivial share attributable to a third company. FAC ¶¶ 105, 166, 169. As EIS alleges, removing one of two primary competitors from the market is likely to generate a monopoly for the other. FAC ¶¶ 105-106, 169. Indeed, EIS further alleges that Defendants sought to destroy competition in the market, FAC ¶ 104, and that EIS's existence is vital to competition in the market, FAC ¶ 106. Finally, EIS alleges that there are barriers to entering the market, which has proven difficult to enter for third parties. FAC ¶¶ 106, 168. Thus, forcing EIS out of the market would result in a dangerous probability of a monopoly for the Defendants. FAC ¶¶ 105-106.

## VI.    CONCLUSION

EIS respectfully requests that the Court deny Defendants' Motion to Dismiss.[10]

---

[10] If the Court grants any part of Defendants' Motion, EIS requests leave to amend. *See Phillips*, 515 F.3d at 245 (3d Cir. 2008).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Plaintiff*

OF COUNSEL:

Naveen Modi
Tad Richman
David Valente
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC  20008
(202) 551-1700

February 25, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 25, 2020, upon the following in the manner indicated:

Paul D. Brown, Esquire                                              *VIA ELECTRONIC MAIL*
Joseph B. Cicero, Esquire
Gregory E. Stuhlman, Esquire
CHIPMAN BROWN CICERO & COLE, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, DE 19801
*Attorneys for Defendants*

Tammy J. Dunn, Esquire                                              *VIA ELECTRONIC MAIL*
Califf T. Cooper, Esquire
OSHA LIANG LLP
909 Fannin Street
Houston, TX 77010
*Attorneys for Defendants*


*/s/ Brian P. Egan*
_____
Brian P. Egan (#6227)