# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EIS, INC.,

   Plaintiff,

  v.           :  C.A. No. 19-1227-LPS

WOW TECH INTERNATIONAL GMBH,
WOW TECH USA, LTD., WOW TECH
CANADA, LTD., and NOVOLUTO GMBH,

   Defendants.

---

Jack B. Blumenfeld and Brian P. Egan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Naveen Modi, Tad Richman, and David Valente, PAUL HASTINGS LLP, Washington, DC

   Attorneys for Plaintiff


Paul D. Brown, Joseph B. Cicero, and Gregory E. Stuhlman, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE

Tammy J. Dunn and Califf Cooper, OSHA LIANG LLP, Houston, TX

   Attorneys for Defendants


## <u>MEMORANDUM OPINION</u>


November 30, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.   INTRODUCTION

Plaintiff EIS, Inc. ("EIS" or "Plaintiff") brought this action on June 28, 2019, against Defendants WOW Tech International GmbH ("WTI"), WOW Tech USA Ltd. ("WTU"), WOW Tech Canada Ltd. ("WTC"), and Novoluto GmbH ("Novoluto") (collectively "WOW" or "Defendants"), alleging violations of the Lanham Act, Delaware common law on unfair competition, the Delaware Deceptive Trade Practices Act ("DDTPA"), Delaware tortious interference laws, and the Colorado Consumer Protection Act ("CCPA").  (D.I. 1)  EIS filed its First Amended Complaint ("FAC") on September 9, 2019, adding declaratory judgment claims for inequitable conduct relating to Defendants' U.S. Patent Nos. 9,763,851 (the "'851 patent"), 9,849,061 (the "'061 patent"), and 9,937,097 (the "'097 patent"); as well as a claim for *Walker Process* fraud and violation of Section 2 of the Sherman Act.  (D.I. 9)  On October 2, 2019, certain Defendants moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(2), and all Defendants moved to dismiss for failure to state a claim under FRCP 12(b)(6).  (D.I. 16)  Following a telephonic hearing on December 9, 2019, and subsequent jurisdictional discovery, the motion to dismiss on jurisdictional grounds was withdrawn.  (D.I. 34)

Pending before the Court is Defendants' revised motion to dismiss all nine counts for failure to state a claim under FRCP 12(b)(6).  The Court heard argument on the pending motion during a telephonic hearing on June 15, 2020.  (D.I. 44 ("Tr."))

For the reasons stated below, the Court will grant in part and deny in part Defendants' motion to dismiss.

## II.    LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,

2

113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## III.   DISCUSSION

### A.   Preemption (Counts 1-5)

Defendants argue that the claims under the Lanham Act (Count 1), Delaware state law (Counts 2-4), and CCPA (Count 5) are preempted by federal patent law, as they are based on alleged representations by Defendants made regarding potential patent infringement yet Plaintiff has failed to sufficiently allege that the representations were made in objective bad faith. Thus, according to Defendants, all five claims should be dismissed as to all the Defendants. (D.I. 36 at 5-8)

Defendants point specifically to Plaintiff's allegations in the FAC that in July 2016 Defendant Novoluto, on behalf of Defendants, represented to one of Plaintiff's customers, Eldorado Trading Company ("ETC"), that ETC was infringing Novoluto's patent rights by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product. (FAC ¶¶ 53, 123, 129, 133-35, 138) In Defendants' view, the FAC fails to plead specificity or allege falsity with respect to any particular representation or any particular patent. (D.I. 36 at 6-7) In addition, Defendants argue that the allegations in the FAC actually establish that Novoluto had a good faith basis to believe that Plaintiff's product infringed at least one of its German or U.S. patents and that Novoluto informed retailers and distributors of that belief. (*Id.* at 7-8; *see also* FAC ¶¶ 30-31, 33-34, 52, 70-71)

"[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Comput. Grp.*, 362 F.3d 1367, 1374 (Fed. Cir.

3

2004). "State-law claims such as [these] can survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement." *Id.* "Accordingly, to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Id.* (internal quotation marks omitted). "In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998).

The Federal Circuit has applied a bad faith standard to Lanham Act claims as well. *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) ("[B]efore a patentee may be held liable under [Lanham Act] § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith."); *see also PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, 2017 WL 3821107, at *11 (D. Del. Aug. 31, 2017) (granting motion to dismiss where allegations of Lanham Act violation failed to plausibly allege bad faith).

Here, Plaintiff has sufficiently alleged bad faith, such that Counts 1-5 are not preempted by federal patent law.[1] Taking the factual allegations in the FAC as true, Novoluto's first U.S. patent did not issue until 2017, which was after Novoluto contacted ETC about infringement of Novoluto's patent rights. (FAC ¶¶ 53-55) That Defendants made a representation about patent

---

[1] In their briefing, the parties do not explicitly discuss whether allegations relating to "bad faith" must satisfy the heightened pleading standard of FRCP 9(b). During oral argument, in response to the Court's questioning, Defendants said Rule 9(b) does apply, while Plaintiff disagreed – but neither side could cite any authority for its position. (*See* Tr. at 9, 16) The case law on this point appears to be unclear. *See, e.g., Wilco AG v. Packaging Techs. & Inspection LLC*, 615 F. Supp. 2d 320, 325 n.2 (D. Del. 2009). Given the lack of clear authority and the parties' failure to adequately brief the issue, the Court applies only the Rule 8 standard.

rights when it knew no such patent rights existed in the United States is sufficient (if proven) to establish bad faith under Federal Circuit law. *See Zenith Elecs. Corp.*, 182 F.3d at 1354 ("Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, ***a clear case of bad faith representations is made out***.") (emphasis added).

Defendants refer to a German patent and related proceeding in their opening brief. (D.I. 36 at 7) But even if Novoluto had a German patent at the time it contacted ETC, and even if Novoluto believed at that time (and later proved) that Plaintiff's products infringe that German patent, a German patent is unenforceable in the United States. *See Voda v. Cordis Corp.*, 476 F.3d 887, 901 (Fed. Cir. 2007) (patent rights "limited by the metes and bounds of the jurisdictional territory that granted the right to exclude"). Thus, at the time Novoluto made the alleged representations to ETC about infringement of its patent rights, Defendants knew they had no such rights that were enforceable in the United States. The Court agrees with Plaintiff that the FAC pleads "sufficient facts from which this Court may plausibly conclude that Defendants' threats to EIS's customers were made in bad faith." (D.I. 38 at 6)

Accordingly, the portion of Defendants' motion to dismiss predicated on preemption will be denied.

### B.   Unfair Competition Under the Lanham Act (Count 1)

The Lanham Act regulates statements that are considered "commercial advertising or promotion." *See Incarcerated Ent., LLC v. CNBC LLC*, 331 F. Supp. 3d 352, 358 (D. Del. 2018). "Commercial advertising or promotion" is "(1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendants' goods or services . . . [and] (4) must be disseminated sufficiently to the relevant

purchasing public to constitute advertising or promotion within that industry." *Id.* (internal quotation marks omitted; alterations in original).  Defendants' challenge whether the FAC's alleged statements constitute "commercial speech."  (D.I. 36 at 8-11)  The Third Circuit has established a three-factor test for whether speech is commercial for purposes of a Lanham Act claim, requiring courts to consider: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008) (internal quotation marks omitted).

In addition, the Lanham Act bars any "false or misleading description of fact, or false or misleading representation of fact, which . . . misrepresents the nature, characteristics, [or] qualities . . . of . . . another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).  A plaintiff pleading such a claim must allege, among other things, "that the defendant has made false or misleading statements as to his own product [or another's]." *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992) (internal quotation marks omitted; alteration in original).  The plaintiff must allege that the statements either constitute literal falsehoods or leave the intended audience with a false impression. *See id.*

Defendants seek dismissal of Plaintiff's Lanham Act claim, arguing that the statements that form the basis for the claim – namely, (i) statements posted on Instagram by Ms. Ligon, the owner of a sex toy boutique, regarding Plaintiff's products; and (ii) negative Amazon reviews of Plaintiff's products from an account displaying Defendants' We-Vibe logo – are not commercial speech subject to the Lanham Act; and, in any event, the FAC fails to sufficiently allege falsity. (D.I. 36 at 8-12)  More particularly, as to Ms. Ligon's Instagram post, Defendants argue that the FAC fails to plausibly allege that Ms. Ligon's statements are commercial speech, even if (as the

FAC alleges) Defendants paid Ms. Ligon to post "false and misleading reviews," because the FAC does not allege that (i) the statements were advertisements; (ii) Ms. Ligon was promoting a product, service, or even her store; or (iii) Ms. Ligon had any economic motivation for making her statements. (*Id.* at 10-11) As to the Amazon reviews, Defendants argue that the FAC fails to plausibly allege that the reviews were commercial speech because the FAC fails to allege that (i) the review proposed any commercial transaction or were a competitor's attempt to induce customers to switch to the competitor's product, or (ii) the brand with which the reviewer is affiliated competes with any of Plaintiff's products. (*Id.* at 11) Finally, Defendants argue that Plaintiff's Lanham Act claim fails because the FAC does not adequately allege falsity, as "[t]here are no allegations in the FAC that show why any of the purported statements in the reviews are false or misleading." (*Id.* at 12)

Plaintiff responds that the FAC adequately alleges that the Instagram story constitutes commercial speech because Ms. Ligon is an industry insider and Instagram influencer and her story, which referred to Plaintiff's and Defendants' competing products, was a public advertisement for which Ms. Ligon had an economic motivation to share. (D.I. 38 at 8-9; *see also* FAC ¶¶ 61-65, 111-12) Regarding the Amazon reviews, Plaintiff contends that (i) the reviews were advertising, as they were disseminated via the internet and discussed Plaintiff's purportedly defective and poor quality products; (ii) the reviews refer to Plaintiff's Satisfyer products, as the reviews were posted on Amazon's product pages for those products; and (iii) Defendants, as Plaintiff's competitors, had an economic motivation for deterring customers from purchasing Plaintiff's competing products. (D.I. 38 at 8; *see also* FAC ¶¶ 43-51, 105, 116)

The Court finds that both the Instagram story and the Amazon reviews may constitute commercial speech, so Plaintiff's Lanham Act claim will not be dismissed.

The FAC alleges that Ms. Ligon's Instagram story: (i) was visible to all her subscribers (nearly 70,000) and to the general public; (ii) referred specifically to Plaintiff's Satisfyer products and Defendants' Womanizer products; and (iii) was motivated by an economic relationship, i.e., Ms. Ligon provided her opinions in exchange for payment. (FAC ¶¶ 61-62, 64, 111-12) Defendants' argument that Ms. Ligon's statements constitute criticism and opinion not covered by the Lanham Act is unavailing. According to the allegations in the FAC, and unlike the authority cited by Defendants,[2] Ms. Ligon's statements were not merely criticism or opinion; they were, instead, financially motivated advertisements. In addition, the Court is not persuaded by Defendants' argument that the FAC has failed to adequately allege that Ms. Ligon had an economic motivation for posting the Instagram story. The FAC alleges that "[o]n information and belief, Defendants, directly or through their agents, hired or otherwise directed Zoë Ligon to publish false, disparaging, and defamatory statements about EIS and its Satisfyer products"; and that Ms. Ligon's opinions were "provided in exchange for payment." (FAC ¶¶ 61, 112) Taking the factual allegations as true, they are sufficient to establish the economic motivation element.

As to the Amazon reviews, the FAC alleges that the Amazon reviews: (i) were publicly disseminated through the internet and were likely to influence purchasing decisions of Plaintiff's actual and potential customers; (ii) referred specifically to the products shown on the pages where the reviews were posted; and (iii) were posted with an economic motivation, as they were intended to deter customers from purchasing Plaintiff's products and, thus, would benefit Defendants as Plaintiff's competitors. (FAC ¶¶ 43-51, 105, 110-11, 113, 116; *see also NTP*

---

[2] *See, e.g., Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 667-68 (D. Del. 2008) (stating that criticisms of product development methods are not commercial speech).

*Marble, Inc. v. AAA Hellenic Marble, Inc.*, 2012 WL 607975, at *7 (E.D. Pa. Feb. 27, 2012) (denying summary judgment on Lanham Act claim because "a jury could determine the [r]eviews constitute 'false advertising' under the Lanham Act" where they were written by at least one defendant, "were disseminated over the internet," "warned potential customers of [plaintiff's] purported poor quality goods and workmanship," and "suggested that customers take their business elsewhere"))  That the reviews do not explicitly reference Defendants or their products does not warrant a different result.  *See id.* (not requiring that actionable reviews identify defendant by name).  In any event, according to the allegations in the FAC, any potential purchaser of Plaintiff's products who read the reviews could have clicked on the username of the reviewer and found the link to Defendants' website on the associated account page.  (FAC ¶¶ 46-50)  Hence, even without an explicit reference to Defendants, the review could lead the potential purchaser to Defendants' website, where the purchaser could purchase competing products. Again, these allegations are sufficient to constitute commercial speech.

Having found that the FAC sufficiently alleges both the Instagram story and the Amazon reviews constitute commercial speech, the Court now turns to the question of falsity.  The Court is not persuaded by Defendants and concludes that the allegations adequately allege falsity.

For example, the FAC clearly alleges that Ms. Ligon was being paid to share her beliefs on her Instagram story – but that she did not disclose to readers her financial relationship with Defendants.  (FAC ¶¶ 61, 112)  That she did not disclose her financial relationship makes her story at least misleading, and establishes falsity for purposes of a Lanham Act claim, even if Ms. Ligon actually held the beliefs she expressed.[3]  Similarly, the FAC alleges that the Amazon

---

[3] The FAC alleges that Ms. Ligon was "hired or otherwise directed" to post her statements, making her presentation of statements as if they were her own false or misleading, as

9

reviews were posted using an account that was associated with Defendants, and not by (as they purported to be) bona fide purchasers of Plaintiff's product (FAC ¶¶ 44, 110-11, 113), which makes those reviews at least misleading, and establishes falsity for purposes of a Lanham Act claim.[4]

Accordingly, the Court will not dismiss Plaintiff's Lanham Act claims.

### C.    Delaware Deceptive Trade Practices Act (Count 2)

Defendants seek dismissal of Plaintiff's claim under the DDTPA – which is based on the same Instagram story and Amazon reviews that form the basis of Plaintiff's Lanham Act claim (*see* D.I. 38 at 11) – on three grounds: (i) the FAC does not identify any particular subsection of the DDTPA; (ii) the FAC fails to plead plausible facts to show falsity with respect to the Instagram story and the Amazon reviews; and (iii) the FAC fails to plead facts showing loss of customers due to the allegedly false or misleading statements.  (D.I. 36 at 12-13)  None of these contentions provides a meritorious basis for dismissal of the DDTPA claim.

First, while it is true that the FAC fails to identify any specific subsection of the DDTPA, and courts have pointed to similar failings as pleading deficiencies, *see, e.g.*, *Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC*, 2012 WL 3063974, at *4 (D. Del. July 27, 2012) (defendant's counterclaim "ought to assert, at a minimum, a violation of a particular state's deceptive trade practices act, including allegations of which subsection is violated"), in context the FAC adequately pleads which subsections are implicated by Plaintiff's allegations, *see 10x*

---

is her statement that Plaintiff "ripped off" Defendants' products.  (D.I. 38 at 10; *see also* FAC ¶¶ 61-62, 112)

[4] *See, e.g.*, D.I. 38 at 10; *see also* FAC ¶¶ 43-44 ("On information and belief, these reviews contained materially false statements, including statements that Plaintiff's products were not waterproof, performed poorly, were painful to use, and/or smelled of chemicals. . . .  On information and belief, these false reviews were not posted by bona-fide consumers.").

*Genomics, Inc. v. Celsee, Inc.*, 2019 WL 5595666, at *7-8 (D. Del. Oct. 30, 2019) (denying motion to dismiss UDTPA claim despite complaint's failure to recite subsections of statute at issue, where language in complaint mirrored subsections and thereby provided sufficient notice to defendant); *Phillips v. Dignified Transition Sols.*, 2014 WL 4294972, at *3 (D. Nev. Aug. 28, 2014) ("While it certainly would have been preferable for Plaintiff to have included citations to specific subsections of the statute, failing to cite the specific subsections does not, by itself, require dismissal of Plaintiff's claims under the DTPA when Defendants still have sufficient notice of Plaintiff's claims."); *see also CareDx, Inc. v. Natera, Inc.*, 2019 WL 7037799, at *13 n.13 (D. Del. Dec. 20, 2019) ("The Court can see how the language of certain paragraphs in Count Four tracks some of the language of certain subsections of Del. C. tit. 6, § 2532. Perhaps if the failure to identify by number the relevant subsections was the only flaw as to the Count, dismissal could be staved off.").  Although the FAC does not precisely mirror any subsections, it makes sufficiently clear (*see* FAC ¶¶ 118-26) what Plaintiff confirms in its brief: the relevant subsections are 8 and 12 (*see* D.I. 38 at 11).  Thus, Defendants have adequate notice that they are alleged to have violated 6 Del. C. § 2532(a)(8) and (12).  Under these provisions, "[a] person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, that person: . . . (8) [d]isparages the goods, services, or business of another by false or misleading representation of fact" or "(12) [e]ngages in . . . conduct which similarly creates a likelihood of confusion or of misunderstanding."  6 Del. C. § 2532(a)(8), (12).

Second, Defendants' criticisms of the allegations of falsity fare no better with respect to the DDTPA claim than they did with respect to the Lanham Act claim, where the Court has already rejected Defendants' contentions.  (*See supra*)

11

Third, the FAC adequately alleges that Defendants' false, misleading, and disparaging statements harmed Plaintiff.  Plaintiff alleges it "has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line." (FAC ¶ 124)  Additionally, the FAC also pleads:

- "Defendants' false Amazon reviews have harmed and continue to harm [Plaintiff], because its potential customers are exposed to Defendants' false statements at the very moment they are deciding whether to purchase [Plaintiff's] Satisfyer products," which has resulted in lost sales (FAC ¶ 51);

- Defendants' "threat[] to raise the price it charged non-compliant retailers and distributors for its own products" caused harm to Plaintiff and Plaintiff's "actual and potential customers," among others (FAC ¶ 60);

- Defendants' alleged false reviews, false advertising, and false or misleading statements to retailers and distributors are depriving Plaintiff of sales (FAC ¶ 64);

- Defendants' alleged "possession and threatened enforcement of Novoluto's invalid and unenforceable patents have caused [Plaintiff] harm in the United States at least through lost sales" (FAC ¶ 107); and

- "Because [Plaintiff] is competing in the Market with an unfairly restricted selection of its Air Pulse products, [Plaintiff's] sales, market share, and customer base are reduced as a direct result of Defendants' threatened enforcement of their invalid and unenforceable patents" (FAC ¶ 107).

These allegations are enough.  *See generally Tri-State Energy Sols., LLP v. KVAR Energy Savings, Inc.*, 2010 WL 11707411, at *4 & n.6 (D. Del. Mar. 29, 2010) (finding sufficient allegation that plaintiff "suffered damages . . . including but not limited to a loss of revenue, profits, goodwill, and future earnings" and permitting leave to amend complaint to cure other pleading deficiencies); *see also Keurig, Inc. v. Strum Foods, Inc.*, 769 F. Supp. 2d 699, 712 (D. Del. 2011) ("The DTPA has a lower burden of proof than the Lanham Act since a complainant need not prove competition between the parties or actual confusion or misunderstanding to prevail in an action under the DTPA, 6 Del. C. § 2532(b).") (internal quotation marks omitted).

12

Accordingly, the Court will deny Defendants' motion to dismiss the DDTPA claim.

**D.      Delaware Common Law: Unfair Competition (Count 3)**

"The elements of the tort of unfair competition are that the plaintiff has a reasonable

expectancy of entering a valid business relationship, with which the defendant wrongfully

interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Total*

*Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057 (Del. Super. Ct. 2001) (internal quotation

marks omitted).  Although "Delaware courts have struggled to precisely define the boundaries of

the common law in this area," "[t]he essential element separating unfair competition from

legitimate market participation . . . is an unfair action on the part of defendant by which he

prevents plaintiff from legitimately earning revenue." *EDIX Media Grp., Inc. v. Mahani*, 2006

WL 3742595, at *11 (Del. Ch. Dec. 12, 2006).

Defendants argue that Plaintiff's Delaware common law unfair competition claim is

completely redundant of the Lanham Act claim, and Plaintiff has failed to plead any facts

showing Plaintiff is entitled to additional relief.  (D.I. 36 at 13) (citing *EDIX Media Group*, 2006

WL 3742595, at *11, which dismissed unfair competition claim that was "completely redundant"

of other claims and "afford[ed] plaintiff no relief at common law from breaches of

confidentiality that its claim in contract does not")).  Defendants further contend that the FAC

fails to identify any unfair actions that prevented Plaintiff from legitimately earning revenue.

(D.I. 36 at 13)

In the Court's view,  Count 3 is not "completely redundant" of the Lanham Act claim.

As Plaintiff explains in its brief, the intentional misconduct it alleges constitutes wrongful

interference for purposes of the unfair competition claim is "1) the false and misleading Amazon

reviews, 2) Ms. Ligon's Instagram story, and 3) falsely, and in bad faith, informing EIS's

13

distributors and retailers that EIS's products infringed or likely infringed Defendants' patents." (D.I. 38 at 12; *see also* FAC ¶ 129)  The third of these allegations is not part of the Lanham Act unfair competition claim.

Dismissal of this count is not warranted.  Plaintiff has sufficiently alleged that Defendants' unfair acts prevented Plaintiff from legitimately earning revenue.  The FAC alleges that the Instagram story, Amazon reviews, and infringement threats interfered with Plaintiff's business and harmed its business interests, including through "lost income, lost sales, lost profits, and damages to its goodwill associated with its brand and the Satisfyer product line." (*See* FAC ¶¶ 64-65, 129-30)  While Defendants argue that the FAC is insufficient because it fails to identify a single lost customer, relationship, or contract, that is not required at the pleading stage. *See, e.g., Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F. Supp. 2d 665, 676 (D. Del. 2010) (pleading sufficient to survive motion to dismiss where plaintiff alleged business expectancy by asserting that its product had become leading prescription product for treatment of ear disorders, yet and "as a result of Defendants' false marketing," sales of plaintiff's product had "eroded"); *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 430 (D. Del. 2003) (pleading that plaintiff "has suffered and will continue to suffer damages, including lost sales and profits, that [plaintiff] would have made but for [defendant's] acts" found sufficient to survive motion to dismiss).

Accordingly, the Court will deny Defendants' motion to dismiss the common law unfair competition claim.

### 5.    Tortious Interference with Business Relations (Count 4)

Under Delaware law, the elements of a claim for tortious interference with business relations are: "(1) the reasonable probability of a business opportunity; (2) intentional

14

interference; (3) proximate causation; and (4) damages, all of which must be considered in light of defendant's privilege to compete . . . in a fair and lawful manner." *Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 664 (D. Del. 2008) (internal quotation marks omitted).

Defendants' opening brief sought dismissal of Count 4 based on authority relating to tortious interference ***with contractual relations*** – but the claim stated in the FAC is, instead, tortious interference ***with business relations***. (D.I. 36 at 14; *see also* FAC ¶¶ 131-36) Defendants' arguments, thus, were directed to the wrong legal standards and the wrong type of claim. After Plaintiff pointed this out in opposition (D.I. 38 at 13-14), Defendants in their reply brief cited authorities and made arguments directed to the correct type of claim. (D.I. 39 at 7-8) Because these new arguments and new authority were presented for the first time on reply, Defendants' positions are untimely and are deemed waived. *See generally Perrigo Co. v. Int'l Vitamin Co.*, 2019 WL 359991, at *2 n.22 (D. Del. Jan. 29, 2019) ("Because this argument was raised for the first time in a reply brief, this Court may consider it waived."); *see also* D. Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

Even considering the merits, Defendants' untimely challenge fails. Defendants seek dismissal on the ground that Plaintiff has failed to identify a lost customer. In doing so, Defendants compare the facts alleged here to those that were found deficient in *Accenture*, 581 F. Supp. 2d at 665. But *Accenture* does not help Defendants as it does not establish that a plaintiff must identify a specific lost customer. Instead, the plaintiff in *Accenture* did identify a specific lost customer – but the claim there was dismissed for failure to allege that the defendant knew of the plaintiff's dealings with that customer, that the defendant took any specific action

15

with respect to the customer, or that any action by the defendant caused the plaintiff to lose business. *See id.* at 664-65; *see also Shure Inc. v. Clearone, Inc.*, 2020 WL 2839294 (D. Del. June 1, 2020), *report and recommendation adopted*, C.A. No. 19-1343-RGA-CJB D.I. 234 (D. Del. June 18, 2020).  The FAC alleges that Defendants knew of Plaintiff's ongoing business relationships with its distributors and retailers (FAC ¶ 135); demanded that retailers stop selling Plaintiff's products (*id.* ¶ 134); and threatened to raise prices or cease sales if retailers did not give in to that demand (*id.* ¶ 134); and further that, as a result, Plaintiff suffered and will continue to suffer "lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line" (*id.* ¶ 136).  These allegations are adequate to state Plaintiff's claim.

Accordingly, the Court will not dismiss Plaintiff's tortious interference claim.

**F.    CCPA (Count 5)**

"A valid claim under the CCPA consists of the following elements: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (internal quotation marks omitted).  "All elements of a CCPA claim must be met; otherwise, the claim fails as a matter of law." *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011).  In addition, a plaintiff asserting a claim under the CCPA must meet the heightened pleading standard of Rule

9(b). *See id.* at 1120-21. The Court will dismiss Plaintiff's CCPA claim because the FAC fails to meet the pleading standards of Rule 9(b).

In seeking dismissal, Defendants argue the FAC fails to allege the elements of the CCPA claim with requisite specificity, as "there are no specifics as to the actual representations that were allegedly made or by whom." (D.I. 36 at 14-15) Defendants further argue that the FAC fails to allege Plaintiff suffered injury in fact to a legally protected interest, containing instead only an unsupported and conclusory allegation of injury not tied to Defendants' representations to ETC. (*Id.* at 15; *see also* FAC ¶¶ 137-43)

In response, Plaintiff contends that the FAC sufficiently alleges Defendants' representations to ETC regarding patent infringement were false and made in bad faith. (D.I. 38 at 14-15; *see also* FAC ¶¶ 52-57, 137-43) As to the specifics, Plaintiff points to allegations that Defendants contacted ETC in or around July 2016, accusing ETC of "infringing [Novoluto's] patent rights by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product." (D.I. 38 at 14; FAC ¶¶ 53-55, 138) As to the injury element, Plaintiff argues that Defendants' false representations to ETC violated Plaintiff's interest in fair competition, which is legally protected under the CCPA (just as it is under the DDTPA). (D.I. 38 at 14-15) Plaintiff also points to allegations in the FAC that the injury to that legally protected interest included "lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line." (*Id.* at 15; *see also* FAC ¶ 141)

While the FAC provides some details (e.g., that the representations were made in or around July 2016, were made by Novoluto directly or through its agents, the substance of the representations was an accusation that ETC was infringing Novoluto's patent rights by distributing and/or re-selling Plaintiff's product), other specifics required to meet the Rule 9(b)

17

standard are absent. For example, the FAC does not allege with particularity which Defendant made the representations, to whom at ETC, or where or how the representations were made.

Accordingly, the Court will grant Defendants' motion and dismiss the CCPA claim. Because it does not appear that any amendment would necessarily be futile, Plaintiff will be given an opportunity to amend.

### G. Inequitable Conduct (Counts 6-8)

Plaintiff alleges that each of Defendants' three patents are unenforceable due to inequitable conduct committed by Novoluto's Executive Director, Mr. Plettenberg. Specifically, the FAC alleges that during the prosecution of the '851, '061, and '097 patents, Mr. Plettenberg withheld from the U.S. Patent and Trademark Office ("PTO") both (i) a complete English translation of prior art reference Chinese Patent No. 2153351Y ("*Guan*") and (ii) the existence of an opposition proceeding before the German Patent and Trademark Office, No. 10 2013 110 501.7 ("German Opposition Proceeding"). (FAC ¶¶ 66-96, 144-161)

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). Although a party may plead facts upon "information and belief," it must also set forth the "specific facts upon which the belief is reasonably based." *Id.* at 1330.

An individual associated with the filing and prosecution of a patent application engages in inequitable conduct when he or she makes an affirmative misrepresentation of a material fact, fails to disclose material information, or submits false material information to the PTO, with a specific intent to deceive the PTO. *See Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) (stating each element must eventually be proven by clear and convincing evidence); *see also* 37 C.F.R. § 1.56 (2008).

The issue on which Defendants' attack on the sufficiency of Plaintiff's inequitable conduct claims turns is the identification of which individuals to whom the disclosure obligation applies. (*See* D.I. 39 at 10-11) Pursuant to 37 C.F.R. § 1.56(c), this obligation applies are: "(1) [e]ach inventor named in the application; (2) [e]ach attorney or agent who prepares or prosecutes the application; and (3) [e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application." Defendants argue that the inequitable conduct claims pled in the FAC do not establish that Mr. Plettenberg owed a duty of disclosure to the PTO, as the FAC does not allege he was an inventor, counsel for the applicant, or otherwise "substantively involved in the preparation or prosecution" of any of the three patent applications challenged by Plaintiff. (D.I. 36 at 17-18; *see also* 37 C.F.R. § 1.56) The Court agrees.

In an effort to show that Mr. Plettenberg owed the requisite duty to the PTO, the FAC alleges as follows:

> Johannes Graf von Plettenberg holds himself out as the CEO of the "WOW Tech Group."[] On information and belief, Mr. Plettenberg is a director for WOW Tech Canada, and an executive director for Novoluto, Wow Tech Intl., and WOW Tech Europe. WOW Tech Intl., Novoluto, and WOW Tech Europe also all share

19

a common address (Friedenstraße 91-91a, 10249, Berlin, Germany) and a common German phone number (+49 (0) 30 95999 3814).

. . .

On information and belief, Novoluto's executive director Johannes Graf von Plettenberg knew about the Opposition Proceeding, knew about the prior art references involved (including *Guan*), and knew that the GPTO found Novoluto's '501 German Patent invalid while the Novoluto Applications were pending before the USPTO. As Novoluto's executive director, Mr. Plettenberg owed a duty of disclosure, candor, and good faith to the USPTO as a patent applicant, which included a duty to disclose all information known to be material to the patentability of any existing claim in a pending application.[]

. . .

André Geske, the owner of EIS, and Mr. Plettenberg met three times between November 2018 and February 2019 at Mr. Plettenberg's request.

Mr. Geske met with Mr. Plettenburg on or about November 8, 2018, in Berlin. At the meeting, Mr. Plettenberg accused EIS of copying Novoluto's products and alleged that EIS's Air Pulse products infringe the Patents-in-Suit. Mr. Plettenberg also alleged that EIS's Air Pulse products would infringe additional Novoluto patents, which were then pending as applications, once they issued.

Mr. Plettenberg tried to leverage his infringement allegations to convince Mr. Geske to sell EIS (and related entities) to Novoluto, but Mr. Geske refused. Mr. Plettenburg then told Mr. Geske that if EIS would leave the United States market, they could make a licensing deal for the rest of the world. Mr. Geske again refused.

The second meeting took place in Las Vegas, on or about January 15, 2019. For this meeting, Mr. Plettenberg insisted that they meet in the Wynn Hotel's sauna, so he could verify that Mr. Geske was not recording their conversation. This time, Mr. Plettenberg suggested a deal whereby EIS and Novoluto would sell their products in the United States at a similar price point and share the United States market instead of competing against each other. Again, Mr. Geske refused.

At a third meeting, again in Berlin, on or about February 9, 2019, Mr. Plettenberg offered to license Novoluto's United States patents

20

> (currently issued and those that would issue from its pending
> applications) to EIS.  No agreement was reached and EIS
> continues to sell its allegedly-infringing Air Pulse products in the
> United States.

(FAC ¶¶ 19, 72, 97-101)

The FAC does not sufficiently allege that Mr. Plettenberg was "substantively involved in

the preparation or prosecution of the application," as required under 37 C.F.R. § 1.56(c)(3) in

order to give rise to an obligation by Mr. Plettenberg the violation of which could constitute

inequitable conduct.  Plaintiff's contention that Mr. Plettenberg is "associated with . . . an

assignee" is insufficient on its own to establish that Mr. Plettenberg owed a duty of disclosure to

the PTO.  The argument that Mr. Plettenberg, by virtue of his positions with Defendants, "should

be aware of pending patent litigation and know about design, development, and patent activity in

the relatively small group of companies he oversees," also fails.  The FAC's remaining

allegations – that is, conclusory allegations regarding knowledge of the German Opposition

Proceeding, including the prior art reference involved and the ultimate finding of invalidity; and

the allegations regarding discussions with Mr. Geske relating to copying, infringement, potential

sale of companies, potential price-fixing, and potential licensing – establish no more than that

Mr. Plettenberg was aware of the relevant patents, the status of those patents in Germany, and

the subject matter of the patents, and that he had the authority to engage in business transactions

relating to those patents.  They do not, however, establish that Mr. Plettenberg was

"*substantively involved in the preparation or prosecution of the application[s]*" that are the

subject of the inequitable conduct claims.  37 C.F.R. § 1.56(c)(3) (emphasis added).  Indeed, the

allegations focus on Mr. Plettenberg's awareness and involvement *after* the issuance of the

patents and generically on his position at Novoluto – not on any activity that would suggest Mr.

21

Plettenberg's involvement in the preparation or prosecution stage of the patents at issue in Plaintiff's claims.

Plaintiff will be given leave to amend its inequitable conduct claims because such an amendment may not be futile. Plaintiff may be able to cure the deficiencies with respect to Mr. Plettenberg's duty or Plaintiff may be able to identify a different individual whom it can plausibly and with sufficient particularity plead the elements of inequitable conduct.

In all other respects, the Court concludes that Plaintiff has adequately alleged the required elements of its inequitable conduct claims with sufficient particularity:

- **What/Where:** The FAC pleads that Mr. Plettenberg had a duty to disclose (i) a complete English translation of *Guan*; and (ii) the existence of the German Opposition Proceeding, which assessed the validity of Novoluto's German patent in light of *Guan*. (D.I. 38 at 18; *see also* FAC ¶¶ 72-76, 80, 83-84, 90, 94-95, 147-49, 153-55, 159-61) The FAC also alleges that those materials related to at least claim 1 of each of the three patents-in-suit, specifying the relevant limitations within claim 1 of each of the patents, as well as the specific disclosures in *Guan* that Plaintiff identifies as material. (D.I. 38 at 18; *see also* FAC ¶¶ 87-90, 92-94, 149, 155, 161)[5]

- **When:** The FAC alleges that the material omissions occurred when Novoluto submitted an Information Disclosure Statement ("IDS") to the PTO with respect to each of the three patents-in-suit: February 7, 2017 for the '061 patent (FAC ¶ 77); February 10, 2017 for the '851 patent (FAC ¶ 78); and April 13, 2017 for the '097 patent (FAC ¶ 79). (D.I. 38 at 19)

---

[5] Following argument on the pending motion, Plaintiff filed two notices of supplemental authority regarding the status of Plaintiff's three inter partes review ("IPR") petitions relating to Defendant Novoluto's '097, '851, and '061 Patents. (D.I. 43, 47; *see also* D.I. 45, 48 (Defendants' responses)) This summer, the Patent Trial and Appeal Board ("PTAB") granted Plaintiff's requests for rehearing and instituted IPRs for the '097 and '851 Patents, including on the basis of *Guan*. (D.I. 43, 47) Plaintiff's request for rehearing on the '061 Patent remains pending. (D.I. 48 at 5) Given the Court's analysis – in particular its conclusion that the materiality of *Guan* has been sufficiently alleged – these PTAB actions do not impact the Court's decision.

- **Why/How:** The FAC alleges that the patent examiner determined that another prior art reference ("*Fang*") did not disclose certain elements that were disclosed in the then-pending claims. (FAC ¶¶ 87-88, 91-94)  The FAC also alleges that certain claim elements that were not found in the prior art the examiner did consider were present in *Guan*, about which the examiner was unaware. (FAC ¶¶ 89-94)  Because of this, the FAC alleges that at least claim 1 of each of the three patents-in-suit would not have issued had a complete English translation of *Guan* been before the examiner. (D.I. 38 at 20)

With respect to specific intent to deceive, Plaintiff points out that "'knowledge' and 'intent' may be averred generally." (D.I. 38 at 20) (quoting *Exergen*, 575 F.3d at 1328, 1329 n.5)  Still, when pleading inequitable conduct, *Exergen* requires "an inference of deceptive intent [to] be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b)." 575 F.3d at 1328-29 & n.5.  This standard is satisfied here given the allegations that Mr. Plettenberg intentionally withheld material information when disclosure would have prevented pending patent claims from issuing. (*See* D.I. 38 at 21) (citing FAC ¶¶ 80-84, 95, 159-60 and *Zadro Prods. Inc. v. SDI Techs., Inc.*, 2019 WL 1100470, at *5 & n.4 (D. Del. Mar. 8, 2019) ("[I]t is reasonable to infer that an applicant who is aware of material prior art and the possible adverse effect that disclosure could have on the application would have an incentive to conceal the prior art."))

Accordingly, the Court will dismiss Plaintiff's inequitable conduct claims.  Plaintiff will be given an opportunity to amend these claims.

## H.  *Walker Process* Fraud/Sherman Act Attempted Monopolization (Count 9)

"[T]o prevail on a *Walker Process* claim" under § 2 of the Sherman Act, based on the alleged maintenance and enforcement of a fraudulently-obtained patent, "the antitrust-plaintiff must show two things: first, that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the

23

fraudulent procurement; and second, all other elements necessary to establish a Sherman Act monopolization claim." *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016); *see also Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965).

"The 'other elements' necessary to establish an attempted monopolization claim are: '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *TransWeb*, 812 F.3d at 1306 (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)). "In a determination of dangerous probability . . . factors such as significant market share coupled with anticompetitive practices, barriers to entry, the strength of competition, the probable development of the industry, and the elasticity of consumer demand may be considered. No single factor is dispositive." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007) (internal citation omitted); *see also id.* ("Courts typically should not resolve this question at the pleading stage unless it is clear on the fact of the complaint that the dangerous probability standard cannot be met as a matter of law.") (internal quotation marks omitted).

As to the first element of *Walker Process* fraud, Defendants point out that Plaintiff's claim wholly depends on its inequitable conduct claims; therefore, this claim should be dismissed for the same reasons that the inequitable conduct claims should be dismissed. (D.I. 36 at 20-21) The Court agrees. Having found that the inequitable conduct claims must be dismissed, the *Walker Process* fraud claim – which is predicated on the inequitable conduct claims – must likewise be dismissed.

Defendants contend that that Plaintiff has also failed to adequately allege any of the "other elements" necessary to establish attempted monopolization. (D.I. 36 at 21-24) The Court

again agrees.  The sufficiency of Plaintiff's allegations as to the "other elements" of its attempted

monopolization claim depend on the sufficiency of its allegations that Defendants obtained U.S.

patents by fraud.  Unless and until Plaintiff can adequately allege Defendants' patents were

fraudulently procured, Plaintiff has failed to state a claim for attempted monopolization.

The Court need not resolve the parties' other disputes about the adequacy of Plaintiff's

attempted monopolization claim.  (*See id.*; D.I. 38 at 22-24; D.I. 39 at 11-12)

Accordingly, the Court will dismiss Plaintiff's *Walker Process* fraud and attempted

monopolization claim.  Plaintiff will have an opportunity to amend.

## IV.     CONCLUSION

Defendants' motion to dismiss will be granted in part and denied in part.  To the extent

the Court is dismissing certain of Plaintiff's claims, these dismissals are without prejudice to

Plaintiff having an opportunity to amend the FAC.  The Court is not yet persuaded that

amendment would be futile.  *See generally* FRCP 15(a)(2) (providing that leave to amend should

be "freely give[n] . . . when justice so requires"); *see also Foman v. Davis*, 371 U.S. 178, 182

(1962) ("In the absence of any apparent or declared reason – such as undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely

given.'"); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (discussing Third

Circuit's liberal approach to amendment of pleadings and preference for deciding claims on

merits rather than on technicalities).

An appropriate Order follows.