*Exhibit 32*

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 14919.0019 |
| | Application Number | |

| Title of Invention | STIMULATION DEVICE |

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76. This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | | Remove |

| Legal Name |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Michael | | Lenke | |

| Residence Information (Select One) | US Residency | ● Non US Residency | Active US Military Service |

| City | Metten | Country of Residence i | DE |

### Mailing Address of Inventor:

| Address 1 | Gamelbertstr. 17 |
| Address 2 | |
| City | Metten | | State/Province | |
| Postal Code | 94526 | Country i | DE |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    | Add |

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 20694 |
| Email Address | patent@csglaw.com | Add Email | Remove Email |

## Application Information:

| Title of the Invention | STIMULATION DEVICE | |
| Attorney Docket Number | 14919.0019 | Small Entity Status Claimed ☒ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Total Number of Drawing Sheets (if any) | 7 | Suggested Figure for Publication (if any) | |

PTO/AIA/14 (11-15)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0019 |
|---|---|---|
| | Application Number | |

| Title of Invention | STIMULATION DEVICE |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 20694 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | a 371 of international | PCT/EP2014/065734 | 2014-07-22 |

| Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | | Add |
|---|---|---|

PTO/AIA/14 (11-15)
Approved for use through 11/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 14919.0019 |
|---|---|---|
| | Application Number | |

| Title of Invention | STIMULATION DEVICE |
|---|---|

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

|  |  |  | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| 102013110501.7 | DE | 2013-09-23 | |

| Additional Foreign Priority Data may be generated within this form by selecting the Add button. | Add |
|---|---|

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 14919.0019 |
|---|---|---|
| | Application Number | |

| Title of Invention | STIMULATION DEVICE |
|---|---|

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**:  This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application.  After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s).  Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1.  Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A.  Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2)  any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B.  Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2.  Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐     A.  Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed.  If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐     B.  Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:**  Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (11-15)
Approved for use through 11/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0019 |
|---|---|---|
| | Application Number | |

| Title of Invention | STIMULATION DEVICE |
|---|---|

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Applicant** | 1 | | Remove |
|---|---|---|---|

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | | Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| | ▼ |
|---|---|

| Name of the Deceased or Legally Incapacitated Inventor: | |
|---|---|

| If the Applicant is an Organization check here. | ☒ |
|---|---|

| Organization Name | NOVOLUTO GmbH |
|---|---|

**Mailing Address Information For Applicant:**

| **Address 1** | Gamelbertstr. 17 | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Metten | **State/Province** | |
| **Country** | DE | Postal Code | 94526 |
| **Phone Number** | | **Fax Number** | |
| **Email Address** | | | |

| Additional Applicant Data may be generated within this form by selecting the Add button. | Add |
|---|---|

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (11-15)
Approved for use through 11/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0019 |
|---|---|---|
| | Application Number | |

| Title of Invention | STIMULATION DEVICE |
|---|---|

---

**Assignee** 1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☒ |
|---|---|

| Organization Name | NOVOLUTO GmbH |
|---|---|

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | Gamelbertstr. 17 | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Metten | **State/Province** | |
| **Country** i | DE | Postal Code | 94526 |
| Phone Number | | Fax Number | |
| Email Address | | | |

| Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button. | Add |
|---|---|

---

## Signature:

Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /Richard A. Cheng/ | | | Date (YYYY-MM-DD) | 2016-03-21 |
|---|---|---|---|---|---|
| **First Name** | Richard | Last Name | Cheng | Registration Number | 65,477 |

| Additional Signature may be generated within this form by selecting the Add button. | Add |
|---|---|

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0019 |
| | Application Number | |

| Title of Invention | STIMULATION DEVICE |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

*Exhibit 33*

PTO/AIA/14 (11-15)
Approved for use through 07/31/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 14919.0021 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76. This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | Remove |
|---|---|---|---|---|
| Legal Name | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▼ | Michael | | Lenke | ▼ |

| Residence Information (Select One) | US Residency | ● Non US Residency | Active US Military Service |
|---|---|---|---|

| City | Metten | Country of Residence $^i$ | DE |
|---|---|---|---|

### Mailing Address of Inventor:

| Address 1 | Gamelbertstr. 17 | | |
|---|---|---|---|
| Address 2 | | | |
| City | Metten | State/Province | |
| Postal Code | 94526 | Country $^i$ | DE |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.　[Add]

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below. For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 20694 | | |
|---|---|---|---|
| Email Address | patent@csglaw.com | Add Email | Remove Email |

## Application Information:

| Title of the Invention | Stimulation Device Having an Appendage | | |
|---|---|---|---|
| Attorney Docket Number | 14919.0021 | Small Entity Status Claimed | ☒ |
| Application Type | Nonprovisional | | ▼ |
| Subject Matter | Utility | | ▼ |
| Total Number of Drawing Sheets (if any) | 7 | Suggested Figure for Publication (if any) | |

PTO/AIA/14 (11-15)
Approved for use through 07/31/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 14919.0021 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 20694 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending ▼ | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | a 371 of international ▼ | PCT/EP2015/067017 | 2015-07-24 |

| Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | Add |
|---|---|

PTO/AIA/14 (11-15)
Case 1:19-cv-01227-GBW    Document 53-2    Filed 12/22/20    Page 13 of 105 PageID #:
2128
Approved for use through 07/30/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0021 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

|  | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| 102015103694.0 | DE | 2015-03-13 | |

| Additional Foreign Priority Data may be generated within this form by selecting the **Add** button. | Add |
|---|---|

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0021 |
| | Application Number | |
| Title of Invention | Stimulation Device Having an Appendage | |

## Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**:  This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application.  After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s).  Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

1.  **Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A.  Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2)  any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B.  Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

2.  **Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐    A.  Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed.  If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐    B.  Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:**  Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (11-15)
Approved for use through 07/31/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | 14919.0021 |
|---|---|---|
| | **Application Number** | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Applicant** | 1 | Remove |
|---|---|---|

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | | Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| | ▾ |
|---|---|

| Name of the Deceased or Legally Incapacitated Inventor: | |
|---|---|

| If the Applicant is an Organization check here. | ☒ |
|---|---|

| Organization Name | NOVOLUTO GmbH |
|---|---|

**Mailing Address Information For Applicant:**

| **Address 1** | Gamelbertstr. 17 | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Metten | **State/Province** | |
| **Country** | DE | Postal Code | 94526 |
| Phone Number | | Fax Number | |
| Email Address | | | |

| Additional Applicant Data may be generated within this form by selecting the Add button. | Add |
|---|---|

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (11-15)
Approved for use through 03/31/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0021 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

---

**Assignee** | 1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here.    ☒

| Organization Name | NOVOLUTO GmbH |
|---|---|

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | Gamelbertstr. 17 | | |
|---|---|---|---|
| Address 2 | | | |
| City | Metten | State/Province | |
| Country i | DE | Postal Code | 94526 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.    Add

---

## Signature:    Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /Richard A. Cheng/ | Date (YYYY-MM-DD) | 2016-10-07 |
|---|---|---|---|
| First Name | Richard | Last Name | Cheng | Registration Number | 65477 |

| Additional Signature may be generated within this form by selecting the Add button.    Add |
|---|

PTO/AIA/14 (11-15)
Approved for use through 01/30/2018. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0021 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

*Exhibit 34*

PTO/AIA/14 (11-15)
Case 1:19-cv-01227-GBW    Document 53-2    Filed 12/22/20    Approved for use through 07/31/2016. OMB 0651-0032
2135                                Page 20 of 105 PageID #:
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 14919.0022 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76. This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | Remove |
|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▾ | Michael | | Lenke | ▾ |

| Residence Information (Select One) | US Residency | ● Non US Residency | Active US Military Service |
|---|---|---|---|

| City | Metten | Country of Residence i | DE |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | Gamelbertstr. 17 | | |
|---|---|---|---|
| Address 2 | | | |
| City | Metten | State/Province | |
| Postal Code | 94526 | Country i | DE |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.      | Add |

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 20694 | | |
|---|---|---|---|
| Email Address | patent@csglaw.com | Add Email | Remove Email |

## Application Information:

| Title of the Invention | Stimulation Device Having an Appendage | | |
|---|---|---|---|
| Attorney Docket Number | 14919.0022 | Small Entity Status Claimed | ☒ |
| Application Type | Nonprovisional | | ▾ |
| Subject Matter | Utility | | ▾ |
| Total Number of Drawing Sheets (if any) | 7 | Suggested Figure for Publication (if any) | |

Case 1:19-cv-01227-GBW   Document 53-2   Filed 12/22/20   Page 21 of 105 PageID #: 2136

PTO/AIA/14 (11-15)
Approved for use through 07/31/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0022 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a).  Do not complete this section if application papers including a specification and any drawings are being filed.  Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|

| | **Request Not to Publish.**  I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing. |
|---|---|

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 20694 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation of | 15302981 | 2016-10-07 |

PTO/AIA/14 (11-15)
Approved for use through 07/31/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 14919.0022 |
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |

| Prior Application Status | Pending | | | | Remove |
|---|---|---|---|---|---|
| Application Number | Continuity Type | | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) | |
| 15302981 | a 371 of international | | PCT/EP2015/067017 | 2015-07-24 | |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.   [Add]

# Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| 102015103694.0 | DE | 2015-03-13 | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.   [Add]

# Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (11-15)
Approved for use through 07/30/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0022 |
|---|---|---|
| | Application Number | |
| Title of Invention | Stimulation Device Having an Appendage | |

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (11-15)
Approved for use through 07/31/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0022 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant** 1                                                                                    Remove

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | | Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| | ▾ |
|---|---|

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.    ☒

| Organization Name | NOVOLUTO GmbH |
|---|---|

**Mailing Address Information For Applicant:**

| **Address 1** | Gamelbertstr. 17 | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Metten | **State/Province** | |
| **Country** | DE | Postal Code | 94526 |
| **Phone Number** | | **Fax Number** | |
| **Email Address** | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    Add

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (11-15)
Approved for use through 07/31/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 14919.0022 |
|---|---|---|
| | Application Number | |

| Title of Invention | Stimulation Device Having an Appendage |
|---|---|

---

**Assignee** |1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

| | Remove |
|---|---|

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☒ |
|---|---|

| Organization Name | NOVOLUTO GmbH |
|---|---|

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | Gamelbertstr. 17 | | |
|---|---|---|---|
| Address 2 | | | |
| City | Metten | State/Province | |
| Country i | DE | Postal Code | 94526 |
| Phone Number | | Fax Number | |
| Email Address | | | |

| Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button. | Add |
|---|---|

---

## Signature:

Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /Richard A. Cheng/ | | | Date (YYYY-MM-DD) | 2017-04-13 |
|---|---|---|---|---|---|
| First Name | Richard | Last Name | Cheng | Registration Number | 65477 |

| Additional Signature may be generated within this form by selecting the Add button. | Add |
|---|---|

PTO/AIA/14 (11-15)
Approved for use through 07/30/2016. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 14919.0022 |
| | Application Number | |
| Title of Invention | Stimulation Device Having an Appendage | |

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

*Exhibit 35*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014, OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| Filed herewith | Filed Herewith |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✓] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:  `20694`

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:

[✓] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number:

OR

| Firm or Individual Name | | | |
|---|---|---|---|
| Address | | | |
| City | State | | Zip |
| Country | | | |
| Telephone | Email | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

## NOVOLUTO GmbH

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[✓] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | *Michael Lenke* | Date (Optional) | 08. 03. 2016 |
|---|---|---|---|
| Name | Michael Lenke | | |
| Title | CEO | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] Total of    1    forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

*Exhibit 36*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| Filed herewith | Filed Herewith |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✓] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:     20694

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✓] The address associated with the above-mentioned Customer Number
OR
[ ] The address associated with Customer Number:

| Firm or Individual Name | | | |
|---|---|---|---|
| Address | | | |
| City | | State | Zip |
| Country | | | |
| Telephone | | Email | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

## NOVOLUTO GmbH

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[✓] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | _Michael Lenke_ (signature) | Date (Optional) | 07. Sept. 2016 |
|---|---|---|---|
| Name | Michael Lenke | | |
| Title | CEO | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] Total of    1    forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

*Exhibit 37*

# LIONBRIDGE

STATE OF NEW YORK      )
                                 )
                                 )     ss

COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from German into English of the attached Opposition filed by Fun

Factory GmbH, dated November 17, 2016.

Jeff Cureton, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me

this _11th_ day of _December_, 20 _20_ .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified In Queens County
My Commission Expires 01-31-2021

259 W 30th Street, 11th Floor   New York, NY 10001   +1.212.631.7432

17_11_2016-01-00001-00000002

17_11_2016-01-00001-00000002

# Eisenführ Speiser

Eisenführ Speiser
Patentanwälte Rechtsanwälte
PartGmbB

Bremen München Berlin Hamburg

German Patent and Trademark Office
80297 Munich

Postfach 31 02 60
80102 München
Arnulfstraße 27
80335 München
Tel +49 89 549075-0
Fax +49 89 55027655
Fax +49 89 549075-29
mailmuc@eisenfuhr.com
www.eisenfuhr.com

Dipl. Wirt.-Ing. Fabian Fegers
Dipl.-Ing.
Patentanwalt
European Patent Attorney
European Trade Mark and
Design Attorney
Tel +49 89 549075-287
ffegers@eisenfuhr.com

| | | |
|---|---|---|
| **Munich:** | November 17, 2016 | |
| **Our reference:** | FA 5208-01 DE FEG/sst | |
| **Proprietor:** | NOVOLUTO GmbH | |
| **Official file number:** | 102013110501.7 | |
| **Opponent:** | FUN FACTORY GmbH | |

| SEPA | | |
|---|---|---|
| attached | | |
| | Mandate | |
| X | Specification of the purpose of use of the mandate | |

[stamp:]
SEPA document separated in the
Document and Information Center

In the name of and on behalf of the company

FUN FACTORY GmbH, Am Hohentorshafen 17-19, 28197 Bremen

we hereby file in accordance with Section 59 of the German Patent Act (PatG)

## OPPOSITION

against the German patent DE 10 2013 110 501 B4 (patent in suit) entitled "Stimulation device" of NOVOLUTO GMBH.

**For the paying agent:**

**The official opposition fee of € 200.00 is paid using the SEPA Core Direct Debit mandate in accordance with the attached form A 9532/10.13.**



*2016760979*

17_11_2016-01-00001-00000002

17_11_2016-01-00001-00000002

- 2 -

**REQUESTS**

1.      It is requested to revoke the patent in its entirety as well as

2.      in the alternative, to summon to the oral proceedings.

**GROUNDS**

**I.**      **Evidence**

The opposition is based on the following documents, which were already taken into account in the grant procedure:

D1 – WO 2006/058291 A2

D2 – US 2013/0012769 A1

D3 – http://www.heilpraxisnet.de/naturheilpraxis/sex-gegen-bluthochdruck-665.php

D4 – Focus online December 5, 2004

D5 – US 6,099,463 A

D6 – US 1,898,652 A

D7 – DE 14 63 673 U

The following highly relevant documents that were not taken into account in the grant procedure are also cited:

D8 – DE 42 43 876 A1

D9 – US 2008/0304984 A1

17_11_2016-01-00001-00000002                    17_11_2016-01-00001-00000002

- 3 -

D10 – WO 00/28939 A2

D11 – DE 582 196 C

D12 – DE 20 2012 005 414 U1

D13 – EP 1 554 947 B1

D14 – JP 2008-125577 A (Japanese)

D15 – JP 2008-125577 A (translation into English)

D16 – US 2,112,646 A

D17 – US 1,882,040 A

D18 – US 5,377,701 A

D19 – WO 2013/178223 A2

D20 – DE 1 703 184 U

D21 – DE 32 22 467 A1

D22 – DE 93 09 994 U1

D23 – DE 198 53 353 C2

**II.**    **Subject matter of the patent in suit**

As evidenced by claim 1, the patent in suit relates to a stimulation device for the clitoris. For the sake of good order, the patent in suit is attached as

**Exhibit A0**

**17_11_2016-01-00001-00000002**                    17_11_2016-01-00001-00000002

- 4 -

This stimulation device has a pressure field generating device which has a first and a second chamber, a connecting element between the chambers and a drive unit. The drive unit is intended to change the volume of the first chamber in such a way that a stimulating pressure field is generated in the second chamber via the connecting element. This pressure field should consist of a pattern of negative and positive pressures, which are modulated with respect to ambient pressure.

Furthermore, the connecting element should be the only connection between the first and the second chamber; no valve should be provided in the stimulation device (although it is not defined where this valve should not be) and the stimulation device should be designed as a portable hand-held device with a battery. According to the preamble of claim 1, these features are already known.

Based on this, the patent in suit now sets itself the object (cf. paragraphs [0023], [0024] and [0025]) of specifying a stimulation device which has a simple structure and is simple and safe to use. Furthermore, an effective stimulation-triggering effect should be aimed for and drying out of the erogenous zones to be stimulated should be avoided.

These objects are to be achieved according to the characterizing part of claim 1 in that, on the one hand, the connecting element is rigid and is designed as a straight channel with a nozzle effect, a media flow is directed towards the clitoris when the first chamber is compressed by the orientation of the opening and the connecting element and the opening of the connecting element faces the clitoris through the second chamber.

Structured by features, claim 1 thus reads as follows:

**M1.1**            *Stimulation device (1) for the clitoris (12), comprising:*

**M1.2**            *a pressure field generating device (2) with:*

**M1.2.1**          *a first chamber (3); and*

17_11_2016-01-00001-00000002

17_11_2016-01-00001-00000002

- 5 -

**M1.2.2**        a second chamber (4) having an opening (42) for placement over the clitoris (12); and

**M1.2.3**        a connecting element (5) which connects the first chamber (3) to the second chamber (4); and

**M1.2.4**        a drive unit (6) which changes the volume of the first chamber (3) in such a way that a stimulating pressure field is generated in the second chamber (4) via the connecting element (5); and

**M1.3**          a control device (7) which controls the drive unit (6); and

**M1.4**          wherein the pressure field generated in the second chamber (4) consists of a pattern of negative and positive pressures which are modulated with respect to ambient pressure; and

**M1.5**          the first chamber (3) being connected exclusively to the second chamber (4) via the connecting element (5), so there is no other connection between the first chamber (3) and the second chamber (4), whereby the first chamber (3) has a single opening, and

**M1.6**          wherein the second chamber (4) has an opening (51) from the connecting element (5) into the second chamber (4), and

**M1.7**          wherein the stimulation device (1) has no valves, and

**M1.8**          wherein the stimulation device (1) is a portable hand-held device with a battery (76),

                  characterized in that:

17_11_2016-01-00001-00000002                    17_11_2016-01-00001-00000002

- 6 -

**M1.9**          *the connecting element (5) is rigid, and*

**M1.10**         *is designed as a straight channel with nozzle effect,*

**M1.11**         *whose opening in the first chamber (3) and whose opening (51) in the second chamber (4) are aligned with one another, so that a flow of media is directed towards the clitoris (12) when the first chamber (3) is compressed by the alignment of the opening (51) and the connecting element (5),*

**M1.12**         *wherein the opening (51) of the connecting element (5) faces the clitoris (12) through the second chamber (4).*

This feature analysis is attached separately as

### Exhibit A1

The subject matter of claim 1 was amended several times during the grant procedure; after each of the four notices issued, an amended version of the claim was filed. Overall, therefore, some features are redundant or result from features that have already been defined, and some features require closer examination.

1.      Features **M1.1, M 1.2.2** and **M1.11** and **M1.12**

In these features, the term *"clitoris 12"* appears. It is defined that the *"stimulation device for the clitoris"* is provided, the opening 42 of the second chamber for placement over the clitoris is provided, the counterstream is directed towards the clitoris and the opening of the connecting element faces the clitoris through the second chamber.

17_11_2016-01-00001-00000002

- 7 -

All of this information merely represents statements of purpose and only limits the subject matter of claim to the extent that it must be suitable for this. In particular, feature **M1.12** ultimately does not constitute any limitation whatsoever, since the result that the opening 51 of the connecting element 5 faces the clitoris through the second chamber 4 is not only dependent on the geometry of the chamber, but rather on the orientation of the stimulation device. Feature **M1.12** is accordingly interpreted in such a way that the opening 51 can face a certain part of the body in any way in any use of the stimulation device.

2. Features **M1.2.1, M1.2.2, M1.2.3, M1.5, M1.6, M1.9, M1.10** and **M1.11**

All of these features serve to define the two chambers and the connecting element.

In summary, these features define a two-chamber system, the first chamber only having a single outlet which opens into the connecting element, which in turn opens into the second chamber, which is open to the environment so that it can be placed on a body part. The two chambers are therefore connected to one another by a narrowed or constricted area. That this area then has a nozzle effect (cf. feature 1.10) inevitably results from this. The term *"nozzle"* was incorrectly defined by the patent proprietor in the submission of May 28, 2014 as a small opening or constriction that creates a nozzle effect (i.e. pressure increase through volume reduction). In a constricted region, namely, the flow cross-section is reduced during a flow, thereby increasing the flow velocity, which in turn results in a pressure drop, that is to say a pressure reduction. Only through the expansion following the constriction does a pressure increase then take place, since the flow velocity is reduced again. This is commonly known as the nozzle effect.

17_11_2016-01-00001-00000002                    17_11_2016-01-00001-00000002

- 8 -

III.    **Inadmissible extension, Sections 59, 21, para. 1 no. 4 PatG**

The patent must be revoked, as its subject matter goes beyond the content of the application as originally filed.

As

**Exhibit A2**

we attach the originally filed version, to which we refer below.

1.    Feature **M1.8**

With the submission of July 1, 2015, feature **M1.8** of the granted claim was included. The patent proprietor stated that support for this can be found on page 13, penultimate paragraph of the description. The relevant paragraph reads:

> *"The first embodiment of the stimulation device 1 is a, preferably portable, electrical or small device, which comprises a housing 8, a pressure field generating device 2, operating elements 71, a display 72, an on/off switch 74, a socket 75, an optional battery 76 and an optional lighting 9."*

From this paragraph only the features of the *"portable hand-held device"* and the *"battery"* have been included in the claim. This constitutes an inadmissible intermediate generalization. The feature of the portable hand-held device and the battery is only disclosed in connection with all of the features mentioned in this paragraph, namely in particular the housing, the operating elements, the display, the on/off switch and the socket.

According to claim 1 is granted, the stimulation device also includes such portable hand-held devices with a battery that actually comprise no housing, no operating

17_11_2016-01-00001-00000002

- 9 -

elements, <u>no</u> display, <u>no</u> on and off switch and <u>no</u> socket. Such portable hand-held devices with a battery are not originally disclosed, and consequently the subject matter of claim 1 goes beyond the application as originally filed.

2.  <u>Feature **M1.9** and **M1.10**</u>

With the submission of 1 July 2015, feature **M1.9** and **M1.10** were included in claim 1. Support for this should follow from Figures 4 to 8 and 11 and page 21, line 20 and page 20, lines 15-17.

Already in logical terms alone, the fact that the connecting element 5 is rigid cannot be derived from the drawings.

However, features **M1.9** and **M1.10** do not result from the other passages mentioned either. The relevant paragraph on page 21 relates exclusively to Fig. 11 and reads:

> *"Fig. 11 shows a second embodiment of the invention with a spatially separated arrangement of the chambers 3 and 4 of the pressure field generating device 2. The chambers 3 and 4 are connected via an extended connecting element 5, which can be a longer flexible hose or also a rigid tube. For example, the length of the connecting element 5 can be 0.5 m. It is thus possible to hold the housing 8 in one hand while the other hand holds the second chamber 4 on the body part 11 to be stimulated; or you can simply put the housing 8 to one side while the user only holds the second chamber 4 in their hands. In this embodiment, the stimulation device can also be designed as a tabletop device."*

A *"connecting element that is rigid"* and is designed "*as a straight channel with a nozzle effect"* is not disclosed there in this breadth. The only thing that is disclosed is:

17_11_2016-01-00001-00000002

- 10 -

- an extensive connecting element (e.g. 50cm long!), which

- is a rigid tube.

The patent proprietor did not include the terms *"extended"* and *"tube"* in claim 1. Connecting elements that are rigid, but are not designed as an extended tube, are not originally disclosed, though. Consequently, this too constitutes an inadmissible extension and the subject matter of the granted claim 1 goes beyond the content of the version as originally filed.

3.    Feature **M1.7**

Feature **M1.7** defines that "*the stimulation device has no valves.*"

This feature cannot be inferred in this breadth from the originally filed version.

Feature **M1.7** relates to the stimulation device and defines *"globally"* that it does not contain any valves. The patent proprietor mentions, for example, page 18, lines 25 to 28, which is the only relevant passage in our opinion, in support of this. It reads:

> *"With the arrangement shown in Figures 4 to 6, it is advantageous that it is hygienically unproblematic (for example due to the avoidance of dead spaces) and simple to manufacture. For example, no valves or further openings in or on the first chamber 3 are required."*

It is therefore disclosed there that no valves are required <u>on the first chamber</u>.

On the one hand, the disclaimer (no valves) relates <u>exclusively</u> to the first chamber and not to the stimulation device as a whole.

17_11_2016-01-00001-00000002

- 11 -

Furthermore, only an effect is disclosed there. The effect of the arrangement shown in Figures 4 to 6 allows no valves to be used. The feature that there are no valves is consequently not disclosed there as a feature belonging to the invention. Rather, the patent proprietor should have included the features in the claim that lead to this effect. It did not do so.

Consequently, this also constitutes an inadmissible extension of the originally filed disclosure.

**IV.**    **Lack of novelty, Sections 59, 21 para. 1 no. 1, 3 PatG**

The subject matter of claim 1 is not novel over DE 42 43 876 A1 (D8).

D8 discloses a skin treatment device with a generator for generating a suction/pressure field, and a treatment head having at least one treatment surface (cf. claim 1). Since the female clitoris also has skin, the device according to D8 is also suitable for stimulating the clitoris (feature **M1.1**). The device comprises a generator for generating a suction pressure field (feature **M1.2**).

The specific embodiment of D8 comprises a stationary part 1, which is portable (column 5, line 59), and a treatment head 2, which is connected to the stationary part 1 via a connecting line 3, comprising an air hose 4 and an electrical cable 5.

The configuration of the treatment head 2 is described with reference to Figure 2, in particular in the passage in column 6, line 47 to column 8, line 8.

The handle 2 consists of a middle part 12 to which a first part 20 is fixed by means of screws 24, which are screwed through the holes 21 and the through holes 15 into the

17_11_2016-01-00001-00000002                    17_11_2016-01-00001-00000002

- 12 -

internally threaded blind holes 17 of the part 14.

In part 20, a through hole 22 is formed which is connected to the air hose (column 7, lines 11 to 13 of D8). The through hole 22 opens into a distribution channel (not shown) on the rear side of the head part 18, which in turn is coupled to nozzles 19 in the head part 18 (column 7, lines 17 to 24 of D8).

The duct 22 and the nozzles 19 are connected via the air hose 4 to a generator arranged in the stationary part for generating pressure-suction pulses. As evidenced by column 6, lines 1 to 6, this generator comprises, for example, a movable membrane through which air pressure pulses and air suction pulses are generated alternately at a frequency of 50 Hz, for example.

Hence, this is not a pump, but a vibrating membrane that ejects <u>and</u> sucks in air while oscillating.

Such a generator with a membrane therefore forms a first chamber in the sense of feature **M1.2.1**

A second chamber with an opening for placement over the clitoris (feature **M1.2.2**) is formed by the nozzles 19. As evidenced by column 7, line 22 of D8, these are also intended to be placed on the skin and are therefore suitable for being placed on the clitoris.

The first chamber of the device according to D8 extends over the hose 4 to the through hole 22, which then comprises a connecting element connecting the first chamber (handle 2, hose 4 and generator with membrane) to the second chamber (interior of the nozzles 19) (feature **M1.2.3**).

The generator for generating suction/pressure pulses forms a drive unit in the sense of feature **M1.2.4**, which changes the volume of the first chamber in such a way that a stimulating pressure field is generated via the connecting element (channel 22) in the

17_11_2016-01-00001-00000002

- 13 -

second chamber (interior of the nozzles 19) (air pressure pulses and air suction pulses at a frequency of 50 Hz, for example; column 6, lines 4 to 5 of D8)

In the control panel 1, a control circuit amplitude regulation is provided for the generator (feature point 3; column 6, lines 7 to 13 of D8).

The pressure field generated in the second chamber (interior of the nozzles 19) consists of a pattern of negative and positive pressures, which are modulated with respect to ambient pressure (the device according to D8 is used under ambient pressure, i.e. normal room pressure, and the membrane oscillates and generates suction and pressure pulses). Thus, feature **M1.4** is disclosed in D8 as well.

Furthermore, the first chamber (generator, hose and channel in the handle 2) is connected to the second chamber (interior of the nozzles 19) exclusively via the connecting element (through hole 22). Otherwise the device from D8 would not function as described. Conversely, this also means that there is no other connection of the first chamber than that to the second chamber, which means that the first chamber has a single opening, namely the opening into the hose 4. Hence, D8 also discloses feature **M1.5**.

Of course, the second chamber (interior of the nozzles 19) has an opening from the connecting elements (through hole 22) into the second chamber (feature **M1.6**). Otherwise an air flow would not be possible here.

No valves are disclosed in the device of D8, nor are they required. The device from D8 therefore also has no valves (feature **M1.7**).

According to column 5, line 59 of D8, the device from D8 is also designed as a portable device, and the handle is held by hand. Ergo, the device is designed as a portable hand-held device in the sense of feature **M1.8**. So that it is actually portable, as defined in

17_11_2016-01-00001-00000002

- 14 -

column 5 of D8, it will also have a battery as an energy source. Consequently, the battery is at least implicitly disclosed here.

The connecting element (through hole 22) is also rigid, since the part 20 is rigid (feature **M1.9**).

The through hole 22 is also designed as a straight channel (cf. Figure 2) and has a nozzle effect, since it is connected to the outlet openings 19, which are designed as nozzles. A nozzle effect is always realized by a narrowed area that widens into a wider area. When the openings 19 are referred to as nozzles, it will be appreciated by those skilled in the art that the through hole 22 has a smaller cross section than the openings 19, since they would otherwise not form a nozzle. Thus, feature **M1.10** is also disclosed in D8.

As defined in feature **M1.11**, the openings of the through hole 22 are also aligned with one another in D8, so that a flow of media when the first chamber (generator, hose and hole in the handle 2) is compressed through the alignment of the opening of the through hole 22 is directed towards the clitoris when the handle 2 is positioned accordingly overall. The opening of the through hole 22 then also faces the clitoris through the nozzle 19, at least when the treatment head is correspondingly aligned overall.

Consequently, the subject matter of claim 1 is not novel over D8.

## **V.** **Lack of inventive step, Section 59, 21 para. 1 no. 1, 4 PatG**

The subject matter of claim 1 thus does not involve an inventive step over the prior art.

1.  US 2008/0304984 A1 (D9) discloses a stimulation device having a casing with a cylindrical opening which can be positioned on the skin. The stimulation device from D9 is therefore also suitable for the clitoris (feature **M1.1**).

17_11_2016-01-00001-00000002

- 15 -

The device of D9 can be seen particularly well in Figure 1 of D9, which is reproduced below:



The stimulation device according to D9 has a pressure field generating device (feature **M1.2**) which has a first chamber. The first chamber is formed by the cylinder 15 and the piston 16. Hence, D9 discloses feature **M1.2.1**.

The piston 16 forms a drive unit which changes the volume of the first chamber in such a way that a stimulating pressure field is generated (feature **M1.2.4**). The piston 16 is moved via a pin follower 17 and a motor 12. A switch 14 in the motor 12 is actuated and thus controlled. Consequently, the device from D9 also has a control device in the sense of feature **M1.3**.

The device from D9 operates at ambient pressure and by moving the piston 16, a pressure field is consequently formed from a pattern of negative and positive pressures

17_11_2016-01-00001-00000002                    17_11_2016-01-00001-00000002

- 16 -

which are modulated with respect to ambient pressure (feature **M1.4**). However, this first takes place in the first chamber of the cylinder 15.

Valves are not disclosed in the stimulation device of D9 (feature **M1.7**). It is also designed as a portable hand-held device (cf. figures) and comprises two batteries 13 which are connected to the motor 12 (feature **M1.8**).

2.    In <u>contrast</u> to the subject matter according to the patent, the device from D9 is only designed as a <u>single-chamber system</u> and has <u>no second chamber</u> and consequently no connecting element to a second chamber.

3.    One <u>effect</u> that results from the second chamber, which is connected to the first chamber via a rigid connecting element with a nozzle effect, is that an improved stimulation of the erogenous zones, in particular the clitoris, is achieved.

4.    Hence, it is an <u>object</u> starting from D9 to improve stimulation for the clitoris.

5.    A person skilled in the art will find a suggestion for this in WO 00/28939 A2 (D10), for example.

D10 discloses a hand-held device for clitoral stimulation (cf. title, page 5, lines 15 to 24, claim 1 as well as Figures 10, 11, 14, 15 and 16 of D10 in particular).

The device comprises a vacuum pump/motor assembly 300 (cf. Figure 9 and page 14, last paragraph of D10), which is provided to generate a vacuum in the applicator 220. The hand-held device from D10 is also battery-operated with a battery 83 (cf. Figure 10 and page 15, fourth paragraph of D10).

The hose 73 shown in Figure 9 of D10 to the unit 350 is only optional and can additionally be connected to the applicator 22 (cf. Figure 15, third paragraph of D10).

17_11_2016-01-00001-00000002

- 17 -

The applicator 220 comprises a cup 240 (cf. in particular Figures 9 and 10 of D10), which forms a second chamber. The cup 240 merges into the intake 310 on the hand-held device via a funnel-shaped area. This connecting channel between the cup 240 and the hand-held device 310 thus forms a connecting element between a second chamber and a first chamber, which is formed in the hand-held device itself. This applicator 220 is shown and described again in more detail in Figures 12 and 13.

6.    The person skilled in the art will thus recognize in D10 that such an applicator with a second chamber and a connecting element which develops a nozzle effect (the connecting element is reduced in diameter) is particularly well-suited for clitoral massage.

The skilled person will therefore endeavor to combine the applicator from D10 with the device from D9. For this purpose, he will connect the connecting element of the applicator to the first chamber from D9 and thus arrived directly at features **M1.2.4, M1.5, M1.6, M1.9, M1.10, M1.11** and **M1.12** without taking an inventive step.

There are no technical difficulties to be overcome by the person skilled in the art here, since the cup is also connected to the pump with D10. The person skilled in the art only needs to connect the cup from D10 to the cylinder 15 from D9.

7.    Consequently, the subject matter of claim 1 does not involve an inventive step over a combination of D9 and D10.

**VI.**    **Subclaims**

The subclaims do not seem to contain any features that are novel or inventive over the prior art.

17_11_2016-01-00001-00000002                    17_11_2016-01-00001-00000002

- 18 -

For example, the features of claim 2 are known from D10; claim 3 arises in an obvious manner for the skilled person from his general knowledge; claim 4 is disclosed in D8 and D10; the features of claim 5 are likewise disclosed in D10; the features of claim 6 in D8; the features of claim 7 in D8 and D10; and the features of claim 8 in D8 and D10.

The use according to claim 9 readily follows from the customary use of such products.

**VII.**    **Further prior art**

Other relevant documents named are:

D11 – DE 582 196 C

D12 – DE 20 2012 005 414 U1

D13 – EP 1 554 947 B1

D14 – JP 2008-125577 A (Japanese)

D15 – JP 2008-125577 A (translation into English)

D16 – US 2,112,646 A

D17 – US 1,882,040 A

D18 – US 5,377,701 A

D19 – WO 2013/178223 A2

D20 – DE 1 703 184 U

17_11_2016-01-00001-00000002    17_11_2016-01-00001-00000002

- 19 -

D21 – DE 32 22 467 A1

D22 – DE 93 09 994 U1

D23 – DE 198 53 353 C2

**Consequently, the opposition is well-founded and the patent must be revoked in its entirety.**

(Fabian Fegers)

Exhibits:
A0 – Patent in suit DE 10 2013 110 501 B4
A1 – Feature analysis of claim 1
A2 – Version as originally filed
D1 – WO 2006/058291 A2
D2 – US 2013/0012769 A1
D5 – US 6,099,463 A
D6 – US 1,898,652 A
D7 – DE 14 63 673 U
D8 – DE 42 43 876 A1
D9 – US 2008/0304984 A1
D10 – WO 00/28939 A2
D11 – DE 582 196 C
D12 – DE 20 2012 005 414 U1
D13 – EP1 554 947 B1
D14 – JP 2008-125577 A (Japanese)
D15 – JP 2008-125577 A (translation into English)
D16 – US 2,112,646 A
D17 – US 1,882,040 A
D18 – US 5,377,701 A
D19 – WO 2013/178223 A2
D20 – DE 1 703 184 U
D21 – DE 32 22 467 A1
D22 – DE 93 09 994 U1
D23 – DE 198 53 353 C2
Direct debit authorization

# Eisenführ Speiser

Eisenführ Speiser
Patentanwälte Rechtsanwälte
PartGmbB

Bremen München Berlin Hamburg

Postfach 31 02 60
80102 München
Arnulfstraße 27
80335 München
Tel +49 89 549075-0
Fax +49 89 55027555
Fax +49 89 549075-29
mailmuc@eisenfuhr.com
www.eisenfuhr.com

Dipl. Wirt.-Ing. Fabian Fegers
Dipl.-Ing.
Patentanwalt
European Patent Attorney
European Trade Mark and
Design Attorney
Tel +49 89 549075-287
ffegers@eisenfuhr.com

Deutsches Patent- und Markenamt
80297 München



München,        17. November 2016

Unser Zeichen:     FA 5208-01DE   FEG/sst

Inhaber:        NOVOLUTO GmbH

Amtsaktenzeichen:  102013110501.7

Einsprechende:    FUN FACTORY GmbH

*SEPA*
anbei  Mandat
☑  VzM

SEPA-Dokument
im DIZ abgetrennt

Namens und im Auftrag der Firma

       FUN FACTORY GmbH, Am Hohentorshafen 17-19, 28197 Bremen

legen wir hiermit gemäß § 59 PatG

## EINSPRUCH

gegen das deutsche Patent DE 10 2013 110 501 B4 (Streitpatent) mit dem Titel „Stimulationsvorrichtung" der NOVOLUTO GMBH ein.

**Für die Zahlstelle bestimmt:**

**Die amtliche Einspruchsgebühr in Höhe von € 200,00 wird im Rahmen des SEPA-Basis-Lastschriftmandats gemäß beigefügtem Formular A 9532/10.13 entrichtet.**


*2016760979*

**ANTRÄGE**

1.    Es wird beantragt, das Patent in vollem Umfang zu widerrufen sowie

2.    hilfsweise zur mündlichen Verhandlung zu laden.

**BEGRÜNDUNG**

**I.    Beweismittel**

Der Einspruch wird gestützt auf die folgenden Dokumente, die bereits im Erteilungsverfahren berücksichtigt wurden:

D1 – WO 2006/058291 A2

D2 – US 2013/0012769 A1

D3 -  http://www.heilpraxisnet.de/naturheilpraxis/sex-gegen-bluthochdruck-665.php

D4 - Focus online 5.12.2004

D5 – US 6,099,463 A

D6 – US 1,898,652 A

D7 – DE 14 63 673 U

Weiterhin werden folgende hochrelevante Dokumente zitiert, die nicht im Erteilungsverfahren berücksichtigt wurden:

D8 - DE 42 43 876 A1

D9 - US 2008/0304984 A1

- 3 -

D10 - WO 00/28939 A2

D11 - DE 582 196 C

D12 - DE 20 2012 005 414 U1

D13 - EP 1 554 947 B1

D14 - JP 2008-125577 A (japanisch)

D15 - JP 2008-125577 A (englische Übersetzung)

D16 - US 2,112,646 A

D17 - US 1,882,040 A

D18 - US 5,377,701 A

D19 - WO 2013/178223 A2

D20 - DE 1 703 184 U

D21 - DE 32 22 467 A1

D22 - DE 93 09 994 U1

D23 - DE 198 53 353 C2

## II.    Gegenstand des Streitpatents

Das Streitpatent betrifft ausweislich des Anspruchs 1 eine Stimulationsvorrichtung für die Klitoris. Der Ordnung halber ist das Streitpatent als

### Anlage A0

beigefügt.

- 4 -

Diese Stimulationsvorrichtung weist eine Druckfelderzeugungseinrichtung auf, die eine erste und eine zweite Kammer, ein Verbindungselement zwischen den Kammern sowie eine Antriebseinheit aufweist. Die Antriebseinheit ist dazu vorgesehen das Volumen der ersten Kammer zu verändern, sodass über das Verbindungselement in der zweiten Kammer ein stimulierendes Druckfeld erzeugt wird. Dieses Druckfeld soll aus einem Muster von Unter- und Überdrücken bestehen, welche auf den Normaldruck aufmoduliert sind.

Ferner soll das Verbindungselement die einzige Verbindung zwischen der ersten und der zweiten Kammer sein, es soll kein Ventil in der Stimulationsvorrichtung vorgesehen sein (wobei nicht definiert ist, wo diese Ventil nicht sein soll) und die Stimulationsvorrichtung soll als tragbares Handgerät mit einer Batterie ausgebildet sein. Diese Merkmale sind laut Oberbegriff des Anspruchs 1 bereits bekannt.

Ausgehend hiervon stellt sich das Streitpatent nun die Aufgabe (vgl. Absatz [0023], [0024] und [0025]) eine Stimulationsvorrichtung anzugeben, welche einen einfachen Aufbau aufweist und in der Verwendung einfach und sicher ist. weiterhin soll ein effektiver stimulationsauslösender Effekt angestrebt werden und Austrocknen der zu stimulierenden erogenen Zonen soll vermieden werden.

Diese Aufgaben sollen nach dem Kennzeichen des Anspruchs 1 dadurch gelöst werden, dass einerseits das Verbindungselement starr ist und als gerader Kanal mit Düsenwirkung ausgestaltet ist, eine Medienströmung bei Kompression der ersten Kammer durch die Ausrichtung der Öffnung und des Verbindungselements auf die Klitoris gerichtet ist und die Öffnung des Verbindungselements der Klitoris durch die zweite Kammer hindurch gegenüber liegt.

Nach Merkmalen gegliedert stellt sich demnach der Anspruch 1 wie folgt dar:

**M1.1**     *Stimulationsvorrichtung (1) für die Klitoris (12), aufweisend:*

**M1.2**     *eine Druckfelderzeugungseinrichtung (2) mit:*

**M1.2.1**   *einer ersten Kammer (3); und*

- 5 -

**M1.2.2**    einer zweiten Kammer (4) mit einer Öffnung (42) zum Aufsetzen über die Klitoris (12); und

**M1.2.3**    einem Verbindungselement (5), welches die erste Kammer (3) mit der zweiten Kammer (4) verbindet; und

**M1.2.4**    einer Antriebseinheit (6), welche das Volumen der ersten Kammer (3) derart verändert, dass über das Verbindungselement (5) in der zweiten Kammer (4) ein stimulierendes Druckfeld erzeugt wird; und

**M1.3**    eine Steuereinrichtung (7), welche die Antriebseinheit (6) ansteuert; und

**M1.4**    wobei das in der zweiten Kammer (4) erzeugte Druckfeld aus einem Muster von Unter- und Überdrücken besteht, welche auf den Normaldruck aufmoduliert sind; und

**M1.5**    wobei die erste Kammer (3) über das Verbindungselement (5) ausschließlich mit der zweiten Kammer (4) verbunden ist, somit keine andere Verbindung der ersten Kammer (3) als diejenige zur zweiten Kammer (4) besteht, womit die erste Kammer (3) eine einzige Öffnung aufweist, und

**M1.6**    wobei die zweite Kammer (4) eine Öffnung (51) von dem Verbindungselement (5) in die zweite Kammer (4) aufweist, und

**M1.7**    wobei die Stimulationsvorrichtung (1) keine Ventile aufweist, und

**M1.8**    wobei die Stimulationsvorrichtung (1) ein tragbares Handgerät mit einer Batterie (76) ist,

dadurch gekennzeichnet, dass

**M1.9**      *das Verbindungselement (5) starr ist, und*

**M1.10**     *als ein gerader Kanal mit Düsenwirkung ausgestaltet ist,*

**M1.11**     *dessen Öffnung in die ersten Kammer (3) und dessen Öffnung (51) in die zweite Kammer (4) zueinander ausge-richtet sind, so dass eine Medienströmung bei Kompres-sion der ersten Kammer (3) durch die Ausrichtung der Öffnung (51) und des Verbindungselements (5) auf die Klitoris (12) gerichtet ist,*

**M1.12**     *wobei die Öffnung (51) des Verbindungselements (5) der Klitoris (12) durch die zweite Kammer (4) hindurch ge-genüberliegt.*

Diese Merkmalsgliederung ist separat als

**Anlage A1**

beigefügt.

Der Gegenstand des Anspruchs 1 wurde im Erteilungsverfahren mehrfach geän-dert, nach jedem der vier ergangenen Bescheide wurde eine geänderte An-spruchsfassung eingereicht. Insgesamt sind daher teilweise Merkmale redundant oder ergeben sich aus bereits definierten Merkmalen und manche Merkmale be-nötigen eine genauere Betrachtung.

1.    Merkmale **M1.1**, **M1.2.2** und **M1.11** und **M1.12**

In diesen Merkmalen taucht der Begriff der *„Klitoris 12"* auf. Es wird defi-niert, dass die *„Stimulationsvorrichtung für die Klitoris"* vorgesehen ist, die Öffnung 42 der zweiten Kammer zum Aufsetzen über die Klitoris vorgese-hen ist, der Gegenstrom auf die Klitoris gerichtet ist und die Öffnung des Verbindungselements der Klitoris durch die zweite Kammer hindurch ge-genüberliegt.

Diese Angaben sind sämtlich reine Zweckangaben und beschränken den Gegenstandsanspruch nur insoweit, als dieser hierfür geeignet sein muss. Insbesondere Merkmal **M1.12** stellt letztlich keinerlei Beschränkung dar, da das Ergebnis, dass die Öffnung 51 des Verbindungselements 5 der Klitoris durch die zweite Kammer 4 hindurch gegenüberliegt nicht nur abhängig von der Geometrie der Kammer ist, sondern vielmehr von der Ausrichtung der Stimulationsvorrichtung. Merkmal **M1.12** wird demnach so interpretiert, dass die Öffnung 51 auf irgendeine Art und Weise in irgendeiner Benutzung der Stimulationsvorrichtung einem bestimmten Körperteil gegenüberliegen kann.

2.    Merkmale **M1.2.1**, **M1.2.2**, **M1.2.3**, **M1.5**, **M1.6**, **M1.9**, **M1.10** und **M1.11**

Alle diese Merkmale dienen zur Definition der beiden Kammern und des Verbindungselements.

Zusammengefasst definieren diese Merkmale ein Zweikammersystem, wobei die erste Kammer nur einen einzigen Auslass hat, der im Verbindungselement mündet, welches seinerseits in die zweite Kammer mündet, die zur Umgebung offen ist, sodass sie auf einen Körperteil aufgelegt werden kann. Die beiden Kammern sind also durch einen verengten oder eingeschnürten Bereich miteinander verbunden. Dass dieser Bereich dann eine Düsenwirkung aufweist (vgl. Merkmal 1.10) ergibt sich zwangsläufig hieraus. Der Begriff „Düse" wurde von der Patentinhaberin in der Eingabe vom 28. Mai 2014 nicht ganz zutreffend definiert als eine kleine Öffnung bzw. Verengung, die einen Düseneffekt (d.h. Druckerhöhung durch Volumenreduzierung) erzeugt. In einem eingeschnürten Bereich ist nämlich bei einer Strömung der Strömungsquerschnitt verringert, dadurch die Strömungsgeschwindigkeit erhöht, was wiederum einen Druckabfall, also eine Druckreduktion, zur Folge hat. Erst durch die Aufweitung im Anschluss an die Verengung findet dann eine Druckerhöhung statt, da die Strömungsgeschwindigkeit wieder verringert ist. Dies wird allgemein als Düseneffekt bezeichnet.

- 8 -

### III.    Unzulässige Erweiterung, §§ 59, 21, Abs. 1 Nr. 4 PatG

Das Patent ist zu widerrufen, da sein Gegenstand über den Inhalt der Anmeldung in der ursprünglich eingereichten Fassung hinausgeht.

Als

#### Anlage A2

fügen wir die ursprünglich eingereichte Fassung bei, auf die wir uns nachfolgend beziehen.

### 1.    Merkmal **M1.8**

Mit Eingabe vom 1. Juli 2015 wurde Merkmal **M1.8** des erteilten Anspruchs aufgenommen. Die Patentinhaberin gab an, dass eine Stütze hierfür auf S.13, vorletzter Absatz der Beschreibung zu finden sei. Der betreffende Absatz lautet:

> *„Die erste Ausführungsform der Stimulationsvorrichtung 1 ist ein, vorzugsweise tragbares, Elektro- oder Kleingerät, welches ein Gehäuse 8, eine Druckfelderzeugungseinrichtung 2, Bedienelemente 71, eine Anzeige 72, einen An-/Aus- Schalter 74, eine Buchse 75, eine optionale Batterie 76 und eine optionale Beleuchtung 9 aufweist."*

Aus diesem Absatz sind allein die Merkmale des *„tragbaren Handgeräts"* und der *„Batterie"* in den Anspruch aufgenommen worden. Hierin liegt eine unzulässige Zwischenverallgemeinerung. Das Merkmal des tragbaren Handgeräts und der Batterie ist nur in Verbindung mit sämtlichen in diesem Absatz genannten Merkmalen, nämlich insbesondere <u>dem Gehäuse, den Bedienelementen, der Anzeige, dem An-/Aus-Schalter und der Buchse</u> offenbart.

Nach dem erteilten Anspruch 1 umfasst die Stimulationsvorrichtung auch solche tragbaren Handgeräte mit Batterie, die eben <u>kein</u> Gehäuse, <u>keine</u>

Bedienelemente, <u>keine</u> Anzeige, <u>kein</u> An- und Aus- Schalter und <u>keine</u> Buchse aufweisen. Solche tragbaren Handgeräte mit Batterie sind aber ursprünglich nicht offenbart und folglich geht der Gegenstand des Anspruchs 1 über die Anmeldung in der ursprünglich eingereichten Fassung hinaus.

2.   <u>Merkmal **M1.9** und **M1.10**</u>

Mit Eingabe vom 1. Juli 2015 wurde Merkmal **M1.9** sowie **M1.10** in den Anspruch 1 eingefürt. Eine Stütze hierfür solle sich in den Figuren 4 bis 8 und 11 sowie auf Seite 21, Zeile 20 und S. 20, Zeilen 15-17 ergeben.

Dass das Verbindungselement 5 starr ist, kann sich bereits rein logisch nicht aus den Zeichnungen ergeben.

Aber auch aus den weiteren genannten Stellen ergeben sich die Merkmale **M1.9** und **M1.10** nicht. Der betreffende Absatz auf S. 21 bezieht sich ausschließlich auf Fig. 11 und lautet:

> *„Fig. 11 zeigt eine zweite Ausführungsform der Erfindung mit einer örtlich getrennten Anordnung der Kammern 3 und 4 der Druckfelderzeugungseinrichtung 2. Dabei sind die Kammern 3 und 4 über ein ausgedehntes Verbindungselement 5 verbunden, welches ein längerer flexibler Schlauch oder ein auch starres Rohr sein kann. Beispielsweise kann die Länge des Verbindungselements 5 0,5m betragen. Damit ist es möglich, das Gehäuse 8 in einer Hand zu halten, während die andere Hand die zweite Kammer 4 auf das zu stimulierende Körperteil 11 hält; oder aber kann man das Gehäuse 8 einfach zur Seite legen, während der Benutzer nur die zweite Kammer 4 in Händen hält. Bei dieser Ausführungsform kann die Stimulationsvorrichtung auch als Tischgerät ausgestaltet sein."*

Ein „*Verbindungselement, das starr ist*" und „*als ein gerader Kanal mit Düsenwirkung ausgestaltet ist*" ist dort in dieser Breite nicht offenbart. Es ist nur offenbart:

— ein ausgedehntes Verbindungselement (bspw. 50cm lang!), welches

— ein starres Rohr ist.

Die Begriffe „ausgedehnt" und „Rohr" hat die Patentinhaberin nicht mit in den Anspruch 1 aufgenommen. Verbindungselemente die starr sind, aber nicht als ausgedehntes Rohr ausgebildet sind, sind aber ursprünglich nicht offenbart. Folglich liegt auch hierin eine unzulässige Erweiterung und der Gegenstand des erteilten Anspruchs 1 geht über den Inhalt der ursprünglich eingereichten Fassung hinaus.

3.    Merkmal **M1.7**

Merkmal **M1.7** definiert, dass *„die Stimulationsvorrichtung keine Ventile aufweist"*.

Auch dieses Merkmal lässt sich in dieser Breite der ursprünglich eingereichten Fassung nicht entnehmen.

Merkmal **M1.7** bezieht sich auf die Stimulationsvorrichtung und definiert *„global"*, dass diese keinerlei Ventile enthalte. Als Stütze nennt die Patentinhaberin beispielsweise Seite 18, Zeile 25 bis 28, die auch nach diesseitiger Auffassung die einzig infrage kommende Passage ist. Diese lautet:

> *„Bei der in den Figuren 4 bis 6 gezeigten Anordnung ist vorteilhaft, dass diese hygienisch unproblematisch (beispielsweise aufgrund der Vermeidung von Toträumen) und in der Herstellung einfach ist. Beispielsweise sind keine Ventile oder weitere Öffnungen in oder an der ersten Kammer 3 erforderlich."*

Dort ist folglich offenbart, dass keine Ventile <u>an der ersten Kammer</u> erforderlich sind.

Einerseits bezieht sich also der *Disclaimer* (keine Ventile) <u>ausschließlich</u> auf die erste Kammer und nicht auf die Stimulationsvorrichtung als Ganzes.

Weiterhin ist dort lediglich ein Effekt offenbart. Der Effekt, der in den Figuren 4 bis 6 gezeigten Anordnung lässt es zu, dass keine Ventile verwendet werden. Das Merkmal, dass keine Ventile vorhanden sind, ist folglich dort nicht als ein zur Erfindung gehörendes Merkmal offenbart. Vielmehr hätte die Patentinhaberin die Merkmale im Anspruch aufnehmen müssen, die zu diesem Effekt führen. Dies hat sich nicht getan.

Folglich liegt auch hierin eine unzulässige Erweiterung über die ursprünglich eingereichte Offenbarung.

**IV.    Mangelnde Neuheit, §§ 59, 21 Abs. 1 Nr. 1, 3 PatG**

Der Gegenstand des Anspruchs 1 ist nicht neu gegenüber DE 42 43 876 A1 (D8).

D8 offenbart ein Gerät zu Hautbehandlung mit einem Generator zur Erzeugung eines Saug-Druckfelds, und einem zumindest eine Behandlungsfläche aufweisenden Behandlungskopf (vgl. Anspruch 1). Da auch die weibliche Klitoris Haut aufweist, ist das Gerät gemäß D8 auch zur Stimulation für die Klitoris geeignet (Merkmal **M1.1**). Das Gerät weist einen Generator zur Erzeugung eines Saug–Druckfelds auf (Merkmal **M1.2**).

Die konkrete Ausführungsform der D8 weist ein stationäres Teil 1 auf, das tragbar ist (Spalte 5, Zeile 59), und einen Behandlungskopf 2, der mit einer Verbindungsleitung 3, die einen Luftschlauch 4 und ein Elektrokabel 5 aufweist, mit dem stationären Teil 1 verbunden ist.

Die Ausgestaltung des Behandlungskopfes 2 ist mit Bezug auf Figur 2 insbesondere in der Passage Spalte 6, Zeile 47 bis Spalte 8, Zeile 8 beschrieben.

Der Handgriff 2 besteht aus einem Mittelteil 12, an dem ein erstes Teil 20 mittels Schrauben 24 fixiert ist, die durch die Löcher 21, und die Durch-

gangslöcher 15 in die mit Innengewinde versehenen Sacklöcher 17 des
Teils 14 eingeschraubt werden.

In dem Teil 20 ist eine Durchgangsbohrung 22 ausgebildet, die mit dem
Luftschlauch verbunden ist (Spalte 7, Zeile 11 bis 13 von D8). Die Bohrung
22 mündet in eine Verteilerrinne (nicht gezeigt) auf der Rückseite des Kopf-
teils 18, die ihrerseits mit Düsen 19 im Kopfteil 18 gekoppelt ist (Spalte 7,
Zeile 17 bis 24 von D8).

Über den Luftschlauch 4 sind der Kanal 22 und die Düsen 19 mit einem in
dem stationären Teil angeordneten Generator zur Erzeugung von Druck-
Saug-Impulsen verbunden. Dieser Generator weist ausweislich Spalte 6,
Zeilen 1 bis 6 beispielsweise eine bewegliche Membran auf, durch die ab-
wechselnd Luft-Druckimpulse und Luft-Saugimpulse mit einer Frequenz von
beispielsweise 50 Hz erzeugt werden.

Es handelt sich hierbei also nicht um eine Pumpe, sondern um eine
schwingende Membran, die schwingend Luft ausstößt und einsaugt.

Ein solcher Generator mit einer Membran bildet daher eine erste Kammer
im Sinne des Merkmals **M1.2.1**.

Eine zweite Kammer mit einer Öffnung zum Aufsetzen über die Klitoris
(Merkmal **M1.2.2**) ist durch die Düsen 19 gebildet. Diese sind ausweislich
Spalte 7, Zeile 22 von D8 auch zum Aufsetzen auf die Haut vorgesehen,
und damit geeignet auf die Klitoris aufgesetzt zu werden.

Die erste Kammer der Vorrichtung gemäß D8 erstreckt sich über den
Schlauch 4 bis zur Durchgangsbohrung 22, die dann ein Verbindungsele-
ment welches die erste Kammer (Handgriff 2, Schlauch 4 sowie Generator
mit Membran) mit der zweiten Kammer (Innenraum der Düsen 19) verbin-
det (Merkmal **M1.2.3**), aufweist.

Der Generator zur Erzeugung von Saug-Druckimpulsen bildet eine An-
triebseinheit im Sinne des Merkmals **M1.2.4**, welches das Volumen der ers-
ten Kammer derart verändert, dass über das Verbindungselement (Kanal

22) in der zweiten Kammer (Innenraum der Düsen 19) ein stimulierendes Druckfeld erzeugt wird (Luft-Druckimpulse und Luft-Saugimpulse mit einer Frequenz von beispielsweise 50 Hz; Spalte 6, Zeilen 4 bis 5 von D8).

In dem Steuerpult 1 ist für den Generator eine Steuerschaltungsamplituden-regelung vorgesehen (Merkmalspunkt 3; Spalte 6, Zeilen 7 bis 13 von D8).

Das in der zweiten Kammer (Innenraum der Düsen 19) erzeugte Druckfeld besteht aus einem Muster von Unter- und Überdrücken, welche auf den Normaldruck aufmoduliert sind (das Gerät gemäß D8 wird unter Normal-druck, d.h. normalem Raumdruck, verwendet und die Membran schwingt und erzeugt Saug- und Druckimpulse). Damit ist auch Merkmal **M1.4** in D8 offenbart.

Ferner ist auch die erste Kammer (Generator, Schlauch sowie Kanal im Handgriff 2) ausschließlich über das Verbindungselement (Durchgangsboh-rung 22) mit der zweiten Kammer (Innenraum der Düsen 19) verbunden. Andernfalls würde die Vorrichtung aus D8 nicht so funktionieren, wie sie beschrieben ist. D.h. im Umkehrschluss auch, dass keine andere Verbin-dung der ersten Kammer als diejenige zur zweiten Kammer besteht, womit die erste Kammer eine einzige Öffnung, nämlich die Öffnung in den Schlauch 4 hinein, aufweist. Damit offenbart D8 auch Merkmal **M1.5**.

Selbstverständlich weist die zweite Kammer (Innenraum der Düsen 19) eine Öffnung von den Verbindungselementen (Durchgangsloch 22) in die zweite Kammer auf (Merkmal **M1.6**). Sonst wäre hier eine Luftströmung nicht mög-lich.

In der Vorrichtung von D8 sind keine Ventile offenbart. Solche sind auch nicht erforderlich. Daher weist die Vorrichtung aus D8 auch keine Ventile auf (Merkmal **M1.7**).

Gemäß Spalte 5, Zeile 59 von D8 ist das Gerät aus D8 auch als tragbares Gerät ausgebildet, und der Handgriff ist mit der Hand gehalten. Also ist das Gerät als tragbares Handgerät im Sinne des Merkmals **M1.8** ausgebildet. Damit dies auch tatsächlich tragbar ist, wie in Spalte 5 von D8 definiert, wird

17_11_2016-01-00001-00000015

- 14 -

es auch eine Batterie als Energiespeicher aufweisen. Folglich ist die Batterie hier wenigstens implizit offenbart.

Das Verbindungselement (Durchgangsbohrung 22) ist auch starr, da das Teil 20 starr ist (Merkmal **M1.9**).

Die Durchgangsbohrung 22 ist auch als gerader Kanal ausgebildet (vgl. Figur 2) und hat eine Düsenwirkung, da es mit den Austrittsöffnungen 19, die als Düsen ausgebildet sind, verbunden ist. Eine Düsenwirkung entfaltet immer ein verengter Bereich, der sich in einen weiteren Bereich aufweitet. Wenn die Öffnungen 19 als Düsen bezeichnet sind, ist hieraus für den Fachmann verständlich, dass die Durchgangsbohrung 22 einen geringeren Querschnitt aufweist, als die Öffnungen 19, da diese sonst keine Düse bilden würden. Damit ist in D8 auch Merkmal **M1.10** offenbart.

Wie in Merkmal **M1.11** definiert, sind auch die Öffnungen der Durchgangsbohrung 22 in D8 miteinander ausgerichtet, sodass eine Medienströmung bei Kompression der ersten Kammer (Generator, Schlauch und Bohrung im Handgriff 2) durch die Ausrichtung der Öffnung der Durchgangsbohrung 22 auf die Klitoris gerichtet ist, wenn der Handgriff 2 insgesamt entsprechend positioniert ist. Dabei liegt dann auch die Öffnung der Durchgangsbohrung 22 der Klitoris durch die Düse 19 gegenüber, jedenfalls dann, wenn der Behandlungskopf insgesamt entsprechend ausgerichtet ist.

Folglich ist der Gegenstand des Anspruchs 1 nicht neu gegenüber D8.

### V.    Mangelnde erfinderische Tätigkeit, § 59, 21 Abs. 1 Nr.1, 4 PatG

Der Gegenstand des Anspruchs 1 beruht auch nicht auf einer erfinderischen Tätigkeit gegenüber dem Stand der Technik.

1.    US 2008/0304984 A1 (D9) offenbart eine Stimulationsvorrichtung mit einem Gehäuse, das einen zylindrischen Auslass hat, welches auf der Haut positionierbar ist. Damit ist die Stimulationsvorrichtung aus D9 auch geeignet für die Klitoris (Merkmal **M1.1**).

- 15 -

Die Vorrichtung von D9 ist besonders gut in Figur 1 von D9 zu erkennen, welche nachfolgend eingeblendet wird:



Die Stimulationsvorrichtung gemäß D9 weist eine Druckfelderzeugungseinrichtung (Merkmal **M1.2**) auf, die eine erste Kammer hat. Die erste Kammer wird gebildet durch den Zylinder 15 und den Kolben 16. Damit offenbart D9 Merkmal **M1.2.1**.

Der Kolben 16 bildet eine Antriebseinheit, welche das Volumen der ersten Kammer derart verändert, dass ein stimulierendes Druckfeld erzeugt wird (Merkmal **M1.2.4**). Die Bewegung des Kolbens 16 erfolgt über ein Gestänge 17 und einen Motor 12. Im Motor 12 wird ein Schalter 14 betätigt und damit gesteuert. Folglich weist die Vorrichtung aus D9 auch eine Steuereinrichtung im Sinne des Merkmals **M1.3** auf.

Die Vorrichtung aus D9 arbeitet bei Normaldruck und durch Bewegung des Kolbens 16 bildet sich folglich ein Druckfeld aus einem Muster von Unter- und Überdrücken, welche auf den Normaldruck aufmoduliert sind (Merkmal

**M1.4**). Dies erfolgt allerdings zunächst in der ersten Kammer des Zylinders 15.

Ventile sind in der Stimulationsvorrichtung aus D9 nicht offenbart (Merkmal **M1.7**). Sie ist auch als tragbares Handgerät ausgebildet (vgl. Figuren) und weist zwei Batterien 13 auf, die mit dem Motor 12 verbunden sind (Merkmal **M1.8**).

2.    Im Unterschied zu dem patentgemäßen Gegenstand ist die Vorrichtung aus D9 nur als Einkammersystem ausgebildet und weist keine zweite Kammer und folglich auch kein Verbindungselement zu einer zweiten Kammer auf.

3.    Ein Effekt, der sich aus der zweiten Kammer die über ein starres Verbindungselement mit Düsenwirkung mit der ersten Kammer verbunden ist liegt darin, dass eine verbesserte Stimulation der erogenen Zonen, insbesondere der Klitoris, erreicht wird.

4.    Folglich ist es ein Aufgabe ausgehend von D9 die Stimulation für die Klitoris zu verbessern.

5.    Eine Anregung hierzu findet der Fachmann beispielsweise in WO 00/28939 A2 (D10).

D10 offenbart ein Handgerät zur Klitoralstimulation (vgl. Titel, Seite 5, Zeilen 15 bis 24, Anspruch 1 sowie Figuren 10, 11, 14, 15 und 16 von D10 insbesondere).

Das Gerät weist eine Vakuumpumpenmotoranordnung 300 (vgl. Figur 9 sowie Seite 14, letzer Absatz von D10) auf, die dazu vorgesehen ist, in dem Applikationskopf 220 ein Vakuum zu erzeugen. Das Handgerät aus D10 ist auch batteriebetrieben mit einer Batterie 83 (vgl. Figur 10 sowie Seite 15, vierter Absatz von D10).

Der in Figur 9 von D10 gezeigte Schlauch 73 zu der Einheit 350 ist nur optional und kann zusätzlich an den Applikationskopf 22 angeschlossen werden (vgl. Figur 15, dritter Absatz von D10).

Der Applikationskopf 220 weist (vgl. insbesondere Figur 9 und 10 von D10) einen Becher 240 auf, der eine zweite Kammer bildet. Der Becher 240 geht über einen trichterförmigen Bereich zu dem Einlass 310 an dem Handgerät über. Dieser Verbindungskanal zwischen dem Becher 240 und dem Handgerät 310 bildet also ein Verbindungselement zwischen einer zweiten Kammer und einer ersten Kammer, das in dem Handgerät selbst ausgebildet ist. In den Figuren 12 und 13 ist dieser Applikationskopf 220 nochmals genauer dargestellt und beschrieben.

6.  Der Fachmann erkennt also in D10, dass ein solcher Applikationskopf mit einer zweiten Kammer und einem Verbindungselement, welches eine Düsenwirkung entfaltet (das Verbindungselement ist verringert im Durchmesser) besonders gut zur Klitoralmassage eignet.

Der Fachmann wird also bestrebt sein, den Applikationskopf aus D10 mit der Vorrichtung aus D9 zu kombinieren. Dazu wird er das Verbindungselement des Applikationskopfes mit der ersten Kammer aus D9 verbinden und so unmittelbar ohne erfinderisch tätig zu werden auch zu den Merkmalen **M1.2.4**, **M1.5**, **M1.6**, **M1.9**, **M1.10**, **M1.11** und **M1.12** gelangen.

Hierbei stellen sich dem Fachmann keinerlei technische Schwierigkeiten, da auch bei D10 der Becher mit der Pumpe verbunden ist. Der Fachmann muss also lediglich den Becher aus D10 an den Zylinder 15 aus D9 anschließen.

7.  Folglich beruht der Gegenstand des Anspruchs 1 nicht auf einer erfinderischen Tätigkeit, gegenüber der Kombination von D9 mit D10.

## VI.    Unteransprüche

Auch die Unteransprüche scheinen keine Merkmale zu enthalten, die neu oder erfinderisch gegenüber dem Stand der Technik sind.

So sind die Merkmale des Anspruchs 2 beispielsweise aus D10 bekannt; Anspruch 3 ergibt sich in naheliegender Weise für den Fachmann aus seinem Fachwissen; Anspruch 4 ist in D8 und D10 offenbart; die Merkmale des Anspruchs 5 sind ebenfalls in D10 offenbart; die Merkmale des Anspruchs 6 in D8; die Merkmale des Anspruchs 7 in D8 und D10; und die Merkmale des Anspruchs 8 in D8 und D10.

Die Verwendung gemäß Anspruch 9 ergibt sich ohne weiteres aus dem üblichen Einsatz solcher Podukte.

## VII.    Weiterer Stand der Technik

Als weitere relevante Dokumente werden genannt:

D11 - DE 582 196 C

D12 - DE 20 2012 005 414 U1

D13 - EP 1 554 947 B1

D14 - JP 2008-125577 A (japanisch)

D15 - JP 2008-125577 A (englische Übersetzung)

D16 - US 2,112,646 A

D17 - US 1,882,040 A

D18 - US 5,377,701 A

D19 - WO 2013/178223 A2

D20 - DE 1 703 184 U

D21 - DE 32 22 467 A1

D22 - DE 93 09 994 U1

D23 - DE 198 53 353 C2

**Folglich ist der Einspruch begründet und das Patent in vollem Umfang zu widerrufen.**

(Fabian Fegers)

Anlagen:
A0 - Streitpatent DE 10 2013 110 501 B4
A1 – Merkmalsgliederung des Anspruchs 1
A2 – ursprünglich eingereichte Fassung
D1 – WO 2006/058291 A2
D2 – US 2013/0012769 A1
D5 – US 6,099,463 A
D6 – US 1,898,652 A
D7 – DE 14 63 673 U
D8 – DE 42 43 876 A1
D9 – US 2008/0304984 A1
D10 – WO 00/28939 A2
D11 - DE 582 196 C
D12 - DE 20 2012 005 414 U1
D13 - EP 1 554 947 B1
D14 - JP 2008-125577 A (japanisch)
D15 - JP 2008-125577 A (englische Übersetzung)
D16 - US 2,112,646 A
D17 - US 1,882,040 A
D18 - US 5,377,701 A
D19 - WO 2013/178223 A2
D20 - DE 1 703 184 U
D21 - DE 32 22 467 A1
D22 - DE 93 09 994 U1
D23 - DE 198 53 353 C2
Einzugsermächtigung

*Exhibit 38*

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (03-15)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 15023471 |
| Filing Date | 2016-03-21 |
| First Named Inventor | Michael Lenke |
| Art Unit | 3771 |
| Examiner Name | Vo, Tu A. |
| Attorney Docket Number | 14919.0019 |

## U.S.PATENTS    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

## U.S.PATENT APPLICATION PUBLICATIONS    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

## FOREIGN PATENT DOCUMENTS    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2000/28939 | WO | A2 | 2000-05-25 | UROMETRICS, INC. | | |
| | 2 | 4243876 | DE | A1 | 1994-06-30 | LENKE, MICHAEL | | ✕ |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

## NON-PATENT LITERATURE DOCUMENTS    Remove

EFS Web 2.1.17

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number  15023471 |
| | Filing Date  2016-03-21 |
| | First Named Inventor  Michael Lenke |
| | Art Unit  3771 |
| | Examiner Name  Vo, Tu A. |
| | Attorney Docket Number  14919.0019 |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | | |

If you wish to add additional non-patent literature document citation information please click the Add button   **Add**

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | | Date Considered | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | 15023471 |
| | Filing Date | 2016-03-21 |
| | First Named Inventor | Michael Lenke |
| | Art Unit | 3771 |
| | Examiner Name | Vo, Tu A. |
| | Attorney Docket Number | 14919.0019 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

☒ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Richard A. Cheng/ | Date (YYYY-MM-DD) | 2016-12-21 |
| Name/Print | Richard A. Cheng | Registration Number | 65,477 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

*Exhibit 39*

Doc code: IDS

PTO/SB/08a (03-15)

Doc description: Information Disclosure Statement (IDS) Filed

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 15023471 |
| | Filing Date | 2016-03-21 |
| | First Named Inventor | Michael Lenke |
| | Art Unit | 3771 |
| | Examiner Name | Vo, Tu A. |
| | Attorney Docket Number | 14919.0019 |

| U.S.PATENTS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 4428368 | | 1984-01-31 | Torii | |

If you wish to add additional U.S. Patent citation information please click the Add button. **Add**

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. **Add**

| FOREIGN PATENT DOCUMENTS | | | | | | | Remove |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| | 1 | 2153351 | CN | Y | 1994-01-19 | GUAN CHENGXIAO | | ☒ |
| | 2 | 2198900 | CN | Y | 1995-05-31 | LIU JIANHONG | | ☒ |
| | 3 | 582196 | DE | | 1933-08-11 | JOHANNA BOERLAGE | | ☒ |

EFS Web 2.1.17

<table>
<tr><td rowspan="6"><strong>INFORMATION DISCLOSURE STATEMENT BY APPLICANT</strong><br>( Not for submission under 37 CFR 1.99)</td><td>Application Number</td><td colspan="2">15023471</td></tr>
<tr><td>Filing Date</td><td colspan="2">2016-03-21</td></tr>
<tr><td>First Named Inventor</td><td colspan="2">Michael Lenke</td></tr>
<tr><td>Art Unit</td><td colspan="2">3771</td></tr>
<tr><td>Examiner Name</td><td>Vo, Tu A.</td></tr>
<tr><td>Attorney Docket Number</td><td colspan="2">14919.0019</td></tr>
</table>

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 4 | 1554947 | EP | B1 | 2005-07-20 | MATSUSHITA ELECTRIC WORKS, LTD. | ☐ |
| | 5 | 1703184 | DE | U | 1955-07-01 | HERMANN ROHLING K.G. | ☒ |
| | 6 | 9309994.0 | DE | | 1993-11-18 | MICHAEL LENKE | ☒ |
| | 7 | 202012005414 | DE | U1 | 2012-08-16 | FRANK BIERSCHENK | ☒ |
| | 8 | 2008-125577 | JP | | 2008-06-05 | EISUKE IMENAGA | ☒ |
| | 9 | 3222467 | DE | A1 | 1983-12-16 | MASAKATSU TORII | ☒ |
| | 10 | 19853353 | DE | C2 | 2002-05-02 | HUBURTUS BORDFELD | ☒ |

| If you wish to add additional Foreign Patent Document citation information please click the Add button | Add |
|---|---|

| **NON-PATENT LITERATURE DOCUMENTS** | Remove |
|---|---|

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | Maria M. Kettenring, "Erotische Partnermassage", Gräfe und Unser Publishers, 2004, 4 pp. | ✕ |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 15023471 |
| --- | --- | --- |
| | Filing Date | 2016-03-21 |
| | First Named Inventor | Michael Lenke |
| | Art Unit | 3771 |
| | Examiner Name | Vo, Tu A. |
| | Attorney Docket Number | 14919.0019 |

| EXAMINER SIGNATURE | | |
| --- | --- | --- |
| Examiner Signature | | Date Considered | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 15023471 |
| | Filing Date | 2016-03-21 |
| | First Named Inventor | Michael Lenke |
| | Art Unit | 3771 |
| | Examiner Name | Vo, Tu A. |
| | Attorney Docket Number | 14919.0019 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

X  That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐  That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

X  See attached certification statement.

X  The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Richard A. Cheng/ | Date (YYYY-MM-DD) | 2017-02-10 |
|---|---|---|---|
| Name/Print | Richard A. Cheng | Registration Number | 65,477 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

*Exhibit 40*

9,~~849,061~~937,097

Description

CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 15/302,981, filed Oct. 7, 2016, which is a national stage (under 35 U.S.C. 371) of International Patent Application No. PCT/EP2015/67017, filed Jul. 24, 2015, which claims priority to German Patent Application No. 102015103694.0, filed Mar. 13, 2015, ~~both~~the disclosures of which are herein incorporated by reference in their entirety.

TECHNICAL FIELD

~~BACKGROUND OF THE INVENTION~~

The present invention relates to a stimulation device having an appendage for erogenous zones, in particular for the clitoris, a system with a stimulation device, and methods for stimulating body parts.

BACKGROUND

The erogenous zones of the human body can be stimulated with a variety of aids. For example, vibrators are used to apply a stimulus to a particular area of the skin by direct contact. These include stimulation aids for insertion into the human body, such as dildos.

Direct stimulation of the clitoris, for example using a clitoral massage vibrator, is frequently problematic. The clitoris is usually a woman's most sensitive erogenous zone. The entire clitoris is highly innervated, making it particularly touch-sensitive and responsive to sexual stimuli. In this context, the clitoral glans, in which the nerve cords of the two crura meet, should be emphasized in particular. Thus, on the one hand frequent application of a clitoral massage vibrator for direct stimulation leads to habituation effects or conditioning of the stimulated erogenous zone, while on the other the first applications of such a device may require certain practice or familiarization. Moreover, indirect stimulation of the female erogenous zones may be insufficient, or it may be desired to intensify the stimulation effect.

Furthermore, medical studies conducted in 2006 identified the female clitoris as the definitive starting point of the female climax, and for the first time neurologically proved the different qualities of sensation of clitoral and vaginal orgasm. Thus, both the clitoris and the vagina are capable of orgasm.

Furthermore, the sensitivity of the human erogenous zones, such as the clitoris, the inner and outer labia or the nipples, differs greatly from one individual to the next. Moreover, the sensitivity of the corresponding zone can change dramatically from one situation to another or even during a sexual act. Furthermore, a rapid and pronounced stimulation of different erogenous zones is frequently desired.

Various direct and indirect forms of stimulation are usual practice, for example vacuum pumps and dildos.

For indirect stimulation of erogenous zones, and particularly the clitoris, conventional vacuum devices are used to stimulate the erogenous zones of the person concerned without directly

EIS EXHIBIT 1024

contacting the main area to be stimulated. Thus, for example, vacuum pumps for the primary or secondary female sexual organs are known, which usually have a suction cup for placing on the appropriate area and a hand pump. The negative pressure exerted by this type of device on the clitoris, for example, generates a negative pressure in the clitoris itself which is usually below the systolic blood pressure. This difference in pressure results in an enlargement of the clitoris and/or stimulates the blood flow in the affected area. This vascular clitoral engorgement serves both to promote desire by increasing sensitivity and for visual and tactile manipulation. The improved blood circulation also results in an increased secretion of vaginal moisture, which makes the stimulation more pleasurable. However, the manual operation of the hand pump is often onerous or irksome. In addition, the long-term or uninterrupted application of negative pressure with this device category too may result in habituation effects, which limit the effectiveness of the device in the long term.

Electrically driven vacuum pumps are also increasingly used instead of a manually operated vacuum pump. As an example of this, WO 2006/05 82 91 A2 discloses a device for sexual therapy, wherein the arrangement comprises a tubular suction chamber for the clitoris, an electrical vacuum source (vacuum pump) and a plurality of air flow openings. Operation of the vacuum pump generates an ongoing air flow or air exchange in the chamber, in the area of the clitoris. This has the disadvantageous effect of drawing off by suction the vaginal moisture, which is increased as a result of the negative pressure, thus having a drying effect on the stimulated skin parts. Likewise, the drawn-off moist air results in contamination of the fluidically downstream vacuum arrangement, for example the vacuum pump. Such arrangements with vacuum pumps may thus be problematic from the point of view of hygiene, as vacuum pumps and the associated valves or ventilation components often have dead spaces and/or are difficult to clean. Furthermore, the device serves to treat the blood vessels in the clitoris and not to provide stimulation up to sexual climax.

U.S. Pat. No. 6,464,653 B1 discloses therapeutic devices and methods that generate a clitoral engorgement with the aid of a vacuum generated by a vacuum pump to assist in the treatment of clitoral disorders such as incontinence. A control valve or modulator that can be appropriately covered by a finger is used to manually adjust or vary the level of vacuum in the suction chamber. This requires the user's attention and may be irksome or distracting under certain circumstances. This relatively complex device having further valves also has the disadvantages relating to hygiene and dehydration that were mentioned above, with the device moreover serving for long-term therapeutic purposes and not for short-term sexual stimulation.

Thus, the devices of the prior art have the common disadvantage that the complexity of the arrangements generating negative pressure or positive pressure may be high and this device may have problems in respect of hygiene. Moreover, there is a problem of ease of handling the devices, which are frequently uncomfortable to hold and/or require habituation.

Furthermore, the devices of the prior art have the further common disadvantage in that habituation effects occur in the event of long-term, continuous or frequently recurring application of negative pressures.

2 of 19

Another disadvantage of some of the previously described vacuum devices is, firstly, that the negative pressure has to be limited by means of a control valve or a vacuum pump and, secondly, that the negative pressure is supposed to be relieved by means of manually opening a release valve before the suction cup is detached from the skin. Should one of the valves have a technical defect and/or the user operate the device incorrectly, there is a risk of injury in certain circumstances.

Thus, in view of the problems mentioned above, ~~the~~one object of the ~~invention~~embodiments described herein is to provide a stimulation device that has a simple construction, is easy and safe to use, and has a pronounced stimulation effect.

~~The~~This object ~~of the invention~~ is achieved by the stimulation device as ~~claimed in claim 1.~~described herein. Advantageous developments and embodiments are also described herein.

SUMMARY

A stimulation device is provided in accordance with one embodiment. The stimulation device includes a chamber which has a flexible wall portion. In one embodiment, the flexible wall portion may include silicon and may be integral with the ~~subject matter~~chamber. A drive unit of the stimulation device is in physical communication with the flexible wall portion so as to cause deflections of the ~~further independent claims and dependent claims~~flexible wall portion in opposing directions, thereby resulting in a changing volume of the chamber. The changing volume of the chamber results in modulated positive and negative pressures with respect to a reference pressure. The modulated positive and negative pressures are applied to a body part (e.g., a clitoris) through an opening of the stimulation device. For example, the opening of the stimulation device may be placed over the body part to apply the modulated positive and negative pressures. The stimulation device may include an appendage, which can be used as a handle to allow a user to hold and position the stimulation device over the body part. The drive unit is controlled by a control device of the stimulation device.

In one embodiment, the stimulation device includes a second chamber. The changing volume of the chamber results in the modulated positive and negative pressures in the second chamber.

In one embodiment, the stimulation device is rigid such that the stimulation device does not significantly bend. The stimulation device may be a portable, hand-held, battery powered device. The stimulation device may also have an operating element for adjusting the modulated positive and negative pressures and a light emitting diode for indicating a status of the stimulation device.

In accordance with an embodiment, the stimulation device includes a pressure field generator which has a flexible wall portion. A drive unit of the stimulation device is in physical communication with the flexible wall portion so as to cause deflections of the flexible wall portion in opposing directions, thereby resulting in a changing volume of the pressure field generator. The changing volume of the pressure field generator results in modulated positive and negative pressures with respect to a reference pressure. The modulated positive and negative pressures are applied to a body part through an opening of the stimulation device. The stimulation device may include an appendage, which can be used as a handle to allow a user to

hold and position the stimulation device over the body part. The drive unit is controlled by a control device of the stimulation device.

In one embodiment, the pressure field generator includes a first chamber and a second chamber. As such, deflections in the flexible wall portion of the first chamber of the pressure field generator result in the modulated positive and negative pressures in the second chamber of the pressure field generator.

The above-described features and functions of the present invention, and further aspects and features, are further described below with the aid of a detailed description of preferred embodiments with reference to the attached illustrations.

BRIEF DESCRIPTION OF THE DRAWINGS
In the figures:

FIG. 1 shows a front view of a first embodiment of the stimulation device according to the invention, with an appendage in a straight position;

FIG. 2 shows a side view of the first embodiment of the stimulation device according to the invention, with the appendage in an angled position;

FIG. 3 shows a schematic cross section through the first embodiment of the stimulation device according to the invention;

FIG. 4 shows a cross section through a pressure field generating arrangement of a first aspect of the present invention, in the first state;

FIG. 5 shows a cross section through a pressure field generating arrangement of a first aspect of the present invention, in the second state;

FIG. 6 shows a cross section through a pressure field generating arrangement of a first aspect of the present invention, in the third state;

FIG. 7 shows a cross section through a pressure field generating arrangement of a second aspect of the present invention;

FIG. 8 shows a cross section through a pressure field generating arrangement of a third aspect of the present invention;

FIG. 9 shows a cross section through a pressure field generating arrangement of a fourth aspect of the present invention;

FIGS. 10 a), b) and c) show cross sections through a pressure field generating arrangement of a fifth aspect of the present invention;

FIG. 11 shows a partial cross section through a second embodiment of the stimulation device according to the invention;

FIGS. 12 a) to f) show various bottom and side views of further aspects of a second chamber of the present invention;

FIG. 13 shows a block diagram of an embodiment of the present invention; and

FIGS. 14 a) to c) show graphs of various pressure modulation patterns of the present invention.

DESCRIPTION OF PREFERRED EMBODIMENTS

According to ~~the invention~~one embodiment, a pressure field generating arrangement of the stimulation device has at least one first chamber and at least one second chamber having at least one opening for placing on a body part or on the erogenous zone and at least one connection element that connects the first chamber to the second chamber.

~~This~~In one embodiment ~~according to~~the ~~invention, of~~chambers are in fluidic communication via the at least one connection element~~, allows~~ to allow the simple generation of a pressure field in the second chamber by changing the volume in the first chamber~~, this~~ and temporarily direct the generated pressure field ~~being temporarily directed at~~to the area of skin to be stimulated.

A pressure field, in the context of the ~~invention~~embodiments described herein, is a field of medium pressures that is variable over time and has temporary positive pressures and temporary negative pressures, a negative pressure being a pressure of medium that is below the reference pressure and a positive pressure being a pressure of medium that is above the reference pressure. As a result, the medium flows back and forth in the pressure field ~~according to the invention.~~ Thus, preferably a (largely) intermittent exchange of said medium can occur.

The medium is usually gaseous, preferably air, but may for example alternatively or in addition be a liquid medium, such as water or commercially available lubricant. For example, the chambers ~~according to the invention~~ may be filled with the lubricant prior to using the stimulation device. This also allows the corresponding area of skin to be stimulated with a suitable skin-friendly liquid instead of air, which may be desired, depending on the user's individual preference. As a further example, the stimulation device may also be used under water with water as the medium (in the bathtub, for example). In this case the stimulation device is waterproof in form.

The reference pressure is usually the atmospheric pressure acting on the stimulation device that prevails when application begins (i.e. prior to placing the stimulation device on the area of skin to be stimulated). In the preferred application of the stimulation device with air, the reference pressure is the currently prevailing air pressure or normal pressure. For example, when the device is applied under the normal standard conditions the reference pressure may be approximately 1 bar, from which it follows that a negative pressure ~~according to the invention~~ may be for example 0.7 bar and a positive pressure ~~according to the invention~~ may be for example 1.3 bar.

The pressure field according to ~~the invention~~one embodiment is used on the one hand to excite blood circulation of the area of skin to be stimulated, while on the other said area of skin is indirectly massaged. This combines two advantageous effects. The increased blood circulation makes the erogenous zone of the person concerned more sensitive, while moreover generating a massaging effect that serves to stimulate the erogenous zone, for example for sexual arousal up to climax. The massaging effect is generated by the kinetic energy of the medium flowing out of the first chamber through the connection element against the surface of the area of skin to be stimulated. In this way, the massaging effect created by the pressure field is generated indirectly, i.e. without the skin part to be stimulated being in direct contact with a solid body such as a vibrator.

By the exemplary application to the clitoris of the pressure field which is variable over time according to ~~the invention~~one embodiment, the pressure field imitates a stimulation that usually occurs during sexual intercourse. Likewise, the motion of congress during this generates a varying stimulus of the clitoris. It is thus a lifelike simulation of the natural act of congress, with medical findings confirming that application of the pressure field ~~according to the invention~~ causes neither habituation effects nor addiction. This is due in particular to the alternating application of negative and positive pressures (or indeed to the non-continuous application of only one type of pressure).

Furthermore, the maximum applicable pressure is typically limited by the maximum load that may be put on the area of skin to be stimulated. Thus, for instance, too high a negative pressure harbors the risk of painful injury, in particular in erogenous zones. Stimulation devices working only with negative pressures are usually limited to this maximum in their mode of operation. By contrast, according to the ~~invention~~embodiments described herein, the combination of positive and negative pressures creates an extended operational range of the stimulation-triggering pressure field or effect, as the operational range of the pressure can now be exploited to the maximum in both the positive and the negative range.

The orientation of the at least one connection element towards the area of skin to be stimulated allows the pressure field to work directly, the pressure field being decisively affected by the configuration of the at least one connection element and the at least one opening from the connection element into the second chamber, and is thus adjustable depending on the application of the stimulation device. Thus, the at least one opening of the connection element may be located opposite, preferably directly opposite, the body part to be stimulated. For example, the connection element in a stimulation device intended for the clitoris may have, between the first and second chamber, a single passage opening having a nozzle effect on the clitoral glans. Alternatively, the at least one connection element may comprise a plurality of passage openings, for example four, between the chambers if a relatively large area of skin is to be stimulated.

Furthermore, after placing the halfway or partially opened second chamber on the area of skin to be stimulated, a closed system of medium or air flow is created in the pressure field generating arrangement. Thus, the medium or air is moved decisively back and forth between the chambers, while an exchange with medium or air from outside the system is at least largely avoided. Thus, the first chamber is preferably connected exclusively to the second chamber via or through the connection element. Thus, the first chamber has no connections other than those to the second

chamber; for example, there is no direct connection between the first chamber and the environment surrounding the device via a pressure valve or an air discharge channel.

For example, the temperature of the air in the flow system according to ~~the invention~~one embodiment rapidly adjusts to skin temperature, while the irksome supply of new (possibly cold) air from outside the system, as may be the case when using vacuum pumps of the prior art inter alia, is avoided. Drying effects are moreover avoided, as very little or no removal of stimulation-promoting fluid, such as bodily fluid, occurs in a closed system.

Furthermore, due to the simple construction, the pressure field generating arrangement according to ~~the invention~~one embodiment has the advantage of better hygiene and improved cleaning capacity. Here, the ~~present invention~~pressure field generating arrangement avoids valves or pumps/compressors with potential dead spaces and places that cannot be cleaned. The pressure field generating arrangement ~~according to the invention~~ is thus easy to clean. For example, the stimulation device can be cleaned in a simple manner by filling the first chamber with a cleaning agent and activating the pressure field. Alternatively, the second chamber can be arranged to be replaceable, which also simplifies the cleaning of both chambers. Furthermore, the chambers ~~according to the invention~~ and the connection element of the pressure field generating arrangement can be manufactured in one piece, wherein they are made for example of a single plastic molded part (e.g. rubber). As a further alternative, the first chamber, the second chamber and the connection element may be made in one piece.

Moreover, the construction according to ~~the invention~~one embodiment has the result of avoiding complex fluid engineering elements such as valves, which results in simplified manufacture.

Furthermore, the stimulation device according to ~~the invention~~one embodiment has a drive unit that varies the volume of the first chamber such that a pressure field is generated via the connection element in the second chamber, this pressure field serving to stimulate the erogenous zone, and a control device that activates the drive unit.

The principle of the ~~invention~~embodiments described herein means that the medium transported between the chambers is limited in volume to the maximum volume of the first chamber. Moreover, the transported volume can be further limited, as a result of its construction, by the maximum possible change in volume brought about by the drive unit.

Consequently, the maximum positive or negative pressure the stimulation device can build up in the second chamber is limited due to the dimensions of the components of the pressure field generating arrangement and the drive. In particular, the maximum positive or negative pressure can be limited to an amount that minimizes or rules out any risk of injury for the areas of skin to be stimulated. As a result, a safety valve that is usual in the prior art, or a manual intervention in the stimulation process by the user, such as the opening of a release valve, is for example rendered unnecessary.

Furthermore, the variation over time in the pressure field or the modulation of the pressure field by the control device is controlled largely automatically. Thus, the modulation of the pressure field, such as intensity, time profile or sequence, can be previously stored in the control device.

Preferably, the variation over time in the pressure field can have a regular or recurring (stimulation) pattern, such as pulses at a predetermined cycle rate or regularly alternating pulse sequences. This allows the user's interaction with the stimulation device to be limited ~~according to the invention~~ to switching on and off and selecting the stimulation pattern, while the stimulation device automatically executes the preferred stimulation pattern. Thus ~~, according to the invention~~, the complexity of using the stimulation device is low, particularly when compared with conventional (medical) vacuum stimulation devices. Alternatively or in addition, the stimulation pattern of the stimulation device can be individually configured by the user during or before operation.

Moreover, according to ~~the invention~~one embodiment, the stimulation device is provided with (at least) one appendage. On the one hand this appendage may be used as a handle in order to hold the stimulation device easily and comfortably, and on the other the appendage may also be used as a direct stimulation aid for insertion into the human body or indeed for placing on the human body.

If the appendage is inserted into the human body, it serves for direct stimulation of the body part concerned. Thus, it supplements the indirect stimulation effect of the pressure field generating arrangement. It is thus possible for a direct and an indirect stimulation of a plurality of erogenous zones to occur simultaneously or alternately. For example, the appendage may be inserted into the female vagina, while stimulation of the clitoris may take place at the same time or alternately by means of the pressure field according to ~~the invention.~~one embodiment. Accordingly, the principle ~~according to the invention~~ of the combined direct and indirect stimulation may also be applied to other body parts, or the erogenous zones thereof. For example, the appendage may be placed on a woman's clitoris while the pressure field generating arrangement stimulates another woman's or the same woman's clitoris.

In this way, the stimulation device having an appendage may be used by only one person or indeed by two different people for the stimulation of a plurality of erogenous zones.

The combination of direct and indirect stimulation results in an improvement in the stimulation effect and a versatile applicability of the stimulation device. Moreover, further, alternative types of play during the sexual act are possible using the inventive stimulation device having an appendage.

Thus, according to ~~the invention~~one embodiment, a stimulation device which has a plurality of cumulative orgasm- or stimulation-triggering effects and is suitable for the stimulation of a plurality of erogenous zones, in particular the female clitoris, is provided. Furthermore, a device is provided which avoids dehydration of the erogenous zones to be stimulated, is hygienic and avoids habituation effects.

According to ~~a development of the invention~~one embodiment, the appendage is movable with the pressure field generating arrangement, for example being connected by means of a joint at one end of the appendage. In this way, the stimulation device may be adapted to the anatomy of the human body in question and to its use. For example, the appendage may be inserted into the female vagina in order then to adapt the angle between the pressure field generating arrangement

and the appendage such that the opening of the second chamber can be placed precisely over the clitoris. Consequently, the area of the body between the clitoris and the vagina is stimulated from both sides, mutually enhancing the effects of direct and indirect stimulation.

If the appendage is used as a handle for holding the stimulation device, the angle between the handle and the opening of the second chamber can be adapted to suit the preferences of the user of the device.

According to a development of the inventionone embodiment, the appendage is a stimulation aid which is shaped such that the appendage can be inserted into the human body, for example the vagina, for direct stimulation. In this case, the appendage preferably takes the form of a dildo. Here, sharp corners in particular are avoided. Thus, the appendage is preferably in a form such that it can be inserted smoothly into body cavities and/or also remain inserted therein.

According to a development of the inventionone embodiment, the appendage (140) is an elongate, lens-shaped or pillow-shaped body which is adapted such that the appendage can be inserted smoothly into the female vagina. This improves the direct stimulation effect.

According to a development of the inventionone embodiment, the appendage is mounted on the pressure field generating arrangement such that the stimulation device is unitary in form. Here, unitary means in particular that the stimulation device having an appendage and a pressure field generating arrangement takes the form of an integrated, cohesive device. Preferably, in this case the appendage and the pressure field generating arrangement transition into one another seamlessly. This improves hygiene and operability of the stimulation device.

According to a development of the inventionone embodiment, the appendage has a vibration device. This vibration device may be actuated such that the appendage vibrates, as known in the case of electromechanically operated dildos. In this case, the vibration may either be activated independently of the other parts of the stimulation device, or indeed the vibration may be controlled by means of the control device, which in that case controls the drive unit of the pressure field generating arrangement as well. Preferably, the vibration may be controllable in a conventional manner as regards intensity, duration and sequence. The vibration intensifies the direct stimulation effect.

According to a further aspect of the invention, according to further independent claim 20one embodiment, a system havingcomprises the stimulation device according to the invention is proposed which hasand a remote control device arranged separately from the stimulation device, wherein the control device of the stimulation device is remotely controlled by the remote control device. This allows a conventional wireless (for example via radio) or wired remote control to be employed in order to allow remote-controlled modulation of the stimulation device or activation thereof by another user.

According to a further aspect of the invention, as claimed in claims 21 to 25one embodiment, methods for stimulating body parts, in particular the clitoris, are proposeddescribed herein. The associated advantageous effects are explained in more detail above in relation to the pressure field and the appendage.

9 of 19

According to ~~a further aspect of the invention, as claimed in claim 19, the use of~~one embodiment, the stimulation device ~~according to the invention~~may be used as a sex toy for stimulating the female clitoris~~ is proposed~~. As explained in the introduction, the female clitoris is a particularly sensitive erogenous zone in women, which is why the use ~~according to the invention~~ of an indirect massaging stimulation, combined with a negative-pressure stimulation, for this body part for stimulation up to orgasm appears particularly advantageous.

In ~~the present invention~~one embodiment, the methods for stimulating erogenous zones serve for sexual pleasure, and thus the methods do not serve for medical, for example therapeutic, purposes.

~~The above-described features and functions of the present invention, and further aspects and features, are further described below with the aid of a detailed description of preferred embodiments with reference to the attached illustrations.~~

~~BRIEF DESCRIPTION OF THE DRAWINGS~~
~~In the figures:~~

~~FIG. 1 shows a front view of a first embodiment of the stimulation device according to the invention, with an appendage in a straight position;~~

~~FIG. 2 shows a side view of the first embodiment of the stimulation device according to the invention, with the appendage in an angled position;~~

~~FIG. 3 shows a schematic cross section through the first embodiment of the stimulation device according to the invention;~~

~~FIG. 4 shows a cross section through a pressure field-generating arrangement of a first aspect of the present invention, in the first state;~~

~~FIG. 5 shows a cross section through a pressure field-generating arrangement of a first aspect of the present invention, in the second state;~~

~~FIG. 6 shows a cross section through a pressure field-generating arrangement of a first aspect of the present invention, in the third state;~~

~~FIG. 7 shows a cross section through a pressure field-generating arrangement of a second aspect of the present invention;~~

~~FIG. 8 shows a cross section through a pressure field-generating arrangement of a third aspect of the present invention;~~

~~FIG. 9 shows a cross section through a pressure field-generating arrangement of a fourth aspect of the present invention;~~

FIGS. 10a ), b) and c) show cross sections through a pressure field generating arrangement of a fifth aspect of the present invention;

FIG. 11 shows a partial cross-section through a second embodiment of the stimulation device according to the invention;

FIGS. 12a ) to f) show various bottom and side views of further aspects of a second chamber of the present invention;

FIG. 13 shows a block diagram of an embodiment of the present invention; and

FIGS. 14a ) to c) show graphs of various pressure modulation patterns of the present invention.

DESCRIPTION OF PREFERRED EMBODIMENTS

With reference to FIGS. 1, 2 and 3, a first embodiment will be explained below. FIG. 1 shows a front view of the first embodiment of the stimulation device 1 according to the invention, with an appendage 140 in a straight position, while FIG. 2 further shows a side view of the stimulation device 1 with the appendage 140 in an angled position, and FIG. 3 shows a cross section of the first embodiment of the stimulation device 1 according to the invention.

The first embodiment of the stimulation device 1 is a preferably portable electrical or small device that has a housing 8, a pressure field generating arrangement 2, an optional on/off switch 74 and an optional light 9.

The housing 8 preferably takes an ergonomic form such that it can be held comfortably in one hand and has no sharp or pointed edges. Furthermore, the housing 8 may be made of a plastics material such as polycarbonate (PC) or acrylonitrile butadiene styrene (ABS). Moreover, the gripping areas or even the entire housing may be supplemented by or be made of a silicone which has advantageous tactile properties. The housing 8 preferably takes an at least water-resistant or splash-proof form, for example protection class IP 24. Furthermore, the broken line in FIG. 2 indicates an optional side edge of the housing 8.

The optional on/off switch 74 serves to activate and deactivate the stimulation device 1. This on/off switch 74 may for example be a push button, which switches the stimulation device 1 on or off when held down, or a latching slide switch. Alternatively, it may be possible to switch the stimulation device 1 on and off by remote control.

The pressure field generating arrangement 2 of a first embodiment has a first chamber 3 in the interior of stimulation device 1, a second chamber 4 for placing on a body part 11 to be stimulated, and a connection element 5 that connects the first chamber 3 to the second chamber 4.

A drive unit 6, for example an electric motor, drives the first chamber 3 via a shaft 61 and by means of a cam 62 (or alternatively by means of a connecting rod) such that the volume of the first chamber 3 changes in accordance with rotation of the shaft 61 of the drive unit 6. On this

point, it should be noted that any types of drive that cause a deflection of the wall 31 of the first chamber 3 for a change in volume can in principle be used in the stimulation device 1. This may for example be performed hydraulically, pneumatically, piezoelectrically, mechanically or electromagnetically. Examples of this are described in more detail below.

A control device 7 activates the drive unit 6, optional operating elements 71 and at least one optional display 72. Here, the control device 7 and the drive unit 6 are supplied with power for example by the internal battery 76 and/or the external power supply 73.

The stimulation device 1 further has at least one appendage 140. This appendage 140, which is preferably part of the housing 8, may optionally be moved or angled in relation to the housing part in which the pressure field generating arrangement 2 is accommodated. Here, the appendage may be angled or indeed rotated by means of a joint 141. The joint 141 may for example take the form of a plastically deformable plastic part, an adjustable joint or a hinge. FIG. 2 shows an example of a position of the appendage 140 which is angled in relation to the section of the housing 8 of the stimulation device 1 in which the pressure field generating arrangement 2 is accommodated. Alternatively, the appendage may also take a rigid or immovable form.

The appendage 140 is preferably a stimulation aid for insertion into the human body, for example the vagina or other bodily orifices. Here, the appendage 140 is shaped for example as a conventional dildo. Alternatively, the appendage may be constructed such that it is adapted to the human anatomy of another bodily orifice, for example the mouth. Moreover, the appendage 140 may take a form such that it can also be used as a handle in order to hold the stimulation device 1 comfortably.

Moreover, the appendage 140 may optionally have a vibration device 142 that can be capable of being switched on and/or controlled. The vibration device 142 causes the appendage to undergo mechanical vibrations that support the direct stimulation effect of the appendage 140.

Optionally, the appendage 140 is mounted on the section of the housing 8 that accommodates the pressure field generating arrangement 2 such that the (entire) housing 8 of the stimulation device 1 takes a unitary form. In this way, the housing 8 creates the impression of being in one piece, for example by means of flexible and/or seamless connection elements of the housing 8. Alternatively, the housing 8, including the appendage 140, may have a silicone coating.

In a straight or non-angled orientation of the appendage 140, as shown in FIG. 1, the stimulation device 1 can be comfortably held, or indeed inserted into bodily orifices in a simple manner. If the appendage 140 is angled, as shown in FIG. 2, for example after insertion, the opening 42 can thus be guided out of the body part 11 to be stimulated. In this angled position of the stimulation device 1, both a direct and an indirect stimulation of at least one erogenous zone of the body can take place simultaneously. In this case, the body part 11 to be stimulated is located between the appendage 140 and the pressure field generating arrangement 2.

Furthermore, an optional light 9 can be provided on or in the housing 8. Here, the light 9 preferably serves for lighting the interior of the second chamber 4. The light 9 can either be switched on by the user or automatically activated when the stimulation device 1 is activated.

Furthermore, the light 9 can take the form of energy-saving light emitting diodes. The light can for example serve in the dark as an orientation aid for the user of the stimulation device 1, or as additional visual stimulation.

With reference to FIGS. 4, 5 and 6, the construction and function of a first aspect of the pressure field generating arrangement 2 of the stimulation device 1 will be described below in more detail.

FIG. 4 shows the pressure field generating arrangement 2 in a first state, with the second chamber 4 placed on the area of skin or body part 11 to be stimulated. The first state of the pressure field generating arrangement 2 is characterized by a neutral deflection of the first chamber 3, i.e. no external force acts on the first chamber 3, for example from the drive unit. Here, the volume V1 of the first chamber is the standard volume of this chamber 3.

The body part 11 to be stimulated is an area of skin on the body, wherein here for example a particularly sensitive erogenous zone, the clitoris 12, is shown. Thus, use of the ~~present invention~~stimulation device 1 is not limited to the female clitoris ~~11~~12, however; rather, the stimulation device 1 can be applied to all body parts or erogenous zones (such as the inside of the thighs, lumbar region, nape of the neck, nipples, etc.) which can be stimulated by means of medium- or air-pressure massage and/or negative pressure.

Because it is placed on the body part 11 to be stimulated, the second chamber 4 forms a chamber that is largely or completely closed off from the exterior of the pressure field generating arrangement 2 and whereof the only remaining connection to the second chamber is via the connection element 5, wherein the edges of chamber 4 ideally form an air-tight enclosure with the surface of the body part 11. Two communicating chambers 3 and 4 are created in this way, wherein a corresponding pressure equalization between the chambers 3 and 4 via the connection element 5 occurs in the event of a change in volume in one of the chambers 3 or 4.

A wall 31 of the first chamber 3 is secured by means of a holder 32. The holder 32 is in turn attached to the housing 8. The wall 41 of the second chamber is furthermore mounted on the holder 32. Two mutually aligned openings in the wall 41 of the second chamber and the holder 32 together form the connection element 5, which connects the first chamber 3 and the second chamber 4. In this arrangement, the wall 31, the holder 32 and the wall 41 are preferably joined to each other by adhesion to be medium- or air-tight. Alternatively, they can also be press-fitted or screwed to each other (for example with the aid of sealing areas between the housing 8 and the respective part). The holder 32 can also be joined to the housing 8 for example by adhesion or screws.

The wall 31 of the first chamber 3 is preferably made of a flexible medium- or air-tight material such as rubber. The holder 32 is preferably made of a rigid plastics material which is likewise medium- or air-tight. The wall 41 of the second chamber is preferably made of a flexible, skin-friendly material such as silicone or rubber.

FIG. 5 shows the pressure field generating arrangement 2 of FIG. 4 in a second state, wherein the second chamber 4 is once again placed on the body part 11 to be stimulated. The second state is

characterized in that a force A acting on the first chamber 3 causes the chamber 3 to expand. To be precise, in this exemplary embodiment the force A draws the wall 31 of the first chamber 3 in a direction away from the second chamber 4.

This increases the volume V2 in the chamber 3, i.e. V2>V1. To equalize the difference in pressure created between the chambers 3 and 4, the medium or air now flows from the second chamber 4 into the first chamber 3.

Assuming that in the first state the pressure in the chambers 3 and 4 corresponds to the currently prevailing external reference pressure (air pressure for example), the overall pressure that is present in the second state will be lower than the external reference pressure. This negative pressure is set such that it is preferably lower than the usual systolic blood pressure in the blood vessels of the body part 11. The blood circulation in this area thus increases, and the clitoris 12 is better supplied with blood in the second state.

FIG. 6 shows the pressure field generating arrangement 2 in a third state, wherein the second chamber 4 is once again placed on the body part 11 to be stimulated. The third state is characterized in that a force B acting on the first chamber 3 causes a volume reduction or compression in the chamber 3. To be precise, the direction of the force B is opposed to the direction of the force A and deforms the wall 31 of the first chamber such that the resulting volume V3 of the chamber is smaller than the volume V1. The compression of the chamber 3 causes a positive pressure in the chamber 3, which is equalized by a medium or air flow through the connection element 5 in the direction of the second chamber 4.

This flow of medium is now preferably directed, by the orientation of the opening 51 and/or of the connection element 5, towards the body part 11 to be stimulated, in particular towards the glans of the clitoris 12. The indirect (pressure) massage according to ~~the invention~~one embodiment occurs as a result of the medium flowing onto the body part 11. The size of the opening 51 is in this case dimensioned such that it is small enough in relation to the volume displaced in the first chamber 3 to sufficiently accelerate the medium for a perceptible massaging effect.

Furthermore, the type of flow can not only be advantageously influenced by the size and orientation of the opening 51 but also by the inner configuration of the connection element. For example, helical grooves in the connection element 5 can cause the flow according to ~~the invention~~one embodiment to swirl, wherein the flow profile develops a "softer" or more turbulent action on the body part to be stimulated. Alternatively, the pressure field produced in the second chamber 4 can be adjusted to suit the application by means of a plurality of openings 51.

The advantage of the arrangement shown in FIGS. 4 to 6 is that it is unproblematic from the point of view of hygiene (because dead spaces are avoided, for example) and is simple to manufacture. For example, no valves or further openings in or on the first chamber 3 are required.

FIG. 7 shows a second aspect ~~of the present invention~~ with an alternative construction of the pressure field generating arrangement 2. Here, the walls 31 and 41 of the first and second chambers 3 and 4 can engage with one another such that, as in the first aspect of construction of the pressure field generating arrangement 2, they form two communicating chambers with a connection element 5. Thus, a separate holder is not required, while the second chamber 4 is replaceable. Moreover, the connection element 5 can take a form integral or in one piece with the wall 41 of the second chamber 4. A replaceable chamber 4 has the advantage that in this way various shapes of the chamber 4 that are adjusted to the respective body part can be used (a more detailed description thereof is provided below) without the need to replace the entire stimulation device 1. Alternatively, the second chamber 4 can also be attached to the housing 8 by being pushed on (not shown in more detail). The wall 31 of the first chamber 3 can be joined to the housing 8 by adhesion or screws for example.

It is also possible, as shown in more detail in FIG. 7 by the broken line and the double arrow C, for the first chamber 3 to be expanded and compressed by a force acting perpendicularly to the axial direction of the connection element 5. In principle, the force exerted indirectly or directly on the first chamber 3 by the drive unit 5 can be exerted from any direction. The only decisive criterion here is that the volume of the first chamber 3 can be increased and decreased by the drive unit 6.

FIG. 8 shows a third aspect of ~~the invention with~~ a one-piece structure of the pressure field generating arrangement 2. Here, a resilient material such as silicone or rubber can be used as material for the chambers 3 and 4. The advantage here is that any gaps that are dubious from the point of view of hygiene are avoided, and the cost of manufacture is reduced. The pressure field generating arrangement 2 can be joined to the housing 8 by adhesion or screws in this case too. A change in the volume of the first chamber 3 occurs here in a manner analogous to that described in conjunction with FIG. 7.

FIG. 9 shows a fourth aspect of ~~the invention with~~ an alternative construction of the pressure field generating arrangement 2. Here, the second chamber 4, a plurality of connection elements 5, and partial sections of the wall 31 of the first chamber 3 are constructed in one piece. Alternatively, the pressure field generating arrangement 2 can also be constructed in two or more pieces from individual components, while retaining the geometric shape of FIG. 9, in a similar way to that shown in FIG. 4 or 7.

In this case, the volume in the chamber 3 is changed in a manner similar to a piston pump, although there are no valves of any kind here. Thus, a piston 63 is moved back and forth by the drive unit, for example an electric motor or electromagnet, in the directions of the double arrow D. This type of drive has the advantage that the volume of the first chamber 3 can be reduced to zero or approximately zero in a simple manner, thus allowing the first chamber 3 to be almost completely emptied.

The embodiment of the connection element 5, with a plurality of channels 52 and openings 51, results in a distribution of the pressure field over a plurality of concentration points. While the embodiment of the connection element 5 with only one channel, as described in conjunction with FIG. 6, results in the formation of a highly concentrated medium or air flow onto a target area,

the embodiment of the connection element 5 shown in FIG. 9 allows the medium or air flow to be distributed over a plurality of target areas. In this way, the flow can for example be blown against the clitoris 11 not just on its glans, but evenly from a plurality of sides. Depending on the application, this distribution of the air flow concentration to a plurality of areas can help to avoid overstimulation and/or help to increase the stimulation area.

FIGS. 10a to 10c show a fifth aspect of the invention with (partial) cross sections of one embodiment of a construction of the pressure field generating arrangement 2 with a bending element 64 as the drive for changing the volume in the first chamber 3. The bending element 64 can for example be a conventional piezoelectric bending element, which is deformed or bent once a voltage is applied. In this aspect of the invention embodiment, the wall 31 of the first chamber 3 takes a rigid or stiff form, while the bending element 64 is made to fit suitably against the sides of the first chamber 3. The transition points between the bending element 64 and the wall 31 are in this case sealed (resiliently joined by adhesion, for example). In this construction, the drive for the pressure field generating arrangement 2 is already integrated therein, and an external drive is not required. An electric motor with a cam is not needed, for example. This allows, inter alia, the reduction of any disruptive natural resonances due to movement of the cam of the stimulation device.

FIG. 10a shows in detail the pressure field generating arrangement 2 with the bending element 64 in a neutral position. Thus, the volume of the first chamber 3 with the bending element 64 in the neutral position is the standard volume. FIG. 10b furthermore shows the first chamber 3 with an excited and, consequently, outwardly bent bending element, for which reason the volume of the first chamber 3 has increased; consequently, a negative pressure prevails in the pressure field generating arrangement 2. FIG. 10c shows a bending element of the first chamber 3 excited in the opposite direction to FIG. 10b , for which reason the volume of the first chamber 3 has decreased; consequently, a positive pressure prevails in the pressure field generating arrangement 2.

FIG. 11 shows a second embodiment of the invention with a spatially separated arrangement of the chambers 3 and 4 of the pressure field generating arrangement 2. The chambers 3 and 4 are in this case connected via an extended connection element 5, which can be a relatively long flexible hose or a pipe, which may also be rigid. For example, the connection element 5 may be 0.5 m in length. This enables the housing 8 to be held in one hand while the other hand holds the second chamber 4 on the body part 11 to be stimulated; or the housing 8 may simply be laid aside, while the user holds only the second chamber 4 in both hands. Alternatively, the appendage 140 can be inserted into a body part, in which case it is no longer necessary for the stimulation device 1 to be held in the hand.

FIGS. 12a 12 a) to 12 f) show various bottom and side views of further aspects of the second chamber 4 of the present invention. in accordance with one or more embodiments. In detail, FIG. 12a 12 a) shows a bottom view of a circular second chamber 4 with a central opening 51; FIG. 12b 12 b) shows a bottom view of a triangular second chamber 4 with a central opening 51; FIG. 12c 12 c) shows a bottom view of an oval second chamber 4 with a central opening 51; and FIG. 12d 12 d) shows a bottom view of an approximately eight-shaped second chamber 4 with two openings 51 arranged offset from the center. FIG. 12e 12 e) furthermore shows a side cross

section of a second chamber 4 ~~according to the invention~~, wherein the second chamber 4 additionally has an extended contact surface 43 for the skin or a support part 43 to improve the sealing function of the second chamber 4 on the skin. The extended contact surface 43 may moreover have grooves or projections that improve the sealing function even further. FIG. ~~12f~~ 12 f) shows a side cross section of a second chamber 4 having a plurality of separate connection elements 5 and an extended contact surface resulting from the support part 43.

The shape of the second chamber 4 can thus be fundamentally adjusted to the anatomy of the erogenous zone to be stimulated. The shape of the chamber 4 in FIG. ~~12a~~ 12 a) is, for example, adjusted to the round shape of the breast, while the shape of chamber 4 in FIG. ~~12c~~ 12 c) is better suited to the shape of the female vulva. Furthermore, the shape of the second chamber 4 also determines how pronounced the pressure field ~~according to the invention is.~~ is. The size of the second chamber 4 in relation to the volume displaced from the first chamber 3 thus determines the level of the achievable negative or positive pressure. Furthermore, the proximity of the opening 51 of the connection element 5 to the area of skin to be stimulated can also be used to determine the intensity of the massaging effect ~~according to the invention~~ on said area of skin. A plurality of openings 51, cf. FIG. ~~12d~~ 12 d), allows the massaging effect to be distributed over a plurality of areas. Thus, for example, the clitoris can be stimulated less directly at the very sensitive clitoral glans (cf. FIG. ~~12e~~ 12 e)) but more at the areas surrounding the clitoral glans, in order to prevent overstimulation of the clitoris.

FIG. 13 shows a block diagram of an example of the functional construction of an embodiment ~~of the present invention,~~ having a control device 7, a drive unit 6, a light 9, an on/off switch 74, operating elements 71, a battery 76 and an external power supply 73.

The control device 7, which for example has a microcontroller or is hardwired, initially controls the power supply to all the consumers of the stimulation device 1 and optionally controls a process of charging and discharging the battery 76 and/or battery management. ~~En~~In particular, the control device 7 controls the excitation of the drive unit 6, such as the size of the deflection, the frequency, the modulation, etc.

Optionally provided operating elements 71 serve to set the mode of the device, i.e. to set the modulation pattern of the pressure field. The operating elements 71 may for example take the form of at least one push button, at least one rotary switch, or at least one touch-sensitive switch. Furthermore, the operating elements 71 may emit optical feedback for the purpose of confirmation, for example by means of light emitting diodes (LEDs) integrated in the switch.

An optional display 72 serves to inform the user of the device state and/or the set condition. The display 72 may for example take the form of a plurality of light emitting diodes or an LCD display. The displayed information may for example be the charging condition of an optional battery, or the current setting of the modulation pattern.

Furthermore, the control device 7 may have a memory in which at least one modulation or stimulation pattern (described in more detail in conjunction with FIGS. ~~14a~~ 14 a) to d)) is stored. Excitation of the drive unit 6 can now be activated via the operating elements 71 in accordance with this previously stored stimulation pattern, depending on the choice made by the user of the

17 of 19

stimulation device 1. The stimulation pattern of the pressure field can also be optionally and individually generated and stored by the user via the operating elements.

A socket (not shown in detail) can serve to supply external power to the stimulation device 1 via an external plug that is for example connected to an external mains adapter. In order to ensure that the stimulation device 1 is splash-proof, it is also possible, instead of the socket, to provide an electromagnetically inductive transformer that allows power to be supplied to the stimulation device 1 without an electrically conductive contact. Preferably, the stimulation device 1 moreover has a battery, for example a nickel metal hydride battery (NiMH), for wireless operation. Alternatively, a (relatively long) power supply cable may lead out of the stimulation device.

FIG. ~~14a~~ 14 a) shows the sequence over time of overall pressure p in the pressure field generating arrangement (2) when the latter is used for stimulation. The broken line indicates the reference pressure, for example the currently prevailing atmospheric pressure, outside the pressure field generating arrangement (2). If the second chamber 4 is now placed on the body part 11 to be stimulated, the initially prevailing ambient pressure remains approximately constant in the pressure field generating arrangement (2). It is assumed that the second chamber 4 is placed on the body part to be stimulated such that it is largely air-tight. Once the stimulation device is activated, the drive unit 6 is activated or excited by the control device 7 in accordance with a previously stored stimulation pattern. Accordingly, the volume of the first chamber 3 and thus the overall pressure in the pressure field generating arrangement 2 are changed, with the changes in pressure being modulated onto the reference pressure. The pressure or stimulation pattern shown as an example in FIG. ~~14a~~ 14 a) develops a pulsed, regular pressure field. In phases of pressure increase, air is blown against or massages the erogenous zone to be stimulated, whereas at times when a negative pressure prevails the blood circulation in the body part 11, for example the clitoris, is favored. Thus, there are time periods ~~according to the invention~~ (designated in FIG. ~~14a~~ 14 a) as I)) in which a negative pressure prevails while the clitoris is simultaneously being indirectly massaged.

FIG. ~~14b~~ 14 b) shows three examples of alternative stimulation patterns. Thus, the area designated as II) shows a pulsed stimulation pattern of high amplitude. The area designated as III) shows a pulsed stimulation pattern of low amplitude. Furthermore, the area designated as IV) illustrates a stimulation pattern which is irregular as regards sequence over time and asymmetrical in amplitude. The patterns can be varied, depending on the effect on the body/application and in accordance with the wishes of the individual.

FIG. ~~14c~~ 14 c) shows a further example of an alternative stimulation pattern. Here, the intensity of the pressure may increase with time in order to adjust to the user's state of excitement.

In addition to the embodiments that have been explained, ~~the invention allows for~~ further constructional principles are allowed. For example, different arrangements or constructions of the first chamber 3 may be combined as desired with different embodiments of the second chamber 5 or the connection element 5. For example, the first chamber 3 having the drive in FIG. 10 can be combined with the second chamber in FIG. ~~12f~~ 12 f).

Although only one first chamber 3 is shown in all embodiments, two or more first chambers 3 may also be provided, which are then driven accordingly simultaneously or with a time delay such that their volume is changed in order to build up a pressure field ~~according to the invention~~.

Although only one opening from the first chamber 3 to the connection element 5 is shown in all embodiments, a plurality of openings for a connection element 5 or indeed a plurality of openings for a plurality of connection elements 5 may also be provided in the first chamber 3.

A stimulation device 1 can have a plurality of pressure field generating arrangements 2. Thus, for example, two pressure field generating arrangements may be provided in order to stimulate two erogenous zones simultaneously.

The stimulation patterns ~~according to the invention~~ can differ from the patterns shows in FIGS. ~~14a~~ 14 a), b) and c), provided they have a sequence of positive and negative pressures over time. For example, a relatively long-lasting negative pressure can initially be built up at the beginning or after activation of the device (for example 3 minutes), in order to effectively increase the blood circulation in the zone to be stimulated, after which pulses of negative and positive pressures of slowly increasing amplitude follow.

19 of 19