**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EIS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 19-cv-1227-LPS |
| | § | |
| INTIHEALTH GER GMBH, | § | **Demand For Jury Trial** |
| WOW TECH USA, LTD., WOW TECH | § | |
| CANADA, LTD. and NOVOLUTO GMBH, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| NOVOLUTO GMBH, | § | |
| | § | |
| Counterclaimant, | § | |
| | § | |
| v. | § | |
| | § | |
| EIS, INC., EIS GMBH, | § | |
| TRIPLE A IMPORT GMBH, | § | |
| and TRIPLE A MARKETING GMBH, | § | |
| | § | |
| Counterclaim Defendants. | § | |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND**
**COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Defendants, IntiHealth Ger GmbH ("IHG"), WOW Tech USA Ltd. ("WTU") WOW

Tech Canada Ltd. ("WTC"), and Novoluto GmbH ("Novoluto") (collectively "WOW Tech" or

"Defendants") respond to the Third Amended Complaint ("TAC") filed by Plaintiff, EIS, Inc.

("EIS" or "Plaintiff") as they are numbered in the TAC, as follows.

**THE PARTIES**

1.      Plaintiff EIS is a Delaware corporation, having a principal place of business at

110 Wall Street, New York, New York, 10005.

**ANSWER:**   Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 1 and therefore deny the allegations contained in this paragraph.

2.      On information and belief, Defendant WOW Tech USA Ltd. ("WOW Tech USA") is a Delaware corporation. WOW Tech USA has a registered agent for service of process at 1209 Orange Street, Wilmington, Delaware, 19801, and a mailing address at 103 Foulk Road, Suite 202, Wilmington, Delaware, 19803.

**ANSWER:**   Defendants admit the allegations in Paragraph 2.

3.      On information and belief, Defendant WOW Tech Canada Ltd. ("WOW Tech Canada") is a company organized and existing under the laws of Canada, with a mailing address at 330-1130 Morrison Drive, Ottawa ON K2H 9N6, Canada.

**ANSWER:**   Defendants admit the allegations in Paragraph 3.

4.      On information and belief, Defendant IntiHealth Ger GmbH ("IHG") is a company organized and existing under the laws of Germany, with a principal place of business at Friedenstraße 91-91a, 10249, Berlin, Germany.

**ANSWER:**   Defendants admit the allegations in Paragraph 4.

5.      On information and belief, Defendant Novoluto GmbH ("Novoluto") is a company organized and existing under the laws of Germany, with a principal place of business at Friedenstraße 91-91a, 10249 Berlin, Germany.

**ANSWER:**   Defendants admit the allegations in Paragraph 5.

6.      On information and belief, WOW Tech USA, WOW Tech Canada, and Novoluto are wholly owned subsidiaries of IHG.

**ANSWER:**   Defendants admit that WOW Tech Canada and Novoluto are wholly owned subsidiaries of IHG and that WOW Tech USA is a wholly owned subsidiary of WOW Tech Canada.  Defendant denies the remaining allegations in Paragraph 6.

7.      On information and belief, IHG, itself and through its wholly owned subsidiaries (including WOW Tech USA) and agents, is doing business throughout the United States, including in Delaware.

**ANSWER:**   Defendants deny the allegations in Paragraph 7.

8.      On information and belief, Defendants conduct business in interstate commerce in the United States and the State of Delaware; the claims alleged herein arise from Defendants' acts or omissions in the United States and the State of Delaware; Defendants have purposefully directed their activities to residents in the United States and the State of Delaware; and Defendants' acts or omissions have damaged EIS Inc. and its property in the United States and the State of Delaware.

**ANSWER:**   Defendants admit WOW Tech USA conducts business in the United States. Defendants deny the remaining allegations in Paragraph 8.

## JUSRISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States, including Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), Section 2 of the Sherman Act (15 U.S.C. § 2), and Sections 4 and 16 of the Clayton Act (15 U.S.C.) §§ 15(a) and 26).

**ANSWER:**   Defendants admit the allegations in Paragraph 9.

10.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this civil action seeks declaratory judgments of patent unenforceability and noninfringement.

**ANSWER:**     Defendants admit the allegations in Paragraph 10.

11.     This action additionally asserts state statutory and common law claims for unfair and deceptive trade practices and tortious interference for which this Court has jurisdiction pursuant to 28 U.S.C. § 1367.

**ANSWER:**     Defendants admit the allegations in Paragraph 11.

12.     This Court has personal jurisdiction over WOW Tech USA because WOW Tech USA is a Delaware corporation.

**ANSWER:**     Defendants admit the allegations in Paragraph 12.

13.     This Court has personal jurisdiction over IHG by virtue of, *inter alia,* the fact that it has committed, aided, abetted, contributed to, and/or participated in the commission of, tortious acts of unfair competition that have led to foreseeable harm and injury to Plaintiff in the United States and in this District.

**ANSWER:**     Defendants deny the allegations in Paragraph 13.

14.     This Court has personal jurisdiction over WOW Tech Canada by virtue of, *inter alia*, the fact that it has committed, aided, abetted, contributed to, and/or participated in the commission of, tortious acts of unfair competition that have led to foreseeable harm and injury to Plaintiff in the United States and in this District.

**ANSWER:**     Defendants deny the allegations in Paragraph 14.

15.     This Court has personal jurisdiction over Novoluto by virtue of, *inter alia*, the fact that it has committed, aided, abetted, contributed to, and/or participated in the commission of, tortious acts of unfair competition, inequitable conduct, and fraud that have led to foreseeable harm and injury to Plaintiff in the United States and in this District.

**ANSWER:**     Defendants deny the allegations in Paragraph 15.

16.     Moreover, this Court's personal jurisdiction over WOW Tech USA also confers upon it personal jurisdiction over IHG, WOW Tech Canada, and Novoluto. Upon information and belief, WOW Tech USA is a corporate alter ego of IHG, WOW Tech Canada, and Novoluto.

**ANSWER:**     Defendants deny the allegations in Paragraph 16.

17.     IHG is a holding company – it is the parent of WOW Tech USA, WOW Tech Canada, Novoluto, and at least one related entity, WOW Tech Europe GmbH ("WOW Tech Europe").  On information and belief, WOW Tech USA is a sales arm for IHG and WOW Tech Canada in the United States. On information and belief, Novoluto is a patent holding company that owns the rights to intellectual property used by the rest of WOW Group.

**ANSWER:**     Defendants admit that IHG is the parent company of WOW Tech Canada Ltd. and that Novoluto owns the rights to the patents in suit (U.S. Patent Nos. 9,763,851; 9,849,061; 9,937,097; 11,090,220; and 11,103,418).   Defendants deny the remaining allegations in Paragraph 17.

18.     On information and belief, WOW Group blurs the distinction between its various corporate entities and operates at least defendants WOW Tech USA, WOW Tech Canada, IHG, and Novoluto as a single company.

**ANSWER:**   Defendants deny the allegations in Paragraph 18.

19.    Johannes Graf von Plettenberg holds himself out as the CEO of the "WOW Tech Group."  On information and belief, Mr. Plettenberg is a director for WOW Tech Canada, Managing Director for IHG, and an executive director for Novoluto and WOW Tech Europe. IHG, Novoluto, and WOW Tech Europe also all share a common address (Friedenstraße 91-91a, 10249, Berlin, Germany) and a common German phone number (+49 (0) 30 95999 3814).

**ANSWER:**   Defendants admit the allegations in Paragraph 19.

20.    On information and belief, IHG controls, or jointly with WOW Tech Canada, Novoluto, and/or WOW Tech Europe controls, WOW Tech USA.

**ANSWER:**   Defendants deny the allegations in Paragraph 20.

21.    The WOW Group conducts business in the United States through its website(s), including at least its Womanizer.com website available at https://www.womanizer.com/us/. The Womanizer.com website contains a privacy notice which names "Wow Tech US Ltd" in the title and "Wow Tech Europe GmbH" in the body, and states that orders will be shipped and billed from "WOW Tech USA ltd."   The legal notice on the Womanizer.com website lists the company name as WOW Tech Europe, identifies Johannes Plettenberg as its representative, and provides the common address (Friedenstr. 91a 10249 Berlin) for the German WOW Group entities identified above.

**ANSWER:**    Defendants deny that any entity other than WOW Tech USA conducts business in the United States through www.womanizer.com/us/ and deny that the Womanizer.com website contains a privacy notice which names "Wow Tech Europe GmbH" in the body, and

states that orders will be shipped and billed from "WOW Tech USA ltd."  Defendants admit the remaining allegations in Paragraph 21.

22.     Furthermore, the "Jobs" link on the Womanizer.com website links to a "Career" page at wowtech.com/career, which lists career opportunities at the WOW Group entities worldwide on a single webpage.

**ANSWER:**     Defendants admit that wowtech.com/career lists career opportunities in Germany and North America.  Defendants deny the remaining allegations in Paragraph 22.

23.     On information and belief, IHG and WOW Tech Canada 1) make strategic business decisions involving WOW Tech USA, 2) control and pay for the development and manufacture of products sold by WOW Tech USA, 3) exert influence and control over WOW Tech USA, and 4) are involved in WOW Tech USA's employee hiring decisions.

**ANSWER:**     Defendants deny the allegations in Paragraph 23.

24.     This Court also has personal jurisdiction over IHG, WOW Tech Canada, and Novoluto by virtue of the additional acts set forth below.

**ANSWER:**     Defendants neither admit nor deny the allegations contained in Paragraph 24 to the extent that they merely describe the Plaintiff's allegations and contain legal conclusions. Defendants deny the remaining allegations contained in Paragraph 24.

25.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because WOW Tech USA is incorporated in Delaware, personal jurisdiction over all defendants is proper in this district, and the acts complained of occurred and are occurring in the United States, including in this District.

**ANSWER:**     Defendants admit that venue is proper as to WOW Tech USA.  Defendants deny the remaining allegations in Paragraph 25.

## PATENTS –IN-SUIT

26.     Novoluto purports to own United States Patent No. 9,763,851 ("the '851 Patent"), entitled "Stimulation Device," and issued on September 19, 2017.  A true and correct copy of the '851 Patent is attached hereto as Exhibit 19.

**ANSWER:**     Defendants admit the allegations in Paragraph 26.

27.     Novoluto purports to own United States Patent No. 9,849,061 ("the '061 Patent"), entitled "Stimulation Device Having an Appendage," and issued on December 26, 2017.  A true and correct copy of the '061 Patent is attached hereto as Exhibit 22.

**ANSWER:**     Defendants admit the allegations in Paragraph 27.

28.     Novoluto purports to own United States Patent No. 9,937,097 ("the '097 Patent"), entitled "Stimulation Device Having an Appendage," and issued on April 10, 2018. A true and correct copy of the '097 Patent is attached hereto as Exhibit 21. The '097 Patent purports, on its face, to be a continuation of the '061 Patent.

**ANSWER:**     Defendants admit the allegations in Paragraph 28.

29.     Novoluto purports to own United States Patent No. 11,090,220 ("the '220 Patent"), entitled "Stimulation Device," and issued on August 17, 2021.  A true and correct copy of the '220 Patent is attached hereto as Exhibit 41.  The '220 Patent purports, on its face, to be a continuation of the '851 Patent.

**ANSWER:**     Defendants admit the allegations in Paragraph 29.

30.     On information and belief, Novoluto is the owner by assignment of United

States Patent No. 11,103,418 ("the '418 Patent"), entitled "Stimulation Device," and issued on

August 31, 2021.  A true and correct copy of the '418 Patent is attached hereto as Exhibit 42.

The '418 Patent purports, on its face, to be a continuation of the '851 Patent.

**ANSWER:**   Defendants admit the allegations in Paragraph 30.

## ACTS GIVING RISE TO THIS ACTION

31.   EIS is a market leader that provides sexual wellness products to consumers and

resellers in the United States and in this District.

**ANSWER:**   Defendants have insufficient information with which to admit or deny the

allegations contained in Paragraph 31 and therefore deny the allegations contained in this

paragraph.

32.   EIS currently sells a wide variety of products, but is best known for its Satisfyer

product line, incorporating its proprietary Air Pulse technology.

**ANSWER:**   Defendants have insufficient information with which to admit or deny the

allegations contained in Paragraph 32 and therefore deny the allegations contained in this

paragraph.

33.   EIS's primary competitor in the sexual wellness market is WOW Group, which

sells products under the We-Vibe and Womanizer brands.

**ANSWER:**   Defendants admit that they sell products under the We-Vibe and Womanizer

brands.  Defendants have insufficient information with which to admit or deny the remaining

allegations contained in Paragraph 33 and therefore deny the remaining allegations contained in

this paragraph.

**Defendants Systematically Employed Unfair Competitive Methods
Against EIS and its Corporate Family Worldwide**

34.     Defendants have a history of engaging in unfair and deceptive trade practices with the intent to prevent or limit the commercial success of Plaintiff's products in the United States and abroad.  Defendants also have a history of both threatening and litigating patent infringement against EIS's corporate worldwide family.

**ANSWER:**    Defendants deny the allegations in Paragraph 34.

35.     On information and belief, Defendant Novoluto is a patent procurement and holding company that holds the intellectual property rights for WOW Group.  In August 2016, Novoluto filed a lawsuit in Germany alleging that the Satisfyer Pro 2 product, sold by EIS GmbH (the parent company of Plaintiff EIS), infringed Novoluto's German patent No. DE 10 2013 110 501 B4 ("'501 German Patent").

**ANSWER:**    Defendants admit the allegations in Paragraph 35.

36.     Novoluto's '501 German Patent was directed toward a device that used a two-chamber assembly to generate modulated positive and negative pressures relative to a reference pressure (*e.g.*, atmospheric air pressure).  An excerpt from Fig. 3 of Novoluto's patent depicts that two chamber structure (chambers 3 and 4 are connected by narrow passage element 5):



Excerpt of Fig. 3 of Novoluto's '501 German Patent
(Exhibit 7 at 17)

**ANSWER:**   Defendants neither admit nor deny the allegations contained in Paragraph 36 that describe or paraphrase Exhibit 7 to the Third Amended Complaint as the document speaks for itself.

37.   Plaintiff's accused product, by contrast, utilized a single-chamber structure, as shown below:



Cross-section of Satisfyer Pro 2 (Exhibit 8 at 10)

**ANSWER:**   Defendants deny that Plaintiff's accused product "utilized a single-chamber structure," and have insufficient information with which to admit or deny the remaining allegations contained in Paragraph 37 and therefore deny the allegations contained in this paragraph.

38.   Despite the clear differences in structure—and the distinct lack of a dual-chamber design in Plaintiff's products—the German Regional Court found that the accused products infringed Novoluto's '501 German Patent.  Confident that the Regional Court had erred, EIS GmbH promptly appealed the decision.

**ANSWER:**    Defendants admit the German Regional Court found that the accused products infringed Novoluto's '501 German Patent.  Defendants have insufficient information with which to admit or deny the remaining allegations contained in Paragraph 38 and therefore deny the remaining allegations contained in this paragraph.

39.    Novoluto's '501 German Patent was challenged in an opposition proceeding before the German Patent and Trademark Office, which subsequently determined it was invalid in view of the prior art. On April 17, 2018, the German Patent and Trademark Office issued a decision revoking Novoluto's patent.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 39.  In further answer to Paragraph 39, Defendants state affirmatively that the German decision has been appealed.

40.    In light of the decision revoking Novoluto's patent in the opposition proceeding, the Higher Regional Court in Germany issued a decision suspending the patent infringement proceeding.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 40.

41.    Defendant Novoluto made numerous public statements, concurrent with the challenge to Novoluto's patent, regarding the outcome of the '501 German Patent infringement proceedings, stating, among other things, that EIS GmbH was liable for past and future damages totaling in the millions and that Novoluto would file suit against distributors and retailers of the Satisfyer Pro 2 products.  These statements were false, at least because (as discussed below) EIS GmbH had already discontinued the Satisfyer Pro 2 when these statements were made.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 41.

42.    In view of Novoluto's false public statements and the opposition proceeding at the German Patent and Trademark Office, EIS GmbH brought a suit in Germany seeking to enjoin Novoluto from making any such statements and for damages suffered as a result of such statements.  The German court subsequently entered an injunction prohibiting Novoluto and Orion Versand GmbH (a primary distributor for WOW Tech International., now Defendant [IHG].) from making such statements.

**ANSWER:**   Defendants deny that Novoluto made false public statements.  Defendants admit the remaining allegations contained in Paragraph 42.

43.    Although EIS GmbH firmly believed that the Satisfyer Pro 2 did not infringe Novoluto's patent throughout the German proceedings, by mid-2017, it had already ceased production and sales of the accused products and developed a new, superior product utilizing a revolutionary design, known as the Satisfyer Pro 2 Next Generation.

**ANSWER:**   Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 43 and therefore deny the allegations contained in this paragraph.

44.    The Satisfyer Pro 2 Next Generation (and related products) utilizes a proprietary Air Pulse technology developed by EIS GmbH that maximizes performance, durability, and personal hygiene. EIS's technology is the subject of patents and patent applications around the world (*e.g.*, patents AU 2018200317 B2, EP 3 228 297, CA 2 943 097 C, and MX 363 260 B, German utility models DE 20 2016 008414 U1 and DE 20 2016 008435 U1; and pending patent applications BR 10 2016 023617 A2, CN 107280939 A, EP 19173156.1, JP 2017 185220 A, RU 2016150905, ZA 2017/00224 and US 2017-281457 A1).

**ANSWER:**   Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 44 and therefore deny the allegations contained in this paragraph.

45.     The Satisfyer Pro 2 Next Generation quickly became a commercial success in the United States and around the world. Since its introduction, EIS has launched over a dozen related products using the same proprietary Air Pulse technology in the United States market.

**ANSWER:**   Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 45 and therefore deny the allegations contained in this paragraph.

46.     EIS sells variations of its Satisfyer products at multiple price points in the United States.  Although its high-end luxury models, crafted from brushed aluminum and leather, currently retail at prices as high as $149.95, its entry-level models are available at prices as low as $19.95.  EIS aims to offer a range of products at price points accessible to everyone.

**ANSWER:**   Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 46 and therefore deny the allegations contained in this paragraph.

47.     Defendants' competing product is sold under the brand name "Womanizer." According to the Womanizer.com website, Defendants currently sell ten variations of their Womanizer product, ranging in price from $79.00 to $219.00.

**ANSWER:**   Defendants admit it sells competing products under the brand name "Womanizer."  Defendants deny the remaining allegations contained in Paragraph 47.

**Defendants Posted False Reviews of Plaintiff's Products on Amazon**

48.     On information and belief, beginning as early as June 2016 and continuing through at least December 2016, individuals acting on behalf of Defendants WOW Tech Canada (formerly Standard Innovation Corporation) and IHG's predecessor, Wow Tech International GmbH, posted false reviews on Amazon.com (Amazon's US website) and Amazon.de (Amazon's German website) disparaging the performance and functionality of Plaintiff's Satisfyer product line.  On information and belief, these reviews contained materially false statements, including statements that Plaintiff's products were not waterproof, performed poorly, were painful to use, and/or smelled of chemicals:

- "Very bad quality! No waterproof! After 10 minutes in water the device was dead."

- "100% waterproof - no way! We had the Satisfyer 2 once in the tub. The next day it was dead! Water was running out of the device at the battery contacts. Totally bad buy!"

- "After it was used for the first time in the bath tub, water was running out of the device and the electronics had had it! Totally bad buy! The device is not as waterproof as advertised."

- "Performance absolutely dissatisfying. Very loud and difficult to operate. Hurts sometimes, too hard at the contact surface. Definitely a bad buy as far as I'm concerned."

- "Am very disappointed! Very loud, and the product stinks terribly of chemicals when you unpack it. Very difficult to control. Definitely a bad buy."

**ANSWER:**     Defendants deny the allegations contained in Paragraph 48.

49.     On information and belief, these false reviews were not posted by bona-fide consumers. Amazon has not marked any of the reviews as written by verified purchasers.  On information and belief, these reviews were posted by, at the request of, or in exchange for payment from, WOW Tech Intl., Wow Tech Canada, and/or its agents.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 49.

50.     The statements in the reviews were false and misleading.  On information and belief, the statements contained in these reviews were known by WOW Tech Intl. and Wow Tech Canada to be false and/or misleading when made.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 50.

51.     The false review posted on Amazon.com was authored under the pseudonym "DerTester":



DerTester Amazon.com Review for Satisfyer Pro 2 (Exhibit 12).

**ANSWER:**     Defendants deny that the review was false.  Defendants admit the remaining allegations contained in Paragraph 51.

52.    The username "DerTester" is linked to an account on Amazon.com named "WE-VIBE."   Specifically, clicking on the username "DerTester" shown in the above screenshot leads to the Amazon.com account profile shown below.   This profile indicates that the review posted on Amazon.com was authored under an account named "WE-VIBE" using the username "DerTester."   This account profile also lists the following URL: www.wowtech.com.



WE-VIBE/WOW Tech Account Profile on Amazon.com (Exhibit 17)

**ANSWER:**    Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 52 and therefore deny the allegations contained in this paragraph.

53.    The reviews posted on Amazon.de were authored under a nearly-identical account named "WE-VIBE" on Amazon.de, which also lists the following URL: www.wowtech.com:



WE-VIBE Account Profile on Amazon.de (Exhibit 18)

**ANSWER:**    Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 53 and therefore deny the allegations contained in this paragraph.

54.    Both the Amazon.com and Amazon.de WE-VIBE profiles are "Amazon verified"; denoted by the blue check mark next to the account name:



**ANSWER:**    Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 54 and therefore deny the allegations contained in this paragraph.

55.     On information and belief, the WE-VIBE/WOW Tech accounts on Amazon.com and Amazon.de are owned, managed, and controlled by Defendants.   On information and belief, the website located at the URL www.wowtech.com is owned, managed, and controlled by Defendants.   The website located at the URL www.wowtech.com also promotes Defendants' products.   Thus, a potential purchaser of EIS's products who clicked on one of the false Amazon reviews would be taken to a website promoting Defendants' competing products.

**ANSWER:**     Defendants admit that www.wowtech.com promotes Defendants' products. Defendants deny the remaining allegations in Paragraph 55.

56.     Defendants' false Amazon reviews have harmed and continue to harm EIS, because its potential customers are exposed to Defendants' false statements at the very moment they are deciding whether to purchase EIS's Satisfyer products.   On information and belief, EIS lost sales as a result of Defendants' false reviews.

**ANSWER:**     Defendants deny the allegations in Paragraph 56.

### Defendants Have a History of Wrongfully Accusing Plaintiff's Customers of Patent Infringement

57.     On information and belief, beginning at least as early as July 2016 and continuing through at least March 2018, Defendant Novoluto, directly or through its agents, began contacting individual retailers and distributors of the Satisfyer Pro 2 throughout the United States and abroad.   In those communications, Defendant Novoluto demanded that retailers and distributors cease and desist their sales of the Satisfyer products on the basis that they infringed Novoluto's purported patent rights.

**ANSWER:**     Defendants deny the allegations in Paragraph 57.

19

58.     On information and belief, Defendant Novoluto, directly or through its agents, contacted Eldorado Trading Company in Broomfield, Colorado, in or around July 2016 on behalf of WOW Group.  In that communication, Novoluto accused Eldorado Trading Company of infringing its patent rights by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product. On information and belief, Novoluto's accusations were made in bad faith because Defendants knew that the two-chamber design of its Womanizer products was not patented in the United States at the time Novoluto communicated with Eldorado Trading Company.

**ANSWER:**     Defendants deny the allegations in Paragraph 58.

59.     Defendants, directly or through their agents, and in bad faith, accused Eldorado Trading Company of infringing Defendants' patent rights by distributing and/or re-selling Plaintiff's Satisfyer Pro 2 product even though Defendants did not have enforceable patent rights in the United States at that time.

**ANSWER:**     Defendants deny the allegations in Paragraph 59.

60.     Defendants knew they did not have enforceable patent rights in the United States when making that statement.  Thus, Defendants and/or their agents, willfully and knowingly made literally false, misleading, and disparaging statements about Plaintiff, Plaintiff's business, and Plaintiff's products to Eldorado Trading Company in bad faith and with the intent to damage Plaintiff.

**ANSWER:**     Defendants deny the allegations in Paragraph 60.

61.     Defendants' false and misleading statements deceived Eldorado Trading Company about the character of Plaintiff's products and Plaintiff's business because Eldorado

20

Trading Company asked EIS for a letter of assurance that EIS's products did not infringe Defendants' patents.

**ANSWER:**   Defendants deny the allegations in Paragraph 61.

62.   On information and belief, Defendants knew or should have known that Novoluto's '501 German Patent was invalid in view of the prior art when it engaged in these communications.

**ANSWER:**   Defendants deny the allegations in Paragraph 62.

**Defendants Coerced Distributors and Retailers to Stop Carrying Plaintiff's Products**

63.   On information and belief, WOW Group has taken additional steps to discourage retailers from carrying EIS's products that go beyond acceptable competitive behavior.

**ANSWER:**   Defendants deny the allegations in Paragraph 63.

64.   At least as early as 2017, on information and belief, WOW Group placed restrictions in its supply agreements preventing some retailers and distributors that carry its products from also carrying EIS's products, including the Satisfyer product line.   For other retailers and distributors, WOW Group threatened them and demanded they stop selling EIS's products outright.   On information and belief, these coercive communications with EIS's retailers and distributors included false statements regarding the quality of EIS's products and the scope of WOW Group's intellectual property rights in the United States.

**ANSWER:**   Defendants deny the allegations in Paragraph 64.

65.   To enforce its demands, WOW Group threatened to raise the price it charged non- compliant retailers and distributors for its own products, effectively rendering them unable to compete against other stores, or to block retailers and distributors from selling its products

altogether, unless and until they refrained from carrying EIS's competing products.   Wow Group's coercive actions caused harm to EIS, EIS's distributors, EIS's retailers, and EIS's actual and potential customers.

**ANSWER:**     Defendants deny the allegations in Paragraph 65.

**Defendants Engaged an Industry Insider to Publish False Statements about Plaintiff**

66.     On information and belief, Defendants, directly or through their agents, hired or otherwise directed Zoë Ligon to publish false, disparaging, and defamatory statements about EIS and its Satisfyer products.  Ms. Ligon is the owner of a well-known sexual wellness store, Spectrum Boutique, in Detroit, Michigan, with a substantial social media following of nearly 70,000 subscribers on its Instagram account (@shopspectrumboutique).

**ANSWER:**     Defendants deny the allegations in Paragraph 66.

67.     During or around April 2019, Ms. Ligon published false statements on Spectrum Boutique's Instagram account—visible to all its subscribers and the general public—stating, *inter alia*, that EIS "ripped off the . . . technology of Womanizer" and encouraged retailers to pull EIS products from their stores:



Screenshots from the @shopspectrumboutique Instagram account (Exhibit 20)

**ANSWER:**   Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 67 and therefore deny the allegations contained in this paragraph.

68.   EIS responded by mailing Ms. Ligon a cease and desist letter on April 16, 2019.

**ANSWER:**   Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 68 and therefore deny the allegations contained in this paragraph.

**Defendants' Improper Acts Are Harming EIS**

69.   On information and belief, each of Defendants' improper acts was designed to deprive EIS of sales and damage its reputation with consumers in Delaware and throughout the United States.  Defendants' false reviews are misleading EIS's potential customers and harming EIS's reputation.  Their false and misleading statements to retailers and distributors are harming its business relationships and depriving EIS of sales.  And Defendants' false advertising and disparaging public statements, such as those made through Zoë Ligon, continue to cause financial and reputational damage to EIS on an ongoing basis.

**ANSWER:**   Defendants deny the allegations in Paragraph 69.

70.   Defendants, through their ongoing unlawful campaign against EIS have, among other things, willfully and in bad faith misled and deceived the public with false or misleading statements of material fact about EIS and its products, harmed EIS's goodwill and business reputation, and caused EIS financial losses through decreased sales.

**ANSWER:**   Defendants deny the allegations in Paragraph 70.

**Novoluto Obtained its Patents Through Fraud on
the United States Patent and Trademark Office**

71.     Novoluto's German '501 Patent was challenged before the German Patent and
Trademark Office ("GPTO") in opposition proceeding No. 10 2013 110 501.7 ("Opposition
Proceeding").   The Opposition Proceeding was initiated by the filing of two Notices of
Opposition on November 17, 2016.  One Notice of Opposition was filed by Ecoaction GmbH
("Ecoaction Notice").  The Ecoaction Notice showed how Novoluto's German '501 Patent was
invalid in view of Chinese Patent No. 2153351Y ("*Guan*").  The second Notice of Opposition
was filed by Fun Factory GmbH ("Fun Factory Opposition").  The Fun Factory Opposition
cited multiple prior art references, as explained below. The GPTO subsequently determined
that Novoluto's patent was invalid in view of Chinese Patent No. 2153351Y ("*Guan*") and, on
April 17, 2018, issued a decision revoking it.

**ANSWER:**     Defendants deny that the Ecoaction Notice showed how Novoluto's German '501
Patent was invalid in view of Guan.  Defendants admit the remaining allegations contained in
Paragraph 71.  In further answer to Paragraph 71, Defendants state affirmatively that the German
decision has been appealed.

72.     During the Opposition Proceeding, several of Novoluto's patent applications
were pending before the United States Patent and Trademark Office ("USPTO"), including
United States Patent Application Nos. 15/023,471 ("the '471 Application"), 15/487,123 ("the
'123 Application"), and 15/302,981 ("the '981 Application") (collectively, "Novoluto
Applications"), which ultimately issued as the '851 Patent, '097 Patent, and '061 Patent,
respectively (collectively, "the Unenforceable Patents").

**ANSWER:**   Defendants admit the identified patent applications in paragraph 72 were pending before the USPTO, but denies the characterization of any patents as "unenforceable."

73.   The '851 Patent claims priority to Novoluto's '501 German Patent, and, although not identified as related to the '501 Patent, the '061 and '097 Patents disclose substantially identical devices—handheld devices for clitoral stimulation using modulated air pressures—with the most notable difference being the latter patents include an appendage configured to be inserted into the vagina.   Because of their similarities, the '501 German Patent's validity, and by extension the Opposition Proceeding, was relevant and material to the claims in the then-pending Novoluto Applications.

**ANSWER:**   Defendants neither admit nor deny the allegations contained in Paragraph 73 that describe or paraphrase the Patents-in-Suit as the patents speak for themselves.   Defendants deny the remaining allegations contained in Paragraph 73.

### At Least Three Individuals Involved in Novoluto's U.S. Patent Prosecution Were Aware of the German Opposition Proceeding and *Guan*

74.   On information and belief, at least Novoluto's executive director Johannes Graf von Plettenberg, its CEO Michael Lenke, and its United States patent prosecution counsel Richard A. Cheng, knew about the Opposition Proceeding and knew about the prior art references involved in that proceeding (including *Guan*).   On information and belief, Mr. Plettenberg, Mr. Lenke, and Mr. Cheng knew that the GPTO found Novoluto's '501 German Patent invalid while the Novoluto Applications were pending before the USPTO.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 74.

75.   On information and belief, Mr. Plettenberg knew of the Opposition Proceeding and knew about the prior art references involved in that proceeding while one or more of the

Novoluto Applications were pending at least because he was Novoluto's Executive Director. Mr. Plettenberg also has an active role in Opposition Proceedings before the GPTO.  For instance, Mr. Plettenberg attended a hearing in a different opposition proceeding on April 10, 2018, during the pendency of the Opposition Proceeding (and the same day that Novoluto's '097 Patent issued).

**ANSWER:**    Defendants admit that Mr. Plettenburg attended a hearing in a different opposition proceeding on April 10, 2018, during the pendency of the Opposition Proceeding.  Defendants deny the remaining allegations contained in Paragraph 75.

76.    On information and belief, Mr. Lenke knew of the Opposition Proceeding and knew about the prior art references involved in that proceeding, at least because he was the only named inventor on the '501 German Patent, the original applicant for the '501 German Patent, and because he was Novoluto's CEO.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 76.

77.    On information and belief, Mr. Cheng knew about the Opposition Proceeding and knew about the prior art references involved in that proceeding, at least because he prosecuted the Novoluto Applications before the USPTO. Mr. Cheng also understood the significance of the Opposition Proceedings and prior art references involved (including *Guan*) to the then-pending Novoluto Applications.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 77.

78.    The prosecution history of the Novoluto Applications, in view of the Opposition Proceeding filings, confirms that Mr. Cheng had reviewed the Opposition Proceeding filings during the pendency of the Novoluto Applications. It also confirms that Mr. Cheng understood

the Opposition Proceeding filings and prior art therein were relevant to the Novoluto Applications.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 78.

79.     For instance, Fun Factory GmbH filed a Notice of Opposition on November 17, 2016, requesting that Novoluto's '501 German Patent be revoked. The Fun Factory Opposition was filed on the same day as the Ecoaction Opposition based on *Guan*. In its opposition, Fun Factory identified fifteen references numbered D8–D23 (D15 was an English translation of D14) that it explained were "highly relevant documents . . ., which were not taken into account in the [patent] grant procedure." Only a month later, on December 21, 2016, Mr. Cheng filed an Information Disclosure Statement ("IDS") with the USPTO in during prosecution of the '471 Application—the Novoluto Application that issued as the '851 Patent. That IDS listed only two references: D8 and D10 from Fun Factory's November 17, 2016 filing in the Opposition Proceeding.

**ANSWER:**   Defendants neither admit nor deny the allegations contained in Paragraph 79 that describe or paraphrase various documents as the documents speaks for themselves. Defendants deny the remaining allegations contained in Paragraph 79.

80.     Then, on February 2, 2017, Mr. Cheng filed another IDS in the '471 Application.  That IDS listed *Guan* (but, as explained below, did not include a full English translation of *Guan*), and also contained references D11–D15, and D20–D23 from Fun Factory's filing in the Opposition Proceeding, along with just a few other references.  Mr. Cheng filed two similar IDS's in the '981 Application, which issued as the '061 Patent.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 80

that describe or paraphrase various documents as the documents speaks for themselves.

Defendants deny the remaining allegations contained in Paragraph 80.

81.    Notably, between the two IDS's, Mr. Cheng cited *Guan* and every reference in

Ecoaction's list of highly relevant new references that he had not previously cited during

prosecution of the '471 Application. On information and belief, Mr. Cheng learned of *Guan*

from the Opposition Proceeding. On information and belief, Mr. Cheng also learned of the

references that Fun Factory numbered D8, D10–D15, and D20–D23 from the Opposition

Proceeding. The table below shows the close correspondence between the references cited in

the Fun Factory Opposition and Novoluto's subsequent IDS's in the '471 Application.

| Fun Factory Reference | Date Cited on a Novoluto IDS |
|---|---|
| D8 - DE 42 43 876 A1 | December 21, 2016 |
| D9 - US 2008/0304984 A1 | Previously cited on March 21, 2016 |
| D 10 - WO 00/28939 A2 | December 21, 2016 |
| D11 - DE 582 196 C | February 10, 2017 |
| D12 - DE20 2012 005 414U1 | |
| D13 - EP 1 554 947 B1 | |
| D14/D15 - JP 2008-125577 A | |
| D16 - US 2,112,646 A | Previously cited on March 21, 2016 |
| D17 - US 1,882,040 A | |
| D18 - US 5,377,701 A | |
| D19 - WO 2013/178223 A2 | Previously cited on September 7, 2016 |
| D20 - DE 1 703 184 U | February 10, 2017 |
| D21 - DE 32 22 467 A1 | |
| D22 - DE 93 09 994 U | |
| D23 - DE 198 53 353 C2 | |

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 81

that describe or paraphrase various documents as the documents speaks for themselves.

Defendants deny the remaining allegations contained in Paragraph 81.

82.     Mr. Cheng also cited the International Search Report for International Patent Application PCT/EP2014/065734, which claims priority to Novoluto's '501 German patent, during the prosecution of each of the Novoluto Applications. For example, he cited to the search report in an IDS filed on April 4, 2017 during prosecution of the '097 patent, while the Opposition Proceeding was ongoing.

**ANSWER:**     Defendants neither admit nor deny the allegations contained in Paragraph 82 that describe or paraphrase various documents as the documents speaks for themselves. Defendants deny the remaining allegations contained in Paragraph 82.

83.     On information and belief, Mr. Plettenberg and Mr. Lenke were aware of the prosecution of the Novoluto Applications and were either informed about or made decisions concerning their filing, the content of their specifications, the wording of their claims, amendments made during prosecution, or arguments made during prosecution before the USPTO.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 83.

84.     Mr. Lenke was aware of and involved in the prosecution of the Novoluto Applications at least because he signed powers of attorney for Novoluto, as its CEO, that were filed with the USPTO during prosecution of both the '851 and '061 Patents.  On information and belief, Mr. Lenke was also aware of and involved in the prosecution of the Novoluto Applications because he was the named inventor on each of the Novoluto Applications.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 84.

### Mr. Cheng, Mr. Lenke, and Mr. Plettenberg Owed a Duty of
### Disclosure, Candor, and Good Faith to the USPTO

85.     As the attorney who prepared and prosecuted the Novoluto Applications, Mr. Cheng owed a duty of disclosure, candor, and good faith to the USPTO, which included a duty to disclose all information known to be material to the patentability of any existing claim in a pending application.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 85.

86.     As the only named inventor in the Novoluto Applications, and as the CEO of Novoluto, Mr. Lenke also owed the same duty of disclosure, candor, and good faith to the USPTO. On information and belief, Novoluto's executive director, Mr. Plettenberg, was also aware of or oversaw the prosecution of the Novoluto Applications, and thus also owed the same duty to the USPTO.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 86.

87.     As such, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg were required to disclose the Opposition Proceeding to the USPTO. That disclosure should have been made on or around November 17, 2016, the date the Opposition Proceeding was filed, and should have been updated to disclose Novoluto's arguments made therein, on or around September 18, 2017, when it filed its response. At the very least, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg had a duty to disclose the existence of any material information from the Opposition Proceeding and provide a complete English translation of *Guan* to the USPTO at some point during prosecution of the Novoluto Applications. But, while Novoluto identified the references cited in the

Opposition Proceeding to the USPTO, neither Mr. Cheng, Mr. Lenke, nor Mr. Plettenberg provided a complete English translation of Guan to the USPTO or disclosed the existence of the Opposition Proceeding, as the USPTO rules require.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 87.

88.     On information and belief, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg never disclosed the German opposition proceeding to the USPTO in connection with the Novoluto Applications. And, although Novoluto did disclose *Guan's* existence to the USPTO, they withheld two complete English translations of *Guan* that were used or submitted in the Opposition Proceeding, violating their duty of disclosure.  Any person with a duty of disclosure to the USPTO must submit an English translation of non-English references identified during prosecution, if the translation is within their possession, custody or control, or is readily available to them.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 88.

89.     On information and belief, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg had two different complete English translations of *Guan* in their possession, custody or control, or readily available to them.   The first complete translation was provided to Novoluto with Ecoaction Opposition.   Novoluto's German counsel later submitted its own complete translation of *Guan* to the GPTO on September 18, 2017.  Thus, both translations were at least readily available to Novoluto, including its CEO Mr. Lenke (who was also the named inventor on the '501 German Patent that was the subject of the Opposition Proceeding), and to Mr. Cheng, who was aware of the German Opposition Proceeding (as discussed above). All three of them, however, withheld the two *Guan* translations from the USPTO during prosecution of the Novoluto Applications, as well as the existence of the Opposition Proceeding.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 89.

90.    On information and belief, Mr. Cheng either possessed or was aware that Novoluto, including Mr. Lenke, possessed the *Guan* translations. As explained above, the Ecoaction Opposition and Fun Factory Opposition were filed on the same day.  Mr. Cheng subsequently cited references from those Opposition Proceedings to the USPTO.   From reviewing the Ecoaction Opposition and other Opposition Proceeding filings, Mr. Cheng would have been aware Novoluto possessed at least one full English translation of *Guan*, *e.g.*, the translation submitted with the Ecoaction Opposition.  The translations of *Guan* in Novoluto's possession would have been readily available to Mr. Cheng at least because he was Novoluto's counsel.  Thus, Mr. Cheng had a duty to disclose at least one full English translation of Guan to the USPTO.  Mr. Cheng did not disclose either full English translation of *Guan* to the USPTO during the pendency of the Novoluto Applications.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 90.

91.    Additionally, in its September 18, 2017, Opposition Proceeding response, Novoluto elaborated on the proper interpretation of its '501 German Patent's claim 1 for five pages, detailing how the claims should be read by a person of skill in the art in view of its specification.  Because substantially similar claims were pending in the Novoluto Applications at that time, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg had a duty to disclose those arguments to the USPTO as well, but again they did not.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 91 that describe or paraphrase the September 18, 2017, Opposition Proceeding response as the document speaks for itself.  Defendants neither admit nor deny the legal conclusions contained in Paragraph 91.  Defendants deny the remaining allegations contained in Paragraph 91.

92.     On February 7, 2017, Novoluto submitted an Information Disclosure Statement to the USPTO in connection with the prosecution of the '061 Patent, which included a machine-produced, partial English translation of *Guan*—only the abstract.

**<u>ANSWER:</u>**     Defendants admit the allegations in Paragraph 92.

93.     On February 10, 2017, Novoluto submitted an Information Disclosure Statement to the USPTO in connection with the prosecution of the '851 Patent, which included a machine-produced, partial English translation of *Guan*—only the abstract.

**<u>ANSWER:</u>**     Defendants admit the allegations in Paragraph 93.

94.     On April 13, 2017, Novoluto submitted an Information Disclosure Statement to the USPTO in connection with the prosecution of the '097 Patent, which included a machine-produced, partial English translation of *Guan*—only the abstract.

**<u>ANSWER:</u>**     Defendants admit the allegations in Paragraph 94.

95.     On information and belief, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg had at least one complete English translation of *Guan* in their possession, custody, or control, or readily available to them, as of the dates the incomplete English translations of *Guan* were submitted to the USPTO in connection with the applications for the Unenforceable Patents.

**<u>ANSWER:</u>**     Defendants deny the allegations in Paragraph 95.

**Guan Was Material to the Patentability of Novoluto's Pending Claims**

96.     On information and belief, the Examiner did not consider the *Guan* reference in detail in connection with the applications for the Unenforceable Patents. *Guan* was one of over 80 references cited by Novoluto during prosecution of each of the Unenforceable Patents.

**ANSWER:**   Defendants have insufficient information with which to admit or deny the allegations contained in Paragraph 96 and therefore deny the allegations contained in this paragraph.

97.     When compared with the complete English translation, the machine-translated abstract of *Guan* submitted by Novoluto during prosecution of the Unenforceable Patents fails to provide sufficient technical details of *Guan's* apparatus and mode of operation, including, *e.g.*, the mechanism for reciprocally moving a wall of air bag 2 to generate positive and negative air pressures.

**ANSWER:**   Defendants deny the allegations in Paragraph 97.

98.     On information and belief, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg knew that the English translation of *Guan's* abstract submitted to the USPTO did not disclose all the technical details of *Guan's* apparatus and mode of operation.  Mr. Cheng, Mr. Lenke, and Mr. Plettenberg knowingly allowed the partial English translation submitted by Novoluto to mislead the examiner into believing that *Guan* was not a material prior art reference.  Mr. Cheng, Mr. Lenke, and Mr. Plettenburg were certainly aware, based on the German Opposition Proceeding, that *Guan* was material to the patentability of the Unenforceable Patents.  Yet, they withheld from the USPTO a complete English translation of the most important parts of *Guan*.

**ANSWER:**   Defendants deny the allegations in Paragraph 98.

99.     On information and belief, if Mr. Cheng, Mr. Lenke, and Mr. Plettenberg had disclosed the complete English translation of *Guan* to the USPTO, one or more, in particular independent, claims from each of the Unenforceable Patents would not have issued.

**ANSWER:**   Defendants deny the allegations in Paragraph 99.

100.     For example, on June 27, 2019, during prosecution of Novoluto's United States Patent Application No. 15/965,117 ("the '117 Application") (a then-pending application claiming priority to Novoluto's '851 Patent), the USPTO issued a rejection based on Guan (in combination with other references).   On information and belief, the Examiner assigned to the '117 Application independently obtained or located a complete English translation of Guan and relied on that complete translation in issuing this rejection.   The pending claims for the '117 Application include features similar to those claimed in the Unenforceable Patents.   Thus, claims having features similar to the claims of the Unenforceable Patents have been rejected as being unpatentable over *Guan* by both the GPTO and USPTO.

**ANSWER:**     Defendants deny the allegations in Paragraph 100.

101.     As another example, on August 22, 2019, during prosecution of Novoluto's United States Patent Application No. 15/965,208 ("the '208 Application") (another then-pending application claiming priority to Novoluto's '851 Patent), the USPTO issued another rejection based on *Guan* (in combination with other references).   On information and belief, the Examiner assigned to the '208 Application independently obtained or located a complete English translation of *Guan* and relied on that complete translation in issuing this rejection. The pending claims for the '208 Application included features similar to those claimed in the Unenforceable Patents.   Thus, claims having features similar to the claims of the Unenforceable Patents have been rejected as being unpatentable over *Guan* by both the GPTO and USPTO (on at least three occasions).

**ANSWER:**     Defendants deny the allegations in Paragraph 101.

102.    Moreover, during prosecution, Novoluto obtained all three Unenforceable Patents by, *inter alia*, arguing that U.S. Patent No. 5,377,701 ("*Fang*") did not disclose every element of the pending claims.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 102 that describe or paraphrase the file histories of the Patents-in-Suit as the file histories speak for themselves.

103.    For both the '097 and the '061 Patents, Novoluto argued *Fang* did not disclose generating positive and negative a i r pressures, a limitation of pending claim 1 for both patents.  Indeed, *Fang's* Abstract describes a sucking massage device with a sucking lip and a negative pressure generator.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 103 that describe or paraphrase the file histories for the '097 and the '061 Patents and the *Fang* reference as the documents speak for themselves.

104.    *Guan*, however, describes a device capable of generating positive and negative pressures.  For example, *Guan* discloses a lever pinned at one end and connected to the wall of an air bag.   The lever is connected to an electromagnetic drive unit which causes the lever to compress and expand the air bag "to have reciprocating motion.".  Such reciprocal compression and expansion creates increasing and decreasing air pressures at the mouth 1.  Indeed, *Guan* uses the term "pulsating air pressure" several times.

**ANSWER:**    Defendants deny the allegations in Paragraph 104.

105.    The USPTO has also instituted *Inter Partes Review* ("IPR") of Novoluto's '061 Patent, finding that the petitioner EIS GmbH "demonstrated a reasonable likelihood of prevailing with respect to the ground based on Guan for at least one claim."

**ANSWER:**    Defendants admit the allegations in Paragraph 105.

106.    Thus, *Guan* is material to the patentability of at least claim 1 of Novoluto's '097 and '061 Patents at least because 1) *Guan* discloses a critical limitation that the examiner concluded was absent from the prior art he considered before allowing the patents to issue, and 2) *Guan* was used by the GPTO to invalidate a closely related patent.  On information and belief, at least claim 1 of the '097 and '061 Patents would not have issued had Mr. Cheng, Mr. Lenke, or Mr. Plettenberg provided the examiner with one of the complete English translations of *Guan*.

**ANSWER:**    Defendants deny the allegations in Paragraph 106.

107.    Novoluto's '851 Patent is a continuation of its '501 German Patent.  The '851 Patent thus claims priority to the '501 German Patent and the two patents are directly related. Moreover, the '851 Patent and the '501 German patent have similar claims.  During prosecution of the application leading to the '851 patent, Novoluto again argued over *Fang* to obtain its patent claims.  Particularly, Novoluto argued that the GPTO had accepted similar arguments during its prosecution of the '501 German Patent, the same patent the GPTO later revoked as unpatentable over *Guan*.  While Novoluto was quick to advise the examiner that the GPTO had accepted its positions regarding *Fang*, at no time did Novoluto advise the examiner that the '501 German patent was embroiled in the German Opposition Proceeding, that *Guan* was at the center of that opposition, or that the '501 German Patent was revoked by the GPTO as unpatentable based on *Guan*.

**ANSWER:**   Defendants admit that the '851 Patent is a continuation of the '501 German Patent.  Defendants deny the remaining allegations contained in Paragraph 107.

108.   For the '851 Patent, the examiner explained in his notice of allowance that the prior art did not teach features such as a drive unit and a stimulation device having no valves. Both of those features are readily found in *Guan* and are immediately apparent from its complete English translation.

**ANSWER:**   Defendants neither admit nor deny the allegations contained in Paragraph 108 that describe or paraphrase the Notice of Allowance for the '851 Patent as the document speaks for itself.  Defendants deny the remaining allegations contained in this paragraph.

109.   As previously described, *Guan* delivers positive and negative air pressures with respect to a reference pressure by using an electromagnetic drive to move the pinned lever so as to impart reciprocating motion upon a wall of the air bag (2).  The drive unit is shown in *Guan's* only figure and page 1 explains the structure is "driven by an electromagnet."  A review of *Guan's* figure also reveals that there are no valves anywhere in the device.  Thus, *Guan* discloses at least the drive unit and valveless stimulation device that the examiner concluded were absent from the art before him.  This is consistent with the findings in the German Opposition Proceeding that revoked Novoluto's '501 German Patent.

**ANSWER:**   Defendants deny the allegations in Paragraph 109.

110.   The USPTO has also instituted *Inter Partes Review* ("IPR") of Novoluto's '851 Patent, finding that the petitioner EIS GmbH "demonstrated a reasonable likelihood of prevailing in showing that claims 5 and 6 are unpatentable as obvious over Guan" in combination with other references.

**ANSWER:**   Defendants admit the allegations in Paragraph 110.

111.   Thus, *Guan* is material to the patentability of at least claim 1 of Novoluto's '851 Patent at least because 1) *Guan* discloses two critical limitations that the examiner concluded were absent from the prior art he considered before allowing the patents to issue, and 2) *Guan* was used by the GPTO to invalidate the '851 Patent's parent. On information and belief, at least claim 1 of the '851 Patent would not have issued had Mr. Cheng, Mr. Lenke, or Mr. Plettenberg provided the examiner with one of the complete English translations of *Guan*.

**ANSWER:**   Defendants deny the allegations in Paragraph 111.

112.   On information and belief, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg intentionally withheld the existence and substance of the German Opposition Proceeding and misled the USPTO about the content of *Guan* during the pendency of the Novoluto Applications, because disclosing them would have prevented one or more of Novoluto's pending claims from issuing.

**ANSWER:**   Defendants deny the allegations in Paragraph 112.

113.   Moreover, Novoluto was continuing to violate its duty of disclosure in order to procure additional patents through misrepresentations to the USPTO until after the First Amended Complaint was filed in this case. At that time, it currently had four patent applications pending ("Pending Applications"), which are all related to the Unenforceable Patents.  When the First Amended Complaint was filed, however, Novoluto had been inconsistent in providing complete English translations of *Guan* to the examiner in the Pending Applications, in an attempt to mislead the USPTO and gain allowance.  For example, on August 22, 2019, Novoluto submitted an Information Disclosure Statement ("IDS") in connection with its pending U.S.

Patent Application No. 15/354,599, which for the first time included a complete English translation of *Guan* (as an exhibit to an IPR petition).  Novoluto waited to submit that IDS until the day *after* it held an interview with the patent examiner, during which the examiner indicated that the '599 application would be allowed.

**ANSWER:**   Defendants deny the allegations in Paragraph 113.

### Mr. Cheng Misrepresented That the '123 Application Was a Continuation

114.   Mr. Cheng made additional material misrepresentations to the USPTO while prosecuting the Novoluto Applications.  In particular, Mr. Cheng represented to the USPTO that the '123 Application (which issued as the'097 Patent) was a continuation of the '981 Application on April 13, 2017. A continuation application cannot contain new matter, i.e., matter that was not described in the parent application.  The '123 Application, however, contained various material changes to the specification that encompassed new matter not disclosed in the parent '981 Application, including replacing references to "the invention" with "one embodiment" requiring a first and second chamber.  These changes are shown in Exhibit 40. By including new subject matter, and misrepresenting to the USPTO that the application was a continuation, Novoluto improperly obtained claims in the '097 Patent that it could not have obtained without the new matter in the specification (such as claim 1 of the '097 Patent that recites, among other things, "a chamber having a flexible wall portion").

**ANSWER:**   Defendants deny the allegations contained in Paragraph 114.

115.   On information and belief, Mr. Lenke, the sole named inventor on the '123 Application, was aware of Mr. Cheng's misrepresentation to the USPTO that the '123

Application was a continuation of the '981 Application. On information and belief, Mr. Lenke did not disclose Mr. Cheng's misrepresentation to the USPTO.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 115.

116.    On information and belief, Mr. Cheng's misrepresentation that the '123 Application was a continuation of the '981 Application, misled the examiner into believing the '981 Application contained written description support for the new claims, when it did not. On information and belief, at least claim 1 of the '097 Patent would not have issued but for Mr. Cheng's misrepresentation and Mr. Lenke's failure to disclose that misrepresentation to the USPTO, at least because the claims lack written description support as required by 35 U.S.C. § 112(a).

**ANSWER:**   Defendants deny the allegations contained in Paragraph 116.

**Novoluto Accused EIS of Infringement and
Tried to Push EIS out of the United States**

117.    André Geske, the owner of EIS, and Mr. Plettenberg met three times between November 2018 and February 2019 at Mr. Plettenberg's request.

**ANSWER:**   Defendants deny that the three meetings between November 2018 and February 2019 between André Geske and Mr. Plettenberg were at Mr. Plettenberg's request.  Defendants admit the remaining allegations in Paragraph 117.

118.    Mr. Geske met with Mr. Plettenburg on or about November 8, 2018, in Berlin. At the meeting, Mr. Plettenberg accused EIS of copying Novoluto's products and alleged that EIS's Air Pulse products infringe the Unenforceable Patents.  Mr. Plettenberg also alleged that EIS's Air Pulse products would infringe additional Novoluto patents, which were then pending as applications—some of which remain pending— once they issued.

**ANSWER:**   Defendants admit that Mr. Geske met with Mr. Plettenburg on or about November 8, 2018, in Berlin.  Defendants deny the remaining allegations in Paragraph 118.

119.   Mr. Plettenberg tried to leverage his infringement allegations to convince Mr. Geske to sell EIS (and related entities) to Novoluto, but Mr. Geske refused.  Mr. Plettenburg then told Mr. Geske that if EIS would leave the United States market, they could make a licensing deal for the rest of the world. Mr. Geske again refused.

**ANSWER:**   Defendants admit that Mr. Plettenberg and Mr. Geske discussed ending the war between the companies and Mr. Plettenberg preliminarily discussed Plaintiff purchasing Defendants' companies or Defendants purchasing the Satisfyer assets as a potential solution. Defendants admit that in response to Mr. Geske asking for a worldwide license, Mr. Plettenberg preliminarily discussed a license that would exclude the United States.  Defendants deny the remaining allegations in Paragraph 119.

120.   The second meeting took place in Las Vegas, on or about January 15, 2019.  For this meeting, Mr. Plettenberg insisted that they meet in the Wynn Hotel's sauna, so he could verify that Mr. Geske was not recording their conversation.  This time, Mr. Plettenberg suggested a deal whereby EIS and Novoluto would sell their products in the United States at a similar price point and share the United States market instead of competing against each other. Again, Mr. Geske refused.

**ANSWER:**   Defendants admit a second meeting took place in Las Vegas in the Wynn Hotel's sauna, on or about January 15, 2019.  Defendants deny the remaining allegations in Paragraph 120.

121.   At a third meeting, again in Berlin, on or about February 9, 2019, Mr. Plettenberg offered to license Novoluto's United States patents (currently issued and those that would issue from its pending applications) to EIS.  No agreement was reached.

**ANSWER:**   Defendants admit a third meeting took place in Berlin, on or about February 9, 2019.  Defendants further admit that Mr. Geske requested a license to Novoluto's United States patents (currently issued and those that would issue from its pending applications), and in response to Mr. Geske requesting a license, Mr. Plettenberg counter-offered with a 1 year license to determine if Mr. Geske was a trustworthy business partner and that no agreement was reached.  Defendants deny the remaining allegations in Paragraph 121.

122.   At least as recently as July 7, 2020, Mr. Plettenberg told Mr. Geske that the Satisfyer-branded products infringe Novoluto's patents. EIS continues to sell its allegedly-infringing Satisfyer (Air Pulse) products in the United States. To date, no agreement has been reached.

**ANSWER:**   Defendants deny the allegations in Paragraph 122.

123.   On September 2, 2021, Defendants moved to amend their Counterclaims to add a patent infringement counterclaim for the '220 Patent. D.I. 108, specifically alleging that EIS Inc. has "Infringed at least claim 1 of the '220 Patent by making, using selling, offering to sell, and/or importing stimulation devices such as the devices referred to as Satisfyer Pro G-Spot Rabbit in the United States," D.I. 108-2, ¶ 79.

**ANSWER:**   Defendants admit the allegations in Paragraph 123.

124.   On September 2, 2021, EIS, Inc. asked whether Defendants were representing that they would not assert the '418 Patent, as suggested by their omission of the '418 Patent

from the amended counterclaims.  Defendants' counsel responded the same day that "WOW Tech is NOT representing that they will never assert the '418 patent." In view of this representation, the litigation history between the Parties including Novoluto's history of attempting to enforce its patents against EIS, Inc., and its parent EIS, GmbH, for selling Satisfyer-branded products, and that the '418 Patent is in the same patent family as the '851 and '220 Patents that EIS, Inc., is alleged to infringe, EIS, Inc. will face an ongoing threat that the '418 Patent will be asserted against it and/or its customers via litigation unless the Court resolves the dispute.

**ANSWER:**   Defendants admit that Defendants' counsel informed EIS, Inc.'s counsel that WOW Tech is NOT representing that they will never assert the '418 patent.  Defendants deny the remaining allegations in Paragraph 124.

**Novoluto Is Attempting to Acquire Monopoly Power<br>Through its Unenforceable Patents**

125.    On information and belief, Defendant Novoluto knew about Mr. Cheng, Mr. Lenke, and Mr. Plettenberg's deliberate misrepresentations to the USPTO discussed above because Mr. Cheng is Novoluto's counsel, Mr. Plettenberg is an executive director of Novoluto, and Mr. Lenke is Novoluto's CEO.

**ANSWER:**   Defendants deny the allegations in Paragraph 125.

126.    On information and belief, despite knowing its patents were procured through fraud and misrepresentation, rendering them unenforceable, Novoluto (through Mr. Plettenberg) used its patents to try to force EIS out of the United States market, either through acquisition or through exclusion.

**ANSWER:**   Defendants deny the allegations in Paragraph 126.

127.   Novoluto's conduct was specifically intended to monopolize and destroy competition in the United States market for sexual wellness devices incorporating pulsating air for clitoral stimulation ("the Market"), a market presently valued in the millions of dollars annually.   In particular, despite knowing that the '851, '097, and '061 Patents were unenforceable, Novoluto continued to leverage them against EIS during the meetings between Mr. Plettenberg and Mr. Geske.

**ANSWER:**   Defendants deny the allegations in Paragraph 127.

128.   WOW Group, including Defendant Novoluto, is EIS's direct competitor in the Market.  In the United States, Defendants and EIS are the only companies with an appreciable market share; together controlling almost the entire Market.  Despite third parties' repeated attempts to enter the Market, none of WOW Group's competitors, other than EIS, have been able to establish a significant presence.  Thus, on information and belief, by attempting to force EIS out of the Market with its patents as described above and below, WOW Group intends to acquire monopoly power over the entire Market in the United States.

**ANSWER:**   Defendants deny the allegations in Paragraph 128.

129.   Because there are no other major competitors in the Market, and the Market has proven difficult to enter, EIS's existence as a competitor to IHG (and WOW Group more broadly) is vital to competition in the United States.  Upon information and belief, if Novoluto proves successful in forcing EIS out of the Market (using its invalid and unenforceable patents to do so), Novoluto will create a monopoly for its corporate parent and alter-ego, IHG (and WOW Group more broadly), in the United States.

**ANSWER:**   Defendants deny the allegations in Paragraph 129.

130.    On information and belief, Defendants' possession and threatened enforcement of Novoluto's invalid and unenforceable patents have caused EIS harm in the United States at least through lost sales.  Because EIS is competing in the Market with an unfairly restricted selection of its Air Pulse products, EIS's sales, market share, and customer base are reduced as a direct result of Defendants' threatened enforcement of their invalid and unenforceable patents.

**ANSWER:**    Defendants deny the allegations in Paragraph 130.

### FIRST COUNT
### UNFAIR COMPETITION
### LANHAM ACT, § 43(A), 15 U.S.C. § 1125(A)

131.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 131.

132.    Defendants and/or their agents or other persons acting on their behalf, willfully made false or misleading statements of fact regarding Plaintiff, Plaintiff's business, and Plaintiff's Satisfyer products.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 132.  Defendants deny the remaining allegations contained in Paragraph 132.

133.    Defendants violated Section 43(a)(1)(B) of the Lanham Act by publishing false and misleading reviews of Plaintiff's products on Amazon, by making false statements about alleged infringement of unenforceable  and non-existent patent rights, and by hiring or otherwise directing an industry insider to make false and misleading statements on Instagram about Plaintiff, Plaintiff's business, and Plaintiff's products to the public, as set forth above.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 133.  Defendants deny the remaining allegations contained in Paragraph 133.

134.   Defendants' false and misleading statements were publicly disseminated through the internet (via Instagram and Amazon), where they were available to EIS's actual and potential customers, and the public at large.  Defendants' statements deceived or were likely to deceive EIS's actual and potential customers, and the public, in a material way because the statements were likely to influence purchasing decisions.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 134.  Defendants deny the remaining allegations contained in Paragraph 134.

135.   Ms. Ligon, an industry insider, and the owner of a well-known boutique specializing in sexual wellness products, published false statements on the internet about Plaintiff and its products at Defendants' direction, which she presented as facts.  Her statements were likely to deceive the public because a person in her position (i.e., a specialist or industry insider) is expected to have objective opinions on products and companies that were not secretly provided in exchange for payment.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 135.  Defendants deny the remaining allegations contained in Paragraph 135.

136.   Similarly, Defendants' false Amazon reviews are likely to deceive the public and influence the purchasing decisions of Plaintiff's potential customers.  The public expects that product reviews are written by purchasers and/or users of the products, and as such would be deceived by Defendants' false reviews posted for the purpose of damaging Plaintiff's business.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 136.  Defendants deny the remaining allegations contained in Paragraph 136.

137.    Defendants also falsely informed Plaintiff's distributors and retailers that Plaintiff's products infringe or may infringe Defendants' patents, which were found to be invalid in Germany and which did not exist in the United States.  Such statements were likely to deceive Plaintiff's distributors and retailers about the character and quality of Plaintiff's products and its business.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 137.  Defendants deny the remaining allegations contained in Paragraph 137.

138.    Defendants' false statements were made in connection with interstate commerce and entered into interstate commerce because they were disseminated nationwide through Amazon and Instagram.  Further, Plaintiff distributes its products nationwide and its interstate sales were affected by Defendants' false statements.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 138.  Defendants deny the remaining allegations contained in Paragraph 138.

139.    As a result of Defendants' acts, EIS has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants continue to unfairly derive income, profits, and business opportunities from their unfair acts.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 139.  Defendants deny that any acts have caused harm to Plaintiff.  Defendants deny the remaining allegations contained in Paragraph 139.

140.    As the acts alleged herein constitute unfair competition through the use of false and misleading descriptions and representations of fact under 15 U.S.C. § 1125, EIS is entitled to monetary damages and other remedies provided by 15 U.S.C. § 1117, including Defendants' profits, Plaintiff's damages, reasonable attorney's fees, costs, and prejudgment interest.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 140.  Defendants deny the remaining allegations contained in Paragraph 140.

## SECOND COUNT
## DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 6 DEL. C. § 2531 ET SEQ.

141.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 141.

142.    Defendants and/or their agents or other persons acting on their behalf, willfully and knowingly made literally false, misleading, and disparaging statements about Plaintiff, Plaintiff's business, and Plaintiff's products with the intent to damage Plaintiff.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 142.  Defendants deny the remaining allegations contained in Paragraph 142.

143.    Defendants' statements deceived or were likely to deceive EIS's actual and potential customers, and the public, in a material way because the statements were likely to influence customers' and potential customers' purchasing decisions.  Ms. Ligon, an industry insider, and the owner of a well-known boutique specializing in sexual wellness products, published false statements on the internet about Plaintiff and its products at Defendants' direction, which she presented as facts.  Her statements were likely to deceive the public

because a person in her position (i.e., a specialist or industry insider) is expected to have objective opinions on products that were not secretly made in exchange for payment.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 143.  Defendants deny the remaining allegations contained in Paragraph 143.

144.    Similarly, Defendants' false Amazon reviews are likely to deceive the public and influence the purchasing decisions of Plaintiff's potential customers.  The public expects that product reviews are written by purchasers and/or users of the products, and as such would be deceived by Defendants' false reviews posted for the purpose of damaging Plaintiff's business.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 144.  Defendants deny the remaining allegations contained in Paragraph 144.

145.    Defendants' false and misleading statements were publicly disseminated through the internet (via Amazon and Instagram), and were likely to deceive the public about the character and quality of Plaintiff's products and its business.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 145.  Defendants deny the remaining allegations contained in Paragraph 145.

146.    Defendants also falsely informed Plaintiff's distributors and retailers that Plaintiff's products infringe or may infringe Defendants' patents, which were found to be invalid in Germany and which did not exist in the United States.  Such statements were likely to deceive Plaintiff's distributors and retailers about the character and quality of Plaintiff's products and its business.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 146.  Defendants deny the remaining allegations contained in Paragraph 146.

147.   As a result of Defendants' acts, EIS has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants continue to unfairly derive income, profits, and business opportunities from their unfair acts.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 147.  Defendants deny that any acts have caused harm to Plaintiff.  Defendants deny the remaining allegations contained in Paragraph 147.

148.   Defendants' acts constitute unfair methods of competition, and unfair or deceptive acts or practices under the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532(a)(8), (12).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 148.  Defendants deny the remaining allegations contained in Paragraph 148.

149.   EIS is informed and believes, and on that basis alleges, that Defendants' actions, as alleged herein, show that they willfully violated the Delaware Uniform Deceptive Trade Practices Act.  EIS therefore is entitled to an award of attorneys' fees and costs pursuant to 6 Del. C. § 2533.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 149.  Defendants deny the remaining allegations contained in Paragraph 149.

## THIRD COUNT
## DELAWARE COMMON LAW UNFAIR COMPETITION

150.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 150.

151.    Defendants and/or their agents or other persons acting on their behalf, made false, misleading, and disparaging statements about Plaintiff, Plaintiff's business, and Plaintiff's Satisfyer line of products, with the intent to damage Plaintiff.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 151.  Defendants deny the remaining allegations contained in Paragraph 151.

152.    Defendants attempted and intended to deceive the public about the character and quality of Plaintiff's products and its business, and thereby interfere with Plaintiff's business interests.  Each of Defendants' unfair acts intended this result: 1) false and misleading Amazon reviews were intended to deceive EIS's potential customers such that they would not purchase EIS's Satisfyer products; 2) Ms. Ligon's Instagram posts about EIS and its Satisfyer products were intended to convince her subscribers, the public, and other retailers not to do business with EIS; and 3) Defendants falsely informed EIS's distributors and retailers that EIS's products infringed or likely infringed Defendants' patents (which had not yet been granted in the U.S. and which were found invalid in Germany), to convince those customers to cease doing business with EIS.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 152.  Defendants deny the remaining allegations contained in Paragraph 152.

153.    As a result of Defendants' acts, EIS has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants continue to unfairly derive income, profits, and business opportunities from their unfair acts.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 153.  Defendants deny that any acts have caused harm to Plaintiff.  Defendants deny the remaining allegations contained in Paragraph 153.

### FOURTH COUNT
### DELAWARE COMMON LAW TORTIOUS INTERFERENCE
### WITH BUSINESS RELATIONS

154.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 154.

155.    Upon information and belief, Defendants themselves, and/or through their subsidiaries and/or agents, intentionally and knowingly made false or misleading statements of fact regarding Plaintiff's products and Defendants' patents, with the intent to damage Plaintiff by interfering with its business relations.

**ANSWER:**        Defendants neither admit nor deny the legal conclusions contained in Paragraph 155.  Defendants deny the remaining allegations contained in Paragraph 155.

156.    Specifically, Defendants falsely informed EIS's distributors and retailers that EIS's products infringed or likely infringed Defendants' patents (which had not yet been granted in the United States and which were found invalid in Germany), to convince those customers to cease doing business with EIS.

**ANSWER:**   Defendants deny the allegations in Paragraph 156.

157.   Defendants also placed restrictions in their supply agreements preventing retailers that carry its products from also carrying EIS's products, demanded retailers stop selling EIS's products, and threatened to raise its prices or cease sales to coerce non-compliant retailers to stop selling EIS's competing products.

**ANSWER:**   Defendants deny the allegations in Paragraph 157.

158.   Defendants knew that EIS had ongoing business relationships with its distributors and retailers, or Defendants would not have made the statements detailed. Furthermore, Defendants' statements constitute a knowing and willful attempt to interfere with Plaintiff's business relations in violation of Delaware common law.

As a result of Defendants' acts, EIS has suffered and will continue to suffer substantial injury, lost income, lost sales, lost profits, and damage to its goodwill associated with its brand and the Satisfyer product line.  By diverting Plaintiff's business, Defendants continue to unfairly derive income, profits, and business opportunities from their unfair acts.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 158.   Defendants deny that any acts have caused harm to Plaintiff. Defendants deny the remaining allegations contained in Paragraph 158.

## FIFTH COUNT
## DECLARATORY JUDGMENT OF UNEFORCEABILITY
## FOR INEQUITABLE CONDUCT IN OBTAINING THE '851 PATENT

159.   Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**   Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 159.

160.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 160.  Defendants deny the remaining allegations contained in Paragraph 160.

161.    EIS seeks a judgment declaring that the claims of the '851 Patent are unenforceable under the doctrine of inequitable conduct.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 161 to the extent that they merely describe the Plaintiff's complaint and contain legal conclusions. Defendants deny the remaining allegations contained in Paragraph 161.

162.    During the prosecution of the '851 patent, Mr. Cheng and Mr. Lenke withheld the existence of the German Opposition Proceeding and complete translations of *Guan* from the USPTO.

**ANSWER:**    Defendants deny the allegations in Paragraph 162.

163.    The single most reasonable inference to be drawn from Mr. Cheng and Mr. Lenke's conduct is that he intended to deceive the USPTO.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 163.  Defendants deny the remaining allegations contained in Paragraph 163.

164.    *Guan* is material to at least claim 1 of the '851 Patent. At least claim 1 of the '851 Patent would not have issued if Mr. Cheng and/or Mr. Lenke had disclosed the German Opposition Proceeding or at least one of the *Guan* translations to the USPTO.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph

164.  Defendants deny the remaining allegations contained in Paragraph 164.

**SIXTH COUNT**
**DECLARATORY JUDGMENT OF UNEFORCEABILITY**
**FOR INEQUITABLE CONDUCT IN OBTAINING THE '061 PATENT**

165.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to

Paragraph 165.

166.    As a result of the acts described in the preceding paragraphs, there exists a

controversy of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph

166.  Defendants deny the remaining allegations contained in Paragraph 166.

167.    EIS seeks a judgment declaring that the claims of the '061 Patent are

unenforceable under the doctrine of inequitable conduct.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 167 to

the extent that they merely describe the Plaintiff's complaint and contain legal conclusions.

Defendants deny the remaining allegations contained in Paragraph 167.

168.    During the prosecution of the '061 Patent, Mr. Cheng and Mr. Lenke withheld

the existence of the German Opposition Proceeding and complete translations of *Guan* from

the USPTO.

**ANSWER:**    Defendants deny the allegations in Paragraph 168.

169.    The single most reasonable inference to be drawn from Mr. Cheng and Mr. Lenke's conduct is that he intended to deceive the USPTO.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 169.  Defendants deny the remaining allegations contained in Paragraph 169.

170.    *Guan* is material to at least claim 1 of the '061 Patent.  At least claim 1 of the '061 Patent would not have issued if Mr. Cheng and/or Mr. Lenke had disclosed the German Opposition Proceeding or at least one of the *Guan* translations to the USPTO.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 170.  Defendants deny the remaining allegations contained in Paragraph 170.

**SEVENTH COUNT**
**DECLARATORY JUDGMENT OF UNEFORCEABILITY**
**FOR INEQUITABLE CONDUCT IN OBTAINING THE '097 PATENT**

171.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 171.

172.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 172.  Defendants deny the remaining allegations contained in Paragraph 172.

173.    EIS seeks a judgment declaring that the claims of the '097 Patent are unenforceable under the doctrine of inequitable conduct.

**ANSWER:**   Defendants neither admit nor deny the allegations contained in Paragraph 173 to the extent that they merely describe the Plaintiff's complaint and contain legal conclusions. Defendants deny the remaining allegations contained in Paragraph 173.

174.   During the prosecution of the '097 Patent, Mr. Cheng and Mr. Lenke withheld the existence of the German Opposition Proceeding and complete translations of *Guan* from the USPTO.

**ANSWER:**   Defendants deny the allegations in Paragraph 174.

175.   During the prosecution of the '097 Patent, Mr. Cheng misrepresented to the USPTO that the '123 Application was a continuation.  On information and belief, Mr. Lenke did not disclose Mr. Cheng's misrepresentation to the USPTO.

**ANSWER:**   Defendants deny the allegations in Paragraph 175.

176.   The single most reasonable inference to be drawn from Mr. Cheng and Mr. Lenke's conduct is that he intended to deceive the USPTO.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 176.  Defendants deny the remaining allegations contained in Paragraph 176.

177.   *Guan* is material to at least claim 1 of the '097 Patent.  At least claim 1 of the '097 Patent would not have issued if Mr. Cheng and Mr. Lenke had disclosed the German Opposition Proceeding or at least one of the *Guan* translations to the USPTO.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 177.  Defendants deny the remaining allegations contained in Paragraph 177.

178.   Mr. Cheng's misrepresentation that the '123 Application was a continuation is material to at least claim 1 of the '097 Patent.  At least claim 1 of the '097 Patent would not

have issued if Mr. Cheng had disclosed to the USPTO that the '123 Application was not a continuation or if Mr. Lenke had disclosed Mr. Cheng's misrepresentation to the USPTO.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 178.  Defendants deny the remaining allegations contained in Paragraph 178.

## EIGHTH COUNT
## WALKER PROCESS FRAUD, ATTEMPTED MONOPLOLIZATION
## SECTION 2 OF THE SHERMAN ACT (15 U.S.C.§ 2)

179.   Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**   Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 179.

180.   Defendant Novoluto obtained the Unenforceable Patents through fraud on the USPTO.  During prosecution of those patents, Mr. Cheng and Mr. Lenke withheld the complete English translations of *Guan* and the existence of the German Opposition Proceeding from the USPTO, among other misrepresentations.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 180.  Defendants deny the remaining allegations contained in Paragraph 180.

181.   That information was material to the patentability of at least one, in particular independent, claim of each patent because of the similarities between the issued claims and Novoluto's '501 Patent that the GPTO invalidated in the Opposition Proceeding.  At least claim 1 from each of the Unenforceable Patents would not have issued but for the fact that Mr. Cheng and Mr. Lenke withheld the *Guan* translations and the existence and substance of the Opposition Proceeding from the USPTO.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 181. Defendants deny the remaining allegations contained in Paragraph 181.

182.   On information and belief, Mr. Cheng and Mr. Lenke knew about the Opposition Proceeding and that *Guan* was central to it.  Mr. Cheng and Mr. Lenke knew about the Novoluto Applications and that they included similar claims to its German '501 patent.  On information and belief, Mr. Cheng and Mr. Lenke withheld the Opposition Proceeding and the *Guan* translations from the USPTO because disclosing them would have prevented at least claim 1 of each of the patents-in-suit from issuing.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 182. Defendants deny the remaining allegations contained in Paragraph 182.

183.   WOW Group, including defendant Novoluto, directly competes against EIS in the market for sexual wellness devices incorporating pulsating air for clitoral stimulation.

**ANSWER:**   Defendants deny the allegations in Paragraph 183.

184.   WOW Group, including defendant Novoluto, was aware of Mr. Cheng and Mr. Lenke's material omissions to the USPTO, but continued to leverage the Unenforceable Patents against EIS to try to drive EIS out of the United States Market at least by threatening to enforce Novoluto's fraudulently enforced patents against EIS and its customers.  Relying on his infringement accusations, Mr. Plettenberg also attempted to purchase EIS or convince EIS to leave the United States Market in exchange for a licensing deal for the rest of the world.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 184. Defendants deny the remaining allegations contained in Paragraph 184.

185.    On information and belief, by forcing EIS out of the Market in the United States using their fraudulently procured patents, and by pressuring EIS to engage in price fixing (which Mr. Geske refused to do), Defendants intended to increase their own market share. Because EIS is Defendants' only major competitor in the Market, and the Market has proven difficult for additional competitors to enter, Defendants' acts were intended to acquire monopoly power within the market.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 185.  Defendants deny the remaining allegations contained in Paragraph 185.

186.    There is a dangerous probability that Defendants will achieve monopoly power in the Market.  By actively working to push EIS out of the Market with their invalid and unenforceable patents, Defendants are trying to eliminate their only major competitor.  Without EIS in the market, Defendants will achieve monopoly power.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 186.  Defendants deny the remaining allegations contained in Paragraph 186.

187.    On information and belief, Defendants' possession and threatened enforcement of Novoluto's invalid and unenforceable patents have caused harm to EIS at least through lost sales, reduced market share, and reduced customer base in the United States.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 187.  Defendants deny that any acts have caused harm to Plaintiff.  Defendants deny the remaining allegations contained in Paragraph 187.

188.    Defendants have also caused harm to competition in the relevant market within the United States, and harm to consumers in the United States.  EIS's products sell for less than

Defendants' products they compete against in the Market while offering equal or better quality, features, and performance.  As a result of Defendants' possession and threatened enforcement of Novoluto's invalid and unenforceable patents, EIS cannot compete freely with Defendants in the Market.  EIS is unable to distribute its complete product line in the United States, ultimately causing harm to consumers because they must shop in a Market with reduced competition, including a smaller selection of more expensive products than would otherwise be available.   If Defendants obtain monopoly power, consumers will further lose access to EIS's more affordable, higher quality, alternatives, causing additional harm.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 188.  Defendants deny that any acts have caused harm to Plaintiff.  Defendants deny the remaining allegations contained in Paragraph 188.

### NINTH COUNT
### DECLARATORY JUDGMENT OF NONINFRINGEMENT
### OF THE '851 PATENT

189.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 189.

190.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 190.  Defendants deny the remaining allegations contained in Paragraph 190.

191.    The '851 patent has two independent claims: 1 and 8. Independent claim 1 of

the '851 Patent recites:

A stimulation device for a clitoris, comprising:

a pressure field generator comprising:

a first chamber having a single opening;

a second chamber having first and second openings, the second opening of
the second chamber for placing over the clitoris; and

a connection element having a first opening and a separate second opening
thereby forming a straight channel connecting the single opening of the
first chamber with the first opening of the second chamber;

a drive unit that changes a volume of the first chamber in such a manner
that a stimulating pressure field is generated in the second chamber via
the connection element; and

a control device that actuates

the drive unit; and a housing enclosing the pressure field generator, the drive
unit, and the control device; wherein:

the pressure field generated in the second chamber consists of a pattern of
negative and positive pressures modulated with respect to a reference
pressure,

the first chamber is connected with the second chamber solely by the
connection element,

the stimulation device has no valves,

the stimulation device is a portable hand-held device with a battery,

the connection element is rigid and the first and second openings of the
connection element are aligned to one another so that a media flow
during a compression of the first chamber is directed to the clitoris
through the straight channel with a nozzle effect, and

the second opening of the connection element is configured to face the
clitoris through the second chamber.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 191

that describe or paraphrase the '851 Patent as the document speaks for itself.

192.    Independent claim 8 includes similar features to independent claim 1.

**ANSWER:**     Defendants neither admit nor deny the allegations contained in Paragraph 192 that describe or paraphrase the '851 Patent as the document speaks for itself.

193.     None of Plaintiff's products include every claimed feature of any independent claim in the '851 patent. Plaintiff's Satisfyer products do not include, among other things, the claimed "connection element."

**ANSWER:**     Defendants deny the allegations contained in Paragraph 193.

194.     For at least these reasons, Plaintiff has not infringed and does not infringe any claim of the '851 Patent under any theory of infringement.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 194.

195.     A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding the '851 Patent.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 195.

## TENTH COUNT
## DECLARATORY JUDGMENT OF NONINFRINGEMENT
## OF THE '061 PATENT

196.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**     Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 196.

197.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph

197.  Defendants deny the remaining allegations contained in Paragraph 197.

198.    The '061 patent has three independent claims: 1, 20, and 21. Independent claim

1 of the '061 Patent recites:

> A stimulation device for erogenous zones, comprising:
>> at least one pressure field generating arrangement with:
>>> at least one first chamber;
>>> at least one second chamber having at least one opening for placing on a body part; and
>>> at least one connection element that connects the at least one first chamber to the at least one second chamber;
>>> a drive unit that varies the volume of the at least one first chamber such that a stimulating pressure field is generated via the at least one connection element in the at least one second chamber;
>>> a control device that activates the drive unit; and an appendage;
>> wherein the stimulating pressure field generated in the at least one second chamber comprises a pattern of negative and positive pressures, modulated onto with respect to a reference pressure;
>> wherein the at least one first chamber is connected to the at least one second chamber solely by the at least one connection element, and
>> wherein the appendage is a dildo configured to be inserted into a vagina.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 198

that describe or paraphrase the '061 Patent as the document speaks for itself.

199.    Independent claims 20 and 21 include similar features to independent claim 1.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 199

that describe or paraphrase the '061 Patent as the document speaks for itself.

200.    None of Plaintiff's products include every claimed feature of any independent claim in the '061 patent.  Plaintiff's Satisfyer products do not include, among other things, the claimed "connection element."

**ANSWER:**    Defendants deny the allegations contained in Paragraph 200.

201.    For at least these reasons, Plaintiff has not infringed and does not infringe any claim of the '061 Patent under any theory of infringement.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 201.

202.    A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding the '061 Patent.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 202.

## ELEVENTH COUNT
## DECLARATORY JUDGMENT OF NONINFRINGEMENT
## OF THE '097 PATENT

203.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 203.

204.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph 204.  Defendants deny the remaining allegations contained in Paragraph 204.

205.    The '097 patent has four independent claims: 1, 12, 17, and 26.   Independent claim 1 of the '061 Patent recites:

> A stimulation device, comprising:
>> a chamber having a flexible wall portion;
>> a drive unit in physical communication with the flexible wall portion so as to cause deflections of the flexible wall portion in opposing directions, thereby resulting in a changing volume of the chamber, the changing volume of the chamber resulting in modulated positive and negative pressures with respect to a reference pressure;
>> an opening for applying the modulated positive and negative pressures to a body part;
>> a control device for controlling the drive unit; and
>> an appendage, wherein the appendage is a dildo configured to be inserted into a vagina.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 205 that describe or paraphrase the '097 Patent as the document speaks for itself.

206.    Independent claims 12, 17, and 26 include similar features to independent claim 1.

**ANSWER:**    Defendants neither admit nor deny the allegations contained in Paragraph 206 that describe or paraphrase the '097 Patent as the document speaks for itself.

207.    None of Plaintiff's products, sold in the United States, include every claimed feature of any independent claim in the '097 patent.  Plaintiff's Satisfyer products, sold in the United States, do not include, among other things, the claimed "appendage."

**ANSWER:**    Defendants deny the allegations contained in Paragraph 207.

208.    For at least these reasons, Plaintiff has not infringed and does not infringe any claim of the '097 Patent under any theory of infringement.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 208.

209.   A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding the '097 Patent.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 209.

## TWELFTH COUNT
## DECLARATORY JUDGMENT OF NONINFRINGEMENT
## OF THE '220 PATENT

210.   Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**   Defendants reallege their answers to the foregoing paragraphs as their answer to Paragraph 210.

211.   As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 211.  Defendants deny the remaining allegations contained in Paragraph 211.

212.   The '220 patent has two independent claims: 1 and 17.  Independent claim 1 of the '220 Patent recites:

> A stimulation device for a clitoris, comprising:
>> a chamber having a flexible wall;
>> a drive unit in physical communication with the flexible wall to cause at least a portion of the flexible wall to deflect in opposing directions, thereby resulting in a changing volume of the chamber,  the  changing volume of the chamber resulting in modulated positive and negative pressures with respect to an ambient pressure;
>> an opening configured to sealingly engage a portion of a body of a user including a clitoris, the modulated positive and negative

pressures to be applied to the portion of the body via the opening, the opening being a sole opening of the chamber to an exterior of the stimulation device, the flexible wall to sealingly separate the drive unit from the portion of the body;

a control device configured to receive input from the user and control the drive unit to create the modulated positive and negative pressures; and

a housing enclosing the drive unit and the control device.

**ANSWER:**     Defendants neither admit nor deny the allegations contained in Paragraph 212 that describe or paraphrase the '220 Patent as the document speaks for itself.

213.    Independent claim 17 includes similar features to independent claim 1.

**ANSWER:**     Defendants neither admit nor deny the allegations contained in Paragraph 213 that describe or paraphrase the '220 Patent as the document speaks for itself.

214.    None of Plaintiff's products include every claimed feature of any independent claim in the '220 Patent. Plaintiff's Satisfyer products do not include, among other things, the claimed "chamber," within the meaning of that term as properly construed.

**ANSWER:**     Defendants deny the allegations in Paragraph 214.

215.    For at least these reasons, Plaintiff has not infringed and does not infringe any claim of the '220 Patent under any theory of infringement.

**ANSWER:**     Defendants deny the allegations in Paragraph 215.

216.    A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding the '220 Patent.

**ANSWER:**     Defendants neither admit nor deny the legal conclusions contained in Paragraph 216.  Defendants deny the remaining allegations contained in Paragraph 216.

## THIRTEENTH COUNT
## DECLARATORY JUDGMENT OF NONINFRINGEMENT
## OF THE '418 PATENT

217.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants reallege their answers to the foregoing paragraphs as their answer to

Paragraph 217.

218.    As a result of the acts described in the preceding paragraphs, there exists a

controversy of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.

**ANSWER:**    Defendants neither admit nor deny the legal conclusions contained in Paragraph

218.  Defendants deny the remaining allegations contained in Paragraph 218.

219.    The '418 patent has two independent claims: 1 and 19.   Independent claim 1 of

the '418 Patent recites:

A stimulation device comprising:

a chamber having a flexible wall;

a drive unit in physical communication with the flexible wall to cause at
least a portion of the flexible wall to deflect in opposing directions,
thereby resulting in a changing volume of the chamber, the changing
volume of the chamber resulting in modulated positive and negative
pressures with respect to an ambient pressure;

an opening configured to sealingly engage a portion of a body of a user
including a clitoris, the modulated positive and negative pressures to
be applied to the portion of the body via the opening, the opening
being a sole opening of the chamber to an exterior of the stimulation
device;

a control device configured to receive input from the user and control the
drive unit to cause the at least the portion of the flexible wall to
deflect to create the modulated positive and negative pressures based
on modulated frequencies; and a housing enclosing the drive unit and
the control device.

**ANSWER:**   Defendants neither admit nor deny the allegations contained in Paragraph 219 that describe or paraphrase the '418 Patent as the document speaks for itself.

220.   Independent claim 19 includes similar features to independent claim 1.

**ANSWER:**   Defendants neither admit nor deny the allegations contained in Paragraph 220 that describe or paraphrase the '418 Patent as the document speaks for itself.

221.   None of Plaintiff's products include every claimed feature of any independent claim in the '418 Patent. Plaintiff's Satisfyer products do not include, among other things, the claimed "chamber," within the meaning of that term as properly construed.

**ANSWER:**   Defendants deny the allegations in Paragraph 221.

222.   For at least these reasons, Plaintiff has not infringed and does not infringe any valid and enforceable claim of the '418 Patent under any theory of infringement.

**ANSWER:**   Defendants deny the allegations in Paragraph 222.

223.   A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding the '418 Patent.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions contained in Paragraph 223.  Defendants deny the remaining allegations contained in Paragraph 223.

## **AFFIRMATIVE DEFENSES**

Defendants assert and allege the following defenses in response to the allegations in the Third Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein:

1.   Plaintiff's Third Amended Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiff has waived the right, if any, to pursue its claims by reason of its own actions and course of conduct, including but not limited to estoppel and/or the doctrine of unclean hands.

3.      Plaintiff has infringed and continues to infringe Novoluto's patents as described further in Defendants' Counterclaims set forth below.

4.      The '851 Patent, '061 Patent, '097 Patent, '220, and '418 Patent are not unenforceable.

5.      Plaintiff's purported claims are barred in whole or in part by one or more equitable doctrines including at least laches, acquiescence, unclean hands, and estoppel.

6.      Plaintiff and Counterclaim Defendant EIS, Inc., and Counterclaim Defendants EIS GmbH, Triple A Imports GmbH, and Triple A Marketing GmbH are estopped under 35 U.S.C. § 315(e)(2) from arguing in this litigation that any previously-challenged patent claim is invalid on any ground that EIS GmbH raised or reasonably could have raised in any of the *inter partes* review proceedings Case Nos. IPR2019-01302, IPR2019-01444, and IPR2020-00007.

7.      Any and all acts alleged to have been committed by Defendants, if performed, were performed with lack of knowledge and lack of willful intent.

8.      Plaintiff's causes of action, and each of them, are barred to the extent Plaintiff is seeking double recovery for the same alleged wrongs.

9.      The claims and relief sought by the Complaint are barred by the truth of the statements made.

10.     Defendants' wrongful conduct, if any, was induced and/or caused by Plaintiff's conduct.

11.     Plaintiff has failed to take reasonable action to mitigate the loss, injury, or damage allegedly suffered, and any recovery must be barred or diminished by reason thereof.

12.     Claims 1-4 made in the Third Amended Complaint are barred, in whole or in part, on the basis of federal preemption, to the extent they seek a remedy for alleged actions by Defendants that are exclusively governed by federal patent law.

13.     The claims made in the Third Amended Complaint are barred, in whole or in part, because Plaintiff cannot show that Defendants profited from any actionable alleged conduct by Defendants.

14.     Defendants are currently without sufficient knowledge or information upon which to form a belief as to whether additional defenses are available.  Therefore, Defendants reserve the right to amend this Answer to assert any such additional defenses or counterclaims based on legal theories that may become apparent through discovery or through further legal analysis of Plaintiff's positions, claims and allegations in this litigation.

WHEREFORE, Defendants deny that Plaintiff is entitled to any of the relief requested in its prayer for relief.

## COUNTERCLAIMS

1.     Defendants hereby incorporate by reference all of the answers and affirmative defenses to the Third Amended Complaint filed by the Plaintiff in this action set forth above in this Answer.

2.     Novoluto owns U.S. Patent Nos. 9,937,097 ("the '097 Patent"), "Stimulation Device Having An Appendage," 9,849,061 ("the '061 Patent"), "Stimulation Device Having An Appendage," and 9,763,851 ("the '851 Patent"), "Stimulation Device," 11,090,220 ("the '220 Patent"). "Stimulation Device," 11,103,418 ("the '418 Patent"), "Stimulation Device,"

(collectively, the "Asserted Patents"), and has the right to enforce these patents against infringers.

3.      EIS, Inc., EIS GmbH, Triple A Import GmbH, and Triple A Marketing GmbH (collectively "Counterclaim Defendants") have directly and indirectly infringed one or more claims of the Asserted Patents.  Counterclaim Defendants' direct infringement includes making, using, selling, offering to sell, and/or importing stimulation devices such as the devices referred to as the Satisfyer Rabbit and Satisfyer Pro 2 (the "Accused Products").

## THE PARTIES

4.      Novoluto is a company organized and existing under the laws of Germany, with a principal place of business at Friedenstraße 91-91a, 10249 Berlin, Germany.

5.      On information and belief based on Paragraph 1 of the Third Amended Complaint, EIS, Inc. is a Delaware corporation, having a principal place of business at 110 Wall Street, New York, New York, 1005.

6.      On information and belief, EIS GmbH is the corporate parent of EIS, Inc incorporated under the laws of Germany, having a principal place of business at AM Lenkwerk 3, 33609 Bielefeld, Germany.

7.      On information and belief, Triple A Import GmbH is a company incorporated under the laws of Germany, having a principal place of business at AM Lenkwerk 3, 33609 Bielefeld, Germany.

8.      On information and belief, Triple A Marketing GmbH is a company incorporated under the laws of Germany, having a principal place of business at AM Lenkwerk 3, 33609 Bielefeld, Germany.

9.      On information and belief, EIS GmbH, Triple A Import GmbH, and Triple A Marketing GmbH are companies that are fully owned by Triple A Finance GmbH & Co. KG.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338 as these counterclaims constitute a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1 et seq.

11.      EIS, Inc. has consented to the personal jurisdiction of this Court at least by commencing its action for declaratory judgment in this District, as set forth in its Third Amended Complaint.

12.      By virtue of filing this action, EIS has also consented that venue is permissible in this District pursuant to at least 28 U.S.C. §§ 1391(c) and 1400.

13.      Venue is proper in this district under 28 U.S.C § 1391(b) and (c) as to EIS GmbH, Triple A Import GmbH, and Triple A Marketing GmbH ("the German Counter-Defendants") because personal jurisdiction over all defendants is proper in this district, and the acts complained of occurred and are occurring in the United States, including this District.

14.      This Court has personal jurisdiction over the German Counter-Defendants pursuant to due process and/or the Delaware Long Arm Statute because the German Counter-Defendants have, directly or through intermediaries, committed acts within Delaware giving rise to this action and/or have established minimum contacts with Delaware such the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

15.      The German Counter-Defendants have placed, and are continuing to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Delaware.

16.     Upon information and belief, the German Counter-Defendants have derived substantial revenues from their infringing acts occurring within Delaware.  In addition, the German Counter-Defendants have, and continue to, knowingly induce infringement within this District by advertising, marketing, importing, offering for sale and/or selling infringing devices within this District, to consumers, customers, manufacturers, distributers, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing devices with knowledge thereof.

17.     EIS GmbH is responsible for designing and developing the Satisfyer Pro 2 Next Generation and the "Air Pulse" technology, according to Paragraphs 43 and 44 of the Third Amended Complaint.

18.     EIS GmbH is also identified on the packaging of products that have "Air Pulse" technology, including the Satisfyer Pro 4 Couples, as shown below.





19.     The products that identify EIS GmbH on the packaging include user manuals

which facilitate, direct, or encourage the use of infringing devices.

20.     Upon information and belief, EIS GmbH imports "Air Pulse" products into the United States, including to EIS, Inc., as shown below:



*See*, https://importkey.com/i/eis-gmbh.

21.     EIS GmbH has also represented that it "sells vibrators and massaging apparatuses under the 'Satisfyer' brand in various markets around the world including several countries in Europe and North America. It has used the 'Satisfyer' brand in respect of products in the United States since May 2016."[1]

22.     EIS GmbH sells, offers for sale, and/or imports "Air Pulse" products that infringe the Asserted Patents.

23.     Triple A Import GmbH is also identified on the packaging of products that have "Air Pulse" technology, including the Satisfyer Curvy 3+, and are sold in Delaware, as shown below.

---

[1] *See*, https://www.wipo.int/amc/es/domains/search/text.jsp?case=D2017-1163.





24.     The products that identify Triple A Import GmbH on the packaging include user manuals which facilitate, direct, or encourage the use of infringing devices.

25.     Upon information and belief, Triple A Import GmbH imports "Air Pulse" products into the United States, including to EIS, Inc., as shown below:

| # | IMPORTER | LAST ADDRESS | MOST RECENT | NO. OF CONTAINERS | GROSS WEIGHT KGS |
|---|---|---|---|---|---|
| 1 | ARGENTS EXPRESS GROUP | LONG BEACH, CALIFORNIA | 2021-07-28 | 15 | 55815 KGS |
| 2 | ECN CORP, ECN CA WAREHOUSE | LOS ANGELES, CALIFORNIA | 2019-08-30 | 4 | 2031 KGS |
| 3 | HOLIDAY PRODUCTS CO.,LTD. | LONG BEACH, CALIFORNIA | 2019-06-07 | 2 | 228 KGS |
| 4 | WILLIAMS TRADING CO, BETHANN SMITH | NEW YORK/NEWARK AREA, NEWARK, NEW JERSEY | 2019-06-18 | 1 | 1573 KGS |
| 5 | EIS INC. | TACOMA, WASHINGTON | 2019-01-11 | 1 | 2206 KGS |

*See*, https://www.importgenius.com/suppliers/triple-a-marketing-gmbh.

26.     Upon information and belief, Triple A Import GmbH imports "Air Pulse" products that infringe the Asserted Patents.

27.     Triple A Marketing GmbH is responsible for developing, designing, and operating the Satisfyer Connect mobile app that allows users to remotely control certain Accused Products, such as the Satisfyer Curvy 3+.

28.     Triple A Marketing GmbH, through the Satisfyer Connect mobile app, facilitates, directs, or encourages the use of certain Accused Products.

29.     Upon information and belief, Triple A Marketing GmbH imports "Air Pulse" products into the United States, including to EIS, Inc., as shown below:



*See*, https://www.importyeti.com/supplier/triple-a-marketing.

30.     Upon information and belief, Triple A Marketing GmbH imports "Air Pulse" products that infringe the Asserted Patents.

31.     Additionally, EIS GmbH filed three petitions for *inter partes* review challenging the validity of the '097 Patent, the '851 Patent, and the '061 Patent in Case Nos. IPR2019-01302, IPR2019-01444, and IPR2020-00007.

32.     In the petition filed in IPR2019-01302, EIS GmbH identified EIS, Inc., Triple A Import GmbH, and Triple A Marketing GmbH, among others, as real-parties-in-interest:

> **Real Party-in-Interest**: Petitioner identifies the following as real parties-in-interest: EIS GmbH; EIS Inc.; Triple A Import GmbH; Triple A Marketing GmbH; Triple A Sales GmbH; and Triple A Internetshops GmbH (formerly known as "Internetsupport Bielefeld").

*EIS GmbH v. Novoluto GmbH*, IPR 2019-01302, Paper 1 at 1 (P.T.A.B. July 3, 2019).

33.     In the petition filed in IPR2019-01444, EIS GmbH identified EIS, Inc., Triple A Import GmbH, and Triple A Marketing GmbH, among others, as real-parties-in-interest:

> **Real Party-in-Interest**: Petitioner identifies the following as real parties-in-interest: EIS GmbH; EIS Inc.; Triple A Import GmbH; Triple A Marketing GmbH; Triple A Sales GmbH; and Triple A Internetshops GmbH (formerly known as "Internetsupport Bielefeld").

34.     *EIS GmbH v. Novoluto GmbH,* IPR 2019-01444, Paper 1 at 1 (P.T.A.B. July 31, 2019).  In the petition filed in IPR2020-00007, EIS GmbH identified EIS, Inc., Triple A Import GmbH, and Triple A Marketing GmbH, among others, as real-parties-in-interest:

**Real Party-in-Interest**:  Petitioner identifies the following as real parties-in-interest:  EIS GmbH; EIS Inc.; Triple A Import GmbH; Triple A Marketing GmbH; Triple A Sales GmbH; and Triple A Internetshops GmbH (formerly known as "Internetsupport Bielefeld").

*EIS GmbH v. Novoluto GmbH*, IPR 2020-00004, Paper 1 at 1 (P.T.A.B. October 2, 2019).

35.     The Patent Trial and Appeal Board initially denied institution for each of the three IPR petitions.  *EIS GmbH v. Novoluto GmbH*, IPR 2019-01302, Paper 17 (P.T.A.B. January 13, 2020); *EIS GmbH v. Novoluto GmbH*, IPR 2019-01444, Paper 12 (P.T.A.B. February 10, 2020); *EIS GmbH v. Novoluto GmbH*, IPR 2020-00007, Paper 8 (P.T.A.B. April 6, 2020).

36.     EIS GmbH filed a request for rehearing in each of the three cases.  *EIS GmbH v. Novoluto GmbH*, IPR 2019-01302, Paper 18 (P.T.A.B. February 7, 2020); *EIS GmbH v. Novoluto GmbH*, IPR 2019-01444, Paper 14 (P.T.A.B. March 6, 2020); *EIS GmbH v. Novoluto GmbH*, IPR 2020-00007, Paper 9 (P.T.A.B. May 6, 2020).

37.     EIS, Inc. relied on each request for rehearing in this litigation, filing three separate notices of "supplemental authority" in this case asking this Court to take notice of the requests.  D.I. Nos. 43, 47, and 72.

38.     The final written decision for IPR2019-01302 issued on June 14, 2021, in favor of Patent Owner, Novoluto GmbH; all challenged claims were upheld as patentable.  *EIS GmbH v. Novoluto GmbH*, IPR 2019-01302, Paper 50 (P.T.A.B. June 14, 2021).

39.     The final written decision for IPR2019-01444 issued on August 5, 2021, in favor of Patent Owner, Novoluto GmbH; all challenged claims were upheld as patentable.  *EIS GmbH EIS GmbH v. Novoluto GmbH*, IPR 2019-01444, Paper 45 (P.T.A.B. August 5, 2020).

40.     The final written decision for IPR2020-00007 issued on September 23, 2021, in favor of Patent Owner, Novoluto GmbH; all challenged claims were upheld as patentable.  *EIS GmbH v. Novoluto GmbH*, IPR 2020-00007, Paper 41 (P.T.A.B. September 23, 2020).

41.     As a result, the estoppel provisions of 35 U.S.C. § 315 now preclude Counterclaim Defendants and their privies from challenging any previously challenged patent claim based on any ground that was raised or reasonably could have been raised in any of the *inter partes* review proceedings, Case Nos. IPR2019-01302, IPR2019-01444, and IPR2020-00007.

## BACKGROUND

42.     The Asserted Patents describe the first sexual stimulation devices to use modulated positive and negative pressures with respect to a reference pressure to enhance sexual arousal.

43.     The '851, '220, and '418 Patents are generally directed to a handheld sexual stimulation device with various components and features, including an opening through which modulated positive and negative pressures can be applied to the clitoris.  The '097 and '061 Patents are also generally directed to handheld sexual stimulation devices that, among other features, include an opening through which modulated positive and negative pressures can be applied to female erogenous zones, particularly the clitoris, as well as a vaginal dildo appendage.

44.     The commercial embodiments of the Asserted Patents are branded under the name "Womanizer®".  The commercial embodiments of the '851 Patent include, among others, the "Classic," "Premium," "Starlet," "Pro," "InsideOut," and "Duo" products.  The commercial embodiments of the '097 and '061 Patents are the "InsideOut" and "Duo" products.  The

commercial embodiments of the '220 patent include, among others, the "Classic," "Premium," "Starlet," "Pro," "InsideOut," and "Duo" products.  The commercial embodiments of the '418 patent include, among others, the "Classic," "Premium," "Starlet," "Pro," "InsideOut," and "Duo" products.  The authorized embodiments of one or more of the Asserted Patents hereinafter are collectively identified as "Commercial Embodiments".  The Commercial Embodiments have been described as "an entirely new type of sex toy," "totally unique," and "nothing short of perfection."

45.     After Novoluto filed the applications that led to the Asserted Patents and launched the first commercial embodiments, the industry saw an influx of devices attempting to capitalize on the innovative technology disclosed in the Asserted Patents, including Counterclaim Defendants' Satisfyer Pro 2 and, later, the Satisfyer Pro G-Spot Rabbit and Satisfyer's Penguin Air Pulse Stimulator.

46.     As explained in more detail below and in the associated claim charts included with these counterclaims (Exhibits 4-6, 8, and 10), the Accused Products and Counterclaim Defendants infringe the Asserted Patents.

### COUNT I
### INFRINGEMENT OF U.S. PATENT NO. 9,763,851

47.     Novoluto realleges and incorporates by reference the allegations in the preceding paragraphs.

48.     The '851 Patent is titled "Stimulation Device."  On September 19, 2017, the '851 Patent was duly and legally issued by the U.S. Patent and Trademark Office (USPTO).  Novoluto is the assignee of the entire right, title, and interest in and to the '851 Patent, including all rights to enforce this patent against infringers.  A true and correct copy of the '851 Patent is attached as Exhibit 1.

49.     The '851 Patent issued from Patent Application Publication No. US2016/0213557 which was published on July 28, 2016, with substantially identical claims.

50.     Counterclaim Defendants have infringed at least claim 1 of the '851 Patent at least by making, using, selling, offering to sell, and/or importing stimulation devices, such as the devices referred to as Pro 2.

51.     The Pro 2 directly infringes at least claim 1 of the '851 Patent under 35 U.S.C. § 271(a), as shown in the claim chart attached as Exhibit 4.

52.     Counterclaim Defendants had knowledge of the '851 Patent and the application from which it issued prior to the issuance of the '851 Patent.

53.     Counterclaim Defendants also provide their customers with instructions and training, including user manuals and instructional videos, that teach, recommend and induce the infringing use and operation of the Accused Products in the United States.

54.     On information and belief, Counterclaim Defendants are aware that use and operation of the Accused Products in the United States by Counterclaim Defendants or their customers would directly infringe the '851 Patent.

55.     On information and belief, Counterclaim Defendants, with knowledge of the '851 Patent, encouraged distributors and retailers to sell the Accused Products and specifically educated distributors and retailers on the infringing use and operation of the Accused Products in the United States.

56.     On information and belief, Counterclaim Defendants aid and abet their customers' direct infringement of the '851 Patent with knowledge that use of the Accused Products in the United States directly infringes the '851 Patent.

57.     Counterclaim Defendants' actions actively induce infringement of the '851 Patent.   Accordingly, Counterclaim Defendants are also liable for indirect infringement pursuant to 35 U.S.C. § 271(b).

58.     Novoluto has been damaged as a result of Counterclaim Defendants' infringing conduct.   Thus, Counterclaim Defendants are liable to Novoluto in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59.     Novoluto has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for Counterclaim Defendants' infringement of the '851 Patent.

## COUNT II:
## INFRINGEMENT OF U.S. PATENT NO. US 9,849,061

60.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

61.     The '061 Patent is titled "Stimulation Device Having An Appendage."   On December 26, 2017, the '061 Patent was duly and legally issued by the USPTO.   Novoluto is the assignee of the entire right, title, and interest in and to the '061 Patent, including all rights to enforce this patent against infringers.   A true and correct copy of the '061 Patent is attached as Exhibit 2.

62.     Counterclaim Defendants have infringed at least claim 1 of the '061 Patent at least by making, using, selling, offering to sell, and/or importing stimulation devices such as the devices referred to as Satisfyer Pro G-Spot Rabbit in the United States.

63.     Satisfyer Pro G-Spot Rabbit directly infringes, *e.g.*, when used, at least claims 1 and 21 of the '061 Patent, under 35 U.S.C. § 271(a).   A representative claim chart showing infringement of claim 1 of the '061 Patent is attached as Exhibit 5.

64.     On information and belief, Counterclaim Defendants have had knowledge of the '061 Patent and the application from which it issued prior to the issuance of the '061 Patent.

65.     Counterclaim Defendants also provide their customers with instructions and training, including user manuals and instructional videos, that teach, recommend and induce the infringing use and operation of the Accused Products in the United States.

66.     On information and belief, Counterclaim Defendants are aware that use and operation of the Accused Products in the United States by Counterclaim Defendants or their customers directly infringe the '061 Patent.

67.     On information and belief, Counterclaim Defendants, with knowledge of the '061 Patent, encourage distributors and retailers to sell the Accused Products and specifically educates distributors and retailers on the infringing use and operation of the Satisfyer Pro G-Spot Rabbit in the United States.

68.     On information and belief, Counterclaim Defendants aid and abet their customers' direct infringement of the '061 Patent with knowledge that use of the Satisfyer Pro G-Spot Rabbit in the United States directly infringes the '061 Patent.

69.     Counterclaim Defendants' actions actively induce infringement of the '061 Patent.   Accordingly, Counterclaim Defendants are also liable for indirect infringement pursuant to 35 U.S.C. § 271(b).

70.     In addition, Satisfyer Pro G-Spot Rabbit is configured only for infringing use as a sexual stimulation device, as shown in the claim chart attached as Exhibit 5.

71.     Satisfyer Pro G-Spot Rabbit is not a staple article of commerce.

72.     Satisfyer Pro G-Spot Rabbit is not suitable for substantial non-infringing use.

73.     The use of Satisfyer Pro G-Spot Rabbit by EIS's customers in the United States constitutes direct infringement of the '061 Patent.

74.     On information and belief, Counterclaim Defendants know that Satisfyer Pro G-Spot Rabbit is not a staple article of commerce, is not suitable for substantial non-infringing use, and is especially made or adapted for use in a manner that infringes Novoluto's patent rights associated with the '061 Patent.

75.     Counterclaim Defendants have sold Satisfyer Pro G-Spot Rabbit to their customers, and continues to sell, with the intent that its customers will use and operate Satisfyer Pro G-Spot Rabbit in the United States in a manner that infringes the '061 Patent, as Satisfyer Pro G-Spot Rabbit is configured only for infringing use of the '061 Patent.

76.     Counterclaim Defendants are also aware, on information and belief, that use and operation of the Satisfyer Pro G-Spot Rabbit in the United States by Counterclaim Defendants or their customers directly infringes the '061 Patent.

77.     Counterclaim Defendants' above-described actions therefore also constitute contributory infringement of the '061 Patent under 35 U.S.C. § 271(c).

78.     Novoluto has been damaged as a result of the infringing conduct by Counterclaim Defendants.  Thus, Counterclaim Defendants are liable to Novoluto in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

79.     On information and belief, Counterclaim Defendants' infringement of the '061 Patent has been willful at least because despite being aware of the '061 Patent and being aware of the similarities between the Satisfyer Pro G-Spot Rabbit and the Commercial Embodiments, such infringing conduct continues in conscious disregard of Novoluto's rights in the '061 Patent.

80.     Novoluto has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for Counterclaim Defendants' infringement of the '061 Patent.

**COUNT III:**
**INFRINGEMENT OF U.S. PATENT NO. 9,937,097**

81.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

82.     The '097 Patent is titled "Stimulation Device Having An Appendage."  On April 10, 2018, the '097 Patent was duly and legally issued by the USPTO.  Novoluto is the assignee of the entire right, title, and interest in and to the '097 Patent, including all rights to enforce this patent against infringers.  A true and correct copy of the '097 Patent is attached as Exhibit 3.

83.     Counterclaim Defendants have infringed at least claim 1 of the '097 Patent at least by making, using, selling, offering to sell, and/or importing stimulation devices such as the devices referred to as Satisfyer Pro G-Spot Rabbit in the United States.

84.     Satisfyer Pro G-Spot Rabbit directly infringes, *e.g.*, when used, at least claims 1 and 26 of the '097 Patent, under 35 U.S.C. § 271(a).  A representative claim chart showing infringement of claim 1 of the '097 Patent is attached as Exhibit 6.

85.     On information and belief, Counterclaim Defendants have had knowledge of the '097 Patent and the application from which it issued prior to the issuance of the '097 Patent.

86.     Counterclaim Defendants also provide their customers with instructions and training, including user manuals and instructional videos, that teach, recommend and induce the infringing use and operation of the Accused Products in the United States.

87.     On information and belief, Counterclaim Defendants are aware that use and operation of the Accused Products in the United States by Counterclaim Defendants or their customers directly infringes the '097 Patent.

88.     On information and belief, Counterclaim Defendants, with knowledge of the '097 Patent, encourage distributors and retailers to sell the Accused Products and specifically educate distributors and retailers on the infringing use and operation of the Satisfyer Pro G-Spot Rabbit in the United States.

89.     On information and belief, Counterclaim Defendants aid and abet their customers' direct infringement of the '097 Patent with knowledge that use of the Satisfyer Pro G-Spot Rabbit in the United States directly infringes the '097 Patent.

90.     Counterclaim Defendants' actions actively induce infringement of the '097 Patent. Accordingly, Counterclaim Defendants are also liable for indirect infringement pursuant to 35 U.S.C. § 271(b).

91.     In addition, Satisfyer Pro G-Spot Rabbit is configured only for infringing use as a sexual stimulation device, as shown in the claim chart attached as Exhibit 6.

92.     Satisfyer Pro G-Spot Rabbit is not staple article of commerce.

93.     Satisfyer Pro G-Spot Rabbit is not suitable for substantial non-infringing use.

94.     The use of Satisfyer Pro G-Spot Rabbit by Counterclaim Defendants' customers in the United States constitutes direct infringement of the '097 Patent.

95.    On information and belief, Counterclaim Defendants know Satisfyer Pro G-Spot Rabbit is not a staple article of commerce, is not suitable for substantial non-infringing use, and is especially made or adapted for use in a manner that infringes Novoluto's patent rights associated with the '097 Patent.

96.    Counterclaim Defendants are also aware, on information and belief, that use and operation of the Satisfyer Pro G-Spot Rabbit in the United States by Counterclaim Defendants or their customers directly infringes the '097 Patent.

97.    Counterclaim Defendants have sold Satisfyer Pro G-Spot Rabbit to their customers, and continue to sell, with the intent that their customers will use and operate Satisfyer Pro G-Spot Rabbit in the United States in a manner that infringes the '097 Patent, as Satisfyer Pro G-Spot Rabbit is configured only for infringing use of the '097 Patent.

98.    Counterclaim Defendants are also aware, on information and belief, that use and operation of the Satisfyer Pro G-Spot Rabbit in the United States by Counterclaim Defendants or their customers directly infringes the '097 Patent.

99.    Counterclaim Defendants' above-described actions therefore also constitute contributory infringement of the '097 Patent under 35 U.S.C. § 271(c).

100.   Novoluto has been damaged as a result of the infringing conduct by Counterclaim Defendants.  Thus, Counterclaim Defendants are liable to Novoluto in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

101.   On information and belief, Counterclaim Defendants' infringement of the '097 Patent has been willful at least because despite being aware of the '061 Patent and being aware

of the similarities between the Satisfyer Pro G-Spot Rabbit and the Commercial Embodiments, such infringing conduct continues in conscious disregard of Novoluto's rights in the '097 Patent.

102.     Novoluto has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for Counterclaim Defendants' infringement of the '097 Patent.

**COUNT IV:**
**INFRINGEMENT OF U.S. PATENT NO. 11,090,220**

103.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

104.     The '220 Patent is titled "Stimulation Device."  On August 17, 2021, the '220 Patent was duly and legally issued by the USPTO.  Novoluto is the assignee of the entire right, title, and interest in and to the '220 Patent, including all rights to enforce this patent against infringers.  A true and correct copy of the '220 Patent is attached as Exhibit 7.

105.     Counterclaim Defendants have infringed at least claim 1 of the '220 Patent at least by making, using, selling, offering to sell, and/or importing stimulation devices such as the devices referred to as Satisfyer Penguin Air Pulse Stimulator in the United States.

106.     Satisfyer Penguin Air Pulse Stimulator directly infringes, *e.g.*, when used, at least claim 1 of the '220 Patent, under 35 U.S.C. § 271(a).  A representative claim chart showing infringement of claim 1 of the '220 Patent is attached as Exhibit 8.

107.     On information and belief, Counterclaim Defendants have had knowledge of the '220 Patent and the application from which it issued prior to the issuance of the '220 Patent.

108.    Counterclaim Defendants also provide their customers with instructions and training, including user manuals and instructional videos, that teach, recommend and induce the infringing use and operation of the Accused Products in the United States.

109.    On information and belief, Counterclaim Defendants are aware that use and operation of the Accused Products in the United States by Counterclaim Defendants or their customers directly infringes the '220 Patent.

110.    On information and belief, Counterclaim Defendants, with knowledge of the '220 Patent, encourage distributors and retailers to sell the Accused Products and specifically educates distributors and retailers on the infringing use and operation of the Satisfyer Penguin Air Pulse Stimulator in the United States.

111.    On information and belief, Counterclaim Defendants aid and abet their customers' direct infringement of the '220 Patent with knowledge that use of the Satisfyer Penguin Air Pulse Stimulator in the United States directly infringes the '220 Patent.

112.    Counterclaim Defendants' actions actively induce infringement of the '220 Patent. Accordingly, Counterclaim Defendants are also liable for indirect infringement pursuant to 35 U.S.C. § 271(b).

113.    Novoluto has been damaged as a result of the infringing conduct by Counterclaim Defendants.  Thus, Counterclaim Defendants are liable to Novoluto in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

114.    On information and belief, Counterclaim Defendants' infringement of the '220 Patent has been willful at least because despite being aware of the '220 Patent and being aware

of the similarities between the Satisfyer Penguin Air Pulse Stimulator and the Commercial Embodiments, such infringing conduct continues in conscious disregard of Novoluto's rights in the '220 Patent.

115. Novoluto has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for Counterclaim Defendants' infringement of the '220 Patent.

**COUNT V:**
**INFRINGEMENT OF U.S. PATENT NO. 11,103,418**

116. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

117. The '418 Patent is titled "Stimulation Device."  On August 31, 2021, the '418 Patent was duly and legally issued by the USPTO.  Novoluto is the assignee of the entire right, title, and interest in and to the '418 Patent, including all rights to enforce this patent against infringers.  A true and correct copy of the '418 Patent is attached as Exhibit 9.

118. Counterclaim Defendants have infringed at least claim 1 of the '418 Patent at least by making, using, selling, offering to sell, and/or importing stimulation devices such as the devices referred to as Penguin Air Pulse Stimulator in the United States.

119. Satisfyer Penguin Air Pulse Stimulator directly infringes, *e.g.*, when used, at least claim 1 of the '418 Patent, under 35 U.S.C. § 271(a).  A representative claim chart showing infringement of claim 1 of the '418 Patent is attached as Exhibit 10.

120. On information and belief, Counterclaim Defendants have had knowledge of the '418 Patent and the application from which it issued prior to the issuance of the '418 Patent.

121.    Counterclaim Defendants also provide their customers with instructions and training, including user manuals and instructional videos, that teach, recommend and induce the infringing use and operation of the Accused Products in the United States.

122.    On information and belief, Counterclaim Defendants are aware that use and operation of the Accused Products in the United States by Counterclaim Defendants or their customers directly infringes the '418 Patent.

123.    On information and belief, Counterclaim Defendants, with knowledge of the '418 Patent, encourage distributors and retailers to sell the Accused Products and specifically educates distributors and retailers on the infringing use and operation of the Satisfyer Penguin Air Pulse Stimulator in the United States.

124.    On information and belief, Counterclaim Defendants aid and abet their customers' direct infringement of the '418 Patent with knowledge that use of the Satisfyer Penguin Air Pulse Stimulator in the United States directly infringes the '418 Patent.

125.    Counterclaim Defendants' actions actively induce infringement of the '418 Patent. Accordingly, Counterclaim Defendants are also liable for indirect infringement pursuant to 35 U.S.C. § 271(b).

126.    Novoluto has been damaged as a result of the infringing conduct by Counterclaim Defendants.  Thus, Counterclaim Defendants are liable to Novoluto in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

127.    On information and belief, Counterclaim Defendants' infringement of the '418 Patent has been willful at least because despite being aware of the '418 Patent and being aware

of the similarities between the Satisfyer Penguin Air Pulse Stimulator and the Commercial Embodiments, such infringing conduct continues in conscious disregard of Novoluto's rights in the '418 Patent.

128.    Novoluto has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for Counterclaim Defendants' infringement of the '418 Patent.

## PRAYER FOR RELIEF

Novoluto requests that the Court find in its favor and against Counterclaim Defendants, and that the Court grant Novoluto the following relief:

A.    Judgment that one or more claims of each of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Counterclaim Defendants;

B.    Judgment that Counterclaim Defendants' infringement has been willful;

C.    A permanent injunction enjoining Counterclaim Defendants and their officers, directors, agents, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from the infringement of the Asserted Patents; or, in the alternative, an award of ongoing damages for future infringement;

D.    Judgment that Counterclaim Defendants account for and pay to Novoluto all damages to and costs incurred by Novoluto because of Counterclaim Defendants' infringing activities and other conduct complained of herein, including an award of all increased damages to which Novoluto is entitled under 35 U.S.C. § 284;

E.    That Novoluto be granted pre-judgment and post-judgment interest on the damages caused by Counterclaim Defendants' infringing activities and other conduct complained of herein;

F.     That this Court declare this an exceptional case and award Novoluto its reasonably attorney's fees and costs in accordance with 35 U.S.C. § 285; and

G.     That Novoluto be granted such other and further relief as the Court may deem just and proper under the circumstances.

## <u>JURY DEMAND</u>

Defendants and Counterclaim Plaintiff demand a trial by jury on all issues triable by a jury.

Date:  September 28, 2021

OF COUNSEL:

Tammy J. Terry
Califf T. Cooper
OSHA BERGMAN WATANABE & BURTON LLP
Two Houston Center
909 Fannin, Suite 3500
Houston, TX 77010
(713) 228-8600
OLWOWTechDE@obwbip.com

**CHIPMAN BROWN CICERO & COLE, LLP**

   */s/ Paul D. Brown*
Paul D. Brown (No. 3903)
Joseph B. Cicero (No. 4388)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302-) 295-0191
brown@chipmanbrown.com
cicero@chipmanbrown.com

*Attorneys for Defendants*