IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1227 (LPS) |
| | ) | |
| INTIHEALTH GER GMBH, | ) | |
| WOW TECH USA, LTD., | ) | |
| WOW TECH CANADA, LTD. and | ) | |
| NOVOLUTO GMBH, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| NOVOLUTO GMBH, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EIS, INC., EIS GMBH, | ) | |
| TRIPLE A IMPORT GMBH, | ) | |
| and TRIPLE A MARKETING GMBH, | ) | |
| | ) | |
| Counterclaim Defendants | ) | |

**PLAINTIFF EIS INC'S ANSWER AND AFFIRMATIVE DEFENSES
TO DEFENDANT NOVOLUTO'S COUNTERCLAIMS**

Plaintiff EIS, Inc. ("EIS") hereby responds to the counterclaims of Defendant Novoluto

GmbH ("Novoluto") set forth in Defendants' Answer, Affirmative Defenses, and Counterclaims

to Plaintiff's Third Amended Complaint ("Counterclaims") (D.I. 118) with the following Answer

and Affirmative Defenses.[1]

---

[1] EIS, Inc., understands that the other defendants' responses are not due until December 13, 2021, and that they will respond at that time.

## GENERAL DENIAL

Unless specifically admitted below, EIS denies each and every allegation in Novoluto's Counterclaims, including allegations contained in the headings.

## NOVOLUTO'S COUNTERCLAIMS

1.      Paragraph 1 does not set forth any allegations to which a response is required.  To the extent this paragraph purports to incorporate any allegations to which a response is required, EIS lacks knowledge or information sufficient to form a belief about the truth of those allegations, including the specific allegations to which Novoluto refers, and therefore denies them.

2.      EIS admits that U.S. Patent Nos. 9,937,097 ("the '097 Patent"), 9,849,061 ("the '061 Patent"), 9,763,851 ("the '851 Patent"), 11,090,220 ("the '220 Patent"), and 11,103,418 ("the '418 Patent") (collectively, the "Asserted Patents") state on their covers that the assignee is Novoluto.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 2 and therefore denies them.

3.      Denied.

## THE PARTIES

4.      Admitted.

5.      Admitted.

6.      EIS admits that EIS GmbH is the corporate parent of EIS, Inc., and that EIS GmbH is incorporated under the laws of Germany.  EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 6 and therefore denies them.

7.      EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 7 and therefore denies them.

8.      EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 8 and therefore denies them.

9.      EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 9 and therefore denies them.

## JURISDICTION AND VENUE

10.      EIS admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and that Novoluto purports to bring its counterclaims under 35 U.S.C. § 1 et seq.  The remainder of this paragraph sets forth argument and legal conclusions to which no response is required.  To the extent the remainder of this paragraph includes any allegations to which a response is required, EIS denies them.

11.      For the purposes of this case only, EIS admits that it has consented to the personal jurisdiction of this Court at least by commencing its action for declaratory judgment in this District, as set forth in its Third Amended Complaint.

12.      For the purposes of this case only, EIS admits that venue is proper in this District as to EIS.

13.      EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 13 and therefore denies them.

14.      EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 14 and therefore denies them.

15.      EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 15 and therefore denies them.

16.      EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 16 and therefore denies them.

17.      EIS admits that according to Paragraphs 43 and 44 of the Third Amended Complaint, EIS GmbH "developed a new, superior product utilizing a revolutionary design, known as the Satisfyer Pro 2 Next Generation" and that "[t]he Satisfyer Pro 2 Next Generation (and related

products) utilizes a proprietary Air Pulse technology developed by EIS GmbH."  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 17 and therefore denies them.

18.     EIS admits that EIS GmbH is identified on the packaging in one of the images in Paragraph 18.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 18 and therefore denies them.

19.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 19 and therefore denies them.

20.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 20 and therefore denies them.

21.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 21 and therefore denies them.

22.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 22 and therefore denies them.

23.     EIS admits that Triple A Import GmbH is identified on the packaging in one of the images in Paragraph 23.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 23 and therefore denies them.

24.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 24 and therefore denies them

25.     Denied.

26.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 26 and therefore denies them.

27.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 27 and therefore denies them.

28.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 28 and therefore denies them.

29.     EIS admits that the image in Paragraph 29 purports to show "Eis" is a customer of Triple A Marketing for products with the description "Massagers Electric HS CODES: (9019.10)." EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 29 and therefore denies them.

30.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 30 and therefore denies them.

31.     EIS admits that EIS GmbH filed the petitions listed in Paragraph 31.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 31 and therefore denies them.

32.     Admitted.

33.     Admitted.

34.     EIS admits that EIS GmbH identified EIS, Inc., Triple A Import GmbH, and Triple A Marketing GmbH, among others, as real-parties-in-interest in the petition filed in IPR2020-00007.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 34 and therefore denies them.

35.     Admitted.

36.     Admitted.

37.     Denied.

38.     EIS admits that the Final Written Decision in IPR2019-01302 states that "claims 1–30 of the '097 patent are not determined to be unpatentable."   EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 38 and therefore denies them.

39.     EIS admits that the Final Written Decision in IPR2019-01444 states that "claims 1–6 of the '851 patent are not determined to be unpatentable." EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 39 and therefore denies them.

40.     EIS admits that the Final Written Decision in IPR2020-00007 states that claims 1–3, 5, 7, 8, 11, 14, 15, 17–26 of the '061 patent are not determined to be unpatentable.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 40 and therefore denies them.

41.     Denied.

## BACKGROUND

42.     Denied.

43.     EIS admits that the Asserted Patents are generally directed to stimulation devices. EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 43 and therefore denies them.

44.     EIS lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 44 and therefore denies them.

45.     EIS denies that the Satisfyer Pro 2, the Satisfyer Pro G-Spot Rabbit, and Satisfyer's Penguin Air Pulse Stimulator attempted to capitalize on the technology in the Asserted Patents, and that such technology was innovative.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 45 and therefore denies them.

46.     EIS admits that Exhibits 4-6, 8, and 10 to the Counterclaims purport to be claim charts.  EIS denies the remaining allegations of Paragraph 46, including any allegations in the claim charts.

## COUNT I

47.     EIS realleges and incorporates by reference its responses set forth in the Paragraphs above as if fully set forth herein.  Paragraph 47 does not set forth any allegations to which a response is required.  To the extent this paragraph purports to incorporate any allegations to which a response is required, EIS lacks knowledge or information sufficient to form a belief about the truth of those allegations, including the specific allegations to which Novoluto refers, and therefore denies them.

48.     EIS admits the '851 Patent is titled "Stimulation Device."  EIS further admits that the '851 Patent states on its face that it (1) issued on September 19, 2017 and (2) was assigned to Novoluto.  EIS also admits that what purports to be a copy of the '851 Patent is attached to the Counterclaims as Exhibit 1.  EIS denies that the '851 Patent was duly and legally issued by the USPTO.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 48 and therefore denies them.

49.     EIS admits that the application from which the '851 Patent issued was previously published as Patent Application Publication No. US2016/0213557.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 49 and therefore denies them.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

### COUNT II

60.     EIS realleges and incorporates by reference its responses set forth in the Paragraphs above as if fully set forth herein.  Paragraph 60 does not set forth any allegations to which a response is required.  To the extent this paragraph purports to incorporate any allegations to which a response is required, EIS lacks knowledge or information sufficient to form a belief about the truth of those allegations, including the specific allegations to which Novoluto refers, and therefore denies them.

61.     EIS admits the '061 Patent is titled "Stimulation Device Having An Appendage." EIS further admits that the '061 Patent states on its face that it (1) issued on December 26, 2017 and (2) was assigned to Novoluto.  EIS also admits that what purports to be a copy of the '061 Patent is attached to the Counterclaims as Exhibit 2.  EIS denies that the '061 Patent was duly and legally issued by the USPTO.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 61 and therefore denies them.

62.     Denied.

63.     EIS admits that Exhibit 5 to the Counterclaims purports to be a claim chart.  EIS denies the remaining allegations of Paragraph 63, including those in the claim chart.

64.     Denied.

65.     Denied.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Denied.

80.    Denied.

## **COUNT III**

81.    EIS realleges and incorporates by reference its responses set forth in the Paragraphs above as if fully set forth herein.   Paragraph 81 does not set forth any allegations to which a response is required.  To the extent this paragraph purports to incorporate any allegations to which a response is required, EIS lacks knowledge or information sufficient to form a belief about the truth of those allegations, including the specific allegations to which Novoluto refers, and therefore denies them.

82.    EIS admits the '097 Patent is titled "Stimulation Device Having An Appendage." EIS further admits that the '097 Patent states on its face that it (1) issued on April 10, 2018 and (2)

was assigned to Novoluto.  EIS also admits that what purports to be a copy of the '097 Patent is attached to the Counterclaims as Exhibit 3.  EIS denies that the '097 Patent was duly and legally issued by the USPTO.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 82 and therefore denies them.

83.     Denied.

84.     EIS admits that Exhibit 6 to the Counterclaims purports to be a claim chart.  EIS denies the remaining allegations of Paragraph 84, including those in the claim chart.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

## COUNT IV

103.    EIS realleges and incorporates by reference its responses set forth in the Paragraphs above as if fully set forth herein.  Paragraph 103 does not set forth any allegations to which a response is required.  To the extent this paragraph purports to incorporate any allegations to which a response is required, EIS lacks knowledge or information sufficient to form a belief about the truth of those allegations, including the specific allegations to which Novoluto refers, and therefore denies them.

104.    EIS admits the '220 Patent is titled "Stimulation Device."  EIS further admits that the '220 Patent states on its face that it (1) issued on August 17, 2021 and (2) was assigned to Novoluto.  EIS also admits that what purports to be a copy of the '220 Patent is attached to the Counterclaims as Exhibit 7.  EIS denies that the '220 Patent was duly and legally issued by the USPTO.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 104 and therefore denies them.

105.    Denied.

106.    EIS admits that Exhibit 8 to the Counterclaims purports to be a claim chart.  EIS denies the remaining allegations of Paragraph 106, including those in the claim chart.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

### COUNT V

116.    EIS realleges and incorporates by reference its responses set forth in the Paragraphs above as if fully set forth herein.  Paragraph 116 does not set forth any allegations to which a response is required.  To the extent this paragraph purports to incorporate any allegations to which a response is required, EIS lacks knowledge or information sufficient to form a belief about the truth of those allegations, including the specific allegations to which Novoluto refers, and therefore denies them.

117.    EIS admits the '418 Patent is titled "Stimulation Device."  EIS further admits that the '418 Patent states on its face that it (1) issued on August 31, 2021 and (2) was assigned to Novoluto.  EIS also admits that what purports to be a copy of the '418 Patent is attached to the Counterclaims as Exhibit 9.  EIS denies that the '418 Patent was duly and legally issued by the USPTO.  EIS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 117 and therefore denies them.

118.    Denied.

119.    EIS admits that Exhibit 10 to the Counterclaims purports to be a claim chart.  EIS denies the remaining allegations of Paragraph 119, including those in the claim chart.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

## PRAYER FOR RELIEF

EIS denies that Novoluto is entitled to the relief sought in its Counterclaims.  EIS requests that the Court deny all such relief sought by Novoluto with prejudice and that Novoluto take nothing.

## JURY DEMAND

No response is required for Novoluto's demand for a jury trial.  To the extent a response is required, EIS admits that Novoluto demands a trial by jury on all issues so triable as of right.

## EIS INC.'S AFFIRMATIVE AND OTHER DEFENSES

1.    EIS asserts the following defenses to Novoluto's Counterclaims and incorporates by reference the factual allegations of its Third Amended Complaint, D.I. 111.  EIS further reserves the right to assert additional defenses based on information learned or obtained during discovery.

## FIRST DEFENSE
### (Failure to State a Claim)

2.    Novoluto fails to state a claim against EIS in the Counterclaims upon which relief can be granted.

## SECOND DEFENSE
### (Noninfringement)

3.    Novoluto is not entitled to any relief against EIS because EIS does not and has not infringed any valid and enforceable claim of the '851, '061, '097, '220, or '418 Patents under any theory of infringement.

## THIRD DEFENSE
### (Invalidity)

4.      Each and every claim of the '851, '061,'097, '220, and '418 Patents (collectively,

the "unenforceable patents") is invalid for failing to meet one or more of the requirements of Title

35, United States Code, including but not limited to, Sections 101, 102, 103, and/or 112, and/or

the rules, regulations, and laws pertaining thereto.

5.      Each and every claim of the unenforceable patents is directed to non-statutory

subject matter and/or claims patent-ineligible concepts including abstract ideas and/or laws of

nature.  *See* 35 U.S.C. § 101.  The claim elements, considered both individually and as an ordered

combination, do not transform the nature of the claim into a patent-eligible application.

6.      For example, each and every claim of the unenforceable patents is directed to the

abstract idea of stimulating a body part by applying modulated "positive and negative pressure"

with respect to a reference pressure.  Generating a modulated positive and negative pressure is a

result or effect.

7.      Novoluto's arguments in IPR confirm that the claimed advance over the prior art is

the idea, or result, of generating alternating positive and negative pressures to stimulate a body

part.[2]  The claimed advance is therefore the abstract idea and not a particular structural

configuration.

---

[2] *See, e.g.*, Ex. A (IPR2019-01444, Patent Owner's Response (Paper No. 28) at 23 ("Before the
present invention, no one had ever contemplated a device that would apply 18 a pattern of negative
and positive pressures modulated with respect to a reference pressure to the clitoris. Exs. 2036,
¶ 22; 2038, ¶ 88. In recognition of this innovation, the '851 Patent was granted over numerous
prior art references including Guan, Hovland, and Makower. Ex. 1003, 44, 470-71.")); Ex. B
(IPR2020-00007, Patent Owner's Response (Paper No. 24) at 6 ("Prior art sexual stimulation
devices involved *either* positive *or* negative pressure patterns, but never *both* positive *and* negative
pressures *modulated relative to a reference pressure*. Ex. 2034 ¶¶ 96-101.")); Ex. C (IPR2019-
01302, Patent Owner's Response (Paper No. 30) at 26 ("Before the '097 Patent's earliest effective

8.      The idea of generating alternating positive and negative pressures to stimulate a body part is a century old.  For example, it was disclosed in United States Patent No. 1,502,440 ("*Robert*"), filed June 10, 1922.  Ex. D.  *Robert* discloses "a massaging implement having a cup-shaped member adapted to be placed against the body and in which the massaging action is produced by developing *suction and pressure alternately* within said cup-shaped member."  *Id.* at 1:11-19.

9.      As another example, it was disclosed in United States Patent No. 1,762,692 ("*Lair*"), filed January 28, 1927.  Ex. E; *see, e.g.*, *id.* at 4:42-54 ("[a] massage machine including a *pneumatic puff and suction pump*").  This idea is similarly disclosed in United States Patent No. 1,898,652 ("*Williams*"), filed July 28, 1930.  Ex. F; *see, e.g.*, *id.* at 1:15-27 ("a body of air is confined within a chamber, one of the walls of which is elastic and to rapidly compress the confined body of air to produce comparatively *rapid alternate pressure and suction* through an applicator having a relatively thin edge that is positioned directly upon the skin so as to produce rapid vibratory suction").  The same goes for German Patent No. DE4304091 ("*Frenkel*"), filed February 11, 1993.  Ex. G; *see, e.g.*, *id.* at 3:88 ("Suction/pressure chamber" 2b), Fig. 1.

10.     Indeed, the Australian Patent Office found that *Williams* was a "stimulation device[] that use[s] positive and negative pressure."  Ex. H (Australia IP, Decision in Opposition Proceeding against Application No. 2015386680) at ¶¶ 72, 87.

---

filing date, the sexual device industry had not contemplated a sexual stimulation device incorporating a chamber with a changing volume that would result in the modulation of positive and negative pressures with respect to a reference pressure onto a body part, with or without a dildo appendage."), 27 ("The prior art falls into one of two categories when it comes to pressure patterns (positive or negative), but never both modulated with respect to a reference pressure. Ex. 2026 ¶¶ 82-87.")).

11.     The remaining limitations of the claims merely invoke generic processes and/or machinery, and do not include an inventive concept sufficient to transform the above-described abstract idea into a patent-eligible invention.  Each component behaves exactly as a person of skill in the art would expect according to their ordinary use.

12.     By way of example, claim 1 of the '851 patent recites a stimulation device having a "pressure field generator."  That pressure field generator is comprised of routine, conventional, and well-known generic components, including two "chamber(s)."  Claim 1 of the '061 patent similarly recites a "pressure field generating arrangement" comprising two chambers.  As another example, claim 1 of the '220 patent and claim 1 of the '418 patent recite only a single "chamber." Every claim of the unenforceable patents similarly recites some form of generic "chamber" or pressure generating element with an opening used for applying alternating positive and negative pressure (*see, e.g.*,'097 patent at Claim 1), which was routine and conventional at the time of the alleged invention.  Every claim of the unenforceable patents similarly recites one or two generic chambers, or a pressure generating element having one or two generic chambers, which was routine and conventional at the time of the alleged invention.  Nothing in the claims or the specification suggests that the claimed chambers are unconventional.

13.     Novoluto's declarant, Debby Herbinick, admitted as much.  She explained in a declaration submitted in an Australian Opposition Proceeding that clitoral stimulation devices having "a chamber placed around the clitoral area" while generating pressure in the chamber "were known prior to March 2015."  Ex. J (Australia IP, Opposition Proceeding against Application No. 2018203659, Feb. 11, 2020 D. Herbinick Decl.), at ¶ 26.  Moreover, each of *Robert*, *Lair*, *Williams*, and *Frenkel*, describe chambers that are similarly used for applying pressure to a body

part.  The specifications of the unenforceable patents likewise admit that chambers in clitoral stimulation devices were known.  *See e.g.*, '851 patent at 2:16-20.

14.     Other claim elements are even more generic.  For instance, claim 1 of the '097 patent recites "a dildo," which is generically "configured to be inserted into a vagina."  It also recites a "flexible wall" that flexes, "a drive unit" that drives, and "a control unit" that controls something ("for controlling the drive unit").  As another example, claim 1 of the '061 patent recites many of the above limitations, or their equivalents, but also recites a "connection element" that connects things—two generic chambers.  Each of the claims of the unenforceable patents recites similarly well-known, generic elements, which perform their ordinary functions.  Similarly, apparatuses for stimulating body parts and having two chambers connected by a narrowing connection element (*see, e.g.,* '851 patent, claim 1 at 14:16-26) were routine and conventional at the time of the alleged invention.  *See, e.g.,* Chinese Patent No. 2153351Y ("*Guan*"),[3] *Williams*.

15.     None of the claims recites an inventive concept sufficient to transform the abstract idea of applying alternating positive and negative pressures to a body part into patent-eligible subject matter.  Instead, the generic configuration merely serves as a conduit for the abstract patent-ineligible idea.

## FOURTH DEFENSE
### (Unenforceability/Infectious Unenforceability)

16.     Each and every claim of the '851, '061, '097, '220, and '418 Patents is unenforceable due to inequitable conduct before the United States Patent and Trademark Office.  The '097, '220 and '418 patents are also unenforceable under the doctrine of infectious

---

[3] *See* D.I. 111, Ex. 29 (Complete certified English translation of Guan).

unenforceability.  EIS incorporates by reference the allegations of its Third Amended Complaint, D.I. 111, including ¶¶ 71-116, 159-178.

17.    German patent No. DE 10 2013 110 501 B4 ("'501 German Patent") is assigned to Novoluto.  The '501 German Patent lists Michael Lenke as the sole inventor.  Novoluto prosecuted the '501 German Patent.

18.    Novoluto's '501 German Patent was challenged before the German Patent and Trademark Office ("GPTO") in opposition proceeding No. 10 2013 110 501.7 ("Opposition Proceeding").  The Opposition Proceeding was initiated by the filing of two Notices of Opposition on November 17, 2016.  One Notice of Opposition was filed by Ecoaction GmbH ("Ecoaction Notice").[4]  The Ecoaction Notice showed how Novoluto's German '501 Patent was invalid in view of *Guan*.  The second Notice of Opposition was filed by Fun Factory GmbH ("Fun Factory Opposition").  The Fun Factory Opposition cited multiple patent publications.[5]  The patent publications cited in the Fun Factory Opposition were prior art.  The GPTO subsequently determined that Novoluto's patent was invalid in view of *Guan* and, on April 17, 2018, issued a decision revoking it.[6]

19.    During the Opposition Proceeding, several of Novoluto's patent applications were pending before the United States Patent and Trademark Office ("USPTO").  United States Patent Application Nos. 15/023,471 ("the '471 Application"), 15/487,123 ("the '123 Application"), 15/302,981 ("the '981 Application") were pending during the Opposition Proceedings.  These applications will be referred to collectively as the "Novoluto Applications."  The three Novoluto Applications ultimately issued as the '851 Patent, '097 Patent, and '061 Patent, respectively.

---

[4] D.I. 111, Ex. 24 (Ecoaction GmbH's November 17, 2016, Notice of Opposition).

[5] D.I. 111, Ex. 37 (Fun Factory GmbH's November 17, 2016, Notice of Opposition).

[6] D.I. 111, Ex. 23 (German Patent Office Decision).

20.     The '851 Patent claims priority to Novoluto's '501 German Patent.  The '220 and '418 patents in turn claim priority to the '851 patent.  The '501 German Patent describes a handheld device for stimulation using modulated air pressures.

21.     The '097 patent claims priority to the '061 patent.  The '061 and '097 Patents are not identified on their faces as related to the '501 Patent or the '851 patent family.  Like the '851 patent, the '061 and '097 Patents claim handheld devices for stimulation using modulated air pressures.  The claims of the '061 and '097 patents also recite an appendage configured to be inserted into the vagina.  The graphic below illustrates the relationship between the various patents.



22.     While the '851, '220, and '418 patents are in one patent family, and the '061 patent and '097 patents are in another, the claims of these patents recite, in some variation, the feature of generating modulated positive and negative pressures with respect to a reference pressure.

23.     The '501 German Patent's validity was relevant to the patentability of the claims in the Novoluto Applications.  The '501 German Patent's validity was material to the patentability of the claims in the Novoluto Applications.

### At Least Three Individuals Involved in Novoluto's U.S. Patent Prosecution Were Aware of the German Opposition Proceeding and *Guan*

24.     The '851 patent, '061 patent, and the '097 patent issued on September 19, 2017, December 26, 2017, and April 10, 2018, respectively.

25.     On information and belief, Novoluto's executive director is Johannes Graf von Plettenberg.

26.     On information and belief Johannes Graf von Plettenberg knew about the Opposition Proceeding on or before September 19, 2017.

27.     On information and belief Mr. Plettenberg knew about the Opposition Proceeding on or before December 26, 2017.

28.     On information and belief Mr. Plettenberg knew about the Opposition Proceeding on or before April 10, 2018.

29.     On information and belief Mr. Plettenberg was aware of the prior art references cited in the Opposition Proceeding on or before September 19, 2017.

30.     On information and belief Mr. Plettenberg was aware of the prior art references cited in the Opposition Proceeding on or before December 26, 2017.

31.     On information and belief Mr. Plettenberg was aware of the prior art references cited in the Opposition Proceeding on or before April 10, 2018.

32.     On information and belief, at least one complete English translation of *Guan* was in Mr. Plettenberg's possession, custody, control, or was reasonably available to him on or before September 19, 2017.

33.     On information and belief, at least one complete English translation of *Guan* was in Mr. Plettenberg's possession, custody, control, or was reasonably available to him on or before December 26, 2017.

34.     On information and belief, at least one complete English translation of *Guan* was in Mr. Plettenberg's possession, custody, control, or was reasonably available to him on or before April 10, 2018.

35.     On information and belief, Michael Lenke is Novoluto's CEO.

36.     On information and belief Mr. Lenke knew about the Opposition Proceeding on or before September 19, 2017.

37.     On information and belief Mr. Lenke knew about the Opposition Proceeding on or before December 26, 2017.

38.     On information and belief Mr. Lenke knew about the Opposition Proceeding on or before April 10, 2018.

39.     On information and belief Mr. Lenke was aware of the prior art references cited in the Opposition Proceeding on or before September 19, 2017.

40.     On information and belief Mr. Lenke was aware of the prior art references cited in the Opposition Proceeding on or before December 26, 2017.

41.     On information and belief Mr. Lenke was aware of the prior art references cited in the Opposition Proceeding on or before April 10, 2018.

42.     On information and belief, at least one complete English translation of *Guan* was in Mr. Lenke's possession, custody, control, or was reasonably available to him on or before September 19, 2017.

43.     On information and belief, at least one complete English translation of *Guan* was in Mr. Lenke's possession, custody, control, or was reasonably available to him on or before December 26, 2017.

44.     On information and belief, at least one complete English translation of *Guan* was in Mr. Lenke's possession, custody, control, or was reasonably available to him on or before April 10, 2018.

45.     Mr. Richard A. Cheng prepared or prosecuted the Novoluto Applications.   Mr. Cheng prosecuted the Novoluto Applications at the direction of Novoluto.

46.     On information and belief Mr. Cheng knew about the Opposition Proceeding on or before September 19, 2017.

47.     On information and belief Mr. Cheng knew about the Opposition Proceeding on or before December 26, 2017.

48.     On information and belief Mr. Cheng knew about the Opposition Proceeding on or before April 10, 2018.

49.     On information and belief Mr. Cheng was aware of the prior art references cited in the Opposition Proceeding on or before September 19, 2017.

50.     On information and belief Mr. Cheng was aware of the prior art references cited in the Opposition Proceeding on or before December 26, 2017.

51.     On information and belief Mr. Cheng was aware of the prior art references cited in the Opposition Proceeding on or before April 10, 2018.

52.     On information and belief, at least one complete English translation of *Guan* was in Mr. Cheng's possession, custody, control, or was reasonably available to him on or before September 19, 2017.

53.     On information and belief, at least one complete English translation of *Guan* was in Mr. Cheng's possession, custody, control, or was reasonably available to him on or before December 26, 2017.

54.     On information and belief, at least one complete English translation of *Guan* was in Mr. Cheng's possession, custody, control, or was reasonably available to him on or before April 10, 2018.

55.     Mr. Plettenberg also has an active role in Opposition Proceedings before the GPTO. For instance, Mr. Plettenberg attended a hearing in a different opposition proceeding on April 10, 2018, during the pendency of the Opposition Proceeding (and the same day that Novoluto's '097 Patent issued).

56.     Mr. Lenke is the only named inventor on the '501 German Patent.  Mr. Lenke is the original applicant for the '501 German Patent.

57.     On information and belief, Mr. Plettenberg knew of the Opposition Proceeding and knew about the prior art references cited in that proceeding, at least because he was Novoluto's executive director.

58.     On information and belief, Mr. Lenke knew of the Opposition Proceeding and knew about the prior art references cited in that proceeding, at least because he was the only named inventor on the '501 German Patent, the original applicant for the '501 German Patent, and because he was Novoluto's CEO.

59.     On information and belief, Mr. Cheng knew about the Opposition Proceeding and knew about the prior art references cited in that proceeding, at least because he prosecuted the Novoluto Applications before the USPTO.[7]

60.     Mr. Plettenberg did not disclose a complete English translation of *Guan* to the USPTO during prosecution of the Novoluto Applications.

61.     Mr. Lenke did not disclose a complete English translation of *Guan* to the USPTO during prosecution of the Novoluto Applications.

---

[7] *See* D.I. 111, Ex. 32 at 6 (Application Data Sheet from the '851 Patent prosecution signed by Richard A. Cheng and dated March 21, 2016); Ex. 33 at 6 (Application Data Sheet from the '061 Patent prosecution signed by Richard A. Cheng and dated October 7, 2016); Ex. 34 at 6 (Application Data Sheet from the '097 Patent prosecution signed by Richard A. Cheng and dated April 13, 2017).

62.     Mr. Cheng did not disclose a complete English translation of *Guan* to the USPTO during prosecution of the Novoluto Applications.

63.     A complete English translation of *Guan* was not disclosed to the USPTO during prosecution of the Novoluto Applications.

64.     Mr. Plettenberg did not disclose the Opposition Proceeding to the USPTO during prosecution of the Novoluto Applications.

65.     Mr. Lenke did not disclose the Opposition Proceeding to the USPTO during prosecution of the Novoluto Applications.

66.     Mr. Cheng did not disclose the Opposition Proceeding to the USPTO during prosecution of the Novoluto Applications.

67.     The Opposition Proceeding was not disclosed to the USPTO during prosecution of the Novoluto Applications.

68.     During prosecution of the '220 and '418 patents, Novoluto never expressly advised the USPTO that it did not disclose a full English translation of *Guan* during prosecution of the '851 patent.

69.     During prosecution of the '220 and '418 patents, Novoluto never expressly advised the USPTO that further examination in light of the full English translation of *Guan* may be required because it did not disclose a complete English translation of *Guan* during prosecution of the '851 patent.

70.     During prosecution of the '220 and '418 patents, Novoluto never expressly advised the USPTO that it did not disclose the Opposition Proceeding during prosecution of the '851 patent.

71.     During prosecution of the '220 and '418 patents, Novoluto never expressly advised the USPTO that further examination in light of the Opposition Proceeding may be required because it did not disclose the Opposition Proceeding during prosecution of the '851 patent.

72.     On information and belief, Mr. Cheng understood that he should disclose the prior art references cited in the Opposition Proceeding to the USPTO while prosecuting the Novoluto Applications.

73.     On information and belief, Mr. Cheng understood that he should disclose the Opposition Proceeding to the USPTO while prosecuting the Novoluto Applications.

74.     On information and belief, Mr. Cheng reviewed the Opposition Proceeding filings during the pendency of the Novoluto Applications.

75.     The prosecution history of the Novoluto Applications, in view of the Opposition Proceeding filings, reflect that Mr. Cheng had reviewed the Opposition Proceeding filings during the pendency of the Novoluto Applications.

76.     Mr. Cheng understood that the Opposition Proceeding filings and prior art therein were relevant to the Novoluto Applications.

77.     The prosecution history of the Novoluto Applications confirms that Mr. Cheng understood the Opposition Proceeding filings and prior art therein were relevant to the Novoluto Applications.

78.     Fun Factory GmbH filed a Notice of Opposition on November 17, 2016, requesting that Novoluto's '501 German Patent be revoked.

79.     The Fun Factory Opposition was filed on the same day as the Ecoaction Opposition based on *Guan*.

80.     In its opposition, Fun Factory identified fifteen references numbered D8–D23 (D15 was an English translation of D14).

81.     In its opposition, Fun Factory stated that the fifteen references were "highly relevant documents . . ., which were not taken into account in the [patent] grant procedure."[8]

82.     Approximately one month later, on December 21, 2016, Mr. Cheng filed an Information Disclosure Statement ("IDS") with the USPTO during prosecution of the '471 Application—the Novoluto Application that issued as the '851 Patent.

83.     The IDS that Mr. Cheng filed on December 21, 2016, during prosecution of the '471 Application, listed only two references: D8 and D10 from Fun Factory's November 17, 2016 filing in the Opposition Proceeding.[9]

84.     On February 2, 2017, Mr. Cheng filed another IDS in the '471 Application.  That IDS listed *Guan* (but, as explained below, did not include a full English translation of *Guan*) along with references D11–D15, and D20–D23 from Fun Factory's filing in the Opposition Proceeding.[10]

85.     Mr. Cheng filed two similar IDS's in the '981 Application, which issued as the '061 Patent.

86.     Notably, between the two IDS's filed in the '471 Application, Mr. Cheng cited *Guan* and every reference in Ecoaction's list of highly relevant new references that he had not previously cited during prosecution of the '471 Application.

87.     On information and belief, Mr. Cheng learned of *Guan* from the Opposition Proceeding.

---

[8] *See* D.I. 111, Ex. 37 at 2-3 (Fun Factory GmbH's November 17, 2016 Opposition).

[9] *See* D.I. 111, Ex. 38 at 1 (Novoluto's December 21, 2016 IDS in the '471 Application).

[10] *See* D.I. 111, Ex. 39 at 1-2 (Novoluto's February 10, 2017 IDS in the '471 Application).

88.     On information and belief, Mr. Cheng also learned of the references that Fun Factory numbered D8, D10–D15, and D20–D23 from the Opposition Proceeding.

89.     The table below correlates the references cited in the Fun Factory Opposition to and Novoluto's IDS's in the '471 Application.

| Fun Factory Reference | Date Cited on a Novoluto IDS |
|---|---|
| D8 - DE 42 43 876 A1 | December 21, 2016 |
| D9 - US 2008/0304984 A1 | March 21, 2016 |
| D 10 - WO 00/28939 A2 | December 21, 2016 |
| D11 - DE 582 196 C | February 10, 2017 |
| D12 - DE20 2012 005 414U1 | |
| D13 - EP 1 554 947 B1 | |
| D14/D15 - JP 2008-125577 A | |
| D16 - US 2,112,646 A | March 21, 2016 |
| D17 - US 1,882,040 A | |
| D18 - US 5,377,701 A | |
| D19 - WO 2013/178223 A2 | September 7, 2016 |
| D20 - DE 1 703 184 U | February 10, 2017 |
| D21 - DE 32 22 467 A1 | |
| D22 - DE 93 09 994 U | |
| D23 - DE 198 53 353 C2 | |

90.     Mr. Cheng also cited the International Search Report for International Patent Application PCT/EP2014/065734, which claims priority to Novoluto's '501 German patent, during the prosecution of each of the Novoluto Applications.  For example, he cited to the search report in an IDS filed on April 4, 2017 during prosecution of the '097 patent, while the Opposition Proceeding was ongoing.

91.     On information and belief Mr. Plettenberg was aware of the prosecution of the Novoluto Applications, before the Novoluto Applications issued as patents.

92.     On information and belief Mr. Plettenberg was informed about the filing of the Novoluto Applications, before the Novoluto Applications issued as patents.

93.     On information and belief, Mr. Plettenberg was informed about the content of the Novoluto Applications' specifications, before the Novoluto Applications issued as patents.

94.     On information and belief, Mr. Plettenburg was informed about the wording of the Novoluto Applications' claims, before the Novoluto Applications issued as patents.

95.     On information and belief, Mr. Plettenberg was informed about claim or specification amendments made during prosecution of the Novoluto Applications, before the Novoluto Applications issued as patents.

96.     On information and belief, Mr. Plettenberg was informed about arguments made during prosecution of the Novoluto Applications before the USPTO, before the Novoluto Applications issued as patents.

97.     On information and belief Mr. Lenke was aware of the prosecution of the Novoluto Applications, before the Novoluto Applications issued as patents.

98.     On information and belief Mr. Lenke was informed about the filing of the Novoluto Applications, before the Novoluto Applications issued as patents.

99.     On information and belief, Mr. Lenke was informed about the content of the Novoluto Applications' specifications, before the Novoluto Applications issued as patents.

100.    On information and belief, Mr. Plettenburg was informed about the wording of the Novoluto Applications' claims, before the Novoluto Applications issued as patents.

101.    On information and belief, Mr. Lenke was informed about claim or specification amendments made during prosecution of the Novoluto Applications, before the Novoluto Applications issued as patents.

102.    On information and belief, Mr. Lenke was informed about arguments made during prosecution of the Novoluto Applications before the USPTO, before the Novoluto Applications issued as patents.

103.    Mr. Lenke signed powers of attorney for Novoluto, as its CEO, that were filed with the USPTO during prosecution of both the '851 and '061 Patents.[11]

104.    Mr. Lenke was the named inventor on each of the Novoluto Applications.

105.    On information and belief, Mr. Lenke was also aware of the prosecution of the Novoluto Applications.

106.    Mr. Lenke was involved in the prosecution of the Novoluto Applications.

### Mr. Cheng, Mr. Lenke, and Mr. Plettenberg Owed a Duty of Disclosure, Candor, and Good Faith to the USPTO

107.    As the attorney who prepared and prosecuted the Novoluto Applications, Mr. Cheng owed a duty of disclosure, candor, and good faith to the USPTO, which included a duty to disclose all information known to be material to the patentability of any existing claim in a pending application.[12]

108.    As the only named inventor in the Novoluto Applications,[13] and as the CEO of Novoluto, Mr. Lenke also owed the same duty of disclosure, candor, and good faith to the USPTO.[14]

---

[11] *See* D.I. 111, Ex. 35 (Power of Attorney by Applicant from '851 Patent prosecution history), Ex. 36 (Power of Attorney by Applicant from '061 Patent prosecution history).

[12] The duty of disclosure applies to "[e]ach attorney or agent who prepares or prosecutes the [patent] application." 37 C.F.R. § 1.56(c)(2).

[13] *See* D.I. 111, Ex. 32 at 1, Ex. 33 at 1, Ex. 34 at 1.

[14] The duty of disclosure applies to "[e]ach inventor named in the application."   37 C.F.R. § 1.56(c)(1).

109.    On information and belief, Novoluto's executive director, Mr. Plettenberg, was also aware of or oversaw the prosecution of the Novoluto Applications.  Mr. Plettenberg thus owed the same duty of disclosure, candor, and good faith to the USPTO.[15]

110.    The USPTO's rules state that applicants must bring litigation related to the subject matter of an application to its attention.  Specifically, MPEP § 2001.06(c) states "[w]here the subject matter for which a patent is being sought is or has been involved in litigation and/or a trial proceeding, or the litigation and/or trial proceeding yields information material to currently pending applications, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the examiner or other appropriate official at the U.S. Patent and Trademark Office."

111.    As such, Mr. Cheng was required to disclose the Opposition Proceeding to the USPTO.  Mr. Lenke was also required to disclose the Opposition Proceeding to the USPTO.

112.    Mr. Plettenberg was also required to disclose the Opposition Proceeding to the USPTO.

113.    The duty to disclose the Opposition Proceeding to the USPTO began on or around November 17, 2016, the date the Opposition Proceeding was filed.

114.    The disclosure of the Opposition Proceeding was required to be updated to disclose Novoluto's arguments made therein, on or around September 18, 2017, when it filed its response.[16]

---

[15] The duty of disclosure applies to every "person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application."  37 C.F.R. § 1.56(c)(3).

[16] Novoluto's '851 Patent issued on September 19, 2017, the day after it submitted arguments and a translation of *Guan* in the Opposition Proceeding.  The duty of disclosure, however, continues until the day a patent issues.

115.    The Opposition Proceeding was not disclosed to the USPTO on or around November 17, 2016.  Nor was the Opposition Proceeding disclosed to the USPTO on or around September 18, 2017.

116.    Novoluto's '851 Patent issued on September 19, 2017, the day after it submitted arguments and a full English translation of *Guan* in the Opposition Proceeding.

117.    On information and belief, Novoluto had an English translation of *Guan* in its possession on or around April 11, 2017, which was certified on April 11, 2017.

118.    The duty of disclosure continues until the day a patent issues.

119.    At the very least, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg had a duty to disclose the existence of any material information from the Opposition Proceeding and provide a complete English translation of *Guan* to the USPTO at some point during prosecution of the Novoluto Applications.

120.    But, while Novoluto identified the references cited in the Opposition Proceeding to the USPTO, neither Mr. Cheng, Mr. Lenke, nor Mr. Plettenberg provided a complete English translation of *Guan* to the USPTO or disclosed the existence of the Opposition Proceeding.

121.    Mr. Cheng, Mr. Lenke, and Mr. Plettenberg never disclosed the German opposition proceeding to the USPTO in connection with the Novoluto Applications.

122.    Although Novoluto disclosed *Guan's* existence to the USPTO, it withheld two complete English translations of *Guan* that were used or submitted in the Opposition Proceeding, violating their duty of disclosure.

123.    Any person with a duty of disclosure to the USPTO must submit an English translation of non-English references identified during prosecution, if the translation is within their possession, custody or control, or is readily available to them.[17]

124.    Novoluto had two complete English translations of *Guan* in its possession, custody or control, or readily available to it before the Novoluto Applications issued as patents.

125.    On information and belief, at least one of the two complete English translations of *Guan* was in Mr. Cheng's, Mr. Lenke's, or Mr. Plettenberg's possession, custody or control, or readily available to them.

126.    The first complete translation was provided to Novoluto with the Ecoaction Opposition.[18]

127.    Novoluto's German counsel later submitted its own complete translation of *Guan* to the GPTO on September 18, 2017.[19]

128.    At least one of the two translations was in Novoluto's custody, control, or readily available to it.

129.    At least one of the two translations was readily available to Novoluto's CEO Mr. Lenke (who was also the named inventor on the '501 German Patent that was the subject of the Opposition Proceeding).

130.    And at least one of the two translations was readily available to Mr. Cheng.

---

[17] Information disclosure statements filed with the USPTO shall include "[a] copy of the translation if a written English-language translation of a non-English-language document, or portion thereof, is within the possession, custody, or control of, or is readily available to any individual designated in § 1.56(c)." 37 C.F.R. § 1.98(a)(3)(iii).

[18] D.I. 111, Ex. 24 (Ecoaction GmbH's November 17, 2016, Notice of Opposition), Ex. 25 (Machine translation of *Guan* submitted to GPTO with Ecoaction's notice of opposition as E1).

[19] D.I. 111, Ex. 26 (Novoluto's September 18, 2017, Opposition Proceeding response), Ex. 27 (Translation of *Guan* submitted by Novoluto to GPTO).

131.    Neither Mr. Plettenberg, Mr. Lenke, nor Mr. Cheng disclosed either of the two complete English translations of *Guan* to the USPTO during prosecution of the Novoluto Applications.

132.    Neither Mr. Plettenberg, Mr. Lenke, nor Mr. Cheng disclosed the existence of the Opposition Proceeding to the USPTO during prosecution of the Novoluto Applications.

133.    On information and belief, Mr. Cheng either possessed or was aware that Novoluto possessed one or more of the complete English translations of *Guan* during prosecution of the Novoluto Applications.

134.    As explained above, the Ecoaction Opposition and Fun Factory Opposition were filed on the same day.

135.    Mr. Cheng subsequently cited references from those Opposition Proceedings to the USPTO.

136.    From reviewing the Ecoaction Opposition and other Opposition Proceeding filings, Mr. Cheng would have been aware Novoluto possessed at least one full English translation of *Guan*, e.g., the translation submitted with the Ecoaction Opposition.

137.    The translations of *Guan* in Novoluto's possession would have been readily available to Mr. Cheng at least because he was Novoluto's counsel.

138.    Thus, Mr. Cheng had a duty to disclose at least one full English translation of Guan to the USPTO.

139.    Mr. Cheng did not disclose either full English translation of *Guan* to the USPTO during the pendency of the Novoluto Applications.

140.    Additionally, in its September 18, 2017, Opposition Proceeding response, Novoluto elaborated on the proper interpretation of the '501 German Patent's claim 1 for five pages.

141.    In its September 18, 2017, Opposition Proceeding response, Novoluto detailed how the claims should be read by a person of skill in the art in view of its specification.[20]

142.    Because substantially similar claims were pending in the Novoluto Applications at that time, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg had a duty to disclose those arguments to the USPTO as well.

143.    Neither Mr. Cheng, Mr. Lenke, nor Mr. Plettenberg disclosed Novoluto's arguments in the Opposition Proceeding about the proper interpretation of its claims to the USPTO during the prosecution of the Novoluto Applications.

144.    On February 7, 2017, Novoluto submitted an Information Disclosure Statement to the USPTO in connection with the prosecution of the '061 Patent, which included a machine-produced, partial English translation of *Guan*—only the abstract.[21]

145.    On February 10, 2017, Novoluto submitted an Information Disclosure Statement to the USPTO in connection with the prosecution of the '851 Patent, which included a machine-produced, partial English translation of *Guan*—only the abstract.[22]

146.    On April 13, 2017, Novoluto submitted an Information Disclosure Statement to the USPTO in connection with the prosecution of the '097 Patent, which included a machine-produced, partial English translation of *Guan*—only the abstract.[23]

147.    On information and belief, Mr. Cheng, Mr. Lenke, or Mr. Plettenberg had at least one complete English translation of *Guan* in their possession, custody, or control, or readily

---

[20] *See* D.I. 111, Ex. 26 (Novoluto's September 18, 2017, Opposition Proceeding response) at 5–9.

[21] D.I. 111, Ex. 28 (Partial translation of Guan submitted to USPTO).

[22] *See id.*

[23] *See id.*  The Information Disclosure Statement submitted by Novoluto in connection with the '097 Patent application incorrectly identified *Guan* as CN 215335<u>2</u> instead of CN 215335<u>1</u>.

available to them, as of the dates the incomplete English translations of *Guan* were submitted to the USPTO in connection with the applications for the Unenforceable Patents.

***Guan* Was Material to the Patentability of the Claims in the Novoluto Applications**

148.    *Guan* was material to the patentability of at least one claim of each of the Novoluto Applications.  Mr. Lenke, Mr. Cheng., and Mr. Plettenburg's withholding *Guan* and the related German Opposition Proceeding from the USPTO during prosecution of the Novoluto Applications renders them unenforceable.  The failure of any Novoluto representative to make affirmative representations to the USPTO to cure that inequitable conduct during prosecution of the '097, '208 and '117 Applications renders them unenforceable under the doctrine of infectious unenforceability.

149.    On information and belief, the Examiner did not consider the *Guan* reference in detail in connection with the Novoluto Applications.

150.    *Guan* was one of over 80 references cited by Novoluto during examination of each of the Novoluto Applications.

151.    There is not a complete English translation of *Guan* in the prosecution history for any of the Novoluto Applications.

152.    Novoluto submitted a machine translation of *Guan*'s abstract during examination of the Novoluto applications.

153.    The machine translation of *Guan*'s abstract submitted during examination of the Novoluto applications does not include an English translation of *Guan*'s specification.

154.    *Guan*'s abstract and *Guan*'s specification are not identical.

155.    When compared with the complete English translation, the machine-translated abstract of *Guan* submitted by Novoluto during examination of the Novoluto Applications fails to provide sufficient technical details of *Guan*'s apparatus and mode of operation, including, e.g., the

mechanism for reciprocally moving a wall of air bag 2 to generate positive and negative air pressures.[24]

156.    On information and belief, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg knew that the English translation of *Guan's* abstract submitted to the USPTO did not disclose all the technical details of *Guan's* apparatus and mode of operation.  Mr. Cheng, Mr. Lenke, and Mr. Plettenberg knowingly allowed the partial English translation submitted by Novoluto to mislead the examiner into believing that *Guan* was not a material prior art reference.

157.    On information and belief, Mr. Lenke and Mr. Plettenberg were certainly aware, based on the German Opposition Proceeding, that *Guan* was material to the patentability of the claims in the Novoluto Applications.  Yet, they withheld from the USPTO a complete English translation of *Guan*.

158.    Mr. Cheng was also aware, based on the German Opposition Proceeding, that *Guan* was material to the patentability of the claims in the Novoluto Applications.  He also withheld from the USPTO a complete English translation of *Guan*.

159.    On information and belief, if Mr. Cheng, Mr. Lenke, and Mr. Plettenberg had disclosed the complete English translation of *Guan* to the USPTO, one or more, in particular independent, claims from each of the '851, '097, and '061 patents would not have issued.

160.    For example, on June 27, 2019, during prosecution of Novoluto's United States Patent Application No. 15/965,117 ("the '117 Application") (a then-pending application claiming priority to Novoluto's '851 Patent), which issued as the '220 Patent, the USPTO issued a rejection based on *Guan* (in combination with other references).[25]

---

[24] *Compare* D.I. 111, Ex. 28 (Machine translation of *Guan* abstract submitted by Novoluto) at 1 with D.I. 111, Ex. 29 (Complete certified translation of *Guan*) at 1-4.

[25] *See* D.I. 111, Ex. 30 (June 27, 2019 Rejection for Application No. 15/965,117).

161.   On information and belief, the Examiner assigned to the '117 Application independently obtained or located a complete English translation of *Guan* and relied on that complete translation in issuing this rejection.   The pending claims for the '117 Application included features similar to those claimed in the '851, '061, and '097 patents.   Thus, claims having features similar to the claims of the '851, '061, and '097 patents have been rejected as being unpatentable over *Guan* by both the GPTO and USPTO.

162.   As another example, on August 22, 2019, during prosecution of Novoluto's United States Patent Application No. 15/965,208 ("the '208 Application") (another then-pending application claiming priority to Novoluto's '851 Patent), which issued as the '418 patent, the USPTO issued another rejection based on *Guan* (in combination with other references).[26]   On information and belief, the Examiner assigned to the '208 Application independently obtained or located a complete English translation of *Guan* and relied on that complete translation in issuing this rejection.   The pending claims for the '208 Application included features similar to those claimed in the '851, '061, and '097 patents.   Thus, claims having features similar to the claims of the '851, '061, and '097 patents have been rejected as being unpatentable over *Guan* by both the GPTO and USPTO (on at least three occasions).

163.   Moreover, during prosecution, Novoluto obtained the '851, '061, and '097 patents by, *inter alia*, arguing that U.S. Patent No. 5,377,701 ("*Fang*") did not disclose every element of the pending claims.

164.   For both the '097 and the '061 Patents, Novoluto argued *Fang* did not disclose generating positive and negative air pressures, a limitation of pending claim 1 for both patents.

---

[26] *See* D.I. 111, Ex. 31 (August 22, 2019 Rejection for Application No. 15/965,208).

Indeed, *Fang's* Abstract describes a sucking massage device with a sucking lip and a negative pressure generator.

165.    *Guan*, however, describes a device capable of generating positive and negative pressures.

166.    For example, *Guan* discloses a lever pinned at one end and connected to the wall of an air bag.

167.    *Guan*'s lever is connected to an electromagnetic drive unit.

168.    *Guan*'s electromagnetic drive unit is configured to cause the lever to compress and expand the air bag "to have reciprocating motion."

169.    Such reciprocal compression and expansion creates increasing and decreasing air pressures at *Guan*'s mouth 1.

170.    *Guan* uses the term "pulsating air pressure" several times.[27]

171.    The USPTO also instituted *Inter Partes Review* ("IPR") of Novoluto's '061 Patent, finding that the petitioner EIS GmbH "demonstrated a reasonable likelihood of prevailing with respect to the ground based on Guan for at least one claim."[28]

172.    Thus, *Guan* is material to the patentability of at least claim 1 of Novoluto's '097 and '061 Patents at least because 1) *Guan* discloses a critical limitation that the examiner concluded was absent from the prior art he considered before allowing the patents to issue, and 2) *Guan* was used by the GPTO to invalidate a closely related patent.  On information and belief, at least claim 1 of the '097 and '061 Patents would not have issued had Mr. Cheng, Mr. Lenke, or Mr. Plettenberg provided the examiner with one of the complete English translations of *Guan*.

---

[27] *See* D.I. 111, Ex. 29 (Complete certified translation of Guan) at 3.

[28] *EIS GmbH v. Novoluto GmbH*, IPR2019-01302, Paper 23 at 7 (P.T.A.B. June 17, 2020); *see* D.I. 43 (Plaintiff's Notice of Supplemental Authority).

173.     Novoluto's '851 Patent is a continuation of its '501 German Patent.  The '851 Patent thus claims priority to the '501 German Patent and the two patents are directly related.

174.     Moreover, the '851 Patent and the '501 German patent have similar claims.

175.     During prosecution of the application leading to the '851 Patent, Novoluto (through Mr. Cheng) again argued over *Fang* to obtain its patent claims.

176.     Particularly, Novoluto argued through Mr. Cheng that the GPTO had accepted similar arguments during its prosecution of the '501 German Patent—the same patent the GPTO later revoked as unpatentable over *Guan*.

177.     While Mr. Cheng was quick to advise the examiner that the GPTO had accepted its positions regarding *Fang*, at no time did Mr. Cheng, Mr. Plettenberg, Mr. Lenke, or anyone representing Novoluto advise the examiner that the '501 German patent was embroiled in the German Opposition Proceeding, that *Guan* was at the center of that opposition, or that the '501 German Patent was revoked by the GPTO as unpatentable based on *Guan*.

178.     For the '851 Patent, the examiner explained in his notice of allowance that the prior art did not teach features such as a drive unit and a stimulation device having no valves.

179.     Both of those features are readily found in *Guan* and are apparent from its complete English translation.

180.     As previously described, *Guan* delivers positive and negative air pressures with respect to a reference pressure by using an electromagnetic drive to move a pinned lever so as to impart reciprocating motion upon a wall of the air bag (2).

181.     The drive unit is shown in *Guan's* only figure, and page 1 explains the structure is "driven by an electromagnet."

182.   A review of *Guan's* figure also reveals that there are no valves anywhere in the device.

183.   Thus, *Guan* discloses the drive unit and valveless stimulation device that the examiner concluded were absent from the art before him.

184.   The German Opposition Proceeding found that *Guan* disclosed a drive unit and valveless stimulation device when it revoked Novoluto's '501 German Patent.

185.   The USPTO also instituted *Inter Partes Review* ("IPR") of Novoluto's '851 Patent, finding that the petitioner EIS GmbH "demonstrated a reasonable likelihood of prevailing in showing that claims 5 and 6 are unpatentable as obvious over Guan" in combination with other references.[29]

186.   Thus, *Guan* is material to the patentability of at least claim 1 of Novoluto's '851 Patent, at least because 1) *Guan* discloses two critical limitations that the examiner concluded were absent from the prior art he considered before allowing the patents to issue, and 2) *Guan* was used by the GPTO to invalidate the '851 Patent's parent.  On information and belief, at least claim 1 of the '851 Patent would not have issued had Mr. Cheng, Mr. Lenke, or Mr. Plettenberg provided the examiner with one of the complete English translations of *Guan*.

187.   On information and belief, Mr. Cheng, Mr. Lenke, and Mr. Plettenberg intentionally withheld the existence and substance of the German Opposition Proceeding and misled the USPTO about the content of *Guan* during the pendency of the Novoluto Applications, because disclosing them would have prevented one or more of Novoluto's pending claims from issuing.

---

[29] *EIS GmbH v. Novoluto GmbH*, IPR2019-01444, Paper 18 at 10 (P.T.A.B. Aug. 11, 2020); *see* D.I. 47 (Plaintiff's Notice of Supplemental Authority).

188.    Moreover, Novoluto was continuing to violate its duty of disclosure in order to procure additional patents through misrepresentations to the USPTO until after the First Amended Complaint was filed in this case.  At that time, Novoluto had four patent applications pending ("Pending Applications"), which are all related to the '851, '061, and '097 patents.  When the First Amended Complaint was filed, however, Novoluto had been inconsistent in providing complete English translations of *Guan* to the examiner in the Pending Applications, in an attempt to mislead the USPTO and gain allowance.

189.    For example, on August 22, 2019, Novoluto submitted an Information Disclosure Statement ("IDS") in connection with its pending U.S. Patent Application No. 15/354,599 ("the '599 application), which for the first time included a complete English translation of *Guan* (as an exhibit to an IPR petition).  Novoluto waited to submit that IDS until the day *after* it held an interview with the patent examiner, during which the examiner indicated that the '599 application would be allowed.

190.    The single most reasonable inference to be drawn from Mr. Plettenberg, Mr. Cheng, and Mr. Lenke's conduct is that they intended to deceive the USPTO.

**Novoluto and Its Prosecution Counsel Concealed the Existence of New Matter from the USPTO Intent to Deceive**

191.    Novoluto and its prosecution counsel, Mr. Cheng, concealed the existence of new matter from the USPTO and made affirmative egregious misrepresentations that the '123 Application was a continuation of the '981 Application, that the '599 Application was a continuation of the '471 Application, and that the '208 and '117 Applications were continuations

of both the '599 and '471 applications, when none of those applications was a continuation, rendering the '097, '418, and '220 Patents unenforceable for inequitable conduct.[30]

192.    Novoluto and its prosecution counsel represented to the USPTO that the '123 Application (which issued as the'097 Patent) was a continuation of the '981 Application (which issued as the'061 Patent).

193.    Novoluto and its prosecution counsel represented to the USPTO that the '418 and '117 Applications were continuations of the '599 Application.  Novoluto and its prosecution counsel also represented to the USPTO that the '599 Application was a continuation of the '471 Application, which issued as the '851 patent.

194.    Novoluto and its prosecution counsel knew that a continuation application cannot contain new matter, *i.e.*, matter that was not described in the parent application.[31]

195.    The '123 Application contained various changes to the specification of the parent '981 Application.[32]  These changes are shown in red-line in Exhibit 40 to D.I. 111.

196.    The '599 Application contained various material changes to the specification of the parent '471 Application.  These changes are shown in red-line in Exhibit I (comparison of the '851 patent, which issued from the '471 Application, with the '063 patent, which issued from the '599 Application).

---

[30] EIS understands that Mr. Cheng was replaced by different prosecution counsel during prosecution of some of the referenced patent applications, but at the time each of the applications was filed, Mr. Cheng was listed on the Application Data Sheet as Novoluto's counsel.

[31] *See* M.P.E.P. § 201.07 ("The disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application.").

[32] D.I. 111, Ex. 40 (Exhibit 1024 from *EIS GmbH v. Novoluto GmbH*, IPR2020-0007 (P.T.A.B.), showing the changes between the '061 and '097 Patent specifications).

197.    At no time during examination of the '123 Application did Novoluto and its prosecution counsel inform the USPTO of the differences in the specifications of the '123 Application and its parent '981 Application.

198.    At no time during examination of the '599 Application did Novoluto and its prosecution counsel inform the USPTO of the differences in the specifications of the '599 Application and its parent '471 Application.

199.    At no time during examination of the '208 Application did Novoluto and its prosecution counsel inform the USPTO of the differences in the specifications of the '208 Application and the '471 Application from which the '208 Application claimed priority through the intervening '599 Application.

200.    At no time during examination of the '117 Application did Novoluto and its prosecution counsel inform the USPTO of the differences in the specifications of the '117 Application and the '471 Application from which the '117 Application claimed priority through the intervening '599 Application.

201.    Upon information and belief, it was routine practice before, during, and after the examination of the '123, '599, '418, and '117 Applications for Novoluto and its prosecution counsel to file preliminary amendments with red-lines to show specification changes over any parent applications.  For example, before the filing of the '123, '599, '418, and '117 Applications, Novoluto and its prosecution counsel filed a preliminary amendment at the time of the filing of the '471 Application showing the changes to the '471 Application over its parent/priority application.[33]  Novoluto and its prosecution counsel also filed a preliminary amendment at the time

---

[33]  *See* '471 Application, March 21, 2016 Preliminary Amendment.

of the filing of the '981 Application showing the changes to the '981 Application over its parent/priority application.[34]

202.    Upon information and belief, at the time of filing the '123 Application, Novoluto and its prosecution counsel intentionally deviated from their routine practice of filing preliminary amendments to conceal the differences in the specifications of the '123 Application and its parent '981 Application from the USPTO.  This concealment was intended to deceive the Examiner into believing that the '123 Application was merely a "continuation" of the '981 Application and therefore, that the as-filed claims of the '123 Application were entitled to the effective filing date of the '981 Application.

203.    Upon information and belief, Novoluto and its prosecution counsel knew that the '123 Application contained new matter over the parent '981 Application, as evident from D.I. 111, Exhibit 40.  For instance, Novoluto and its prosecution counsel knew and understood that the parent '981 application only contained disclosure of and claimed sexual stimulation devices having at least two chambers and a connection element connecting the at least two chambers.  In order to expand patent coverage to a sexual stimulation device that included only a single chamber, Novoluto and its prosecution counsel filed the '123 Application with new subject matter directed to a "single" chamber device.  Novoluto and its prosecution counsel represented to the USPTO that the '123 Application was merely a "continuation" of the '981 Application even though it included significant changes over the '981 application.   On information and belief, this misrepresentation was made with intent to deceive.

204.    Upon information and belief, Novoluto and its prosecution counsel knew and understood that at least the as-filed independent claim 1 of the '123 Application was directed to

---

[34] *See* '981 Application, October 7, 2016 Preliminary Amendment.

the new matter directed to a "single" chamber.  Therefore, they did not submit a preliminary amendment at the time of filing the '123 Application to mislead the Examiner into believing that all claims of the '123 Application were entitled to an effective filing date of the claims of the '981 Application.  Novoluto and its prosecution counsel did so to avoid having its own prior patent publications becoming intervening prior art.

205.    If the '123 Application's claims are not entitled to the effective filing date of the '981 Application, *inter alia*, the PCT publication corresponding to the German '501 patent (i.e., WO 2015039787A1, which published on March 26, 2015) is prior art to the '123 Application's claims.  The PCT publication of the '501 patent discloses the key feature of modulated positive and negative pressures with respect to a reference pressure.

206.    Had the Examiner recognized that the '123 Application's "single" chamber claims were not entitled to the effective filing date of the '981 Application, at least claim 1 of the '123 Application would not have issued in its current form because the Examiner would have rejected that claim based on the PCT publication of the '501 Patent in combination with other prior art disclosing an appendage.

207.    Upon information and belief, at the time of filing the '599 Application, Novoluto and its prosecution counsel intentionally deviated from their routine practice of filing preliminary amendments to conceal the differences in the specifications of the '599 Application and its parent '471 Application from the USPTO.  This concealment was intended to deceive the Examiner into believing that the '599 Application was merely a "continuation" of the '471 Application and therefore, the as-filed claims of the '599 Application entitled to the effective filing date of the '471 Application.

208.    Upon information and belief, Novoluto and its prosecution counsel knew that the '599 Application contained new matter over the parent '471 Application, as evident from Exhibit I.  For instance, Novoluto and its prosecution counsel knew and understood that the parent '471 application only contained disclosure of and claimed sexual stimulation devices having two chambers and a connection element connecting the at least two chambers.  In order to expand patent coverage to a sexual stimulation device that included only a single chamber, Novoluto and its prosecution counsel filed the '599 Application with new subject matter directed to a "single" chamber device.  Novoluto and its prosecution counsel represented to the USPTO that the '599 Application was merely a "continuation" of the '471 Application even though it included significant changes over the '471 application.

209.    Upon information and belief, Novoluto and its prosecution counsel knew and understood that at least the as-filed independent claim 1 of the '599 Application was directed to the new matter directed to a "single" chamber.  Therefore, they did not submit a preliminary amendment at the time of filing the '599 Application to mislead the Examiner into believing that all claims of the '599 Application were entitled to an effective filing date of the claims of the '471 Application.  Novoluto and its prosecution counsel did so to avoid having its own prior patent publications becoming intervening prior art.

210.    If the '599 Application's claims are not entitled to the effective filing date of the '471 Application, *inter alia*, the PCT publication corresponding to the German '501 patent (i.e., WO 2015039787A1, which published on March 26, 2015) is anticipatory prior art to the '599 Application's claims.

211.    Had the Examiner recognized that the '599 Application's "single" chamber claims were not entitled to the effective filing date of the '471 Application, at least claim 1 of the '599

Application would not have issued in its current form because the Examiner would have rejected that claim based on the PCT publication of the '501 Patent.

212.    During prosecution of the '208 and '117 applications, which were filed as "continuations" of the '599 Application, Novoluto and its prosecution counsel never expressly advised the USPTO of its misconduct in the examination of the '599 Application.  For example, they never expressly advised the USPTO of the differences between the specification of the '599 Application and the parent '471 Application.

213.    Instead of advising the USPTO of its conduct in the '599 Application, Novoluto and its prosecution counsel doubled down on their misconduct during the examination of the '208 and '117 applications.  Specifically, Novoluto and its prosecution counsel represented to the USPTO that the '208 and '117 Applications were continuations of the '599 Application, which Novoluto and its prosecution counsel claimed was a "continuation" of the '471 Application.  In other words, Novoluto and its prosecution counsel represented to the USPTO that the '208 and the '117 Applications contained no new matter over the '471 Application.  They did so to mislead the Examiner into believing that the "single" chamber claims of the '208 and '117 Applications were entitled to the effective filing date of the '471 Application even though the '471 Application did not disclose a "single" chamber device.  Had the Examiner been made aware of the new matter added to the '208 and '117 Applications over the '471 Application, the Examiner would have found the '208 and '117 applications not entitled to the effective filing date of the '471 Application and therefore, applied the PCT publication of the '501 patent as anticipatory prior art against the "single" chamber claims of the '208 and '117 Applications.

214.    Novoluto and its prosecution counsel took additional steps to conceal the new matter added to the '208 and '117 Applications over the '471 Application.  For example, the

Australian Patent Office issued a decision in a ***contested*** proceeding of a related application having claims directed to "single" chamber devices (as opposed to devices having two chamber with a connection element between the chambers), like those claimed in the '220 and '418 patents.  (IP Australia, January 5, 2021 Opposition Proceeding Decision regarding Patent Application 2018203659, 27-29.)  In that decision, the Australian Patent Office determined that the single chamber claims lacked written description support.  (*Id.* at 29.)  That decision was highly relevant to the '208 and '117 Applications as it confirmed that the two Applications could not claim priority back to the '471 Application (which only discloses a ***two*** chamber device like the application at issue in the Australian opposition).

215.    If properly presented to the U.S. Examiner examining the '208 and '117 Applications, the Australian Decision would have indicated the lack of priority back to the '471 Application and alerted the Examiner that Novoluto had ***doctored*** the original specification of the '471 Application to include new subject matter that purportedly provided the foundation for the "single" chamber claims of the '208 and '117 Applications.  But Novoluto and its prosecution counsel buried the Australian Decision in an Information Disclosure Statement containing almost 100 documents.  (Jan. 29, 2021 IDS, '208 Application.)  Even the Examiner suspected the impropriety of such conduct warning Novoluto that "forcing the Examiner to find 'a needle in a haystack' is 'probative of bad faith.'"  (June 10, 2021 Notice of Allowance, '208 Application.)

216.    On information and belief, Novoluto and its prosecution counsel's misrepresentation that the '123 Application was a continuation of the '981 Application, misled the Examiner into believing the '123 Application claims had an effective filing date of the claims of the parent '061 patent.

217.   On information and belief, Novoluto and its prosecution counsel's misrepresentation that the '599 Application was a continuation of the '471 Application, misled the examiner into believing that the claims of the '599 Application, the '208 Application, and '117 Application had an effective filing date of the claims of the parent '851 patent.

218.   On information and belief, at least claim 1 of the '097 Patent would not have issued in its current form but for Novoluto and its prosecution counsel's misrepresentation that the '123 Application was a continuation of the '981 Application.

219.   On information and belief, at least claim 1 of the '220 Patent and at least claim 1 of the '418 Patent would not have issued but for Novoluto and its prosecution counsel's misrepresentation that the '599 Application was a continuation of the '471 Application.

220.   The single most reasonable inference to be drawn from Novoluto and its prosecution counsel's conduct is that they intended to deceive the USPTO.

221.   The '061, '851, '097, '418, and '220 patents are unenforceable due to the inequitable conduct described above, among other examples of inequitable conduct evident from the prosecution history.

222.   The '097, '418, and '220 Patents are also unenforceable under the doctrine of infectious unenforceability at least because no Novoluto representative expressly advised the USPTO of the existence of the misrepresentations during the prosecution of the '981, '471, '123, or '599 Applications described above, or expressly advised the USPTO of what the actual facts were and made clear that further examination in light thereof may be required because USPTO actions had been based on the misrepresentations.

**FIFTH DEFENSE**
**(Patent Misuse)**

223.     The '851, '061, '097, '220, and '418 Patents are unenforceable for patent misuse, based on, but not limited to, Defendants' prior and continuing unlawful attempts to enforce the '851, '061, '097, '220, and '418 Patents, which Defendants knows or should know are invalid, unenforceable and/or not infringed.   EIS incorporates by reference the supporting factual allegations of its Third Amended Complaint, D.I. 111, including ¶¶ 57-65, 71-207.

**SIXTH DEFENSE**
**(Prosecution History Estoppel)**

224.     Novoluto is estopped from construing or interpreting the claims of the '851, '061, '097, '220, and '418 Patents in such a way as may cover and/or include, either literally or under the doctrine of equivalents, EIS's products, processes, services, and/or other activities, and/or has waived any right to do so by reason of cancellation, limitation, or abandonment of claims, admissions, arguments, amendments, and/or representations made by or on behalf of the applicants in any proceedings before the United States Patent and Trademark Office.

**SEVENTH DEFENSE**
**(Ensnarement)**

225.     Novoluto's claims are barred or limited in whole or in part by the doctrine of ensnarement.

**EIGHTH DEFENSE**
**(Equitable Doctrines)**

226.     Novoluto's claims are barred by the equitable doctrines of waiver, estoppel, acquiescence, and/or unclean hands.

## NINTH DEFENSE
### (Limitation on Damages)

227.     Novoluto's right to seek damages, if any, is limited by 35 U.S.C. §§ 286, 287, and/or 288.

## TENTH DEFENSE
### (No Willful Infringement))

228.     Novoluto's claims for enhanced damages and an award of fees and costs against EIS have no basis in fact or law and should be denied.

## ELEVENTH DEFENSE
### (Not an Exceptional Case)

229.     Novoluto is not entitled to a finding that this case is exceptional warranting attorneys' fees under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

## TWELFTH DEFENSE
### (Adequate Remedy at Law)

230.     If Novoluto is entitled to any remedy, Novoluto has an adequate remedy at law, and cannot satisfy the requirements applicable to a request for injunctive relief.

## THIRTEENTH DEFENSE
### (Reservation of Rights)

231.     EIS reserves the right to add any additional defenses that discovery may reveal.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

OF COUNSEL:

Naveen Modi
David Valente
Chetan Bansal
James Razick
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC  20036
(202) 551-1700

November 12, 2021

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 12, 2021, upon the following in the manner indicated:

Paul D. Brown, Esquire                                                      *VIA ELECTRONIC MAIL*
Joseph B. Cicero, Esquire
Gregory E. Stuhlman, Esquire
CHIPMAN BROWN CICERO & COLE, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, DE  19801
*Attorneys for Defendants IntiHealth Ger GmbH,*
*WOW Tech USA, Ltd., WOW Tech Canada, Ltd. and*
*Novoluto GmbH*

Tammy J. Terry, Esquire                                                   *VIA ELECTRONIC MAIL*
Califf T. Cooper, Esquire
OSHA BERGMAN WATANABE & BURTON LLP
Two Houston Center
909 Fannin Street, Suite 3500
Houston, TX  77057
*Attorneys for Defendants IntiHealth Ger GmbH,*
*WOW Tech USA, Ltd., WOW Tech Canada, Ltd. and*
*Novoluto GmbH*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)