IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1227 (LPS) |
| | ) | |
| INTIHEALTH GER GMBH, | ) | REDACTED - PUBLIC VERSION |
| WOW TECH USA, LTD., | ) | |
| WOW TECH CANADA, LTD. and | ) | |
| NOVOLUTO GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF EIS INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

OF COUNSEL:

*Attorneys for Plaintiff*

Naveen Modi
Allan M. Soobert
Chetan Bansal
David Valente
James Razick
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700

Originally Filed: December 3, 2021
Redacted Version Filed: December 15, 2021

TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................... 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ....................................... 2

III.   SUMMARY OF ARGUMENT ....................................................................... 2

IV.    STATEMENT OF FACTS .............................................................................. 4

V.     ARGUMENT .................................................................................................. 5

       A.     EIS Is Likely to Succeed on the Merits ............................................... 6

              1.     EIS Is Likely to Succeed in Showing That Defendants Engaged in
                     Unfair Competition ..................................................................... 6

              2.     Defendants' Allegations of Infringement Are Objectively Baseless ......... 7

              3.     The '220 Patent Is Unenforceable Due to Inequitable Conduct ............... 9

       B.     EIS Will Be Irreparably Harmed in the Absence of Immediate Relief .............. 16

       C.     The Balance of Equities Favors EIS .................................................. 19

       D.     Restoring the Status Quo Is in the Public Interest ............................... 19

VI.    CONCLUSION ............................................................................................. 20

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
  651 F.3d 1318 (Fed. Cir. 2011)......................................................................9

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
  726 F.3d 1296 (Fed. Cir. 2013).....................................................................16

*Arrow Int'l, Inc. v. Spire Biomedical, Inc.*,
  635 F. Supp. 2d 46 (D. Mass. 2009) .............................................................10

*Asghari-Kamrani v. United Servs. Auto. Ass'n*,
  252 F. Supp. 3d 562 (E.D. Va. 2017), aff'd, 737 F. App'x 542 (Fed. Cir.
  2018) .............................................................................................................14

*Beyond Blond Prods., LLC v. Heldman*,
  479 F.Supp.3d 874 (C.D. Cal. Aug. 14, 2020) ...........................................1, 5

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012).......................................................................16

*Design Furnishings, Inc. v. Zen Path LLC*,
  No. 2:10-02765 WBS GGH, 2010 WL 4321568 (E.D. Cal. Oct. 21, 2010) ...................1, 20

*Issa v. Sch. Dist. of Lancaster*,
  847 F.3d 121 (3d Cir. 2017)...........................................................................19

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005)......................................................................12

*M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs., Inc.*,
  No. 14-181-LPS, 2014 WL 2727198 (D. Del. June 13, 2014) .................16, 17

*Medcursor Inc. v. Shenzen KLM Internet Trading Co.*,
  No. 2:21-cv-02843-AB-AFM, 2021 WL 2024858 (C.D. Cal. Apr. 20, 2021) .........................5

*Nilssen v. Osram Sylvania, Inc.*,
  504 F.3d 1223 (Fed. Cir. 2007)......................................................................12

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.
  Co.*,
  290 F.3d 578 (3d Cir. 2002)......................................................................16, 19

*Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*,
  822 F.2d 1528 (Fed. Cir. 1987)........................................................................7

ii

*Quad/Tech, Inc. v. Q.I. Press Controls B.V.*,
   701 F. Supp. 2d 644 (E.D. Pa. 2010), aff'd, 413 F. App'x 278 (Fed. Cir. 2011) ....................19

*Rsch. Found. of State Univ. of New York v. Mylan Pharms. Inc.*,
   No. 09-184-GMS-LPS, 2010 WL 11475865 (D. Del. July 6, 2010)......................................16

*Smith v. Laster*,
   787 F. Supp. 2d 315 (D. Del. 2011)........................................................................................6

*Therasense Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)........................................................................................9, 13

*Total Care Physicians, P.A. v. O'Hara*,
   798 A.2d 1043 (Del. Super. Ct. 2001) ....................................................................................6

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
   748 F.3d 1159 (Fed. Cir. 2014).......................................................................................16, 17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)....................................................................................................................6

**Statutes**

35 U.S.C. § 112........................................................................................................................12

35 U.S.C. § 120........................................................................................................................10

**Other Authorities**

Federal Rule of Civil Procedure 65 ...........................................................................................1

M.P.E.P. § 201.07 ...............................................................................................................11, 12

## I.    INTRODUCTION

Plaintiff EIS Inc. ("EIS") respectfully moves this Court to enter a temporary restraining order (and a preliminary injunction) pursuant to Federal Rule of Civil Procedure 65.  Defendants circumvented the legal system and engaged in a self-help remedy, instead of letting this Court resolve the parties' dispute pending before this Court.  On the Saturday after Thanksgiving, Defendants filed notices with Amazon that caused Amazon to delete EIS's product listings for its Satisfyer Air Pulse products as of mid-day on November 30, 2021.  The notices represented that those products infringe Novoluto's U.S. Patent No. 11,090,220 (the "'220 patent"), which is the subject of EIS's pending declaratory judgment action and Novoluto's infringement counterclaim.  Although the '220 patent and the Satisfyer products removed from Amazon are both at issue in this case, Defendants did not notify EIS or its counsel before upsetting the status quo.  EIS's requested relief is warranted.  *See Beyond Blond Prods., LLC v. Heldman*, 479 F.Supp.3d 874 (C.D. Cal. Aug. 14, 2020) (granting a preliminary injunction requiring rights holder to withdraw its Amazon infringement notices); *Design Furnishings, Inc. v. Zen Path LLC*, No. 2:10-02765 WBS GGH, 2010 WL 4321568, at *5 (E.D. Cal. Oct. 21, 2010) (continuing state court's TRO enjoining defendant from submitting notices of claimed infringement to eBay regarding plaintiff's products).

EIS and its employees are suffering irreparable harm, and will continue to suffer if its Amazon listings are not reinstated promptly.  Even though this case has been pending for over two years, during which time Defendants never moved for injunctive relief, Defendants suddenly chose to file such notices during the peak of the holiday shopping season, when it is highly important for EIS's brand recognition and reputation to be visible on major retail websites like Amazon.  As a result of Defendants' conduct, EIS is suffering from lost goodwill and market share, diminished

brand recognition, reputational harm, and, with its lost sales growing by the hour, ████████

████████████████████████████████████████████████████████████████ .

The circumstances here are exceptional and warrant EIS's request relief of a temporary restraining order directing Defendants to withdraw their infringement notices to Amazon and a preliminary injunction directing Defendants to refrain from engaging in such conduct, including re-filing any such notices pending resolution of this case. The requested relief would restore the status quo so that the Court—not Defendants or Amazon—can adjudicate the parties' dispute.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

EIS filed its Complaint on June 28, 2019, alleging various unfair completion claims based on Defendants' false patent infringement allegations, fake Amazon reviews, and other wrongs. D.I. 1. On September 9, 2019, EIS filed its First Amended Complaint, adding inequitable conduct declaratory judgment counts for three of Defendants' patents and a *Walker Process* count. D.I. 9. On December 22, 2020, EIS filed its Second Amended Complaint, adding counts for declaratory judgment of noninfringement of the three patents. D.I. 53. On September 16, 2021, EIS filed its Third Amended Complaint, adding declaratory judgment claims for non-infringement of two additional patents, including the '220 patent. D.I. 111. Novoluto counterclaimed for infringement of the '220 patent on September 28, 2021. D.I. 118. Although the patent claims in this case have been pending for over two years, neither Novoluto nor any other Defendant has moved for a preliminary injunction to prevent EIS from selling the accused products.

## III.    SUMMARY OF ARGUMENT

1.    EIS is likely to succeed on the merits of proving that Defendants' representations to Amazon were made in violation of Delaware's common law prohibiting unfair competition. Those representations interfered with EIS's valid business expectancy, and were made in bad faith at least because the '220 patent is not infringed and is unenforceable.

2.     Defendants are unlikely to succeed in showing infringement of independent claim 1 of the '220 patent, which is the sole claim charted by Defendants with their counterclaim and which requires a "chamber" having a specific opening, which the accused products do not have under Defendants' infringement theory.

3.     EIS is also likely to succeed on the merits of proving that the '220 patent is unenforceable for inequitable conduct.   Specifically, the patentee made an affirmative misrepresentation to the PTO regarding the priority claim with an apparent intent to deceive the PTO into presuming an incorrect effective filing date of the claims of the '220 patent.  But for that misrepresentation, the claims would not have issued based on intervening prior art.

4.     EIS will be irreparably injured absent immediate relief because EIS will lose market share and brand recognition, suffer a loss of goodwill and harm to its reputation; ███████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████.

5.     The balance of the equities favors granting relief because EIS will be immediately, and irreparably, harmed without it.  In contrast, Defendants cannot credibly complain of any serious harm if the status quo from earlier this week is restored; indeed, Defendants have not once moved to enjoin EIS from selling its products during the two years this case has been pending.

6.     Granting relief is also in the public interest because the public benefits from having open and fair competition in the marketplace and access to EIS's Satisfyer Air Pulse Stimulator products on Amazon.  The public also benefits from the judicial process running its course instead of litigants seeking their own self-help remedies outside of the courtroom.

## IV.    STATEMENT OF FACTS

On November 27, 2021—the Saturday after Thanksgiving and the middle of the busiest shopping period of the year—EIS received an email from Amazon stating that the Amazon listings for its Satisfyer Air Pulse Stimulator products had been removed from Amazon because the owner of the '220 patent had notified Amazon that those products infringe the '220 patent. Ex. B-1.[1]  The patent owner's contact information was listed as "questions@**wowtech**.com." Ex. B ¶ 7 (emphasis added).  WOW Tech is one of the Defendants in this case.

Three days after EIS received the first email from Amazon, on November 30, 2021, EIS's Air Pulse Stimulator product listings were removed from Amazon.  Ex. B ¶ 8.  The products were no longer available for purchase on Amazon and the tens of thousands of positive ratings and reviews (along with the associated product information) was no longer available for viewing. Ex. B ¶ 8; Ex. A-1.  With this removal, EIS lost the important number one sales ranking in multiple product categories.   Ex. B ¶¶ 10-11. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Defendants never provided any warning that they intended to take this extra-judicial action to remove EIS's Air Pulse Stimulator products from Amazon during the important holiday shopping season.  And when EIS asked for WOW Tech's basis for these actions in a letter on November 30 (Ex. A-2), Defendants, after observing total silence for three days on a matter of this level of urgency, noted that a "meet and confer is not 'ripe'" and that they are "conferring . . . and

---

[1]  Exhibits beginning with "B-" are attached to the Bensimon declaration (Exhibit B) and those beginning with "A-" are attached to the Valente declaration (Exhibit A).

will respond in writing" at an unspecified time "next week." Ex. A-3. Defendants also noted that this Court does not have "sole and exclusive jurisdiction over all disputes between the parties" and they may have taken advantage of a "Utility Patent Neutral Evaluation (UPNE) Program" offered by Amazon (Ex. A-3)—a program Defendants' counsel has previously touted as "promis[ing] a way for certain patentees to at least attempt to clear the Amazon marketplace of infringing products at a fraction of the cost and in a fraction of the time it would take to go through typical district court litigation" (Ex. A-20). This Court certainly has jurisdiction to resolve the unfair competition, infringement, and unenforceability issues that are already pending before it as part of this action. Given Defendants efforts to circumvent this Court's jurisdiction and the immense harm that accrues to EIS with every passing hour, EIS had no choice but to file this motion. *Id.*

In fact, this is not the first time Defendants have made false infringement allegations. Several of EIS's claims currently pending in this case are based on Defendants' false, improper, and unlawful infringement allegations—conduct enjoined in Germany before this litigation even began. D.I. 111 at ¶42. Although the filing of this lawsuit put Defendants on notice that their acts are also wrongful in the United States, EIS's counsel has had to write Defendants' counsel multiple times this year to address ongoing false infringement allegations. Exs. A-4, A-5, A-6. Each time, Defendants have vigorously denied making any such statements. Exs. A-7, A-8, A-9. Defendants, however, cannot take this position any longer.

## V.    ARGUMENT

Several courts have addressed motions for injunctive relief by aggrieved sellers whose products have been taken down by Amazon from its marketplace in response to allegations of infringement (patent, copyright, or trademark). *See, e.g., Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, No. 2:21-cv-02843-AB-AFM, 2021 WL 2024858, at *7 (C.D. Cal. Apr. 20, 2021) (denying motion for temporary restraining order but granting order to show cause why a

preliminary injunction should not issue); *Beyond Blond*, 479 F.Supp.3d 374. Such injunctive relief is available in the form of a temporary restraining order, which requires a showing that the aggrieved party is (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the party's favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (listing preliminary injunction factors); *Smith v. Laster*, 787 F. Supp. 2d 315, 318 (D. Del. 2011) ("The [injunction] elements also apply to temporary restraining orders."). Each of these elements is satisfied here and the relief sought by EIS should be granted.

### A.    EIS Is Likely to Succeed on the Merits

#### 1.    EIS Is Likely to Succeed in Showing That Defendants Engaged in Unfair Competition

Defendants' notices to Amazon constitute unfair competition under Delaware common law. A Delaware common law unfair competition claim arises where "the plaintiff has a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057 (Del. Super. Ct. 2001). EIS had an ongoing non-speculative expectancy that it would be able to enter into valid business relationships with customers through Amazon, as it has been doing for years. Defendants wrongfully interfered with that relationship by falsely representing to Amazon that EIS's products infringe the '220 patent. Ex. B.

For the reasons discussed below in Sections V.A.2 and 3, Defendants' representations to Amazon were false and made in bad faith. In addition to being a transparent attempt to unfairly gain negotiation leverage by interfering with EIS's sales during the holiday season, any suggestion that EIS infringes the '220 patent is objectively incorrect and thus necessarily false and made in

bad faith.   The '220 patent is not infringed and also unenforceable due to intentional misrepresentations to the USPTO by Novoluto's prosecution counsel.  EIS's expectancy of selling its Satisfyer Air Pulse Stimulator products on Amazon was defeated as a result of Defendants' wrongful representation to Amazon, preventing EIS from making any further sales on Amazon, and causing other harm detailed in Section V.B, below.  Thus, EIS will likely prevail on the merits.

### 2.    Defendants' Allegations of Infringement Are Objectively Baseless

Defendants have not yet served infringement contentions for the '220 patent, but included a claim chart comparing independent claim 1 to an EIS product (the Satisfyer Penguin Air Pulse Stimulator) with its counterclaims.  D.I. 118-1 at 141.  That claim chart *clearly* demonstrates that EIS's products lack at least one claim limitation even under Defendants' infringement theories and therefore, cannot infringe claim 1 of the '220 patent.  *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533 (Fed. Cir. 1987).

The '220 patent relates to a stimulation device that can be used on erogenous zones.   D.I. 111-2 at 361 (1:19-22).   An illustrative figure is reproduced at the right showing chambers 3 and 4, connection element 5 between the chambers, and drive unit 6.  *Id.* at Fig. 3.  Claim 1 is set forth below in relevant part.



| '220 Patent, Claim 1 |
|---|
| 1. A stimulation device comprising: |
| **a chamber** having a flexible wall; . . . |
| **an opening configured to sealingly engage a portion of a body of a user including a clitoris**, the modulated positive and negative pressures to be applied to the portion of the body via the opening, **the opening being a sole opening of *the* chamber** to an exterior of the stimulation device . . . . |

Independent claim 1 thus requires *a chamber* that has *both* (1) a "flexible wall" and (2) "an opening configured to sealingly engage a portion of a body of a user including a clitoris." D.I. 111-2 at 367-68 (claim 1). The claim chart identifies the alleged "chamber" having a "flexible wall," as shown in the below excerpts. D.I. 118-1 at 143. The chart also identified an alleged "opening configured to sealingly engage a portion of a body of a user including a clitoris." D.I. 118-1 at 146.



D.I. 118-1 at 143 (left),

Under Defendants' allegations, the alleged "opening," however, cannot be an opening of the alleged "chamber," as required by claim 1 of the '220 patent because several other components intervene between the alleged "opening" and the alleged "chamber." This is also confirmed by Defendant's infringement contentions for the '851 patent which allege that the same "opening" (shown in the figures above) is associated with *another* chamber. Specifically, for the '851 patent, Defendants identified a "*first* chamber" (required by claim 1 of the '851 patent) as the same alleged "chamber" that they now identify for the '220 patent. Ex. A-10 at 8. Like the '220 patent, the '851 patent requires an opening "for placing over the clitoris," but in the '851 patent, that opening is of a "*second* chamber."[2] A-10 at 17. Defendants therefore alleged, for the '851 patent, that the same EIS product has a "second chamber" and the "opening for placing over the clitoris" is the opening of that second chamber, not the first chamber. *Id.* This shows that under Defendants'

---

[2] Novoluto's claim charts for each product accused of infringing the '851 patent use the same claim mapping, contending there are two chambers. Novoluto has, to date, only produced the single claim chart for the '220 patent that was attached to its counterclaims. To be clear, EIS disputes Defendants allegations of infringement with respect to all of the asserted patents.

own understanding, the alleged "opening" in the EIS product is not an opening of what Defendants

have alleged as the "chamber" recited in claim 1 of the '220 patent.   As apparent from the device

pictures, the actual opening of the alleged "chamber" in the EIS device does not come in contact

with the user and cannot possibly be "configured to sealingly engage a portion of a body of a user,"

as required by claim 1.

 

Ex. A-10, 8 (left), 5 (right).

Defendants' allegations regarding the '220 patent are thus objectively baseless because no

reasonable person would conclude that EIS' products infringe claim 1.

### 3.    The '220 Patent Is Unenforceable Due to Inequitable Conduct

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars

enforcement of a patent." *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285

(Fed. Cir. 2011).  "To prove inequitable conduct, the accused infringer must provide evidence that

the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent

to deceive the PTO." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir.

2011).  When a patentee engages in "affirmative acts of egregious misconduct," the misconduct is

"material." *Therasense*, 649 F.3d at 1292-93.

Here, not only were patentee's misrepresentations to the PTO "but-for material," they also

fall in the "affirmative acts of egregious misconduct" exception.  Specifically, the patentee made

9

a conscious misrepresentation to the USPTO that U.S Application No. 15/965,117 ("the '117 application"), which issued as the '220 patent, was entitled to the effective filing date of U.S. Application No. 15/023,471 ("the '471 application"), which issued as the '851 patent.  Even though the patentee knew that the '117 application included *new matter* over the '471 application that was necessary to support the claims of the '117 application, it consciously concealed the existence of this new matter from the PTO to mislead the PTO into presuming that the '117 application claims are entitled to an effective filing date of the '471 application.  But for patentee's egregious misconduct, the '220 patent claims would not have issued in their current form due to the lack of entitlement to the effective filing date of the '471 application and the resulting intervening prior art known to the Examiner, which discloses or suggests every limitation of at least claim 1 of the '220 patent.

<blockquote>a.    The Patentee Consciously Concealed the Existence of New Matter in the '117 Application over the '471 Application</blockquote>

The '117 application was filed on April 27, 2018.  At the time of filing, the '117 application specification stated that it was a "continuation" of U.S. Patent Application No. 15/354,599 ("the '599 application"), which was purportedly a "continuation" of the '471 application, filed on March 21, 2016, and claiming priority all the way back to a German application, filed on September 23, 2013.  Ex. A-11 (excerpt of '117 file history) at 1.  The accompanying Application Data Sheet stated as much.  *Id.* at 63-64.  That is, the patentee represented to the USPTO that the '117 application was a "continuation" of the '471 application by virtue of the priority chain, and thus *presumably* entitled to the much earlier effective filing date of the '471 application. 35 U.S.C. § 120; *Arrow Int'l, Inc. v. Spire Biomedical, Inc.*, 635 F. Supp. 2d 46, 61 (D. Mass. 2009) ("A 'continuation' application, which includes *only matters already disclosed by an earlier application*, is entitled to claim the filing date of its parent application.") (emphasis added).  But a

simple comparison of the '117 and the '471 application specifications shows that the '117 application specification includes new matter over the '471 application specification. *See, e.g.,* Ex. A-12 at 5-6 (¶[0022]). Therefore, the '117 application is not a "continuation" of the '471 application. M.P.E.P. § 201.07 ("The disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application."). As explained below, this new matter was deliberately added to expand patent coverage to a sexual stimulation device that included a *single* chamber, as opposed to a device having *two* chambers, which is the only disclosure in the parent '471 application.

The '471 application, which issued as the '851 patent, discloses and claims a sexual stimulation device having at least *two* chambers that are connected by a connection element therebetween. Claim 1 of the '851 patent recites a sexual stimulation device having a first chamber and a second chamber connected by a connection element. D.I. 111-1 at 274 (claim 1). Every embodiment in the '851 patent similarly discloses a sexual stimulation device having at least two chambers with a connection element therebetween. D.I. 111-1 at 261-267 (FIGS. 3, 4, 7, 8, 9, 11). For example, Figure 3 of the '851 patent discloses a device with a first chamber 3 and a second chamber 4 separated by a connection element 5. D.I. 111-1 at 263 (FIG. 3). The '851 patent confirms the at least two chamber requirement because "[a]ccording to *the invention*, a pressure field generator in the stimulation device has at least one first chamber and at least one second chamber." D.I. 111-1 at 269 (3:58-63) (emphasis added).

Unlike claim 1 of the '851 patent that requires a device with at least two chambers, claim 1 of the '220 patent requires only a single chamber. D.I. 111-2 at 37-368 (claim 1). Because the '471 application specification does not include even a hint or suggestion of a *single* chamber

11

device, it cannot provide the requisite support under 35 U.S.C. § 112 for such a claim.[3] Ex. A-16 (excerpt of '471 Application File History) at 25-55, 159-165; *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (holding claim invalid because the specification did not contemplate the claimed invention).    That is precisely why the '117 application specification included disclosure directed to a ***single*** chamber device (Ex. A-11 at 5-6 (5:30-6:9)), which disclosure is absent from and unequivocally constitutes new matter over the parent '471 application.[4]  That is also why the '117 application states "one embodiment" where the '471 application stated that "the invention" is a device with at least two chambers.  Ex. A-12 at 7 (¶[0043]).  The patentee deliberately concealed this new matter from the PTO representing that the '117 application is a "continuation" of the '471 application.  In doing so, the patentee contraved USPTO rules that a continuation cannot include "new matter." M.P.E.P. § 201.07.  Such clear misrepresentations as to the claim for priority are material to patentability and constitute inequitable conduct.  *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007) (affirming district court's finding of inequitable conduct for "misclaiming priority").

---

[3] This is further confirmed by a decision by the Australian Patent Office in a related foreign patent application.  After a ***contested*** proceeding, the Australian Patent Office determined that a "single" chamber device claim, like the '220 patent claim 1, lacked written description support because the specification had no hint or suggestion of a device with less than two chambers.  Ex. A-14 (IP Australia, January 5, 2021 Opposition Proceeding Decision regarding Patent Application 2018203659) at 26-29 (¶¶126-132).  That application's disclosure aligned with that of the '471 application and demonstrates that claim 1 of the '220 patent is not entitled to the effective filing date of the '471 application.

[4] As explained below, this disclosure was added at the time of filing of the '599 application, which is the immediate parent of the '471 application.

12



Moreover, the misrepresentation was intentional. As shown in the demonstrative above, the new matter regarding the "single" chamber device was first added when patentee filed the '599 application. *See, e.g.,* Ex. A-13 (red-line of '599 application specification over the '418 application specification) at 5-6 (¶[0022]). But patentee did not submit a preliminary amendment showing the differences between the '599 and the '471 application specifications at the time of filing the '599 application. Ex. A-15 (excerpt of '599 application file history). This was a deliberate choice because, right until then, Novoluto and its prosecution counsel (Mr. Richard Cheng) filed preliminary amendments with red-lines showing specification changes (even ministerial ones) over any parent applications. Ex. A-16 at 17-24; Ex. A-17 (excerpt of file history of U.S. Application No. 15/302,981) at 73-82. The only reasonable inference one can draw from the above is that Novoluto and Mr. Cheng intended to conceal the addition of new matter directed to the single chamber device.[5] Such a "'deliberately planned and carefully executed scheme' to defraud the PTO" does not require a showing of but-for materiality under the "affirmative egregious misconduct" exception recognized in *Therasense*. 649 F.3d at 1292-93. The '220 patent is

---

[5] Novoluto recently changed its prosecution counsel who filed a preliminary amendment for ministerial changes to parent applications. Ex. A-18 (September 23, 2020 Preliminary Amendment in U.S Application No. 17/029,974). This again shows that Novoluto filed preliminary amendments opportunistically.

therefore unenforceable based on inequitable conduct.  While not necessary for a showing of inequitable conduct under these extreme circumstances, patentee's misrepresentation is also but-for material.

          b.         **But-for Patentee's Misrepresentation, at least Claim 1 of the '220 Patent Would Not Have Issued**

But for patentee's misrepresentation that the '117 application is a "continuation" of the '471 application, at least claim 1 of the '220 patent would not have issued due to intervening prior art available to the Examiner during prosecution of the '117 application.  Specifically, during prosecution of the '117 application, the Examiner was in possession of the "Witt" reference (U.S. Patent Application Publication No. 20170281457) assigned to EIS GmbH.  Ex. A-18; Ex. A-19 at 7 (IDS dated 2019-8-30 in the '117 application).  Witt, as explained below, discloses or suggests every limitation of claim 1 of the '220 patent. Witt has an effective filing date at least as early as September 9, 2016.  Ex. A-18 (cover).  Thus, Witt is prior art to claim 1 of the '220 patent, *if* claim 1 is only entitled to the November 17, 2016 filing date of the '599 application (the parent of the '117 application).  The Examiner was, however, misled into believing that Witt is not prior art because the patentee represented to the USPTO that the '117 application was a "continuation" of the '471 application, which has an earlier date than Witt.  Had patentee been forthcoming with the Examiner and indicated that the '599 application (and therefore, the '117 application) is a "continuation-in-part" (as opposed to a "continuation") of the '471 application, the Examiner would have carefully evaluated the filing date to which claim 1 is entitled. *Asghari-Kamrani v. United Servs. Auto. Ass'n*, 252 F. Supp. 3d 562, 575-76 (E.D. Va. 2017), *aff'd*, 737 F. App'x 542 (Fed. Cir. 2018) ("while a patent application for a continuation receives the priority date of the earlier-filed parent patent, a patent application for a continuation-in-part instead receives a claim-by-claim assessment as to whether each particular claim in the later-filed child patent may receive

the benefit of the priority date of the earlier parent patent").  And the Examiner would have concluded that claim 1 is not entitled to the effective filing date of the '471 application because that application has no written description support for a ***single*** chamber device like that recited in claim 1.  *Supra* Section V.A.3(a); *see also* Ex. A-14 at 26-29 (¶¶127-132).  Indeed, if that were not the case, patentee had no reason to add the description associated with a single chamber device in the '599 application that carried over to the '117 application.

Had the Examiner not been misled by patentee's affirmative misrepresentation of priority, he would not have allowed claim 1 of the '220 patent over Witt given Witt discloses or suggests every claim limitation, as shown in the chart below.

| Claim 1 of the '220 patent | Witt (Ex. A-18) |
|---|---|
| A stimulation device comprising: | Compression wave massage device 1 (*see* Figure 1, ¶¶[0029], [0041]) |
| a chamber having a flexible wall; | Cavity 12 formed by a "single continuous chamber 14" having a flexible membrane 18 at one end.  (Figures 3, 4, ¶¶[0032], [[0036].) |
| a drive unit in physical communication with the flexible wall to cause at least a portion of the flexible wall to deflect in opposing directions, thereby resulting in a changing volume of the chamber, the changing volume of the chamber resulting in modulated positive and negative pressures with respect to an ambient pressure; | Drive engine 12 is connected with flexible membrane 18 to cause a "reciprocal deflection" of the membrane and a change in the volume of the cavity.  (Figures 3, 4, ¶[0036].)  This results in modulated positive and negative pressures with respect to the normal (i.e., ambient) pressure.  (Figure 5, ¶¶[0009], [0020], [0036], [0041].) |
| an opening configured to sealingly engage a portion of a body of a user including a clitoris, the modulated positive and negative pressures to be applied to the portion of the body via the opening, the opening being a sole opening of the chamber to an exterior of the stimulation device, the flexible wall to sealingly separate the drive unit from the portion of the body; | The device has only one opening 8, which is placed on the clitoris, and is the opening of the chamber 14.  (Figure 3, Abstract, ¶¶[0032], [0041].)  The flexible membrane 18 separates the drive engine 12 from the body.  (Figure 3.) |
| a control device configured to receive input from the user and control the drive unit to create the modulated positive and negative pressures; and | Sensor 34.  (Figures 1, 3, ¶[0039].) |
| a housing enclosing the drive unit and the control device. | Housing 2.  (Figure 3; ¶[0029].) |

15

**B.    EIS Will Be Irreparably Harmed in the Absence of Immediate Relief**

If EIS's Satisfyer Air Pulse Stimulator products remain unavailable for sale on Amazon, including during the ongoing holiday shopping season, EIS will suffer irreparable harm not compensable by money damages in multiple ways.  Namely, EIS will lose market share and brand recognition, lose goodwill and suffer harm to its reputation, ███████████████████████.  *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)) ("[P]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("We are satisfied that this loss of market share constitutes irreparable harm."); *Rsch. Found. of State Univ. of New York v. Mylan Pharms. Inc.*, No. 09-184-GMS-LPS, 2010 WL 11475865, at *13 (D. Del. July 6, 2010) ("Depending on circumstances, evidence of price erosion, loss of market share, loss of profits, loss of research opportunities, and possible layoffs may constitute irreparable harm."); ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

Absent immediate relief, EIS will lose market share and brand recognition.  Just prior to Amazon removing EIS's Air Pulse Stimulators, one of EIS's Air Pulse Stimulator products was the number one product in the clitoral vibrator category, as well as in the vibrator, sex toys, and adult toys and games categories.  Ex. B ¶ 10.  Being ranked number one in a category on Amazon generates significant sales because Amazon tends to suggest that product first.  Ex. B ¶ 10.  The number one ranking also generates customer confidence and aids in converting views of a product

on Amazon into sales.  Ex. B ¶ 10.  By being removed from Amazon, EIS's Air Pulse Stimulator will move to the bottom of the rankings—if sales are even permitted to resume—and will suffer lower sales volumes.  Ex. B ¶ 11.  The damage to EIS for its loss of brand recognition and market share will not be readily calculable and cannot be adequately compensated by money damages.

EIS will also lose goodwill and suffer reputational harm absent immediate relief.  Potential end-user customers will no longer be able to purchase EIS's Satisfyer Air Pulse Stimulator products from Amazon—which is recognized as an online platform many shoppers prefer due to speedy delivery, ease of payment, and other factors.  EIS will no longer have the number one ranked product in four categories on Amazon and the accompanying customer confidence.  Ex. B ¶ 10.  Furthermore, the removal of EIS's Air Stimulator Product listings also removed over 40,000 reviews and ratings—the majority of which were positive based on the overall 4.4 star rating that existed.  Ex. A-1.[6]  This large source of evidence showing product popularity and enjoyment is now unavailable to current and potential customers.  As further harm, EIS's distributors may also be confused by the removal of the products into thinking that EIS's products have been adjudged infringing and be unwilling to continue selling EIS's products.

---

[6] This screenshot was taken on December 1, 2021, after the listings were removed from Amazon. As of that date, the overall rating and number of ratings could still be viewed in Google search results.  But the listings and the actual reviews and individual ratings could not be viewed on Amazon or via the Google search results.



██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████    This harm is imminent, irreparable, and unable to be remedied with money damages after a trial scheduled for nearly 18 months from now in May 2023.  The issuance of a temporary restraining order is necessary to avoid this irreparable injury.

## C.    The Balance of Equities Favors EIS

The balance of equities favors granting EIS's application for a temporary restraining order. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) ("We must now balance the parties' relative harms; that is, the potential injury to the [movant] without this injunction versus the potential injury to the [respondent] with it in place.") (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)).  As detailed above, EIS will be irreparably injured absent the issuance of immediate relief.  In contrast, Defendants cannot seriously complain of any harm if the status quo from earlier this week is restored given that they never moved for a preliminary injunction to enjoin EIS from selling its products even though this case has been pending for two years.  *See Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, 701 F. Supp. 2d 644, 657 (E.D. Pa. 2010), aff'd, 413 F. App'x 278 (Fed. Cir. 2011) (noting patentee's 14 month delay in filing for injunctive relief undercut the urgency that forms the cornerstone of injunctive relief).  Having failed to move to enjoin EIS, Defendants should not be allowed now to circumvent the legal system by submitting takedown notices to Amazon.

## D.    Restoring the Status Quo Is in the Public Interest

The public interest favors granting EIS's application for a temporary restraining order. *Issa*, 847 F.3d at 143 ("Finally, we must weigh whether the public interest favors this preliminary

injunction.  Doing so is 'often fairly routine.'  If a [movant] proves 'both' a likelihood of success on the merits and irreparable injury, it 'almost always will be the case' that the public interest favors preliminary relief.") (citations omitted).  As another court recognized with respect to copyright takedown notices filed with eBay, the public interest favors a TRO, because "[t]o withhold a TRO would allow anyone to effectively shut down a competitor's business on eBay simply by filing the notice that the seller's product allegedly infringes on the complaining party's copyright."  *Design Furnishings*, 2010 WL 4321568, at *5.  That is precisely what Defendants have done here, effectively procuring their own injunction through a private party (Amazon) instead of permitting the Court to decide the rights and liabilities of the parties in this litigation.

Moreover, EIS's Satisfyer Air Pulse Stimulator products compete with WOW Tech's Womanizer products.  The public benefits from this competition on Amazon—one of the most popular shopping websites.  While other competitors exist, many consumers prefer EIS's Satisfyer Air Pulse Stimulator products as evidenced by the tens of thousands of ratings and reviews for those products.  Ex. A-1.  Additionally, the public benefits by having the courts decide intellectual property rights in lieu of private extra-judicial actions—especially when the issue is the subject of active litigation.  There is certainly no harm to the public interest in restoring the status quo from just a week ago.

## VI.    CONCLUSION

EIS respectfully requests that the Court grant its motion for a temporary restraining order directing Defendants to withdraw their infringement notice to Amazon and restore the status quo, and entering a preliminary injunction prohibiting Defendants from engaging in such conducting, including re-filing of any such notices during the pendency of this case.  EIS also requests that any such order direct Defendants to request that Amazon restore EIS's product listings with the same rankings, reviews, and comments, as prior to the takedown notice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

Naveen Modi
Allan M. Soobert
Chetan Bansal
David Valente
James Razick
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC  20036
(202) 551-1700

December 3, 2021

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 15, 2021, upon the following in the manner indicated:

Paul D. Brown, Esquire                                    *VIA ELECTRONIC MAIL*
Joseph B. Cicero, Esquire
Gregory E. Stuhlman, Esquire
CHIPMAN BROWN CICERO & COLE, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, DE  19801
*Attorneys for Defendants IntiHealth Ger GmbH,*
*WOW Tech USA, Ltd., WOW Tech Canada, Ltd. and*
*Novoluto GmbH*

Tammy J. Terry, Esquire                                   *VIA ELECTRONIC MAIL*
Califf T. Cooper, Esquire
OSHA BERGMAN WATANABE & BURTON LLP
Two Houston Center
909 Fannin Street, Suite 3500
Houston, TX  77057
*Attorneys for Defendants IntiHealth Ger GmbH,*
*WOW Tech USA, Ltd., WOW Tech Canada, Ltd. and*
*Novoluto GmbH*

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)