# Exhibit 1

**State of Delaware**
**United States District Court - District of Delaware**

**EIS, Inc.**
, Plaintiff

Case No.: **19-cv-1227-LPS**

**IntiHealth Ger GMBH, et al.**
, Defendant

For:

**Capitol Process Services, Inc.**

**1827 18th Street Northwest,**
**Washington, District of Columbia 20009**

---

**AFFIDAVIT OF DUE-DILIGENCE**

Received by Dart Group Incorporated to be served on **Zoe Ligon**.

I, **Scott Fluegge**, being duly sworn, depose and say that on **February 8th, 2022** at **12:52 pm, I:**

Performed due search, careful inquiry, and diligent attempts as outlined in my comments below, I have been unable to Personally Serve the **Letter From Attorney, Subpoena to Testify at a Deposition in a Civil Action, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, Attachment A, Request for Production, Proposed Stipulated Protective Order, Exhibits**. I am respectfully returning this assignment un-served.

I certify that I am over the age of 18 and have no interest in the above Captioned Matter.

Saturday, February 5, 2022, 10:00 am at 20185 Briarcliff Road, Detroit, Michigan 48221
Given address is a single family home. Large dog on property. Snow covered F150 in yard. Can't see plate. Black Honda CR-V in front of house MI ELH1276. No answer at door.

Saturday, February 5, 2022, 4:50 pm at 20185 Briarcliff Road, Detroit, Michigan 48221
At given address. Server spoke to man who stated Zoe is not at home right now. Refused additional information and took servers card. Silver Ford Focus in drive MI KLO8K.

Monday, February 7, 2022, 8:04 am at 20185 Briarcliff Road, Detroit, Michigan 48221
Attempted service at the given address, no answer at door after multiple attempts at knocking at door. I did not see any movement. Same Honda present. Left another card at the door with the Defendants name listed. I called the Defendants possible phone numbers and left voice messages where able.

Tuesday, February 8, 2022, 12:52 pm at 20185 Briarcliff Road, Detroit, Michigan 48221
Attempted service at the given address, same male I spoke with said Zoe is out of town, wouldn't tell me when she would be back (he replied "I don't tell that to strangers"). I explained it is legal paperwork and required to be here for an attempt, gave him another card to forward to Zoe to arrange for service. Same Ford Fiesta present in driveway. Called phone numbers off of skip trace and left voice messages where able.

Subscribed and Sworn to before me on this day February 8, 2022 by the Affiant who is Personally Known to me.

Joseph Meek
Notary Public, State of Michigan
County of Oakland
My Commission Expires 10/31/2026
Acting in the County of Oakland

Scott Fluegge
Process Server

Dart Group Incorporated
55 E. Long Lake Road, Suite 215
Troy, MI 48085
248-619-7899

Our Job Number: 45913
Reference:  EIS, Inc. -v- IntiHealth Ger GMBH, et al.



# Exhibit 2

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 19-cv-1227-LPS

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   Zoe' Ligon

on *(date)*   1/25/2022       :

☑ I served the subpoena by delivering a copy to the named individual as follows:   Zoe' Ligon in care of attorney Alex Stotland, Stotland Stotland Craig, PLLC

_____   on *(date)* 1/25/2022 Tuesday 3:35pm  ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   1/26/2022

_____
*Server's signature*

Keith Ingram

_____
*Printed name and title*
Recon Management Group, LLC
30400 Telegraph Rd., Suite 472
Bingham Farms, MI 48025

_____
*Server's address*

James Dean Schoenherr    1/26/22
Notary Public, State of Michigan,
County of Macomb
My Commission expires Jan 12, 2024
Acting in the County of Oakland

Additional information regarding attempted service, etc.:

# Exhibit 3

## Stewart, Kevin

| | |
|---|---|
| **From:** | Alexander Stotland <alex@stotlandcraig.com> |
| **Sent:** | Friday, February 11, 2022 4:42 PM |
| **To:** | Stewart, Kevin |
| **Cc:** | Razick, James; Alex Stotland |
| **Subject:** | [EXT] Re: EIS, Inc. Subpoenas for Ms. Ligon |

Dear Mr. Stewart,
My small office has been affectively shut down since last week because of distant an out-of-town wedding.  I will respond to you early next week.

Alex Stotland

On Feb 11, 2022, at 3:05 PM, Stewart, Kevin <kevinstewart@paulhastings.com> wrote:

Hi Mr. Stotland,

We understand that you accepted service on Ms. Ligon's behalf for Defendants' written question subpoena.  But we have asked if you would accept service on your client's behalf numerous times over the past two weeks and, in contrast, you have refused so much as to return any of our calls.  In addition to emailing you a copy of the subpoenas and various other messages, we have attempted to contact you and Ms. Ligon at various addresses to no avail.  Please let us know if you have not received our subpoenas.

Thank you,
Kevin

**From:** Stewart, Kevin
**Sent:** Tuesday, February 8, 2022 6:31 PM
**To:** 'alex@stotlandcraig.com' <alex@stotlandcraig.com>
**Cc:** Razick, James <jamesrazick@paulhastings.com>; 'astotland@hertzschram.com' <astotland@hertzschram.com>
**Subject:** RE: EIS, Inc. Subpoenas for Ms. Ligon

Hi Mr. Stotland,

We again write to follow up on Ms. Ligon's subpoenas which you received last week.  Despite multiple attempts last week and this week, we have not been able to serve Ms. Ligon.  We also have not received any response from you via email.  It appears that you or your client are working to evade service.  If that is not the case and you are willing to accept service on behalf of Ms. Ligon, again, please let us know.

Thank you,
Kevin

1

**From:** Stewart, Kevin
**Sent:** Wednesday, February 2, 2022 5:10 PM
**To:** 'alex@stotlandcraig.com' <alex@stotlandcraig.com>
**Cc:** Razick, James <jamesrazick@paulhastings.com>; 'astotland@hertzschram.com' <astotland@hertzschram.com>
**Subject:** EIS, Inc. Subpoenas for Ms. Ligon

Hi Mr. Stotland,

I write to follow up on my January 31 call and February 1 conversation with a Stotland Craig representative regarding subpoenas EIS, Inc. is attempting to serve on your client Zoe Ligon in *EIS, Inc. v. IntiHealth Ger GmbH*, No. 19-cv-1227-LPS (D. Del.).  I understand from my conversation with the representative that you did not agree to accept service on Ms. Ligon's behalf electronically, and your office was also unoccupied when we attempted physical service there yesterday.  Thus, we are going to serve Ms. Ligon personally.  If you are, in fact, willing to accept service on behalf of Ms. Ligon, please let us know.

I've attached a copy of the subpoenas for your reference.  Please accept our apologies for any incorrect email addresses.

Thank you,
Kevin



**Kevin Stewart** | Associate, Litigation Department. *Admitted only in Illinois Application for admission in the District of Columbia filed. Practice superv members of the District of Columbia Bar.*
Paul Hastings LLP | 2050 M Street NW, Washington, DC 20036 | Direct: +1.202.5.
Main: +1.202.551.1700 | Fax: +1.202.551.0341 | Email | www.paulhastings.com

*************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

2

# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SOLAS OLED LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:19-CV-00152-JRG |
| | § | |
| SAMSUNG DISPLAY CO., LTD., | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

The Court enters this Order in this case and similar cases now set for in-person jury trials during December of 2020 and January through February of 2021. In such cases where formal motions for continuance have been filed, they are **GRANTED**. In cases where formal motions for continuance have not been filed, the Court issues this Order *sua sponte*.

In March of this year, this Court—like its sister courts throughout the nation—ceased all in-person proceedings in response to the Novel Coronavirus Pandemic. In an effort to keep the work of the Court moving while avoiding in-person proceedings, the Court issued new guidance to the parties, implementing new procedures and solutions to enable ongoing progress in cases while conducting proceedings remotely.[1] When, in June and July, public health reports showed

---

[1] This approach, while adequate in a strict sense, allowed the Court to move forward virtually, albeit with regularly unwelcomed losses of audio, video, or both, including unfixable lagtime between audio and video where lips would move. . . lips would stop . . . and sound would follow. The virtual proceedings detracted from the typical administration of justice, depriving the Court of the ability to observe such critical factors as intonation, body-language, attitude, demeanor, and similar vocal and other physical nuance and those quasi-intangibles that normally breathe life and meaning into the written briefing filed on the docket. This approach also unavoidably hampered the Court's ability to interject questions and have an easy dialogue with

the rate of increase subsiding in cases of COVID-19, judges in this district and elsewhere became convinced that in-person proceedings could safely resume. However, to facilitate such a resumption, many hours and much effort were expended by judges and court staff to develop extensive safety precautions and protocols rooted in the recommendations of public health officials to reduce the risk of spreading the virus. Such precautions allowed a return to both in-person jury and bench proceedings.[2]

Implementing these and other safeguards and in response to improving medical data and the gradual reopening of businesses and the economy, this Court conducted its first in-person jury trial since the onset of the COVID pandemic in August of this year—safely and with no known incident. Subsequent in-person jury trials (both civil and criminal) were conducted in September, October, and November in similar fashion. Nevertheless, we now face a dangerously rising rate of increase in COVID-19 cases and swelling hospitalizations in this district and across the country.[3] Despite the Court's optimism that an efficacious vaccine may become widely available

---

counsel. In some instances, virtual proceedings before this Court were infected by the necessarily casual features of home life, such as intrusions of advocates' spouses, children, and family pets. While such happenings may be an increasing norm of remote work in many contexts, they stand in stark contrast to the formality and solemnity in which Court proceedings traditionally are and must be conducted. Such problems are only magnified in complex proceedings with many moving parts.

[2] These safety protocols included but were not limited to: taking temperatures of all entrants to court facilities; requiring masks and in some cases gloves; installing industrial air filtration devices in courtrooms; spacing in-person lawyers, parties, witnesses and jurors; installing plexiglass barriers around witness stands, jury boxes and elsewhere; limiting the number of participants physically present in court; periodic and repeated deep cleaning of jury rooms, restrooms and other common facilities; written questionnaires to venire members regarding their personal circumstances related to the virus sent and answered prior to their appearance; sequestering of jurors and providing individualized meals during trials to avoid exposure within communities during lunch breaks; and myriad other measures.

[3] This changing reality has recently been brought home by a trial conducted elsewhere in this District where, despite extensive precautions and safeguards, a mistrial was declared after multiple jurors, counsel, and court staff tested positive for COVID-19.

in the coming months, the Court is persuaded that the current status of the public health in the Marshall Division of the Eastern District of Texas requires it to **CONTINUE** all in-person jury trials.

Mindful of its docket largely populated with complex civil cases, where parties, witnesses, and staff often reside internationally or in domestic locations with a variety of travel restrictions and quarantines, the Court feels compelled to find that in-person jury trials must be continued. The Court comes to this result reluctantly—especially considering the huge earlier efforts undertaken to resume in-person jury trials. While some motion practice may be adequately addressed via virtual proceedings, the Court believes that the fair adjudication of the rights of the parties, as envisioned by the Framers and embodied in the Sixth and Seventh Amendments, requires jury trials to be conducted in-person.[4]

Consequently, jury selection in the above-captioned case will remain in-person in Marshall, Texas, but is **RESET** from **9:00 a.m.** on **Friday, December 4, 2020** to **9:00 a.m.** on **Monday, March 1, 2021**. Similarly, any outstanding pretrial conference not already held in the instant case is **CONTINUED** to a later date to be determined by the Court.

The Court, mindful of the significant ramifications of this relief, directs the parties to promptly meet and confer regarding the current schedule of deadlines in this case. Afterward, the parties may request additional relief to address any necessary modifications to the case schedule

---

[4] Jury trials are innately human experiences. More is often communicated in a courtroom non-verbally than verbally. Such a human experience must allow for the look and feel of direct human interaction. Such factors as cadence, tone, inflection, delivery, and facial expression are as vital to due process as is the applicable statute or case law. When Daniel Webster argued the Dartmouth College case, John Marshall cried from the bench. *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518 (1819). Our history is replete with such examples of the humanity engrained in the American jury trial. This Court is persuaded that the remote, sterile, and disjointed reality of virtual proceedings cannot at present replicate the totality of human experience embodied in and required by our Sixth and Seventh Amendments.

by filing a jointly proposed Motion to Amend the Docket Control Order or other motion practice as these circumstances might require.[5]  Such should occur within **twenty-one (21) days** of this Order.

**So ORDERED and SIGNED this 20th day of November, 2020.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[5] To be clear, no one should view this, in and of itself, as a window of opportunity to re-open discovery or otherwise facilitate a "re-do" of cases substantially developed, narrowed, and ready to proceed.