IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1227 (GBW) (MPT) |
| | ) | |
| INTIHEALTH GER GMBH, | ) | REDACTED - PUBLIC VERSION |
| WOW TECH USA, LTD., | ) | |
| WOW TECH CANADA, LTD. and | ) | |
| NOVOLUTO GMBH, | ) | |
| | ) | |
| Defendants. | ) | |
| NOVOLUTO GMBH, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EIS, INC., EIS GMBH, | ) | |
| TRIPLE A IMPORT GMBH, | ) | |
| and TRIPLE A MARKETING GMBH, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS**
**FROM JACK B. BLUMENFELD REGARDING DISCOVERY DISPUTE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
cclark@morrisnichols.com

OF COUNSEL:

Naveen Modi
Allan M. Soobert
Chetan Bansal
David Valente
James Razick
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC  20036
(202) 551-1700

*Attorneys for EIS, Inc., EIS GmbH, Triple A*
*Import GmbH, and Triple A Marketing GmbH*

Originally Filed:  April 6, 2023
Redacted Version Filed:  April 13, 2023

Dear Judge Williams:

Plaintiff respectfully requests that the Court order Defendants to produce documents relating to the prosecution of the patents-in-suit that have been withheld on attorney-client privilege and work product grounds, based on waiver and the crime-fraud exception. Waiver has occurred because Defendants have relied on the advice of counsel to defend against Plaintiff's inequitable conduct allegations. That same conduct also gives rise to the crime-fraud exception.

## I.     Defendants' Inequitable Conduct Allegations

Plaintiff's inequitable conduct allegations (D.I. 111 at 19-34, 42-44; D.I. 157 at 18-50) are two-fold. First, Defendants and their U.S. prosecution counsel intentionally withheld from the USPTO, among other documents, a complete English-language translation of Chinese Patent No. 2153351Y ("*Guan*")[1]—a reference the German Patent and Trademark Office relied on to revoke Defendants' German Patent No. 10 2013 110 501 B4 ("'501 German Patent") (Ex. A at 133-151), which included claims that are similar to claims in the patents-in-suit (*see, e.g.*, Ex. C at 42:5-43:7, 83:19-22).[2] Second, during prosecution of the '097, '220, and '418 patents, Defendants and their counsel misrepresented to the USPTO that each respective patent application was a continuation application—despite including new matter in the as-filed specifications, which Defendants failed to identify to the USPTO.[3] *See* D.I. 111 at 32-34 and Ex. 40; D.I. 157 at 18-50 and Ex. I.

## II.    Defendants' Reliance on Counsel's Advice Put Privileged Information "At Issue"

Defendants deny these allegations by relying on the advice of counsel and placing attorney-client privileged and work product information at issue. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F. 3d 851, 863 (3d Cir. 1994). Specifically, Defendants contend that documents withheld from the USPTO were either not material or withheld in good faith and without intent to deceive. Ex. N at 13-15. Defendants' corporate representative on patent prosecution topics (Ex. O at 2; Ex. P (topics 17-24, 76, 77, set forth in D.I. 270 at 7-9, 16)), Dr. Zegenhagen, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Defendants' prosecution counsel, Mr. Cheng and Ms. Buckley, were designated by Defendants as knowledgeable regarding prosecution of the patents-in-suit (Ex. O at 3) and testified that they determined in good faith what to disclose to the USPTO. Their testimony disclosed privileged and work product information.[4] Mr. Cheng testified

---

[1] Defendants' prosecution counsel, Mr. Cheng, received the complete English-language translation of *Guan* in an email received from Defendants' German counsel. Ex. D (entry 76); Ex. E (translation attached to email). That same email also included a complete English-language translation of a Japanese-language reference. Ex. F (translation attached to email). While Mr. Cheng submitted the complete translation of the Japanese reference (Ex. G at 227-256; Ex. H at 353-382; Ex. C at 89:21-91:16), he withheld the complete translation of *Guan*. Instead, he obtained and submitted a translation of Guan's abstract. Ex. G at 135-140; Ex. H at 261-266.

[2] During prosecution of later patents, the examiner obtained and rejected claims based on a complete translation of *Guan* (*e.g.*, Ex. I at 30348-30691), which the examiner characterized as "[t]he closest prior art of record" (*e.g.*, Ex. I at 28350). Only then did Defendants provide their own complete translation of *Guan* to the USPTO. *E.g.*, Ex. I at 28601, 28615, 28940-28951.

[3] During prosecution of other applications, prosecution counsel identified changes in as-filed specifications via preliminary amendments. Ex. G at 945-952; Ex. H at 578-587; Exs. J-M; Ex. C at 180:23-183:9.

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Honorable Gregory B. Williams
April 6, 2023

that the documents he submitted to the USPTO were those "provided" in e-mails from Defendants' German counsel, Kuhnen & Wacker, "for citation." Ex. C at 69:15-70:9; *see also id.* at 66:7-17, 74:7-75:21. And he recalled that he failed to submit the complete translation of *Guan* to the USPTO based on "an e-mail from Kuhnen & Wacker." *Id.* at 61:23-62:20. He also testified (i) that he could not recall why he did not submit the translation (*id.* at 63:2-10, 72:3-13, 82:24-83:3), even though it was provided to him by Defendants' German counsel (*id.* at 61:11-63:1), (ii) that he possibly was "instructed . . . not to provide [such] documents" (*id.* at 104:2-4), but (iii) that he nevertheless "had no intent to deceive the patent office" (*id.* at 63:11-16, 83:4-9).

Regarding new matter, Mr. Cheng testified that there was no need to identify any changes in the as-filed application specifications to the USPTO, because the changes were made "in part due to clarity and in part for accuracy" and therefore do not constitute new matter. *Id.* at 152:22-154:4; *see also id.* at 129:10-18. Mr. Cheng's recollection was based on a "specific conversation" and "discussion with [supervisor] Jeff [Weinick]." *Id.* Similarly, Ms. Buckley testified that she, after taking over prosecution from her predecessor, Mr. Cheng, reviewed the changes but believed that they did not constitute new matter, because they were "supported by other portions of the originally filed specification." Ex. R at 99:13-20; *see also id.* at 66:3-24, 90:13-20, 93:6-117:4.

Defendants have thus waived privilege by (i) affirmatively relying on counsel's advice to show they acted in good faith before the USPTO and (ii) selectively disclosing privileged information through counsel's testimony on state of mind. *See Kraft Food Group Brands, LLC v. TC Heartland, LLC*, No. 14-028, 2016 WL 4131968, at *1-2 (D. Del. July 25, 2016) (summarizing waiver finding due to selective disclosure of counsel's knowledge and reasons for not disclosing a reference); *Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, 707 F. Supp. 2d 463, 471-72 (D. Del. 2010) (holding that selective disclosure of privileged materials is subject matter waiver); *General Elec. Co. v. Hoechst Celanese Corp.*, No. 87-458, 1990 WL 154218, at *7-9 (D. Del. May 8, 1990) ("[W]hen state of mind is an issue in a case, a party should not be permitted to testify about its state of mind at the time allegedly privileged communications occurred, without pointing to nonprivileged evidence to substantiate its claim or allowing the opposition to discover the privileged communications themselves."). Defendants should not, in fairness, be permitted to "disclose only those facts beneficial to [their] case and refuse to disclose, on the grounds of privilege, related facts adverse to [their] position." *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 156 (D. Del. 1977). Accordingly, the Court should order Defendants to produce all communications relating to prosecution of the patents-in-suit,[5] or, in the alternative, Defendants should be precluded from adducing evidence on intent in this case.

## III.    Defendants Expressly Waived Privilege

Mr. Cheng's and Ms. Buckley's testimony discussed above also constitutes an express waiver of privilege, because both their counsel and Defendants' counsel allowed the testimony

---

[5] During meet and confer, Defendants' counsel represented they may not rely on the advice of counsel, but Defendants' experts have done just that in their reports. *See* Ex. S at ¶¶ 22, 91 (Mr. Stoll stating that he "reviewed the deposition of Richard Cheng, Marianne Buckley, Tobias Zegenhagen, and Johannes Plettenberg, and I have seen no evidence upon which a judge could find intent to deceive"), 106 ("I have seen no evidence that not filing a preliminary amendment is an indication of any intent to deceive the examiner."); ████████████████████████████████████████████████████████████████████████████████████████ .

The Honorable Gregory B. Williams
April 6, 2023

without objection. *See Shaffer v. Pennsbury School District United*, 525 F. Supp. 3d 573, 580-81 (E.D. Pa. 2021) (finding waiver due to failure to object); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 460 (N.D. Cal. 1978) (same). Because this selective disclosure of privileged information unfairly advantages Defendants by shielding a more complete inquiry into Mr. Cheng's and Ms. Buckley's assertions, the waiver extends to all communications relating to prosecution of the patents-in-suit. *See In re Teleglobe Comms. Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) ("When one party takes advantage of another by selectively disclosing otherwise privileged communications, courts broaden the waiver as necessary to eliminate the advantage."); *In re Intel Corp. Microprocessor Antitrust Litig.*, 258 F.R.D. 280, 290 (D. Del. 2008) ("The fairness doctrine aims to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege holder's selective disclosure during litigation . . . .") (citation and internal quotation marks omitted).

## IV.    Crime-Fraud Exception to Attorney-Client Privilege

The crime-fraud exception also requires production of withheld documents. This exception arises where there is "a reasonable basis to suspect that the privilege holder was committing or intending to commit a crime or fraud and that the attorney-client communications or attorney work product were used in furtherance of the alleged crime or fraud." *In re Grand Jury*, 705 F.3d 133, 153 (3d Cir. 2012). Misconduct before the USPTO can trigger the exception. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806-08 (Fed. Cir. 2000). The burden for establishing the exception's applicability "is not a particularly heavy one." *In re Grand Jury*, 705 F.3d at 153 (internal quotation marks omitted); *see also Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1329-31 (Fed. Cir. 2011). For example, "the party opposing the privilege is not required to introduce evidence sufficient to support a verdict of crime or fraud or even to show that it is more likely than not that the crime or fraud occurred." *In re Grand Jury*, 705 F.3d at 153-54.

Here, there are two reasonable bases to suspect fraud. D.I. 111 at 19-34, 42-44; D.I. 157 at 18-50. First, to gain allowance of the patents-in-suit, Defendants intentionally withheld from the USPTO the complete translation of *Guan* they had in their possession, despite (i) knowing that *Guan* was cited in an opposition proceeding against the '501 German Patent (Ex. B at 168; ███████), which ultimately resulted in revocation (Ex. A at 133-151), and (ii) the USPTO's requirement that such translations "shall" be submitted (Ex. W at 4). Second, to gain allowance of the '097, '220, and '418 patents, Defendants made changes in the as-filed application specifications that introduced new matter (D.I. 111 at 32-34 and Ex. 40; D.I. 157 at 18-50 and Ex. I), but decided to (i) not identify those changes to the USPTO, despite having identified changes during prosecution of other patent applications (Ex. G at 945-952; Ex. H at 578-587; Exs. J-M; Ex. C at 180:23-183:9), and (ii) file each respective patent application as a continuation instead of a continuation-in-part (D.I. 118, Exs. 1-3, 7, 9), thereby representing that there was no new matter.

The underlying facts also give rise to a reasonable basis to suspect that allegedly privileged communications were used in furtherance of the fraud. But, because Defendants have withheld the communications, it is impossible for Plaintiff to confirm. Therefore, at a minimum, Defendants should produce the documents for *in camera* review, which "is a smaller intrusion upon the confidentiality of the attorney-client relationship." *United States v. Zolin*, 491 U.S. 554, 572 (1989). As such, a party opposing privilege need only "present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *Id.* at 574-75. This standard is easily satisfied here. *See King Drug Co. of Florence, Inc. v. Abbott Labs.*, No. 19-3565, 2023 WL 2646926, *5-6 (E.D. Pa. Mar. 27, 2023).

3

The Honorable Gregory B. Williams
April 6, 2023

Respectfully,

/s/ Jack B. Blumenfeld

Jack B. Blumenfeld (#1014)

JBB/bac
Attachments

cc:    Clerk of the Court (via hand delivery; w/attachments)
       All Counsel of Record (via electronic mail; w/attachments)