# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EIS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 19-cv-1227-GBW |
| | § | |
| INTIHEALTH GER GMBH, | § | Demand For Jury Trial |
| WOW TECH USA, LTD., WOW TECH | § | |
| CANADA, LTD. and NOVOLUTO GMBH, | § | ███████████ |
| | § | |
| Defendants. | § | |

**PUBLIC VERSION**
**filed May 23, 2023**

| | |
|---|---|
| NOVOLUTO GMBH, | § |
| | § |
| Counterclaimant, | § |
| | § |
| v. | § |
| | § |
| EIS, INC., EIS GMBH, | § |
| TRIPLE A IMPORT GMBH, | § |
| and TRIPLE A MARKETING GMBH, | § |
| | § |
| Counterclaim Defendants. | |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS IN OPPOSITION TO
PLAINTIFF AND COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE
<u>UNTIMELY DISCOVERY AND EXPERT DISCLOSURES</u>**

Honorable Gregory B. Williams
May 16, 2023
Page 1

Dear Judge Williams:

Defendants IntiHealth Ger GmbH, WOW Tech USA, Ltd., WOW Tech Canada, Ltd., and Novoluto GmbH ("WOW Tech") hereby respond to Plaintiff and Counterclaim Defendants' ("EIS") Motion to Strike and accompanying Letter (D.I. Nos. 354 & 355) as follows:

After losing multiple claim construction issues, EIS attempts to re-raise and re-argue the same issues through its expert's rebuttal expert report. This required WOW Tech's experts to provide directly responsive arguments in their reply expert reports. To be clear, WOW Tech has not provided new infringement positions, rather it only responded directly to EIS's new non-infringement positions. EIS fails to meet the high bar to strike WOW Tech's disclosures. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) ("The exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.") (citations omitted).

## I.    WOW TECH'S DISCLOSURES ARE NOT NEW OR UNTIMELY

1. "Chamber" Infringement Theory. WOW Tech's infringement disclosures in its reply expert reports are not a "new infringement theory." They were already disclosed in the final infringement contentions and opening reports (by its technical experts Dr. Cameron and Dr. Herbenick) and any additional explanation in the reply reports was directly responsive to an apparent lack of understanding expressed by EIS's expert or to EIS's new non-infringement theories expressed for the first time in Dr. Abraham's rebuttal report. First, WOW Tech's final infringement contentions and its technical experts' opening reports explained and identified any required "chamber" recited in the claims of the Patents-in-Suit. *See, e.g.,* Ex. 1, ¶¶ 86-88, 103, 121-122, 146, 162; Ex. 2, ¶¶ 74-81, 119-120, 150-152, 183-188, 241-242; Ex. 5. As the Court is aware, some claims require "a first chamber" and a "second chamber" (*e.g.*, '851 Patent) and some claims require "a chamber" (*e.g.*, '220, '418 Patent). Regarding the '220 and '418 Patents, WOW Tech's technical experts explained in detail with figures in their opening reports (including claim charts) how each Accused Product has "a chamber having a flexible wall" and "an opening configured to sealingly engage…a clitoris…the opening being a sole opening of the chamber to an exterior of the stimulation device."[1] Ex. 1 at ¶¶ 146, 149-150, 162, 166-167; Ex. 2 at ¶¶ 119, 124-126, 150-151, 157-159. EIS's apparent lack of understanding of the identified chambers does not mean the reports failed to identify chambers.

Second, WOW Tech's technical experts' opinions in their reply reports are directly responsive to EIS's new non-infringement theory that recycles claim construction arguments EIS already lost. During claim construction, EIS argued that "chamber" should be construed to mean "enclosed cavity." D.I. 238 at 67, D.I. 300 at 33. The Court saw "no reason to depart from the term's plain and ordinary meaning" and construed "chamber" to mean "compartment." D.I. 300 at 35-36. The Court went on to note that "[c]ontrary to EIS's position, there is no intrinsic support for construing "chamber" to have "some defined borders…because the claim language already

---

[1] Novoluto agreed to withdraw the DOE arguments in an effort to reduce the number of issues presented to the court, and without knowledge that EIS would later raise new non-infringement theories based on new claim construction positions. Dr. Cameron's opinions regarding "chamber" and "opening of the chamber to an exterior of the stimulation device" in her reply report were not a reintroduction of Novoluto's withdrawn DOE theory; they are literal infringement opinions.

recites other claim limitations that define the chambers' structure." *Id.* The Court ultimately found that "EIS's proposed construction masquerades as a genuine attempt to promote clarity…but is ultimately fueled by its non-infringement positions and unsupported by the intrinsic record," and that "EIS's proposed construction for the term 'opening of the chamber' is inconsistent with its proposed construction of the term 'chamber.'" *Id.* at 18, n. 3, 35.

In direct defiance of the Court's decision, EIS's expert alleges he understands that the Court construed "chamber" to mean "compartment," but then proceeds to define "compartment" to try to recapture the argument EIS already lost during claim construction. Ex. 3, ¶ 117. Dr. Abraham points to a dictionary definition of "compartment" – "1: a separate division or section or 2: one of the parts into which an enclosed space is divided," (*id.*) – which is essentially the definition for "chamber" that the Court already rejected. The Court already found that a "chamber" does not necessarily have some defined borders or need to be "enclosed." D.I. 300 at 34-35. Dr. Abraham ignores this ruling and spends three pages explaining the meaning of the term "compartment" in an attempt to recapture EIS's rejected claim construction argument. Ex. 3, ¶¶ 121-123. EIS did not include any of this argument when WOW Tech sought EIS's non-infringement positions in Interrogatory Number 14. Ex. I, p. 113. Rather, EIS, without any analysis or explanation, stated, *inter alia*, that the Accused Products lacked "the opening being a sole opening of the chamber to an exterior of the stimulation device." *Id.*, pp. 116-117. It was not until Dr. Abraham's rebuttal report that EIS articulated its new non-infringement position based on its new construction of compartment, as discussed above, requiring WOW Tech to respond in its expert reply reports.

Here, WOW Tech's reply disclosures are proper rebuttal evidence. Rebuttal evidence is properly admissible when it will "explain, repel, counteract or disprove the evidence of the adverse party." *United States v. Chrzanowski*, 502 F.2d 573, 576 (3rd Cir. 1974). Such evidence may be proper even if "an expert could have included [it] in his or her original report." *Crowley v. Chait*, 322 F.Supp.2d 530, 551 (D.N.J. 2004). Otherwise excluding evidence that an expert could have included in her report "would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material." *Id.* (finding that attachment to expert witness's report was proper rebuttal evidence and the fact that expert could have included the attachment in her opening report was not grounds for exclusion); *see also Helios Software, LLC v. SpectorSoft Corp.*, 2014 WL 4796111, at *3 (D. Del. Sept. 18, 2014) (finding that defendant's invalidity expert carrying out testing of prior art systems for the first time and including the testing results in his reply report was proper rebuttal evidence to plaintiff's expert's rebuttal report that alleged that defendant's expert had failed to demonstrate that the prior art systems performs a certain function (terminating sessions)). WOW Tech could not have known that EIS would attempt, through its technical expert, to recycle and revamp its claim construction/non-infringement positions that it already lost. Consequently, WOW Tech properly rebutted those positions in its expert reply reports. These are not new infringement theories; they are rebuttal positions responding to EIS's new non-infringement positions. The rebuttal disclosures regarding "chamber" should not be excluded.

2. Induced Infringement Theory. EIS mischaracterizes the record regarding WOW Tech's induced infringement claims. WOW Tech pled induced infringement with particularity pointing to "instructions and training, including user manuals and instructional videos, that teach, recommend and induce the infringing use…" *See e.g.*, D.I. 118, ¶ 53. In response to EIS Interrogatory No. 8, and prior to opening expert reports, WOW Tech further explained its

Honorable Gregory B. Williams
May 16, 2023
Page 3

inducement claims including how EIS used "a combination of instructions, user manuals, advertising, and/or marketing materials," "social media influencers," "online videos," and "promotional materials" for distributors and retailers to encourage customers to use the accused products in a way that infringe the method claims. Ex. H, p. 29. Likewise, WOW Tech's final infringement contention claim charts include excerpts from the user manuals showing exactly how EIS instructs its customers to use the accused products in a way that infringes the method claims. Ex. 4. These were not new theories raised for the first time in expert reply reports. Indeed, WOW Tech's technical experts also provided with their opening expert reports similar claim charts that referred to the user manuals and quick start guides for each of the Accused Products with respect to claim 21 of the '061 Patent and claim 12 of the '097 Patent. EIS's argument that WOW Tech's experts did not specifically identify a user or EIS committing direct infringement of the method claims is a red herring. The jury does not need expert testimony to understand that EIS induced its users to directly infringe the method claims. WOW Tech's reply reports that directly rebut Dr. Abraham's inducement opinions should not be stricken because they are not brand new theories disclosed for the first time in a reply report.

    3. "Nozzle Effect" Theory. Novoluto's interpretation and identification of "nozzle effect" in the reply reports is also not new. They were already disclosed in the final infringement contentions and technical expert opening reports, and any additional explanation in the reply reports was directly responsive to EIS's new non-infringement theory based on a new claim construction position. *Acceleration Bay LLC v. Activision Blizzard LLC*, No. 16-453-RGA, 2017 WL 11517421, at *3 (D. Del. Nov. 7, 2017) ("It is reasonable for expert reports to expand on, or amplify infringement contentions in reaching the expert's conclusions."). First, WOW Tech's technical experts addressed "nozzle effect" in their opening reports. Ex. 1, ¶ 132, App. E (excerpts); Ex. 2, ¶¶ 95-96. EIS ignores the claim charts appended to WOW Tech's technical experts' reports, which further explain and identify the "nozzle effect" required by the '851 Patent in each of the 46 Accused Products. Second, as above, when asked about EIS's non-infringement positions in Interrogatory No. 14, EIS provided no analysis or explanation with respect to the "nozzle effect," which EIS now contends is not present in some of the Accused Products. Ex. I, pp. 116-117. It was not until Dr. Abraham's expert rebuttal report that EIS actually articulated the why and how of its "nozzle effect" non-infringement theory. Without this explanation, WOW Tech could not have responded to EIS's new non-infringement theory until expert reply reports.

    Moreover, Dr. Abraham's analysis of "nozzle effect" is yet another instance of EIS losing an issue on claim construction and attempting to re-argue the same issue through its technical expert. Specifically, "nozzle effect" was not identified as a disputed term for claim construction. Instead, EIS argued that the term "connection element" means "media flow path with a smaller cross-sectional area than the first chamber." D.I. 238, p. 6; D.I. 300, p. 5. The Court correctly found "no evidence compelling the Court to stray from the disputed term's plain and ordinary meaning" of "a structure that connects two structures." D.I. 300, p. 9. During claim construction, EIS argued that "connection element" required a smaller cross-sectional area than the first chamber *to generate the nozzle-effect.* D.I. 238, pp. 7-11 (emphasis added); D.I. 300, p. 12. The Court correctly rejected EIS's construction finding "there is no support for EIS's contention that the 'connection element' must … have a cross-sectional area smaller than the first chamber *in order to generate the claimed 'nozzle effect.'*" D.I. 300, p. 12 (emphasis added). EIS did not seek reconsideration of the claim construction order and did not supplement its interrogatory responses between the issuance of the claim construction order and the deadline for expert opening reports.

Honorable Gregory B. Williams
May 16, 2023
Page 4

Instead, after losing this argument, EIS now seeks a second bite at the apple and uses Dr. Abraham and **13 pages**[2] of his rebuttal report to re-argue the same issue. Ex. 3, pp. 48-61. Dr. Abraham simply retools EIS's claim construction arguments (*id.*, p. 49, n. 15) by changing "smaller cross-sectional area" (EIS's proposed construction during claim construction) to the synonym "constriction" (*id.*, ¶ 100). WOW Tech's technical experts could not have expected EIS's new claim construction arguments in their opening reports, and therefore their responsive opinions in their reply reports were timely.

Had EIS articulated this non-infringement theory in response to WOW Tech's Contention Interrogatory No. 14 prior to opening expert reports, WOW Tech's experts could have addressed it in opening reports. Instead, EIS sought to ambush WOW Tech with its rebuttal report leaving WOW Tech no choice but to rebut the opinion in reply reports. Because (1) the Court has already rejected EIS's limiting construction and (2) WOW Tech's "nozzle effect" opinions are in direct response to a new theory of non-infringement raised for the first time in EIS's rebuttal reports, WOW Tech's experts' "nozzle effect" opinions in their reply reports should not be stricken.

4. "Sealing Bearing Part" Theory. WOW Tech's technical experts identified the "sealing bearing part" of the Accused Products in their opening reports. Any additional explanation and/or testing in the reply reports was directly responsive to EIS's new non-infringement positions first disclosed in Dr. Abraham's rebuttal report. Specifically, EIS did not identify the "sealing bearing part" limitation as not being present in the Accused Products in response to WOW Tech's Contention Interrogatory No. 14. Ex. I, pp. 116-117. Likewise, the term "sealing bearing part" was not raised during claim construction. D.I. 301. It was not until Dr. Abraham's reply report that EIS indicated that it disputed this limitation. Therefore, to directly rebut Dr. Abraham's new opinion, WOW Tech's technical expert provided ink blot tests to further highlight the already-identified "sealing bearing part" in each of the Accused Products. *Withrow v. Spears*, 967 F.Supp.2d 982, 1002 (D. Del. 2013) ("[R]ebuttal and reply reports may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.") (citations and quotations omitted); *see also Helios*, 2014 WL 4796111, at *3. The sealing bearing part was already identified in each Accused Product in the claim charts appended to WOW Tech's technical experts' opening reports. *See e.g.,* Ex. 1, App. E. The ink blot tests were conducted after receiving Dr. Abraham's rebuttal report and were in direct response to Dr. Abraham's new non-infringement position on the "sealing bearing part" limitation. Had EIS identified the "sealing bearing part" limitation in response to Interrogatory Number 14 or at any time prior to its expert rebuttal report, WOW Tech could have performed and provided this testing in its opening report. Instead, EIS again tried to ambush WOW Tech with a brand-new non-infringement theory in its expert rebuttal report. Accordingly, WOW Tech's rebuttal evidence and testimony should not be stricken.

## II.  THE *PENNYPACK* FACTORS DO NOT SUPPORT EXCLUSION

If the Court determines there was a failure to disclose, which there was not, WOW Tech agrees that the Third Circuit's *Pennypack* factors should apply here. To determine whether a failure to disclose was harmless, courts consider the *Pennypack* factors: (1) the prejudice or

---

[2] EIS highlights Dr. Cameron's 29 paragraph reply regarding "nozzle effect," but that response only spanned 11 pages of her reply report responding to Dr. Abraham's 13-page new claim construction argument.

Honorable Gregory B. Williams
May 16, 2023
Page 5

surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904–05 (3d Cir. 1977)).

For the first two *Pennypack* factors, there is no surprise or prejudice here, at a minimum because the above-discussed opinions were disclosed well before the lengthy expert depositions that EIS took of WOW Tech's experts, which gave EIS ample time to cure any alleged prejudice, and EIS does not allege any prejudice in the taking of the depositions. EIS can also not claim surprise where it set forth brand new non-infringement positions in expert reports that were not disclosed in response to the contention interrogatory seeking the same. WOW Tech's responses to these new non-infringement positions are nothing more than proper rebuttal evidence. *Helios*, 2014 WL 4796111, at *3. Moreover, WOW Tech's infringement theory has not changed since its Final Infringement Contentions were served. Rather, WOW Tech sets forth opinions on why, even if EIS's new non-infringement arguments and recycled claim construction positions hold weight, the accused products still infringe the patents. The first two factors weigh against exclusion.

The third factor also weighs against exclusion as EIS has not alleged that trial will be delayed or disrupted if the disclosures are allowed to stand. Indeed, EIS fails to identify how or why the complained-of disclosures would disrupt the trial schedule. Additionally, EIS had every opportunity to question WOW Tech's technical experts about the contents of their reply reports during their depositions, both of which EIS took, and thus, there is no need for any reopening of discovery. The third factor strongly weighs against exclusion.

For the fourth factor, EIS cites no alleged misconduct, and instead states *without any support* that "it is hard to conclude there was no intent" on WOW Tech's part. EIS's baseless accusations are nothing near the clear, egregious examples of misconduct that Courts have required to satisfy this factor. *See, e.g., Novartis Pharms. Corp. v. Actavis, Inc.*, No. 12-366-RGA-CJB, 2013 WL 7045056, at *11 (D. Del. Dec. 23, 2013). Here, the record does not warrant a finding of willfulness or bad faith, especially where WOW Tech was merely responding directly to new non-infringement positions and/or new claim construction theories that were not disclosed or explained sufficiently in response to Contention Interrogatory No. 14. This factor weighs against exclusion.

The fifth factor also weighs against exclusion because without the rebuttal disclosures to EIS's non-infringement positions, WOW Tech would be left defenseless, and the disputes would not be resolved on their merits. *Abbott Lab'ys v. Lupin Ltd.*, No. CIV.A. 09-152-LPS, 2011 WL 1897322, at *5 (D. Del. May 19, 2011) ("Courts favor the resolution of disputes on their merits.").

Accordingly, not only are WOW Tech's disclosures responsive and proper, they are also permissible, and substantially justified under *Pennypack*, as a response to the untimely disclosures and new theories advanced in Dr. Abraham's reply report.

Respectfully,

*/s/ Gregory E. Stuhlman*

Gregory E. Stuhlman (No. 4765)

cc:     Clerk of Court (via hand delivery; w/attachments)
        All Counsel of Record (by CM/ECF and E-mail; w/attachments)