## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EIS, INC., | |
| Plaintiff, | |
| v. | C.A. No. 19-1227-GBW |
| INTIHEALTH GER GMBH, WOW TECH USA, LTD., WOW TECH CANADA, LTD., and NOVOLUTO GMBH, | UNSEALED ON 9/5/2023 |
| Defendants. | |
| NOVOLUTO GMBH, | |
| Counterclaimant, | |
| v. | |
| EIS, INC., EIS GMBH, TRIPLE A IMPORT GMBH, and TRIPLE A MARKETING GMBH, | |
| Counterclaim Defendants. | |

Jack B. Blumenfeld, Brian P. Egan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Naveen Modi, Allan M. Soobert, Chetan Bansal, James Razick, David Valente, PAUL HASTINGS LLP, Washington, DC.

*Attorneys for Plaintiff/Counterclaim Defendants.*

Paul D. Brown, Joseph B. Cicero, Gregory E. Stuhlman, CHIPMAN BROWN CICERO & COLE LLP, Wilmington, Delaware; Tammy J. Terry, Califf T. Cooper, Lisa E. Margonis, Peter C. Schechter, OSHA BERGMAN WATANABE & BURTON LLP, Houston, Texas.

*Attorneys for Defendants/Counterclaimant.*

## MEMORANDUM OPINION

August 23, 2023
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff EIS, Inc. ("EIS") filed this action against Defendants IntiHealth Ger GmbH, WOW Tech USA Ltd., WOW Tech Canada Ltd., and Novoluto GmbH ("Novoluto") seeking, amongst other claims, declarations of non-infringement of United States Patent Nos. 9,763,851 ("the '851 patent"), 11,090,220 ("the '220 patent"), 11,103,418 ("the '418 patent"), 9,849,061 ("the '061 patent"), and 9,937,097 ("the '097 patent") (collectively, the "Asserted Patents"), which are assigned to Defendant Novoluto.[1]  D.I. 111.  In response, Novoluto asserts counterclaims of infringement of the Asserted Patents against EIS, EIS GmbH, Triple A Import GmbH, and Triple A Marketing GmbH.[2]  D.I. 118.

Pending before the Court is EIS's motion for summary judgment on, *inter alia*, no pre-suit damages (D.I. 357), the effective filing date of the '220, '418, and '097 patents (D.I. 361), non-infringement of the '061 and '097 patents (D.I. 366), non-infringement of the '851 patent (D.I. 372), and invalidity (D.I. 379).  Also pending before the Court is Novoluto's motion for summary judgment on, *inter alia*, no inequitable conduct, no *Walker Process* fraud, no violation of the Lanham Act, no violation of Delaware's Uniform Deceptive Trade Practices Act, no common law unfair competition or tortious interference, no patent misuse defense, no equitable defense, U.S. Patent Publication No. 2017/0281457 A1 ("Witt") not being prior art to the '220, '418, or '097

---

[1] The Court writes for the benefit of the parties and assumes their familiarity with this action.

[2] For the purpose of clarity throughout this Memorandum Opinion, the Court refers to Plaintiff/Counterclaim Defendants as "EIS," and Defendants/Counterclaimant as "Novoluto."

patents, and issue preclusion.[3]  *See* D.I. 364.  The Court has considered the parties' briefs, accompanying exhibits, and concise statement of facts and responses thereto. *See, e.g.*, D.I. 357–D.I. 382; D.I. 457–D.I. 481; D.I. 495–D.I. 517.  For the reasons explained below, the Court denies both motions.

## I.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* (citations omitted).  "The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case." *Peloton Interactive, Inc. v. iFIT Inc.*, C.A. No. 20-1535-RGA, 2022 WL 1523112, at *1 (D. Del. May 13, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).  A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

[3] The Court ordered the parties to rank the grounds for summary judgment raised in their motions with the understanding that, "[i]f the Court decides to deny a motion filed by the party, . . . the Court will not review any lower ranked summary judgment motions filed by the party." *See* D.I. 306.  EIS ranked "No Pre-Suit Damages" first.  D.I. 357.  Novoluto ranked "No Inequitable Conduct" first.  D.I. 364.

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322. The Federal Circuit "reviews a district court's grant of summary judgment under the law of the regional circuit, here the Third Circuit." *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1075 (Fed. Cir. 2021) (citation omitted).

## II.  DISCUSSION

### A.  EIS's Motion for Summary Judgment of No Pre-Suit Damages

EIS seeks summary judgment that Novoluto is "not entitled to damages prior to the date it provided legally sufficient actual notice" of its infringement counterclaims because "Novoluto cannot show that it marked substantially all practicing products with the numbers of the [A]sserted [P]atents" in compliance with the marking statute. D.I. 358 at 3-4. In response, Novoluto contends that it has presented ample evidence demonstrating that it adequately marked its products it accuses EIS of infringing. D.I. 447 at 1-2. At a minimum, Novoluto asserts that genuine issues of material fact exist regarding its compliance with the marking statute, including: (1) whether Novoluto marked its physical products; (2) the sufficiency of Novoluto's marking on its products' packaging; (3) whether Novoluto's patent marking website listed the Asserted Patents and the corresponding products; and (4) whether Novoluto marked substantially all of its patent-practicing

products. *Id.* at 2. Because there are genuine issues of material fact and a reasonable factfinder could find for Novoluto, EIS's motion for summary judgment of no pre-suit damages is denied.

Generally, a patentee is "entitled to damages from the time when it either began marking its products in compliance with 35 U.S.C. § 287(a) or when it actually notified [the infringer] of its infringement, whichever was earlier." *American Med. Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993), *cert denied*, 511 U.S. 1070 (1994). The marking statute, which is codified as 35 U.S.C. § 287(a), provides, in relevant part, that:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

"[T]he marking statute serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("Arctic Cat I") (citing *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)). "Compliance with § 287 is a question of fact." *Id.* (citation omitted); *see also Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010). "[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat I*, 876 F.3d at 1368. This, however, is a "low bar" such that "[t]he alleged infringer need only put the patentee on notice that he or his

authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent" by a burden of production.[4]  *Id.*  "Once the alleged infringer meets its burden of production, . . . the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.*  If the patentee does not make this showing, it cannot recover damages before the date of actual notice.  *Id.*  "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("Arctic Cat II") (citing *Amsted Indus. Inc., v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001) (citing *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997)).

To be in compliance with the marking statute, the patentee must "mark substantially all of its patented products." *American Med. Sys., Inc.*, 6 F.3d at 1538.  Here, the parties offer competing opinions on whether Novoluto marked "substantially all" of its products that allegedly practice the Asserted Patents, thereby raising a genuine issue of material fact for the jury to decide. *Imagexpo, L.L.C. v. Microsoft Corp.*, 299 F. Supp. 2d 550, 554 (E.D. Va. 2003) ("Whether [a patentee]

---

[4] At the outset, the parties dispute whether EIS has complied with its burden of production by identifying those patented products which it believes are unmarked. *See* D.I. 447 at 2 ("EIS does not identify the patented products it alleges are unmarked, as it is required to do.") (citing D.I. 452 ¶¶ 1-2).  The Court notes that, under *Arctic Cat I*, "[a]ll that is required of [EIS] is that it identify unmarked products that allegedly fall under the requirements of Section 287(a); it need not concede that these products practice the patents because the purpose of its initial burden is to prevent 'a large scale fishing expedition and gamesmanship.'" *Contour IP Holding, LLC v. GoPro, Inc.*, C.A. No. 17-4738, 2020 WL 5106845, *6 (N.D. Cal. 2020) (citing *Arctic Cat I*, 876 F.3d at 1368); *see also Fortinet, Inc. v. Sophos, Inc.*, C.A. No. 13-5831, 2015 WL 6513655, at *2 (N.D. Cal. Oct. 28, 2015).  As long as possibly practicing products have been identified, Novoluto bears the burden of proving compliance with § 287(a) or, alternatively, of proving that the marking requirements do not apply to the products in question. *See Arctic Cat I*, 876 F.3d at 1368.  Here, the Court is satisfied that EIS has complied with its burden of production, *see* D.I. 360 ¶¶ 1-7, and, thus, will not deny summary judgment on this basis.

consistently marked 'substantially all' of the patented products and whether the evidence is credible and reliable, [are] classic issues for resolution by the trier of fact."); *compare* D.I. 452 ¶ 6 ("WOW marked the packaging of its Womanizer Pleasure Air products with at least one of its virtual marking websites.") (citing D.I. 448, Ex. B at 173:1-22, 176:11-17, 178:10-15, 178:19-22, 180:5-12; D.I. 449, Ex. E; D.I. 450, Ex. J), *with* D.I. 507 ¶ 6 ("Disputed as to time period when the packaging was marked because even WOW only asserts that occurred as of November 2020 (D.I. 359, Ex. 8 at 15) but not material. Even if all products were marked with a virtual marking site on the packaging, pointing to a deficient website does not satisfy the marking the requirement."); *compare* D.I. 452 ¶ 11 ("WOW physically marked the product of at least the Womanizer Classic, InsideOut, Liberty, Premium, Starlet, and Starlet 2 with 'pat. US 9,763,851 B2.'") (citing D.I. 450, Ex. I), *with* D.I. 507 ¶ 11 ("Disputed but not material. . . ."). While EIS takes serious issue with Novoluto's purportedly deficient marking website, *see* D.I. 505 at 2-4, EIS effectively asks the Court to resolve the parties' factual disputes regarding the sufficiency of Novoluto's virtual marking of its products. Although Novoluto's virtual marking may prove insufficient in establishing constructive notice of infringement, *see Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 577 (D. Del. 2019) ("A patentee may not rely on the mere fact that the product is marked with the website for 'association'; the statute is clear that it is the function of the website to associate the patent and the patented article."), diving into the factual morass of evaluating the sufficiency of Novoluto's virtual marking is not a task appropriate for the Court at the summary judgment stage. *See BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 963 (Fed. Cir. 2020) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence . . . ." (internal quotation marks and citation omitted)).

Furthermore, the parties dispute the sufficiency of Novoluto's physical marking on its products' packaging, thereby raising additional disputes of material fact which preclude summary judgment. *Compare* D.I. 452 ¶ 6, *with* D.I. 507 ¶ 6; *compare* D.I. 452 ¶¶ 3-5, *with* D.I. 507 ¶¶ 3-5; *see also Glob. Traffic Techs. LLC v. Morgan*, 620 F. App'x 895, 905-06 (Fed. Cir. 2015) ("Because there may be many factors that affect the character of a patented article, we hold that, when a patentee marks the packaging rather than the article, the district court should evaluate the specific character of the article at issue. . . . This factual inquiry regarding the character of the patented article, moreover, may be submitted to a jury, as the district court did here."). Considering that one must consider the nature and characteristics of the product, how it is used, and the situation in which it is used when evaluating the sufficiency of marking a product, *see Glob. Traffic Techs.*, 620 F. App'x at 905, coupled with the parties' undisputed fact that "[m]arking packaging is the custom with sex toys," *compare* D.I. 452 ¶ 3, *with* D.I. 507 ¶ 3, and EIS's concession that it marks its packages rather than its products, *see* D.I. 507 ¶ 4 (citing D.I. 448, Ex. C), the Court cannot conclude, as a matter of law, that certain Novoluto products fail to comply with the requirements of the marking statute. *See Glob. Traffic Techs., LLC v. Emtrac Sys., Inc.*, 946 F. Supp. 2d 884, 907 (D. Minn. 2013), *aff'd sub nom. Glob. Traffic Techs.*, 620 F. App'x at 906 ("Whether marking on the packaging served as the most effective notice to the public of this product, given its multiple and hidden components, is a fact issue for trial.").

Accordingly, because the jury must resolve these factual disputes predicated on the sufficiency of Novoluto's marking, EIS's motion for summary judgment of no pre-suit damages is denied. *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 257 F. Supp. 3d 159, 165 (D. Mass. 2017) (quoting *McAfee Enters., Inc. v. Ashley Entm't Corp.*, C.A. No. 16-2618, 2016 WL 4063169, at *6 (N.D. Ill. July 29, 2016)) ("Summary judgment is thus appropriate only if 'no reasonable

factfinder could find compliance.'"). Because the Court concludes that genuine issues of fact exist as to whether Novoluto provided constructive notice by complying with the marking statute, thereby precluding summary judgment of no pre-suit damages, the Court need not address whether there is evidence that Novoluto provided "actual notice" prior to its infringement counterclaims. *See* D.I. 358 at 5-8; *Minks v. Polaris Indus.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008) ("Section 287(a) requires actual notice to the accused 'to assure that the recipient knew of the adverse patent during the period in which liability accrues, ***when constructive notice by marking is absent***.'") (quoting *SRI Int'l*, 127 F.3d at 1470) (emphasis added).

## B.     Novoluto's Motion for Summary Judgment of No Inequitable Conduct

Novoluto moves for summary judgment of no inequitable conduct, *see* D.I. 364, arguing that there is no evidence that it intentionally withheld or misrepresented material information to the United States Patent and Trademark Office ("USPTO") during the prosecution of the Asserted Patents and, therefore, is entitled to judgment as a matter of law.  D.I. 370 at 2-3.  Specifically, Novoluto contends that summary judgment of no inequitable conduct is warranted for at least five reasons:

> (a) a complete copy of *Guan* and a translation of its abstract was submitted to the PTO and therefore *Guan* was not withheld; (b) there is no evidence that the full translation of *Guan* was but-for material to patentability (particularly given that the PTAB found the '851 and '097 Patents patentable over *Guan* in two IPRs that were affirmed by the [Federal Circuit]); (c) there is no evidence that the German Opposition and related party arguments were but-for material to patentability (particularly given that the underlying prior art references themselves were submitted to the USPTO); (d) there is no evidence that "new matter" was added or that misrepresentations were made regarding identification of the '097, '220, and '418 Patents as continuation applications; and (e) there is no evidence of intent to deceive the USPTO.

*Id.* at 3-4 (italics in original).  In response, EIS argues that, at a minimum, genuine disputes of material fact exist as to the but-for materiality of the *Guan* reference and the opposition proceeding (the "German Opposition Proceeding") against German Patent No. DE102013110501 ("the '501

German Patent"),[5] in addition to factual disputes underlying whether Novoluto specifically intended to deceive the USPTO, all of which preclude summary judgment of no inequitable conduct. *See* D.I. 462 at 2-14. The Court addresses each of Novoluto's "reasons" supporting its motion for summary judgment of no inequitable conduct in turn. For the reasons stated below, Novoluto's Motion for Summary Judgment of No Inequitable Conduct is denied. *See* D.I. 364.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1352 (Fed. Cir. 2016) (internal quotation marks and citation omitted). "A finding of inequitable conduct as to any single claim renders the entire patent unenforceable." *Id.* (internal quotation marks and citation omitted). To prevail on an inequitable conduct allegation, "the accused infringer must prove that the patentee acted with the specific intent to deceive the [USPTO]." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant ***made a deliberate decision*** to withhold a ***known*** material reference." *Id.* (emphasis in original) (internal quotation marks and citation omitted). While a court may infer intent from indirect and circumstantial evidence, "to meet the clear and convincing evidence standard, the specific intent to deceive must be the 'single most reasonable inference able to be drawn from the evidence.'" *Id.* (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). That is, the evidence must be sufficient to "***require*** a finding of deceitful intent in light of all of the circumstances." *Id.* (emphasis in original) (internal quotation marks and citation omitted). Thus, if there are "multiple reasonable inferences that may be drawn, intent to deceive cannot be found."

---

[5] It is undisputed that the '851, '220, and '418 patents all claim priority to the '501 German Patent. *See, e.g.*, D.I. 377 ¶¶ 2, 7, 8; D.I. 464 ¶¶ 2, 7, 8.

*Id.* at 1290-91. Inequitable conduct also requires a finding of but-for materiality, meaning that the USPTO would not have granted the patent had it been aware of that particular prior art reference. *Id.* at 1291. Notably, granting summary judgment of no inequitable conduct "is permissible, but uncommon," in light of the "inherently factual nature of the issue of intent." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1317 (Fed. Cir. 2006).

### 1. Evidence That *Guan* Was Withheld

First, Novoluto contends that EIS's inequitable conduct claims and defenses fail as a matter of law because there is no evidence that Chinese Utility Model Patent CN2153351 ("Guan") was withheld, as "it is undisputed that [Novoluto] disclosed *Guan* in Information Disclosure Statements . . . and submitted the entirety of *Guan* . . . along with an English-language translation of *Guan*'s abstract during the prosecution of the '851, '061, and '097 Patents." D.I. 370 at 4 (citing D.I. 374, Ex. 40, ¶¶ 66-71; D.I. 373, Exs. 14-16); *see also* D.I. 377 ¶ 12. EIS does not dispute that "Novoluto disclosed [*Guan*] in an Information Disclosure Statement [] during prosecution of the '851, '220, '418, '061, and '097 Patents." D.I. 464 ¶ 12. However, EIS argues that, even though Novoluto "had at least two complete English-language translations of *Guan*," *see* D.I. 462 at 6, Novoluto only submitted an English translation of *Guan*'s abstract—purportedly in violation of its duty to disclose, *see, e.g.*, MPEP § 609.04(a); 37 C.F.R. § 1.98—knowing that the '851, '061, and '097 patents would not have issued if a full translation was disclosed. D.I. 462 at 6-7. At a minimum, EIS contends that numerous disputes of material fact exist, which precludes summary judgment in favor of Novoluto, including: (1) whether EIS possessed complete translations of *Guan* during the prosecution of the Asserted Patents, *see* D.I. 464 ¶¶ 38, 44-45; (2) whether EIS's prosecution counsel "submitted to the [USPTO] all English-language translations in his possession that corresponded to the non-English-language documents [] identified in any IDS, except for the

machine translation of the complete *Guan* reference," *see id.* ¶ 45; and (3) EIS's intent in selectively disclosing an English translation of *Guan*'s abstract as opposed to the entirety of the *Guan* reference, *see id.* ¶¶ 41, 44-45. *See generally* D.I. 462 at 7-8.

Based on the present record, there exist disputed issues of material fact related to Novoluto's failure to disclose a complete English-translation of the *Guan* reference that preclude judgment, as a matter of law, of no inequitable conduct. Namely, the parties dispute whether: (1) Novoluto possessed two complete translations of *Guan* prior to the prosecution of the '851, '061, and '097 patents, *compare* D.I. 464 ¶ 38, *with* D.I. 497 ¶ 38 ("Mr. Cheng testified he . . . was not sure if he ever received the *Guan* certified translation from German prosecution counsel.") (internal citations omitted); *compare* D.I. 464 ¶¶ 44-45, *with* D.I. 497 ¶¶ 44-45; (2) Novoluto's possession of the translated *Guan* reference triggered a duty to disclosed pursuant to MPEP § 609.04(a), *compare* D.I. 464 ¶ 44, *with* D.I. 497 ¶ 44; and (3) Novoluto's prosecution counsel regularly submitted only translations of abstracts as opposed to the fully translated foreign reference, *compare* D.I. 464 ¶¶ 41, 45, *with* D.I. 497 ¶¶ 41, 45. These disputed facts, coupled with evidence that Novoluto submitted a complete translation of *Guan* in the German Opposition Proceeding—which the Examiner described as "disclos[ing] the closest prior art," *see* D.I. 464 ¶ 37; D.I. 497 ¶ 37—suggests that "[Novoluto] left the examiner with the impression that the examiner did not need to conduct any further translation or investigation." *Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1377 (Fed. Cir. 2000), *amended* (Apr. 5, 2000). A reasonable factfinder could, therefore, conclude that Novoluto "deliberately deceived the examiner into thinking that the [*Guan*] reference was less relevant than it really was, and constructively withheld the reference from the [USPTO]." *Id.* Accordingly, because there remain disputed facts related to Novoluto's procedures for disclosing translated foreign references and

Novoluto's intent in failing to disclose a complete translation of *Guan*, summary judgment of no

inequitable conduct is denied. *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1190

(Fed. Cir. 2014) ("Partial disclosure of material information about the prior art to the PTO cannot

absolve a patentee of intent if the disclosure is intentionally selective.") (citing *Aventis Pharma*

*S.A. v. Hospira, Inc.,* 675 F.3d 1324, 1335-36 (Fed. Cir. 2012)).

### 2.  **Evidence That *Guan* Was But-For Material to Patentability**

Second, Novoluto contends that EIS's inequitable conduct claims and defenses fail as a

matter of law because EIS cannot show that *Guan* is but-for material to the patentability of the

Asserted Patents.  D.I. 370 at 4.  Specifically, Novoluto argues that there is no dispute that it

disclosed a translation of *Guan*'s abstract during the prosecution of the '851, '061, and '097

patents, thereby obviating any finding that *Guan* was but-for material.  *Id.* (citing D.I. 374, Ex. 40,

¶¶ 66-71; D.I. 373, Exs. 14-16).  Moreover, because the Patent Trial and Appeal Board ("PTAB")

considered the full translation of *Guan* when affirming the patentability of the '851 and '097

patents three during *inter-partes* review ("IPR") proceedings—which were subsequently affirmed

by the Federal Circuit, *see* D.I. 373, Ex. 13—Novoluto contends that a complete translation of

*Guan* is not but-for material to the issuance of the '851 and '097 patents.  *Id.* at 5 (citing *Cal. Inst.*

*of Tech. v. Broadcom Ltd.*, C.A. No. 16-3714, 2019 WL 8807748, at *5-8 (C.D. Cal. July 1, 2019)

("CalTech"), *aff'd*, 25 F.4th 976, 991-92 (Fed. Cir. 2022)).  Further, because the USPTO issued

the '220 and '418 patents—both of which Novoluto contends are patentably indistinct

continuations of the '851 patent, *see* D.I. 373, Ex. 21 at 12; *see also id.*, Ex. 22 at 11-12; *id.*, Exs.

25-26—after considering a complete translation of *Guan*, *Guan* is not but-for material. D.I. 370 at

5.  Finally, Novoluto contends that "there is no evidence that a full translation of *Guan* discloses

anything that is not merely cumulative" of the translation of *Guan*'s abstract.  *Id.* (citing D.I. 374,

Ex. 40, ¶¶ 81-84; *id.*, Ex. 41, ¶¶ 537-542).  In response, EIS contends that there is ample evidence establishing that a full translation of *Guan* is but-for material to the patentability of the Asserted Patents but, at a minimum, there are disputed material facts which preclude summary judgment in favor of Novoluto.  *See* D.I. 462 at 3-5.

Here, the Court cannot conclude that a complete translation of *Guan* is, as a matter of law, not but-for material to the patentability of the Asserted Patents.  The current record suggests that the German Patent and Trademark Office ("GPTO") revoked the issuance of the '501 German Patent in view of a complete translation of *Guan*.  *See* D.I. 464 ¶¶ 37-39 (citing Ex. C at 132-51); *see also* D.I. 497 ¶¶ 37-39.  Although the parties' opinions differ as to whether every claim limitation of the Asserted Patents are included in the '501 German Patent's claims, *see, e.g.*, D.I. 462 at 2; *compare* D.I. 464 ¶ 40, *with* D.I. 497 ¶ 40, the parties' dispute amounts to an issue for the finder of fact—that is, whether the USPTO, like the GPTO, would not have granted the Asserted Patents had it been provided with a full translation of *Guan*, as opposed to merely a translation of *Guan*'s abstract.  *Compare* D.I. 464 ¶¶ 39, 42, *with* D.I. 497 ¶¶ 39, 42.  This is especially true considering the parties' experts differing opinions related to whether a complete translation of *Guan*, in combination with one or more references, renders any of the Asserted Patents' claims obvious—thereby raising questions relevant to *Guan*'s materiality.  *Compare* D.I. 374, Ex. 41 at 148-161, *with* D.I. 468, Ex. T, ¶¶ 143-212, 268-364, 514-564, 624-640, 711-734, 801-818; *compare* D.I. 464 ¶ 43 ("There are genuine issues to be tried relating to whether *Guan*, as combined with CN201139737 and/or CA2896744C, references not included in the IPR2019-01444 and IPR2019-01302 grounds, is but-for material."), *with* D.I. 497 ¶ 43 ("Disputed. There are no genuine issues to be tried relating to whether *Guan*, as combined with CN201139737 and/or CA2896744C, is but-for material. *Guan* is not but-for material as explained above, there are no

allegations that CN201139737 and/or CA2896744C were but-for material or intentionally withheld, and CN201139737 should be excluded under IPR estoppel.").

That the PTAB considered a complete translation of *Guan* during IPR proceedings involving the '851 and '097 patents does not obviate that genuine disputes of material fact exist, particularly given that the prior art obviousness combinations considered during the IPRs are not identical to those raised by EIS's technical expert. *Compare* D.I. 464 ¶ 43, *with* D.I. 497 ¶ 43; *see also* D.I. 462 at 3-4 (citing D.I. 468, Ex. T, ¶¶ 143-212, 268-364, 514-564, 624-640, 711-734, 801-818). For that reason, Novoluto's analogy to the *CalTech* case—which held that two prior art references "were not but-for material to the patentability of the asserted claims" because those two references and their related arguments were identical to those rejected during an IPR proceeding— is unpersuasive. *See CalTech*, 2019 WL 8807748, at \*6; *see also Targus International LLC v. Victorinox Swiss Army, Inc.*, C.A. No. 20-464-WJB, D.I. 283 at 37-39 (D. Del. Mar. 27, 2023). Finally, Novoluto's bald assertion that a full translation of *Guan* is "merely cumulative" of the translated *Guan* abstract, *see* D.I. 370 at 5, is belied by evidence of record demonstrating that the USPTO, during prosecution of the applications that led to the '220 and '418 patents: (1) *sua sponte* included a full translation of *Guan*, *see* D.I. 464 ¶ 42—as opposed to the translated *Guan* abstract; (2) described *Guan* as the "closest prior art of record," *id.* (citing D.I. 467, Ex. H at 28350; *id.*, Ex. G at 50); and (3) rejected claims over a full translation of *Guan*, *id.* (citing D.I. 467, Ex. H at 30348-361; *id.*, Ex. G at 4208-223).

As such, there exist genuine disputes of material fact regarding whether a complete translation of *Guan* is but-for material to the patentability of the Asserted Patents. Because the Court cannot usurp the role of the jury in making factual determinations and weighing the credibility of the parties' experts, summary judgement of no inequitable conduct is denied. *See*

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.") (citations omitted).

### 3. Evidence That *German Opposition* Was But-For Material to Patentability

Third, like the *Guan* reference, Novoluto contends that EIS's inequitable conduct claims and defenses fail as a matter of law because EIS cannot show that the existence of the German Opposition Proceeding is but-for material to the patentability of the Asserted Patents. D.I. 370 at 5-6. Specifically, Novoluto argues that "the existence of the German Opposition and associated party arguments were not themselves but-for material to the patentability of the [Asserted Patents] because they were party arguments in a foreign jurisdiction about prior art references, not the references themselves; and, at most were merely cumulative of the references themselves, which Novoluto's U.S. prosecution counsel did submit to the USPTO during the prosecution of the Patents-in-Suit." *Id.* at 6 (citing D.I. 374, Ex. 40, ¶¶ 97-98; *id.*, Ex. 41, ¶¶ 546-548).

Based on the present record, the Court cannot conclude that the German Opposition Proceeding is, as a matter of law, not but-for material to the patentability of the Asserted Patents. Although Novoluto asserts that the arguments related to the German Opposition Proceeding are irrelevant because they are not the prior art references themselves, *see id.* at 6, Novoluto ignores its own admission that, unlike its disclosure in the German Opposition Proceeding, *see* D.I. 464 ¶¶ 37-38, it did not disclose a ***complete*** translation of *Guan* during the prosecution of the '851, '061, and '097 patents. *See* D.I. 370 at 4 ("[I]t is undisputed that [Novoluto] disclosed *Guan* in Information Disclosure Statements . . . and submitted the entirety of *Guan* . . . along with an English-language translation of *Guan*'s abstract . . ."); *see also* D.I. 377 ¶ 12; *ATD Corp. v. Lydall,*

*Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998) ("[I]t is the reference itself, not the information generated in prosecuting foreign counterparts, that is material to prosecution in the United States."). As previously discussed, *see supra* Section II.B.2, the parties dispute whether every claim limitation of the Asserted Patents is included in the '501 German Patent's claims, *see, e.g.*, D.I. 462 at 2; *compare* D.I. 464 ¶ 40, *with* D.I. 497 ¶ 40, which amounts to an issue for the finder of fact. Thus, based on the current record, a factfinder could reasonably conclude that the existence of the German Opposition Proceeding—which ultimately revoked the issuance of the '501 German Patent in view of a complete translation of *Guan*, *see* D.I. 464 ¶¶ 37-39 (citing Ex. C at 132-51); *see also* D.I. 497 ¶¶ 37-39—and the parties' arguments made during the German Opposition Proceeding were but-for material to the patentability of the Asserted Patents. That Novoluto contends that the '851, '061, and '097 patents issued before the GPTO's revocation decision and, therefore, could not have been disclosed to the USPTO during prosecution of those patents, *see* D.I. 370 at 6, overlooks the underlying factual disputes related to whether Novoluto had a duty to disclose a full translation of *Guan*—as the record suggests it did in the German Opposition Proceeding, *see* D.I. 464 ¶¶ 37-38—rather than simply a translation of *Guan*'s abstract. *Compare* D.I. 464 ¶ 44, *with* D.I. 497 ¶ 44. Finally, Novoluto's suggestion that the existence of the German Opposition Proceeding is "at most merely cumulative of the references themselves, which Novoluto's U.S. prosecution counsel did submit to the USPTO," *see* D.I. 370 at 6, is belied by Novoluto's own assertion that it submitted only a translated version of *Guan*'s abstract, not a full translation of the entire *Guan* reference, during the prosecution of the '851, '061, and '097 patents. *See* D.I. 370 at 4; *see also* D.I. 377 ¶ 12.

Because there exist genuine disputes of material fact as to the but-for materiality of the German Opposition Proceeding, the Court cannot conclude that Novoluto is entitled to summary judgment of no inequitable conduct.

### 4.  Evidence of "New Matter"

Fourth, Novoluto contends that summary judgment of no inequitable conduct is also appropriate because it is undisputed that no new matter was added or claimed in the as-filed applications that led to the '097, '220, and '418 patents. D.I. 370 at 7-9. The introduction of new matter may be but-for material to patentability because it may change the effective filing date of a patent and, therefore, may alter the prior art that was before the Examiner. *See TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001) ("When the applicant adds a claim or otherwise amends his specification after the original filing date, . . . the new claims or other added material must find support in the original specification."); *see also Liqwd, Inc. v. L'Oreal USA, Inc.*, C.A. No. 17-14-JFB-SRF, 2019 WL 1977367, at \*3 (D. Del. May 2, 2019), *aff'd sub nom. Olaplex, Inc. v. L'Oreal USA, Inc.*, 845 F. App'x 943 (Fed. Cir. 2021).

Here, the opinions and analysis of EIS's technical expert, Dr. Abraham, establish that, at a minimum, disputed issues of material fact exist related to whether the parent applications to the '097, '220, and '418 patents contain any disclosure supporting a stimulation device having only one chamber. *See generally* D.I. 462 at 9-10. For example, in Dr. Abraham's opening expert report, he opines that the respective parent patent applications to the '097, '220, and '418 patents lack any disclosure of a stimulation device having just one chamber. *See id.* at 10 (citing D.I. 468, Ex. T, ¶¶ 73-79, 83-87). Rather, in Dr. Abraham's opinion, the parent applications consistently: (1) define "the invention" as a stimulation device having two chambers separated by a connection element; (2) describe the benefits achieved by the two-chamber configuration; and (3) describe the

operation of the device with respect to its two-chamber configuration. *Id.* (citing D.I. 468, Ex. T, ¶¶ 73-79, 83-87). However, Dr. Abraham later explains that, in each of the as-filed applications, Novoluto included a summary section, added claims describing a stimulation device having "a chamber," i.e., one or more chambers, and removed all descriptions of a device including two chambers with a connection element as the purported invention. *Id.* (citing D.I. 468, Ex. U, ¶¶ 178-81, 198-02, 219; D.I. 467, Ex. F at 380-406; *id.*, Ex. H at 31328-31351; *id.*, Ex. G at 5196-5219). That Novoluto's expert, Dr. Cameron, disagrees as to whether any disclosure of the parent applications to the '097, '220, and '418 patents support a stimulation device having only one chamber, *see, e.g.*, D.I. 468, Ex. V at 186:13-187:15, 187:16-18, 193:13-194:6, 187:16-18, further supports that the jury, not the Court, is best equipped to resolve these factual disputes.

Accordingly, there exist genuine disputes of material fact related to whether the '097, '220, and '418 patents contain "new matter," or, as Novoluto contends, are merely permissible rewordings of their respective parent applications wherein "the same meaning remains intact." D.I. 370 at 7 (citing MPEP § 2163.07; *In re Anderson*, 471 F.2d 1237 (C.C.P.A. 1973)). Because the Court cannot supplant the role of the jury in weighing this evidence, summary judgment of no inequitable conduct is denied. *See Reeves*, 530 U.S. at 150 ("[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.") (citations omitted).

### 5. Evidence of Specific Intent to Deceive the USPTO

Finally, Novoluto contends it is entitled to summary judgment of no inequitable conduct because "EIS cannot show, by clear and convincing evidence, that anyone acted with specific intent to deceive the [USPTO] in obtaining the [Asserted Patents]." D.I. 370 at 9. At the outset,

the Court rejects Novoluto's bald assertion that no other evidence of intent exists, other than what EIS submitted in support of a discovery dispute, to support EIS's claim of inequitable conduct. *Id.* at 9-10. Not only is Novoluto's contention that "[t]he record the Court had before it when deciding D.I. 341 is all of EIS's evidence of inequitable conduct" wholly unsupported, *see id.* at 10, but it also ignores the distinction between evidence EIS submitted in support of a ***discovery dispute*** seeking prosecution documents withheld on the basis of on attorney-client privilege and work product grounds and the evidence EIS intends to submit at trial to support its inequitable conduct claim.

More importantly, however, numerous factual disputes exist that preclude summary judgment in favor of Novoluto. For instance, Novoluto's argument that there is no evidence establishing that Novoluto intended to deceive the USPTO, *see id.* at 9-10—which heavily relies on the testimony of Novoluto's prosecution counsel—inevitably requires a determination of the witness's credibility. But such "questions of intent and credibility are 'difficult to determine on summary judgment.'" *Targus*, D.I. 283 at 41-42 (quoting *Asghari-Kamrani v. United Servs. Auto. Ass'n*, C.A. No. 15-478, 2017 WL 11455318, at *2 (E.D. Va. Apr. 13, 2017)). More so, factual disputes exist as to whether Novoluto's prosecution counsel, Ms. Buckley, "buried" an Australian Patent Office's ("APO") decision finding that Australian Patent No. 2018203569—which claims priority to the same German Patent Application No. 102015103694 as the '061 patent, *see* D.I. 467, Ex. S at 370—had "no enabling disclosure of a single chamber pressure field generator," *see* D.I. 467, Ex. S, ¶ 131; *see also id.* ¶¶ 127-31, when Ms. Buckley filed IDSs during the prosecution of the '418 and '220 patents. *Compare* D.I. 464 ¶ 48, *with* D.I. 497 ¶ 48. That disputed facts exist related to whether Ms. Buckley "buried" the APO's decision in IDSs is further highlighted by evidence of record indicating that the Examiner noted that "forcing the Examiner to find 'a needle

in a haystack' is probative of bad faith.'" *See* D.I. 467, Ex. H at 26310; *id.*, Ex. G at 48-49; *compare* D.I. 464 ¶ 48, *with* D.I. 497 ¶ 48; *see also PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-1006-RGA, 2023 WL 2631503, *7 (D. Del. Mar. 24, 2023) (acknowledging that "burying" references remains a legally permissible basis of inequitable conduct).  A reasonable factfinder could, therefore, conclude that the single most reasonable inference drawn from Ms. Buckley's alleged "burying" of the APO's decision in an IDS containing more than ninety other documents was to intentionally conceal the purportedly added "new matter" from the USPTO. *See supra* Section II.B.4; *Therasense*, 649 F.3d at 1290.  Additionally, and as previously explained, *see supra* Section II.B.1, a reasonable factfinder could conclude that Novoluto "deliberately deceived the examiner into thinking that the [*Guan*] reference was less relevant than it really was," *see Semiconductor*, 204 F.3d at 1377, as the record suggests that the GPTO revoked the issuance of the '501 German Patent—which the parties dispute whether every claim limitation of the Asserted Patents is included in the '501 German Patent's claims, *see, e.g.*, D.I. 462 at 2; *compare* D.I. 464 ¶ 40, *with* D.I. 497 ¶ 40—in view of a complete translation of *Guan*. *See* D.I. 464 ¶¶ 37-39 (citing Ex. C at 132-51); *see also* D.I. 497 ¶¶ 37-39.  Based on this evidence, the Court concludes that a reasonable factfinder could reasonably find that deceptive intent to deceive the USPTO is the single most reasonable inference. *See Sysmex Corp. v. Beckman Coulter, Inc.*, C.A. No. 19-1642-JFB-CJB, 2022 WL 1503987, at *4 (D. Del. May 6, 2022), *report and recommendation adopted*, C.A. No. 19-1642-JFB-CJB, 2022 WL 1744573 (D. Del. May 31, 2022) ("[S]ummary judgment of no inequitable conduct should be denied if, drawing all reasonable inferences in favor of BCI, a reasonable factfinder *could reasonably find* that intent to deceive is the single most reasonable inference.") (citations omitted) (italics in original).

As there are disputes of material fact as to whether Novoluto had specific intent to deceive the USPTO, and because the determination of intent is "inherently factual," *see Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, C.A. No. 17-1734-RGA, 2021 WL 982728, at \*5 (D. Del. Mar. 16, 2021), the Court cannot conclude that Novoluto is entitled to judgment as a matter of law of no inequitable conduct. Thus, consistent with the Federal Circuit's instruction to district courts "'urg[ing] caution' in making an inequitable conduct determination at the summary judgment stage," the Court denies Novoluto's motion for summary judgment of no inequitable conduct. *Targus*, D.I. 283 at 42 (quoting *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1340 (Fed. Cir. 2006)).

## III.    CONCLUSION

For the foregoing reasons, the Court denies EIS's Motion for Summary Judgment of No Pre-Suit Damages. *See* D.I. 357. The Court also denies Novoluto's Motion for Summary Judgment of No Inequitable Conduct. *See* D.I. 364. Pursuant to D.I. 306, all remaining grounds for summary judgment identified in the parties' respective motions, except for Novoluto's Motion for Summary Judgment of IPR Estoppel,[6] *see* D.I. 581, are also denied.[7] The Court will issue an Order consistent with this Memorandum Opinion.

---

[6] Pursuant to D.I. 575, Novoluto's Motion for Summary Judgment of IPR Estoppel (D.I. 581) is not considered a "ranked" summary judgment motion. As such, the Court will issue a separate opinion addressing the merits of this motion.

[7] The Court will issue a separate opinion addressing the parties' respective *Daubert* motions. *See, e.g.*, D.I. 364; D.I. 383; D.I. 386; D.I. 389; D.I. 392; D.I. 395.