IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EIS, INC.,<br><br>           Plaintiff,<br><br>    v.<br><br>INTIHEALTH GER GMBH,<br>WOW TECH USA, LTD.,<br>WOW TECH CANADA, LTD. and<br>NOVOLUTO GMBH,<br><br>           Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  C.A. No. 19-1227 (GBW) <br><br> ███████████ <br><br> REDACTED - PUBLIC VERSION |
| NOVOLUTO GMBH,<br><br>           Counterclaimant,<br><br>    v.<br><br>EIS, INC., EIS GMBH,<br>TRIPLE A IMPORT GMBH,<br>and TRIPLE A MARKETING GMBH,<br><br>           Counterclaim Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>JOINT PROPOSED PRETRIAL ORDER</u>

### Volume 1

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff*

CHIPMAN BROWN CICERO & COLE, LLP
Paul D. Brown (#3903)
Joseph B. Cicero (#4388)
Gregory E. Stuhlman (#4765)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
brown@chipmanbrown.com
cicero@chipmanbrown.com
stuhlman@chipmanbrown.com

*Attorneys for Defendants*

August 29, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1227 (GBW) |
| | ) | |
| INTIHEALTH GER GMBH, | ) | ████████████████ |
| WOW TECH USA, LTD., | ) | |
| WOW TECH CANADA, LTD. and | ) | |
| NOVOLUTO GMBH, | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| NOVOLUTO GMBH, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EIS, INC., EIS GMBH, | ) | |
| TRIPLE A IMPORT GMBH, | ) | |
| and TRIPLE A MARKETING GMBH, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

**JOINT PROPOSED PRETRIAL ORDER**

# TABLE OF CONTENTS

**Page**

I.     NATURE OF THE CASE, PLEADINGS, AND COUNTERCLAIMS ........................... 1

     A.    The Parties ................................................................................................ 1

     B.    Nature of the Action................................................................................ 2

II.    JURISDICTION .................................................................................................... 5

III.   FACTS ................................................................................................................... 6

     A.    Uncontested Facts ................................................................................... 6

     B.    Contested Facts ....................................................................................... 6

IV.   ISSUES OF LAW ................................................................................................. 6

V.    WITNESSES.......................................................................................................... 7

     A.    Witness Lists ........................................................................................... 7

     B.    Testimony by Deposition........................................................................ 9

VI.   EXHIBITS ........................................................................................................... 14

     A.    Trial Exhibits ........................................................................................ 14

     B.    Demonstrative Exhibits........................................................................ 18

VII.  BRIEF STATEMENTS OF INTENDED PROOF ........................................... 20

VIII. AMENDMENTS TO THE PLEADINGS ...................................................... 20

IX.   SETTLEMENT.................................................................................................... 20

X.    MOTIONS IN LIMINE ...................................................................................... 20

XI.   ORDER OF PROOF AT TRIAL........................................................................ 20

XII.  ADDITIONAL MATTERS ................................................................................ 28

Plaintiff EIS, Inc. and Counterclaim Defendants EIS, Inc.; EIS GmbH; Triple A Marketing GmbH; and Triple A Import GmbH (collectively, "EIS") and Counterclaimaint Novoluto GmbH ("Novoluto") and Defendants Intihealth Ger GmbH; WOW Tech USA, Ltd.; WOW Tech Canada, Ltd.; and Novoluto GmbH (collectively, "WOW Tech") submit this Joint Proposed Pretrial Order pursuant to the Court's Scheduling Order (D.I. 288), the Federal Rules of Civil Procedure, and the Local Rules.

## I.   NATURE OF THE CASE, PLEADINGS, AND COUNTERCLAIMS

### A.   The Parties

1.     Plaintiff and Counterclaim Defendant EIS, Inc. is a Delaware corporation, having a principal place of business at 110 Wall Street, New York, New York, 10005.

2.     Counterclaim Defendant EIS GmbH is incorporated under the laws of Germany, having a principal place of business at AM Lenkwerk 3, 33609 Bielefeld, Germany.

3.     Counterclaim Defendant Triple A Import GmbH is a company incorporated under the laws of Germany, having a principal place of business at AM Lenkwerk 3, 33609 Bielefeld, Germany.

4.     Counterclaim Defendant Triple A Marketing GmbH is a company incorporated under the laws of Germany, having a principal place of business at AM Lenkwerk 3, 33609 Bielefeld, Germany.

5.     Defendant and Counterclaim Plaintiff Novoluto GmbH is a company organized and existing under the laws of Germany, with a principal place of business at Hermann-Blankenstein-Straße 5, 10249 , Berlin, Germany.

6.     Defendant WOW Tech USA, Ltd. is a Delaware corporation with a mailing address at 103 Foulk Road, Suite 202, Wilmington, Delaware, 19803.

7.     Defendant WOW Tech Canada, Ltd. is a company organized and existing under the

laws of Canada, with a mailing address at 401-1545 Carling Ave, , Ottawa, Ontario K1Z,, Canada.

8.      Defendant InitHealth Ger GmbH is a company organized and existing under the laws of Germany, with a principal place of business at Hermann-Blankenstein-Straße 5, 10249 , Berlin, Germany.

**B.      Nature of the Action**

9.      On June 28, 2019, EIS, Inc. initiated this suit against Defendants Intihealth Ger GmbH;[1] WOW Tech USA, Ltd.; WOW Tech Canada, Ltd.; and Novoluto GmbH. D.I. 001.

10.      On September 16, 2021, EIS, Inc. filed the third amended complaint, which is the operative complaint in this action.  D.I. 111.

11.      On September 28, 2021, WOW Tech filed its answer and affirmative defenses to EIS, Inc.'s third amended complaint.  Novoluto included counterclaims against EIS, Inc. as well as added counterclaim defendants EIS GmbH; Triple A Import GmbH; and Triple A Marketing GmbH.  D.I. 118.

12.      On December 13, 2021, EIS filed its answer and affirmative defense to Novoluto's counterclaims. D.I. 157.

13.      EIS, Inc. accuses WOW Tech of committing unfair competition under the Lanham Act, the Delaware Uniform Deceptive Trade Practices Act ("DTPA"), and Delaware common law. EIS, Inc. also accuses WOW Tech of committing tortious interference with EIS, Inc.'s business relations.  EIS, Inc. also accuses WOW Tech of committing *Walker Process* fraud.

14.      EIS, Inc. seeks monetary damages and injunctive relief for WOW Tech's unfair competition, tortious interference with business relations, and *Walker Process* fraud.

---

[1] All assets from original named defendant WOW Tech International GmbH were conveyed to Intihealth Ger GmbH during the pendency of this action, and Intihealth Ger GmbH was substituted for WOW Tech International GmbH when WOW Tech International GmbH ceased to exist.  D.I. 75, 78.

15.     EIS, Inc. seeks a declaratory judgment that United States Patent Nos. 9,763,851 ("the '851 patent"); 9,849,061 ("the '061 patent"); and 9,973,097 ("the '097 patent") are unenforceable for inequitable conduct.

16.     EIS, Inc. seeks a declaratory judgment of noninfringement of the '851, '061, and '097 patents, as well as United States Patent Nos. 11,090,220 ("the '220 patent") and 11,103,418 ("the '418 patent").

17.     EIS contends that it is entitled to attorneys' fees under 35 U.S.C. § 285.

18.     WOW Tech denies each of EIS, Inc.'s claims.

19.     WOW Tech contends that EIS, Inc.'s claims are barred by the doctrines of laches, acquiescence, unclean hands, and/or estoppel; are barred to the extent EIS, Inc. is seeking double recovery for the same alleged wrongs; and are barred by the truth of the statements made by WOW Tech.

20.     WOW Tech denies that EIS, Inc. is entitled to any damages, at all or in the amount EIS, Inc. seeks, for EIS, Inc.'s alleged claims.  WOW Tech further denies that EIS is entitled to any costs or attorneys' fees.

21.     Novoluto alleges that certain of EIS's Satisfyer Air Pulse products infringe the '851, '061, '097, '220, and '418 patents.

22.     More specifically, Novoluto alleges infringement of claims 1, 2, and 4-6 of the '851 patent; claims 1, 8, and 21 of the '061 patent; claims 1, 10, and 12 of the '097 patent; claims 1, 3, 4, and 16 of the '220 patent; and claims 1, 4, and 10 of the '418 patent ("Asserted Claims"). Novoluto alleges that infringement was willful.

23.     Novoluto seeks damages for EIS's infringement of the Asserted Claims of the '851, '061, '097, '220, and '418 Patents and contends damages are not limited under 35 U.S.C § 287

because Novoluto alleges EIS had actual notice and that Novoluto sufficiently marked its patent practicing products. Novoluto also seeks injunctive relief, enhanced damages for EIS's willful infringement, as well as pre-judgment and post-judgment interest, costs, and attorneys' fees under 35 U.S.C. § 285.

24.    EIS denies that it infringes any of the Asserted Claims and that any purported infringement was willful.

25.    EIS contends that each Asserted Claim is invalid under 35 U.S.C. §§ 102, 103, and/or 112.  EIS further contends that each of the '851, '061, '097, '220, and '418 patents is unenforceable for inequitable conduct and patent misuse.

26.    EIS contends that Novoluto's assertion of the Asserted Claims is barred by the doctrines of waiver, estoppel, acquiescence, and/or unclean hands.

27.    EIS denies that Novoluto is entitled to any damages, at all or in the amount Novoluto seeks, for alleged infringement of the Asserted Claims.  EIS contends that any damages recoverable by Novoluto are limited under 35 U.S.C § 287 based on Novoluto's alleged failure to mark patent practicing products and its alleged failure to provide actual notice.  EIS further contends that Novoluto is not entitled to pre-judgment or post-judgment interest, or any costs or attorneys' fees.

28.    Novoluto contends that EIS is estopped under 35 U.S.C. § 315(e)(2) from arguing in this litigation that any previously-challenged patent claim is invalid on any ground that EIS GmbH raised or reasonably could have raised in any of the *inter partes* review proceedings Case Nos. IPR2019-01302, IPR2019-01444, and IPR2020-00007.

29.    Novoluto denies that any Asserted Claim is invalid under 35 U.S.C. §§ 102, 103, and/or 112, or that any of the '851, '061, '097, '220, and '418 Patents is unenforceable for

inequitable conduct or patent misuse.

30.     A pretrial conference is scheduled for September 5, 2023 at 1:00 p.m.. A five-day jury trial is scheduled to begin on September 11, 2023.

## II.     JURISDICTION

31.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States, including Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), Section 2 of the Sherman Act (15 U.S.C. § 2), and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).  The Court also has subject matter jurisdiction over this action because it arises under the patent laws of the United States.  35 U.S.C. § 1 *et seq.*  This Court has jurisdiction pursuant to 28 U.S.C. § 1367 over the state statutory and common law claims for unfair competition and deceptive trade practices and common law tortious interference with business relations.  No party contests subject matter jurisdiction.

32.     Plaintiff and Counterclaim Defendant EIS, Inc. admits that personal jurisdiction and venue in this District are proper for this case.

33.     Counterclaim Defendants EIS GmbH; Triple A Import GmbH; and Triple A Marketing GmbH deny that personal jurisdiction and venue in this District are proper.

34.     Defendant WOW Tech USA, Ltd. admits that personal jurisdiction and venue in this District are proper.

35.     Counterclaim Plaintiff Novoluto GmbH has consented to personal jurisdiction and venue by, at least, its filing of counterclaims.

36.     Defendants WOW Tech Canada, Ltd. and Intihealth Ger GmbH deny that personal jurisdiction and venue in this District are proper.

### III.   FACTS

#### A.   Uncontested Facts

37.     Attached as **<u>Exhibit 1</u>** are facts that are not disputed or have been agreed to by the parties and require no proof at trial.  These uncontested facts shall require no proof at trial and will become part of the evidentiary record at trial once introduced to the jury.  Any party may read or introduce any of the uncontested facts to the jury at any time without prior notice and the jury should be instructed that the undisputed facts are to be taken as true in their deliberations.

#### B.   Contested Facts

38.     EIS's statement of issues of fact to be litigated at trial is set forth in **<u>Exhibit 2</u>**.

39.     WOW Tech's statement of issues of fact to be litigated at trial is set forth in **<u>Exhibit 3</u>**.

40.     If this Court determines that any issue identified in either statement of issues of fact is more properly considered as an issue of law, it should be so considered.

41.     The parties reserve the right to modify or supplement their statements of issues of fact to be litigated at trial to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties.  The parties also reserve the right to move items from their respective lists of contested facts to the joint statement of uncontested facts in the event the parties come to the agreement that the issue is no longer contested.

### IV.   ISSUES OF LAW

42.     EIS's statement of issues of law to be litigated at trial is set forth in **<u>Exhibit 4</u>**.

43.     WOW Tech's statement of issues of law to be litigated at trial is set forth in **<u>Exhibit 5</u>**.

44.     If this Court determines that any issue identified in either statement of issues of law is more properly considered as an issue of fact, it should be so considered.

45.     The parties reserve the right to modify or supplement their statements of issues of law to be litigated at trial to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties.

## V.     WITNESSES

### A.     Witness Lists

46.     The list of witnesses that EIS will call or may call to testify in person or by deposition designation is attached as **Exhibit 6**

47.     The list of witnesses that WOW Tech will call or may call to testify in person or by deposition designation is attached as **Exhibit 7**.

48.     To the extent that a witness becomes unavailable for trial, each party reserves the right to call that witness by deposition to the extent permitted by the Federal Rules of Civil Procedure, as set forth below in this pretrial order.  The party calling such a witness by deposition must promptly provide an explanation of the changed circumstances and the proposed deposition designations to the other party.  Such other party reserves all rights to object to the use of such deposition testimony, including on the grounds that the witness is not unavailable, the unavailability was foreseeable, or because untimely deposition designations will cause it unfair prejudice.

49.     Any witness not listed in the parties' witness lists will be precluded from testifying absent a showing of good cause.  Good cause includes, for example, one or more of the following reasons:  (1) additional witnesses to respond to any issues raised by the Court's pretrial or trial rulings; (2) any witness solely for impeachment purposes to the extent permitted by applicable rules; (3) any witness who appears on the other party's witness list; and (4) additional rebuttal witnesses that could not have been anticipated.

50.     With respect to those witnesses whom the parties have identified in

Exhibits 6 and 7 who will be called to testify live at trial, no deposition designations or counter-designations are required.   Should the party that intends to call a fact witness identified in Exhibits 6 and 7 as testifying live at trial demonstrate that the fact witness has become unavailable, as that term is defined in the Federal Rules of Civil Procedure and Federal Rules of Evidence, the parties may designate specific pages and lines of deposition transcript that they intend to read or play in lieu of the witness's appearance.   A party shall immediately notify the other party in the event it learns that a witness has become unavailable and allow the other party sufficient time to prepare objections and any counter-designations to such deposition testimony.

51.      The parties agree that each side may designate one (1) party representatives to act as the corporate representative for that side.   The parties agree that fact witnesses other than the designated corporate representative will be sequestered. In the event a party needs to show evidence or elicit testimony regarding documents that have been designated "Highly Confidential – Attorneys' Eyes Only" under the Protective Order and that designation is either not challenged or the Court overrules a confidentiality challenge, then the parties agree that the corporate representative for the side whose Highly Confidential – Attorneys' Eyes Only information is not at issue will leave the courtroom during such time, or both corporate representative if third party information is being presented.   For example, if EIS's Highly Confidential – Attorneys' Eyes Only information is presented, EIS's corporate representative may remain in the courtroom but WOW Tech's corporate representative shall leave the courtroom during that time.   The parties agree that expert witnesses need not be sequestered.

52.      On September 6, 2023, each party shall provide a good faith list of the witnesses it expects to call during the trial in the general order in which it expects to call them.   During trial, each party shall provide notice by email of the witness(es) it intends to call, whether they will be

called live or by deposition, and the order in which they will be called, by not later than 7:00 p.m. ET two (2) calendar days before the trial day on which the witness is to be called.  For clarity, the parties shall provide their first notice email regarding witnesses by no later than 7:00 p.m. on Saturday, September 9, 2023, for the witnesses they intend to call on Monday, September 11, 2023, and so on.

### B.    Testimony by Deposition

53.    The deposition testimony that EIS may offer into evidence is identified in **Exhibit 8**, along with WOW Tech's objections and counter-designations thereto, and EIS's objections to the counter-designations and "completeness" designations.

54.    The deposition testimony that WOW Tech may offer into evidence is identified in **Exhibit 9**, along with EIS's objections and counter-designations thereto, and WOW Tech's objections to the counter-designations and "completeness" designations.

55.    The parties may offer some or all of the deposition testimony set forth in the attached exhibits at trial.  A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented upon at trial.

56.    Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as a counter-designation for fairness or completeness reasons, subject to all objections.  For convenience and sake of brevity, the parties have listed counter-designations in response to specific affirmative designations by the opposing party.  To the extent an opposing party withdraws any affirmatively designated testimony, a party may present its counter-designation testimony in response to other affirmative testimony by the opposing party, subject to any objections by the affirmatively-designating party that those counter-designations are not proper counters to the remaining affirmative testimony.

57.    With respect to those witnesses who are expected to testify by deposition rather

than in person, each party has designated specific pages and lines of deposition testimony of the fact witnesses that it may read or play during trial pursuant to Rule 32 of the Federal Rules of Civil Procedure (*e.g.*, testimony of a party's officer or Rule 30(b)(6) designees, testimony of unavailable witnesses, etc.), other than for impeachment or cross-examination of a live witness.

58.     Whether or not a witness is designated as will call, either party may use for any purpose the deposition of a witness who, when deposed, was the other party's officer, director, managing agent, or designee under Rule 30(b)(6).

59.     If a "may call" witness will not be made available to testify live at trial, the other party must be informed by September 6, 2023, absent good cause.

60.     Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations read or played by video in court, including any additions to address any incompleteness objections, and counter-designations, respectively.  The time to play counter-designations shall be charged against the time of the counter-designating party.  The party calling the witness by deposition will be responsible for calculating, and will provide the Court, by the end of the day that the testimony is played, an accounting of the time for each party's designations based on the parties' proportional share of lines of testimony for read-in testimony and by actual time for video testimony so that the Court may accurately charge time to the designating party.

61.     If an exhibit is referenced in a deposition designation played at trial, the designating party may seek to admit the exhibit into evidence if it is included on a party's trial exhibit list, subject to the other party's objections.  If an exhibit is referenced in a deposition designation played at trial and the Court has not sustained an objection to the exhibit's admission into evidence, the designating or counter-designating party may display the exhibit to the jury alongside the video

and highlight or enlarge portions of the exhibit on the screen that were discussed or referenced in the designation or counter-designation, respectively, as if the exhibit was being shown to a live testifying witness.

62.    By objecting to a deposition designation on a given ground, a party asserts that at least one question or answer in the designation is subject to such objection.

63.    Each party reserves the right to object to a given deposition designation as improper under Rule 32, including because the witness is not unavailable and the testimony falls outside the scope of the topic for which the witness was designated under Rule 30(b)(6), in view of the specific context in which such testimony is offered.

64.    A party's deposition designations or counter-designations shall not operate as a waiver of any of that party's objections to the other party's designations and may be offered in the alternative.

65.    All irrelevant and redundant material such as objections and colloquy between counsel (except insofar as the parties agree that the colloquy clarifies a deposition question, and to the extent the parties dispute whether the colloquy clarifies a deposition question, the party seeking to include the colloquy will raise that issue with the Court) will be eliminated when the deposition is read or viewed at trial.

66.    When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.

67.    For any witness whose testimony the parties intend to present at trial by deposition, the parties shall identify a list of deposition designations to be played to the jury and the proposed exhibits to be used in the designations by 7:00 p.m. ET two (2) calendar days before the

11

designations are to be played to the jury.  The party receiving the designations shall inform the opposing party of any objections and counter-designations by 7:00 p.m. ET one (1) calendar day prior to the testimony being offered into the record.  The parties will meet and confer regarding any unresolved objections by 9:00 p.m. that evening.  If good faith efforts to resolve the objections fail, the parties will submit by email the unresolved objections to the Court by 6:00 a.m. of the day the designations are to be played pursuant to the Court's Dispute Resolutions / Objections procedure

(https://www.ded.uscourts.gov/sites/ded/files/Judge%20Williams%E2%80%99%20Trial%20Procedures.pdf).  The parties shall attach to the email digital copies of all relevant deposition designations with the disputed passages highlighted.  By 8:15 a.m., the parties shall provide the Court with two (2) courtesy copies of the objections and relevant exhibits and deposition designations.  The parties shall leave the courtesy copies on the podium in the courtroom.

68.    The party offering the testimony is responsible for preparing video deposition clips of all designated testimony for that witness.  A copy of the video deposition clips, including counter-designation clips, shall be provided to the opposing party no later than 9:30 p.m. ET the day before the deposition testimony is expected to be played, or state in writing that the deposition will be read into the record.  The exchange format consists of: (a) download link to video file that corresponds to the video depositions clips; (b) PDF Clip Report for each witness (cover page to include total run time, EIS Designation Run Times, WOW Tech Designation Run Times, and relevant exhibits included in the video); and (c) .XML (or .CMS) file for the parties to exchange for playback during trial so that each party may properly review each other's video files and modify the counter-designation clips of the video files that are going to be produced to the jury, as necessary.

69. For those witnesses whose depositions will be played or read, the parties shall be permitted to make brief transition statements to introduce the witnesses by name, position or title, and/or the entity with which he or she is associated, the time for which shall be charged to the party offering the witness's testimony, unless otherwise agreed to by the parties. However, counsel shall not be permitted to argue or comment on the evidence during transition statements.

70. The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment of a witness. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

71. If a party intends to use deposition testimony during its opening statement, the party shall disclose the testimony by 2:00 p.m. ET [EIS's Proposal: two (2)[2] / WOW Tech's Proposal: three (3)[3]] calendar days before opening statements. The parties will provide any objections to such testimony by 6:00 p.m. ET the same day, and the parties will meet and confer by 8:00 p.m. ET the same day. If good faith efforts to resolve the objections fail, the parties will submit the unresolved objections to the Court by 6:00 a.m. of the day of the opening statements pursuant to the Court's Dispute Resolutions / Objections procedure (https://www.ded.uscourts.gov/sites/ded/files/Judge%20Williams%E2%80%99%20Trial%20Procedures.pdf). The parties shall attach to the email digital copies of all relevant deposition designations with the disputed passages highlighted. By 8:15 a.m., the parties shall provide the

---

[2] EIS proposes that two calendar days advance notice is sufficient, especially in light of the parties' agreement to provide objections and meet and confer that same day.
[3] WOW Tech proposes three calendar days so that the parties can meet and confer on Friday before trial starts on Monday.

Court with two (2) courtesy copies of the objections and relevant exhibits and deposition designations. The parties shall leave the courtesy copies on the podium in the courtroom.

## VI.   EXHIBITS

### A.   Trial Exhibits

72.    EIS's list of exhibits that it intends to offer at trial, with WOW Tech's objections, is attached as **Exhibit 10**.

73.    WOW Tech's list of exhibits that it intends to offer at trial, with EIS's objections, is attached as **Exhibit 11**.

74.    The joint list of exhibits that the parties intend to offer at trial is attached as **Exhibit 12**.

75.    The parties agree that exhibits to be used solely for impeachment need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.

76.    The parties agree to provide witness binders for each fact and expert witness for direct examination. Two (2) copies of any such binders, and of any witness binders to be used on cross-examination, must be provided to the Court, and one (1) copy must be provided to the other side's counsel.

77.    No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit (either live if the witness is live or during a deposition of the witness if being offered by deposition). At some point during or immediately after, or at some other time directed by the Court and/or otherwise agreed to by the parties, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number. Should a party inadvertently fail to move such an exhibit into evidence at the close of the witness's testimony, the parties agree that such exhibits may be moved into evidence at any point before the close of evidence at trial.

78.     Exhibits may be introduced via video deposition testimony.  Any party that has used an exhibit with the deponent and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number.

79.     Except as provided by the Federal Rules of Evidence and provided below with respect to opening statements, exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence.  Once admitted, counsel for either party may publish exhibits to the jury without requesting to do so.

80.     Any exhibit, once admitted at trial, may be used equally by each party for any proper purpose in accordance with the Federal Rules of Evidence.

81.     A party may not introduce at trial any exhibit not appearing on its list, another party's list, or on the parties' joint exhibit list, except for exhibits used solely for impeachment.  Such exhibits, if not appearing on a party's exhibit list or the joint exhibit list, shall not be admissible unless good cause is shown.

82.     Even if not separately listed on its own exhibit list, a party may introduce any exhibit from any other party's trial exhibit list, subject to any appropriate objections from the opposing party.  If a party attempts to introduce or use an exhibit that was not previously listed on its own exhibit list, any other party may offer any applicable objection, even if such objection was not previously noted on the exhibit lists.

83.     The listing of a document on a party's exhibit list or the joint exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document.

84.     Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which

such evidence is offered, but only if such context is not reasonably foreseeable.   All other objections to the admissibility of evidence shall be raised beforehand, pursuant to the provisions of this order.

85.    The parties agree that if any party removes or otherwise withdraws an exhibit from its exhibit list, another party may amend its exhibit list to include that same exhibit.   The parties also agree that the parties can make objections to such exhibits, other than an objection based on untimely listing.

86.    The parties agree that any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material.

87.    A party will provide exhibits to be used in connection with a direct examination by 7:00 p.m. ET the day before their intended use, and objections will be provided no later than 8:30 p.m. ET the night before their intended use.   The parties will meet and confer regarding any unresolved objections by 9:00 p.m. that evening.   If good-faith efforts to resolve the objections fail, the parties will submit the unresolved objections to the Court by 6:00 a.m. of the day of the direct examination pursuant to the Court's Dispute Resolutions / Objections procedure (https://www.ded.uscourts.gov/sites/ded/files/Judge%20Williams%E2%80%99%20Trial%20Procedures.pdf).   The parties shall attach to the email digital copies of all relevant exhibits with the disputed passages highlighted.   By 8:15 a.m., the parties shall provide the Court with two (2) courtesy copies of the objections and relevant exhibits.   The parties shall leave the courtesy copies on the podium in the courtroom.

88.    If a party intends to use during its opening statement an exhibit to which the other

party has objected, the party shall disclose the exhibit(s) by 2:00 p.m. ET [EIS's Proposal: two (2)[4]

/ WOW Tech's Proposal: three (3)[5]] calendar days before opening statements.  If the opposing

party continues to object to any such exhibit(s), it will provide any objections to such exhibit(s) by

6:00 p.m. ET the same day, and the parties will meet and confer by 8:00 p.m. ET the same day.  If

good faith efforts to resolve the objections fail, the parties will submit the unresolved objections

to the Court by 6:00 a.m. of the day of the opening statements pursuant to the Court's Dispute

Resolutions                    /                    Objections                    procedure

(https://www.ded.uscourts.gov/sites/ded/files/Judge%20Williams%E2%80%99%20Trial%20Pro

cedures.pdf).  The parties shall attach to the email digital copies of all relevant exhibits with the

disputed passages highlighted.  By 8:15 a.m., the parties shall provide the Court with two (2)

courtesy copies of the objections and relevant exhibits and deposition designations.  The parties

shall leave the courtesy copies on the podium in the courtroom.

89.     The parties shall make available for inspection, at a mutually convenient time, any

physical exhibits to be used at trial, labeled with an exhibit number.

90.     The final digital copy of each exhibit page will be endorsed with a unique page

identifier, including the exhibit prefix, exhibit number, and page numbers of the electronic

document.  The exhibit prefixes shall be: "JTX" for exhibits on the Joint Exhibit List; "PTX" for

exhibits on EIS's Exhibit List; and "DTX" for exhibits on WOW Tech's Exhibit List.  The page

numbering shall begin at 1 for the first page of each exhibit and the numbering on each page should

include the trial exhibit number and the physical page number separated by a decimal.  For

---

[4] EIS proposes that two calendar days advance notice is sufficient, especially in light of the parties' agreement to provide objections and meet and confer that same day.
[5] WOW Tech proposes three calendar days so that the parties can meet and confer on Friday before trial starts on Monday.

example, page 26 of Joint Exhibit 6 would be endorsed / paginated as either: "JTX-0006.26" or "JTX-6.26".

91.     The exhibit lists indicate whether each trial exhibit has previously been marked as a deposition exhibit.  To remove duplicates and improve legibility of the exhibits used at trial, the parties agree that the trial exhibit shall be treated as identical to the indicated deposition exhibit regardless of whether it bears a deposition exhibit sticker.

### B.     Demonstrative Exhibits

92.     EIS's demonstratives will be identified with PDX numbers.

93.     WOW Tech's demonstratives will be identified with DDX numbers.

94.     The parties will exchange demonstratives intended for use in opening statements by 2:00 p.m. ET [EIS's Proposal: two (2)[6] / WOW Tech's Proposal: three (3)[7]] calendar days before opening statements.  The parties will provide any objections to such demonstratives by 6:00 p.m. ET on the same day, and the parties will meet and confer by 8:00 p.m. ET the same day.  If good faith efforts to resolve the objections fail, the parties will submit the unresolved objections to the Court by 6:00 a.m. of the day of the opening statements pursuant to the Court's Dispute Resolutions / Objections procedure (https://www.ded.uscourts.gov/sites/ded/files/Judge%20Williams%E2%80%99%20Trial%20Procedures.pdf).  The parties shall attach to the email digital copies of all relevant demonstratives with the disputed passages highlighted.  By 8:15 a.m., the parties shall provide the Court with two (2) courtesy copies of the objections and relevant demonstratives.  The parties shall leave the courtesy copies on the podium in the courtroom.

---

[6] EIS proposes that two calendar days advance notice is sufficient, especially in light of the parties' agreement to provide objections and meet and confer that same day.
[7] WOW Tech proposes three calendar days so that the parties can meet and confer on Friday before trial starts on Monday.

95.     A party will provide demonstratives to be used in connection with direct examination by 7:00 p.m. ET the night before their intended use, and objections will be provided not later than 8:30 p.m. ET the night before their intended use.  The parties will meet and confer regarding any unresolved objections by 9:00 p.m. that evening.  If good faith efforts to resolve objections to demonstrative exhibits fail, the parties will submit the unresolved objections to the Court by 6:00 a.m. of the day of their intended use pursuant to the Court's Dispute Resolutions / Objections procedure (https://www.ded.uscourts.gov/sites/ded/files/Judge%20Williams%E2%80%99%20Trial%20Procedures.pdf).  The parties shall attach to the email digital copies of all relevant demonstratives with the disputed passages highlighted.  By 8:15 a.m., the parties shall provide the Court with two (2) courtesy copies of the objections and demonstratives.  The parties shall leave the courtesy copies on the podium in the courtroom.

96.     The party seeking to use demonstratives will provide a color representation of the demonstrative to the other side in PDF format.  However, for video or animations, the party seeking to use the demonstrative will provide an electronic copy to the other side, for example, by FTP transfer or secure file-sharing site.  For physical demonstratives of uncommon size, the party seeking to use the demonstrative will provide a color representation as a PDF or 8.5 x 11 copies of the exhibits.

97.     The foregoing provisions do not apply to demonstratives created during testimony or demonstratives to be used for cross examination, neither of which need to be provided to the other side in advance of their use.  In addition, blow-ups (including retyping of text from an exhibit to increase size and legibility) or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.  The foregoing provisions also do

not apply to demonstratives previously used at trial.

98.    The parties agree that the demonstratives that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Joint Pretrial Order.

## VII.    BRIEF STATEMENTS OF INTENDED PROOF

99.    Plaintiff EIS, Inc.'s brief statement of what it intends to prove in support of EIS, Inc.'s claims is set forth in **Exhibit 13**.

100.    Defendants WOW Tech's brief statement of what it intends to prove as defenses is set forth in **Exhibit 14**.

101.    Counterclaim Plaintiff Novoluto GmbH's brief statement of what it intends to prove in support of Novoluto GmbH's claims is set forth in **Exhibit 15**.

102.    Counterclaim Defendants EIS's brief statement of what it intends to prove as defenses is set forth in **Exhibit 16**.

## VIII.    AMENDMENTS TO THE PLEADINGS

103.    The parties do not seek to amend the pleadings at present.

## IX.    SETTLEMENT

104.    The parties have explored in good faith the resolution of this controversy by settlement, but no agreement has been reached.

## X.    MOTIONS IN LIMINE

105.    EIS's motions *in limine*, WOW Tech's oppositions, and EIS's replies in support are set forth in **Exhibit 17**.

106.    WOW Tech's motions *in limine*, EIS's oppositions, and WOW Tech's replies in support are set forth in **Exhibit 18**.

## XI.    ORDER OF PROOF AT TRIAL

107.    ***EIS's Proposal***

Because EIS, Inc. is the plaintiff bringing unfair competition, Delaware Uniform Deceptive Trade Practices Act, tortious interference with business relations, and *Walker Process* claims, EIS proposes that EIS, Inc. present its claims first, as the plaintiff traditionally would do. WOW Tech recently recognized EIS, Inc.'s role as the plaintiff in this case in insisting that EIS, Inc. provide its pretrial order disclosures in advance of WOW Tech—the role assigned to the plaintiff under the local rules.  Furthermore, at least EIS, Inc.'s *Walker Process* claims are not premised on whether EIS infringes valid patents; EIS, Inc.'s *Walker Process* claims are premised on whether WOW Tech used fraudulently obtained patents in an attempt to monopolize—not whether those patents are infringed or valid under § 102, 103, or 112.

WOW Tech's request that the Court bifurcate the inequitable conduct issues should be rejected because bifurcation would be inefficient and would violate EIS, Inc.'s Seventh Amendment right to have its *Walker Process* claims—which are legal in nature—decided by a jury.  EIS, Inc. is entitled to a jury determination of its *Walker Process* claims, and because the *Walker Process* allegations share common factual elements with the inequitable conduct allegations, Federal Circuit precedent dictates that EIS, Inc.'s legal *Walker Process* claim must be decided by the jury first.  *See Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600-01 (Fed. Cir. 1997) (holding that the Seventh Amendment constrains the court's equitable determination regarding inequitable conduct when both inequitable conduct and *Walker Process* claims that share common facts are at-issue); *Shum v. Intel. Corp.*, 499 F.3d 1272, 1279 (Fed. Cir. 2007) (finding an abuse of discretion and remanding for a jury trial where common factual issues existed between equitable and legal claims and the district court tried the equitable claim prior to a jury trial); *Celgene Corp. v. Barr Labs., Inc.*, No. 7-286 (SDW), 2008 WL 2447354, at *2-3 (D.N.J. June 13, 2008) (denying motion to bifurcate "[b]ecause Celgene seeks to bifurcate such that resolution of an equitable claim

21

would precede resolution of a legal claim, and the relevant claims share common factual elements, bifurcation would violate Barr's Constitutionally-guaranteed right to trial by jury"). EIS further explained why bifurcation is inappropriate in opposition to WOW Tech's motion for bifurcation included during summary judgment briefing. D.I. 462 at 34-38.

Bifurcating inequitable conduct is also inefficient. The jury will hear the exact same facts for *Walker Process* that it would hear for inequitable conduct. Moreover, both inequitable conduct and *Walker Process* are related to the patent infringement claims, and the evidence supporting those claims and related defenses is inextricably intertwined. For example, EIS will present evidence on invalidity, inequitable conduct, and *Walker Process* showing that Novoluto's earlier-filed patent applications do not contain written description support for a one-chamber embodiment, which creates a break in the priority chain making the *Witt* reference prior art for invalidity and material for inequitable conduct and *Walker Process*. EIS will also show how *Witt* discloses each and every element of the asserted claims of the '220 and '418 patents to prove invalidity and will make the same showing to prove materiality for inequitable conduct and *Walker Process*. Similar facts have been found to weigh against bifurcation. *See* D.I. 362, 380; 462 at Sections IV.A.1-2, 8; *WebXchange Inc. v. Dell Inc.*, No. CIV.A. 08-132-JJF, 2009 WL 5173485, at *3 (D. Del. Dec. 30, 2009) ("[T]he potential that duplicative evidence regarding the alleged prior art will be presented at an inequitable conduct trial and at subsequent trials on infringement and invalidity weighs against bifurcation."); *see also Synopsys, Inc. v. Magma Design Automation*, C.A. No. 05-701-GMS, 2006 WL 1452803, at *4 (D. Del. May 25, 2006) (declining to bifurcate antitrust claim based in part on fraudulently obtained patents from patent claim where evidentiary presentation would overlap and both juries would need to be educated on the same technology).

WOW's below arguments about antitrust claims being bifurcated from patent claims also fail.  It cites no precedent supporting bifurcating a *Walker Process* antitrust claim, which involves the very patents-in-suit, from the related patent claims.  Its cases instead concern complex patent claims with complex and separate antitrust claims.  Indeed, this court and others have overseen trials involving both *Walker Process* claims and patent claims to prevent presentation of duplicative evidence. *See Genentech, Inc. v. Wellcome Found. Ltd.*, No. CIV. A. 88-330, 1990 WL 69187 (D. Del. Mar. 8, 1990); *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, No. CIV.A. 09-022-SLR, 2011 WL 6652346 (D. Del. Dec. 22, 2011); *Synopsys*, 2006 WL 1452803; *Mmodal Servs. Ltd. v. Nuance Commc'ns, Inc.*, No. 1:18-CV-0091-WMR, 2021 WL 4240883 (N.D. Ga. Apr. 5, 2021); *Procter & Gamble Co. v. CAO Grp., Inc.*, No. 1:13-CV-337, 2013 WL 6061103 (S.D. Ohio Nov. 18, 2013).

Finally, WOW Tech is incorrect in suggesting that trying inequitable conduct the first day of trial would streamline other issues; it is impractical that the parties would present inequitable conduct and obtain a decision on that claim, all on the first day of a five day trial.  The parties will, therefore, have to present all claims to the jury—regardless of whether they purportedly "depend on" the outcome of inequitable conduct as WOW Tech contends.

In WOW Tech's option 2 proposal, WOW Tech attempts to usurp EIS, Inc.'s role as plaintiff by segmenting closing arguments by issue into four separate presentations and giving WOW Tech the last word.  That attempt should be rejected because it will confuse the jury and may result in disputes regarding whether closing arguments contained within each segment are properly confined to the issues permitted in that segment.

Thus, EIS proposes the following order of proof at trial:

EIS Opening Statement

WOW Tech Opening Statement

EIS's case-in-chief for unfair competition (Lanham Act and common law), DTPA, *Walker Process*, and Inequitable Conduct

WOW Tech's rebuttal to EIS's case-in-chief and WOW Tech's case-in-chief regarding infringement

EIS's rebuttal and invalidity and other defenses

WOW Tech's rebuttal to EIS's invalidity and other defenses

EIS Closing Argument

WOW Tech Closing Argument

EIS Closing Argument Reply

108.    ***WOW Tech's Proposals***

Option 1:  This is a patent infringement case that was made a patent infringement case by EIS, Inc. filing a complaint seeking declaratory judgment of non-infringement of five Novoluto patents.  EIS, Inc.'s additional claims are almost entirely premised on whether EIS infringes valid and enforceable patents.  Because EIS, Inc. brought these patents into this case by seeking declaratory judgments of non-infringement of the five (5) patents in this case, and because the patent owner in a declaratory judgment action has the burden of proof and, therefore, typically goes first at trial (*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199–200 (2014)), WOW Tech proposes a trial order that has the patent owner presenting its case-in-chief first. This also makes sense because EIS, Inc.'s unfair competition, Delaware Deceptive Trade Practices Act, tortious interference with business relations, and *Walker Process* fraud claims entirely depend on core patent issues (the issues of infringement, validity, and inequitable conduct). For all these reasons, this case is really a patent case with other dependent ancillary issues. Also, because inequitable conduct is an issue to be tried to the Court, not the jury, WOW

Tech proposes the Court address inequitable conduct prior to the parties presenting their cases to the jury on other issues. The prejudice that would befall WOW Tech should the Court not bifurcate inequitable conduct and hold a bench trial on inequitable conduct prior to the jury trial on all other issues is very real, very strong, and well recognized by courts. *See*, *e.g.*, *Trading Tech. Int'l, Inc. v. eSpeed. Inc.*, 507 F. Supp. 2d 870, 873-74 (N.D. Ill. 2007) (bifurcating inequitable conduct since, inter alia, "evidence of inequitable conduct, essentially fraud, may very well prejudice the patentee in its case to the jury"); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 2007 WL 3208540 at *2 (D. Ariz. Oct. 30, 2007) (failure to bifurcate inequitable conduct would result in "extreme prejudice to [patentee]"). Also, the Federal Circuit has approved the "standard practice of separating for trial patent issues and those raised in an antitrust counterclaim." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986); *see also Virginia Panel Corp. v. Mac Panel Co.*, 887 F.Supp. 880, 883–84 (W.D.Va. 1995), *aff'd*, 133 F.3d 860 (Fed.Cir.1997); *Alarm Device Mfg. Co. v. Alarm Products Intern., Inc.*, 60 F.R.D. 199, 202 (E.D.N.Y. 1973) ("More often than not, separate trials of patent validity-infringement claims and misuse-antitrust claims have been found to be salutary"); *Brandt, Inc. v. Crane*, 97 F.R.D. 707, 708 (N.D. Ill. 1983) (adopting the "general rule" that separating patent and antitrust issues serves the purposes of convenience, expedience, and economy). The Federal Circuit has emphasized the necessity of bifurcation of antitrust claims and patent infringement claims because it "will enhance the parties' right to jury trial by making the issues the jury must consider less complex." *See Innotron*, 800 F.2d at 1086. Courts should consider "whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay [and] the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *Id.* at 1084; *see also Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1158

(D. Mass. 1995) (bifurcating patent issues from the antitrust and unfair competition claims and recognizing that "[a]ntitrust issues are complex and particularly with respect to damages, raise different issues and proof. Bifurcation therefore serves the interest of avoiding jury confusion."); and _Monsanto Co. v. E.I. du Pont De Nemours & Co._, No. 4:09CV00686 ERW, 2009 WL 3012584, at *2 (E.D. Mo. Sept. 16, 2009) (determining that bifurcation was warranted because combining the non-patent related antitrust claims with the patent claims might make the "trial unwieldy" and could "be cumbersome and confusing" to a fact finder). WOW Tech's proposal of having a bench trial on inequitable conduct prior to the jury trial on all other issues is the most efficient way to address the severe prejudice that would result in trying the case according to EIS's proposal in this case where EIS's antitrust claims are based on and require a finding of inequitable conduct.  Presenting the case in the manner outlined by WOW Tech will streamline the trial and reduce the likelihood of jury confusion and undue prejudice to WOW Tech.  In view of all of these considerations, WOW Tech proposes the following trial order, which follows a standard patent case, as the most efficient and least confusing or misleading way to present the case at trial:

**Day 1: Bench Trial for Inequitable Conduct**

> EIS Opening Statement
>
> WOW Tech Opening Statement
>
> EIS Case-in-Chief on Inequitable Conduct
>
> WOW Tech Rebuttal Case
>
> EIS Closing Argument
>
> WOW Tech Closing Argument

**Days 2-5: Jury Trial on Any and All Remaining Issues**

> WOW Tech Opening Statement
>
> EIS Opening Statement

WOW Tech Case-in-Chief on Patent Infringement

EIS Rebuttal and Invalidity and Other Patent Infringement Defenses; EIS Case-in-Chief on Unfair Competition (Lanham Act and common law), DTPA, and *Walker Process* (attempted monopolization) Claims

WOW Tech Rebuttal to EIS Invalidity and Other Patent Infringement Defenses; WOW Tech Rebuttal to EIS Case-in-Chief on Unfair Competition and other claims

WOW Tech Closing Argument

EIS Closing Argument

WOW Tech Closing Argument Reply

Option 2:  In the alternative, in the event the Court would prefer EIS to present its case first, and assuming the Court does not schedule a bifurcated bench trial to occur prior to the jury trial as proposed above (*e.g.*, if the Court decides to set a separate inequitable conduct bench trial at another time following the jury trial), WOW Tech proposes the following modified version of EIS's proposal, which includes an additional reply closing argument that tracks the burdens of proof (edits in underlining):

EIS Opening Statement

WOW Tech Opening Statement

EIS's case-in-chief for unfair competition (Lanham Act and common law), DTPA, *Walker Process*, and Inequitable Conduct

WOW Tech's rebuttal to EIS's case-in-chief and WOW Tech's case-in-chief regarding infringement

EIS's rebuttal and invalidity and other defenses

WOW Tech's rebuttal to EIS's invalidity and other defenses

EIS Closing Argument for EIS's case-in-chief for unfair competition (Lanham Act and common law), DTPA, and *Walker Process* fraud

WOW Tech Closing Argument in rebuttal to EIS's case-in-chief; and for WOW Tech's case-in-chief regarding infringement

EIS Closing Argument Reply <u>for EIS's case-in-chief for unfair competition (Lanham Act and common law), DTPA, and *Walker Process* fraud; and rebuttal to WOW Tech's case-in-chief regarding infringement</u>

<u>WOW Tech Closing Argument Reply for WOW Tech's case-in-chief regarding infringement</u>

## XII.   ADDITIONAL MATTERS

109.    EIS may seek to seal the courtroom during presentations and/or examinations that include information that is designated "Highly Confidential – Attorneys' Eyes Only" or "Confidential" under the Protective Order.

110.    WOW Tech may seek to seal the courtroom during presentations and/or examinations that include information that is designated "Highly Confidential – Attorneys' Eyes Only" or "Confidential" under the Protective Order.

111.    EIS shall have the Federal Judicial Center Introduction to the Patent System video ready to be played at the time the jury has been selected.

112.    EIS shall bring at least 52 pens to jury selection for the jury to use during voir dire, as required by the Court's Trial Procedures at page 2.

113.    The parties request the Court direct the Court's jury services to provide the following questions on a question form to potential jurors prior to *voir dire* on the day potential jurors arrive (first day of trial).  The form should indicate that each side will get one copy of the question form, and the Court will retain a copy as well, and that counsel will be required to return their forms to the Court following jury selection, at which point the Court will destroy all copies of the question form.  The questions to be included on the question form to potential jurors are:

> (1) Have you ever purchased a [EIS PROPOSAL: sexual wellness product or] sex toy? Yes/No

> (2) If you have purchased one or more [EIS PROPOSAL: sexual wellness products

or] sex toys, where have you purchased them? Please check all that apply.

☐ Online
☐ Big box store, such as Target or Walmart
☐ Drug store, such as Walgreens or CVS
☐ Adult bookstore, or brick and mortar adult store
☐ In-home, such as at a sex toy party
☐ Private seller

(3) **[WOW TECH PROPOSAL:** What is the total of all income sources in your household?

☐ Under $10,000
☐ $10,000 to $25,000
☐ $25,000 to $50,000
☐ $50,000 to $75,000
☐ $75,000 to $100,000
☐ $100,000 to $150,000
☐ Over $150,000 ][8]

(4) Have you or anyone in your immediate family ever been employed by EIS, Inc.; EIS GmbH; Triple A Import GmbH; Triple A Marketing GmbH; Intihealth Ger GmbH; WOW Tech USA, Ltd; WOW Tech Canada, Ltd; or Novoluto GmbH?  Yes/No

(5) Have you or anyone in your immediate family ever owned stock in any of these companies or brands?  Yes/No

(6) Have you or anyone in your immediate family ever had a business relationship with any of these companies or brands?  Yes/No

(7) [**EIS PROPOSAL** The parties sell sexual wellness products or sex toys under the brand names "Satisfyer", "We-Vibe," and "Womanizer."  Have you ever heard of these brands?  Yes/No]

(8) Have you or anyone in your immediate family ever had any experience, good or bad, with any of these companies or brands, that might keep you from being a fair and impartial juror in this case?  Yes/No

(9) Do you have any opinions about any of these companies or brands that might keep you from being a fair and impartial juror in this case?  Yes/No

---

[8] By EIS:  EIS proposes that this question not be included.

(10)   [**EIS PROPOSAL** Do you have any opinions about sexual wellness products or sex toys that might keep you from being a fair and impartial juror in this case?  Yes/No][9,10]

(11)   [**EIS PROPOSAL** Do you or someone close to you have any experience with the design or manufacture or sale of sexual wellness products or sex toys?  Yes/No ]

114.   The parties may have their respective jury consultants present during the totality of *voir dire* and trial.

115.   The parties agree that the jurors shall be permitted to take handwritten notes during the presentations of the parties and be given a jury notebook.  The jury notebooks shall include blank sheets of paper for notetaking.  The parties further agree that the jurors be permitted to bring these notes as well as the provided jury notebook into the deliberation room.

116.   The parties further propose that the jurors be instructed not to exchange or share their notes with each other (though they may discuss the contents of their notes during deliberations) and that the juror's notes be collected by the clerk after each daily recess, and collected and destroyed without review after the jury's discharge.

117.   For the objections procedures noted above related to deposition designations, exhibits, demonstratives, and opening statements, the parties agree that each individual objection to an exhibit, designation, or slide will be limited to no more than 250 words and each objection

---

[9] By WOW Tech: WOW Tech objects to the phrase "sexual wellness products" as too broad because it encompasses things like condoms and lubrication.  WOW Tech also objects to this question because this question does not determine impartiality of a juror, is not probative of bias towards one party or the other, because both parties sell sex toys, and the question improperly invites potential voir dire about politically and socially loaded topics. WOW Tech further objects to this question because it appears to be an improper attempt by EIS to create for-cause challenges where there is no justified basis for such challenges.

[10] By EIS:  EIS refers to the accused products as "sexual wellness products."  That term should be included in these questions.  EIS's proposed questions provide important information for the parties and the Court to have as part of the jury selection process and EIS respectfully requests they be included.

response shall be limited to 250 words.  The foregoing limits may be adjusted for good cause shown or by agreement of the parties.

      118.   *Additional Claim Construction*

      a.   **<u>EIS's Position</u>**:  The parties currently dispute the scope of the claim term "nozzle effect" as used in the '851 Patent's Claim 1, and in particular whether it means an acceleration of media flow as EIS proposes.  As such, EIS respectfully seeks the Court's guidance on resolving this dispute.  Contrary to WOW Tech's position that EIS allegedly "attempted to have this Court construe several terms" such that the connection element would have a narrower cross-section, EIS proposed a single construction to that effect for the term "connection element."  The constructions for other claim terms Novoluto identifies below concerned whether those terms required a device with two chambers and a connection element, not the particular configuration of the connection element or the meaning of "nozzle effect."  Moreover, the present dispute does not concern the construction for "connection element."  Instead, the dispute is whether a "straight channel with a nozzle effect" means an acceleration of air flow through the straight channel.  *See* D.I. 375 at 2 ("A 'straight channel' with a 'nozzle effect' refers to a 'straight channel' that accelerates 'media flow'" (capitalization normalized)).  Thus, EIS is not seeking another bite at the apple, and at the time for claim construction it was not clear that this term was disputed.  Instead, it became clear through expert discovery that there is a dispute regarding the term "nozzle effect," including that WOW Tech's experts do not even agree that the term "nozzle effect" is attributable to the "straight channel," despite the claim reciting a "straight channel *with a nozzle effect*."  *See id.* at 2-3.  This type of fundamental linguistic dispute, including over the claim's syntax, is squarely in in the Court's province to resolve.  *See O2 Micro Intern. v. Beyond Innov.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute

regarding the scope of a claim term, it is the court's duty to resolve it.").  The parties briefed this issue during summary judgment, but the issue was not reached due to the ranking of those motions. *See* D.I. Nos. 372, 375-376, 378, 466, 469, 471-476, 514, 515, 607.

      b.    **Novoluto's Position:**  This Court already held claim construction proceedings in 2022 and issued a claim construction order in January 2023.  D.I. 300, 301.  During claim construction EIS attempted to have this Court construe several terms ("stimulation device," "connection element," and "pressure field generator") with constructions that would require a connection element to have a *narrower cross section* than a first and second chamber.  This Court expressly rejected these constructions (D.I. 300 at 5-12 ("connection element"), 13-18 ("stimulation device), and 25-32 ("pressure field generator")) and found that the term "nozzle effect" also did not require a narrower cross section.  D.I. 300 at 12 ("Even if the '851 patent did not describe "nozzle effect" as an optional feature, EIS fails to proffer any intrinsic evidence that the "nozzle effect" is generated because the "connection element" has a smaller cross-sectional area than the first chamber.").  EIS now for the first time requests the Court hold a second claim construction process to determine whether a nozzle effect means an acceleration of media flow, but EIS does not disclose that its expert Dr. Abraham actually argues that acceleration of media flow arises from a "*constriction in the channel*."  After having lost on this issue numerous times, EIS now improperly seeks to have this Court import this same claim construction (now calling it a "constriction in the channel" instead of a "narrower cross section" of a connection element) into the term "nozzle effect" on the eve of trial, under the pretense that EIS did not appreciate the dispute regarding "nozzle effect" until now. EIS could have but chose not to identify the term "nozzle effect" as needing construction on March 11, 2022, when the parties identified claim terms to be construed and EIS identified 14 such terms. EIS also could have asked the Court for

reconsideration under L.R. 7.1.5, but, again, chose not to. EIS should not now be permitted another bite at the claim construction apple because it now regrets not having requested construction earlier. *Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care, Inc.*, No. CV 07-753-RGA, 2014 WL 6871579, at *3 (D. Del. Dec. 5, 2014), *aff'd sub nom. Roche Diagnostics Operations, Inc. v. Lifescan Inc.*, 660 F. App'x 932 (Fed. Cir. 2016) ("'Rolling claim construction' is not justified by a party's considered claim construction choices that it later regrets."). There have been no changes justifying this late-stage second run at claim construction either. *Id.* ("There was no intervening change in the controlling law, and there was no clear error of law.") To impose a new claim construction process on the eve of trial, as EIS proposes, would be a waste of judicial resources that is only motivated by EIS's dissatisfaction with this Court's prior rulings.

119.   A party that intends to seek the sealing of the courtroom based on the presentation of its own or a third party's Highly Confidential – Attorneys' Eyes Only information in connection with a direct examination or examination via deposition designation shall inform the other party by 7:00 p.m. ET the day before the intended sealing. If the other party objects to the intended sealing of the courtroom, it shall inform the presenting party by 8:30 p.m. ET the night before the intended sealing and the parties will meet and confer regarding the objection by 9:00 p.m. that evening. Likewise, if the presenting party intends to introduce information that the other party has designated Highly Confidential – Attorneys' Eyes Only, the presenting party shall inform the other party by 7:00 p.m. ET the day before the direct examination or examination via deposition designation. The other party shall inform the presenting party whether the other party seeks to seal the courtroom for that information by 8:00 p.m. ET that night. If the presenting party objects to the sealing of the courtroom, it shall inform the other party by 8:30 p.m. ET the night before the intended sealing and the parties will meet and confer regarding the objection by 9:00 p.m. that

evening.  If the parties are able to agree on sealing—subject to the Court's approval—the courtroom will be sealed for that portion of the testimony.  If good-faith efforts to resolve the sealing objections fail, the parties will submit the unresolved objections to the Court by 6:00 a.m. of the day of the direct examination or examination via deposition designation pursuant to the Court's Dispute Resolutions / Objections procedure (https://www.ded.uscourts.gov/sites/ded/files/Judge%20Williams%E2%80%99%20Trial%20Procedures.pdf).  If applicable, the parties shall attach to the email digital copies of all relevant exhibits, deposition designations, and/or demonstratives with the disputed passages highlighted.  By 8:15 a.m., the parties shall provide the Court with two (2) courtesy copies of the objections and relevant exhibits, deposition designations, and/or demonstratives.  The parties shall leave the courtesy copies on the podium in the courtroom.

120.    A party that intends to seek the sealing of the courtroom based on the presentation of its own or a third party's Highly Confidential – Attorneys' Eyes Only information during opening statements shall inform the other party by 2:00 p.m. ET [EIS's Proposal: two (2)[11]] [WOW Tech's Proposal: three (3)[12]] calendar days before opening statements.  If the other party objects to the intended sealing of the courtroom, it shall inform the presenting party by 6:00 p.m. ET the same day and the parties will meet and confer regarding the objection by 8:00 p.m. ET the same day.  Likewise, if the presenting party intends to introduce information that the other party has designated Highly Confidential – Attorneys' Eyes Only, the presenting party shall inform the other

---

[11] EIS proposes that two calendar days advance notice is sufficient, especially in light of the parties' agreement to provide objections and meet and confer that same day.
[12] WOW Tech proposes three calendar days so that the parties can meet and confer on Friday before trial starts on Monday.

party by 2:00 p.m. ET [EIS's Proposal: two (2)[13]] [WOW Tech's Proposal: three (3)[14]] calendar days before opening statements.  The other party shall inform the presenting party whether the other party seeks to the seal the courtroom for that information by 5:00 p.m. ET that same day.  If the presenting party objects to the sealing of the courtroom, it shall inform the other party by 6:00 p.m. ET the same day and the parties will meet and confer regarding the objection by 8:00 p.m. that evening.  If the parties are able to agree on sealing—subject to the Court's approval—the courtroom will be sealed for that portion of the opening statement.  If good-faith efforts to resolve the sealing objections fail, the parties will submit the unresolved objections to the Court by 6:00 a.m. of the day of the opening statement pursuant to the Court's Dispute Resolutions / Objections procedure

(https://www.ded.uscourts.gov/sites/ded/files/Judge%20Williams%E2%80%99%20Trial%20Procedures.pdf).  If applicable, the parties shall attach to the email digital copies of all relevant exhibits, deposition designations, and/or demonstratives with the disputed passages highlighted.  By 8:15 a.m., the parties shall provide the Court with two (2) courtesy copies of the objections and relevant exhibits, deposition designations, and/or demonstratives.  The parties shall leave the courtesy copies on the podium in the courtroom.

121.    The parties recognize the presumption for and preference in favor of an open courtroom and will work together in good faith to minimize any requests to seal the courtroom.

122.    ***Case Narrowing***.  EIS's Proposal:  Novoluto shall identify no more than 9 asserted patent claims within 1 calendar day after the Court issues its order on the pending Motion for

---

[13] EIS proposes that two calendar days advance notice is sufficient, especially in light of the parties' agreement to provide objections and meet and confer that same day.
[14] WOW Tech proposes three calendar days so that the parties can meet and confer on Friday before trial starts on Monday.

Summary Judgment of IPR Estoppel (D.I. 581).  EIS shall elect no more than 25 prior-art-based invalidity arguments (as defined in D.I. 288 at 2 n.2) within 1 calendar day after receiving Novoluto's election of asserted claims.  Given the short 5-day trial and volume of issues and evidence the parties expect to present, EIS does not believe there is sufficient time for the parties to litigate more than 9 patent claims.  Indeed, EIS has reservations as to whether there is adequate time for 9 claims and has offered to discuss narrowing the number of patents at issue with WOW Tech.  EIS proposes 9 claims as a compromise based on Novoluto's representation that it will efficiently present any elected dependent claims.  Contrary to WOW Tech's logic (below), EIS proposes narrowing the asserted patent claims precisely because this is not "really just a patent case," and the parties have other claims to litigate, including unfair competition, inequitable conduct, and *Walker Process*, among others.  WOW Tech's vague response that EIS should be required to more narrowly focus all of its claims and defenses is not specific enough to be workable, and effectively asks this Court to reconsider WOW Tech's many failed summary judgment motions.

WOW Tech's Proposal:  EIS, Inc. brought five counts seeking declaratory judgment of non-infringement of each of the five Asserted Patents in this case, which means Novoluto has to defend on all five Asserted Patents unless EIS, Inc. is willing to narrow issues by dropping any of its causes of action in this case, and they are not.  Novoluto narrowed the number of asserted claims to 18 and has offered to narrow the number of asserted claims to 14, but EIS has rejected Novoluto's offer.  EIS's proposal provides Novoluto with less than 2 claims per patent, yet provides EIS with almost 3 prior-art-based invalidity grounds per patent claim, plus all of the other invalidity defenses, inequitable conduct, unfair competition, Delaware Deceptive Trade Practices Act, tortious interference with business relations, and *Walker Process* claims.  Notably, the only

case narrowing EIS proposes is to the patent case, which underscores Novoluto's point that this is really just a patent case.  WOW Tech's proposal is that Novoluto will narrow its claims to no more than 14 asserted patent claims and EIS be required to more narrowly focus its patent invalidity, inequitable conduct, unfair competition, Delaware Deceptive Trade Practices Act, tortious interference with business relations, and *Walker Process* claims.  EIS's response to Novoluto's proposal is to ask Novoluto to further narrow its patent case without offering to narrow any of EIS's unfair competition, Delaware Deceptive Trade Practices Act, tortious interference with business relations, and *Walker Process* claims.  Because EIS's proposed narrowing does not actually narrow the issues to be tried or streamline the case in any meaningful way, the parties are at an impasse.

123.    **EIS's Objection to WOW Tech's Production of IHG_00020942 – 976.**  [EIS's Position: On August 3, 2023 (i.e., a little more than one month before trial), WOW Tech produced additional documents from its files from 2021 regarding WOW Tech's participation in Amazon's UPNE process.  These never before identified documents should have been produced during fact discovery along with WOW Tech's prior UPNE-related productions.  Their late production is highly prejudicial to EIS and prevented EIS from considering them during discovery, including deposing WOW Tech's witnesses regarding these documents.  WOW Tech attempts to justify their late production by arguing (i) that the documents are duplicates of documents previously produced; (ii) that images of the products in some of the new documents are similar to images in prior documents and, thus, WOW Tech is entitled to produce new documents related to that product; and (iii) some of the new documents are "authentication documents."  Each argument fails: (i) for any duplicates, WOW Tech should withdraw the new documents and rely on the duplicate that was produced earlier (but EIS does not object to any actual duplicate as part of this issue); (ii) there

is no basis for arguing that new documents can be produced at this point in the case because an image of a product was included in a prior document; and (iii) likewise, there is no exception for "authentication documents" to be produced late when EIS cannot take discovery regarding them. WOW Tech should be precluded from using the new documents, including as exhibits in this trial.]

124.   [WOW Tech's Position: The documents produced on August 3, 2023 were duplicates of documents already produced, were images included in documents already produced, or were documents to establish admissibility, authenticity, and/or chain of custody.  There is no prejudice to EIS because EIS was provided documents during discovery regarding the specifics of the UPNE process with respect to the product that is subject of the August 3, 2023 document production.]

125.   ***Pending Motions***: The following motions, the disposition of which will affect trial, are pending:

(1)   Plaintiff's and Counterclaim Defendants' Daubert Motion to Exclude Opinions of Robert L. Stoll. D.I. 383.

(2)   Plaintiff's and Counterclaim Defendants' Daubert Motion to Exclude Certain Expert Opinions of Justin R. Blok. D.I. 386.

(3)   Plaintiff's and Counterclaim Defendants' Daubert Motion to Exclude Certain "Stimulation Device" Opinions. D.I. 389.

(4)   Plaintiff's and Counterclaim Defendants' Daubert Motion to Exclude the Opinions of Dr. Debra Herbenick. D.I. 392.

(5)   Plaintiff's and Counterclaim Defendants' Daubert Motion to Exclude Certain Opinions of Drs. Cameron and Herbenick. D.I. 395.

(6)   Counterclaim Plaintiff and Defendants' Motion for Summary Judgment as to IPR estoppel against EIS based on 35 U.S.C. § 315(e)(2). D.I. 581 and D.I. 597.

(7)   Counterclaim Plaintiff and Defendants' *Daubert* motion to exclude Testimony of EIS's damages expert, Todd S. Schoettelkotte, related to a settlement agreement. D.I. 370, D.I. 495.

(8)   Counterclaim Plaintiff and Defendants' *Daubert* motion to exclude Todd S. Schoettelkotte and EIS's technical expert, Dr. John P. Abraham's testimony regarding the alleged conceptual non-infringing alternative. D.I. 370, D.I. 495.

(9)   Counterclaim Plaintiff and Defendants' *Daubert* motion to exclude Dr. Kristen Mark's testimony in its entirety. D.I. 370, D.I. 495.

(10)  Counterclaim Plaintiff and Defendants' *Daubert* motion to exclude Dr. John P. Abraham's testimony regarding new claim construction arguments. D.I. 370, D.I. 495.

(11)  Plaintiff's and Counterclaim Defendants' Motion for Leave to File Bakalova Declaration. D.I. 608.

(12)  Counterclaim Plaintiff and Defendants' Motion for Leave to File Fourth Motion *in Limine*. D.I. 613.

126.   ***WOW Tech Bifurcation Proposal***:  <u>WOW Tech's Position</u>:  In view of this Court's order denying WOW Tech's Motion for Summary Judgment on Inequitable Conduct (D.I. 607), and because inequitable conduct is an issue to be tried by the Court, not the jury, WOW Tech requests the Court set a bench trial on inequitable conduct.  WOW Tech further proposes the bench trial be set to occur on September 11, 2023, since that date is already reserved for trial.  WOW Tech proposes that the jury trial can then proceed September 12-15, 2023, consistent with the current schedule.

127.   <u>EIS's Position</u>:  As explained above (*see* ¶ 107, *supra*), there is no basis for bifurcation.   Indeed, bifurcating inequitable conduct would violate EIS, Inc.'s Seventh Amendment right to a jury trial on its *Walker Process* claims.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

MORRIS NICHOLS ARSHT & TUNNELL LLP

/s/ Cameron P. Clark
_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
cclark@morrisnichols.com
*Attorneys for Plaintiff*

OF COUNSEL:

Naveen Modi
Allan M. Soobert
Phillip W. Citroen
Chetan Bansal
James Razick
David Valente
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
(202) 551-1700

August 29, 2023

CHIPMAN BROWN CICERO & COLE, LLP

/s/ Gregory E. Stuhlman
_____
Paul D. Brown (#3903)
Joseph B. Cicero (#4388)
Gregory E. Stuhlman (#4765)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
brown@chipmanbrown.com
cicero@chipmanbrown.com
stuhlman@chipmanbrown.com
*Attorneys for Defendants*

OF COUNSEL:

Tammy J. Terry
Califf Cooper
Lisa E. Margonis
Peter C. Schechter
Gopal R. Gannamraj
OSHA BERGMAN WATANABE &
BURTON LLP
1100 Louisiana St., Suite 4900
Houston, TX 77002
(713) 228-8600
OLWOWTechDE@obwbip.com

SO ORDERED this _____ day of September, 2023.

_____
United States District Court Judge

40