## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EIS, INC., | |
| Plaintiff, | |
| v. | |
| INTIHEALTH GER GMBH, WOW TECH USA, LTD., WOW TECH CANADA, LTD. AND NOVOLUTO GMBH, | Civil Action No. 19-1227-GBW |
| Defendants. | |
| NOVOLUTO GMBH, | |
| Counterclaimant, | |
| v. | |
| EIS, INC., EIS GMBH, TRIPLE A IMPORT GMBH, and TRIPLE A MARKETING GMBH | |
| Counterclaim Defendants. | |

## FINAL JURY INSTRUCTIONS

# TABLE OF CONTENTS

1. GENERAL INSTRUCTIONS ................................................................ 1
   1.1 INTRODUCTION ................................................................ 1
   1.2 JURORS' DUTIES ................................................................ 2
   1.3 EVIDENCE DEFINED ................................................................ 3
   1.4 DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................ 4
   1.5 CONSIDERATION OF EVIDENCE ................................................ 5
   1.6 USE OF NOTES ................................................................ 6
   1.7 CREDIBILITY OF WITNESSES ................................................ 7
   1.8 NUMBER OF WITNESSES ................................................ 8
   1.9 EXPERT WITNESSES ................................................ 9
   1.10 DEPOSITION TESTIMONY ................................................ 10
   1.11 BURDENS OF PROOF ................................................ 11
2. THE PARTIES AND THEIR CONTENTIONS ................................ 12
   2.1 THE PARTIES ................................................................ 12
   2.2 CONSIDER DEFENDANTS AND COUNTERCLAIM DEFENDANTS
       INDIVIDUALLY ................................................................ 13
3. ANTITRUST INSTRUCTIONS ................................................ 14
   3.1 SHERMAN ACT: ATTEMPTED MONOPOLIZATION ................ 14
   3.1 ANTICOMPETITIVE CONDUCT: PROCUREMENT AND
       ENFORCEMENT OF FRAUDULENT PATENTS ............................ 15
   3.2 SPECIFIC INTENT TO MONOPOLIZE A RELEVANT MARKET ............... 17
   3.3 DANGEROUS PROBABILITY OF SUCCESS ................................ 22
   3.4 ANTITRUST DAMAGES – GENERALLY ................................ 23
   3.5 ANTITRUST DAMAGES – ATTORNEYS' FEES ........................ 24
   3.6 ANTITRUST DAMAGES – INJURY AND CAUSATION ................ 25
4. LANHAM ACT UNFAIR COMPETITION ................................ 27
   4.1 LANHAM ACT – MEANING OF COMMERCIAL ADVERTISING ............. 28
   4.2 LANHAM ACT – LITERAL FALSITY IN CONTEXT ................ 28
   4.3 LANHAM ACT – MISLEADING CLAIMS ................................ 28
   4.4 LANHAM ACT – ACTUAL DECEPTION ................................ 28

|  | 4.5 | LANHAM ACT – DIFFERENCE BETWEEN FALSE AND MISLEADING | 29 |
|---|---|---|---|
| 5. | | DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT | 30 |
| 6. | | DELAWARE UNFAIR COMPETITION | 31 |
| 7. | | DELAWARE TORTIOUS INTEFERENCE WITH BUSINESS RELATIONS | 32 |
|  | 7.1 | DELAWARE TORTIOUS INTEFERENCE WITH BUSINESS RELATIONS – BONA FIDE BUSINESS RELATION | 33 |
| 8. | | NON-PATENT CLAIM DAMAGES | 34 |
|  | 8.1 | UNFAIR COMPETITION AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS DAMAGES – ACTUAL DAMAGES | 35 |
|  | 8.2 | UNFAIR COMPETITION AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS DAMAGES – PUNITIVE DAMAGES | 37 |
| 9. | | PATENTS | 38 |
|  | 9.1 | PATENT CLAIMS GENERALLY | 38 |
|  | 9.2 | DEPENDENT AND INDEPENDENT CLAIMS | 39 |
|  | 9.3 | OPEN ENDED OR "COMPRISING" CLAIMS | 40 |
|  | 9.4 | CLAIM CONSTRUCTION | 41 |
| 10. | | OTHER PROCEEDINGS IN THE UNITED STATES | 42 |
| 11. | | PATENT UNENFORCEABILITY | 43 |
|  | 11.1 | INEQUITABLE CONDUCT | 43 |
|  | 11.2 | INFECTIOUS ENFORCEABILITY | 46 |
|  | 11.3 | PATENT MISUSE | 47 |
|  | 11.4 | UNCLEAN HANDS | 48 |
| 12. | | PATENT INFRINGEMENT | 49 |
|  | 12.1 | PATENT INFRINGEMENT GENERALLY | 49 |
|  | 12.2 | DIRECT INFRINGEMENT | 50 |
|  | 12.3 | REPRESENTATIVENESS | 51 |
|  | 12.4 | INFRINGEMENT DESPITE OTHER PATENTS | 52 |
|  | 12.5 | WILLFUL INFRINGEMENT | 53 |
| 13. | | PATENT INVALIDITY | 55 |
|  | 13.1 | PATENT INVALIDITY – GENERALLY | 55 |
|  | 13.2 | EFFECTIVE FILING DATE | 56 |
|  | 13.3 | PERSON OF ORDINARY SKILL IN THE ART | 59 |
|  | 13.4 | PRIOR ART GENERALLY | 60 |

13.5    ANTICIPATION ................................................................................. 61

13.6    OBVIOUSNESS ................................................................................. 62

13.7    OBJECTIVE INDICIA OF NON-OBVIOUSNESS ........................................... 65

14.    PATENT CLAIM DAMAGES ............................................................................ 66

14.1    PATENT INFRINGEMENT DAMAGES – GENERALLY .............................. 66

14.2    DATE OF COMMENCEMENT OF DAMAGES – PRODUCTS ..................... 67

14.3    REASONABLE ROYALTY ................................................................... 69

14.4    REASONABLE ROYALTY – FACTORS .................................................. 71

14.5    REASONABLE ROYALTY – USE OF COMPARABLE LICENSES ............. 74

14.6    REASONABLE ROYALTY – lUMP SUM VS. RUNNING ROYALTY ........ 75

14.7    AVAILABILITY OF NON-INFRINGING ALTERNATIVES ....................... 76

14.8    DAMAGES APPORTIONMENT ............................................................ 77

15.    DELIBERATION AND VERDICT ..................................................................... 78

15.1    INTRODUCTION ............................................................................... 78

15.2    UNANIMOUS VERDICT ..................................................................... 79

15.3    DUTY TO DELIBERATE .................................................................... 80

15.4    SOCIAL MEDIA ............................................................................... 81

15.5    COURT HAS NO OPINION ................................................................. 82

1.      **GENERAL INSTRUCTIONS**

1.1      **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Please listen very carefully to everything I say. In following my instructions, you must follow all of them, including the ones I gave to you on Monday at the start of the case and the ones I have given during trial. You may not single out some and ignore others. They are all important.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer. You will have a written copy of these instructions with you in the jury room for your reference during deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case. We will go over that later.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

## 1.2    <u>JURORS' DUTIES</u>

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on the issues presented. I will instruct you about the burden of proof shortly. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes any instructions that I gave you before and during the trial, and these instructions. All of the instructions are important and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation, and I instruct you to accept as true.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. None of my comments and questions are evidence. The notes taken by any juror are not evidence. Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.4     DIRECT AND CIRCUMSTANTIAL EVIDENCE**

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.5** **CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**1.6**     <u>**USE OF NOTES**</u>

You may use notes taken during the trial to assist your memory. Remember that your notes are for your personal use. They may not be given or read to anyone else. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented. Your notes are valuable only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## 1.7    CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand.

Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent from the testimony that he or she gave during the trial. It is your duty to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**1.8**   **<u>NUMBER OF WITNESSES</u>**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

### 1.9    <u>EXPERT WITNESSES</u>

During the trial, you heard testimony from expert witnesses. When knowledge or special skill in a technical or business subject matter might be helpful to the jury, a person who has that special training or experience in that technical or business field—called an expert witness—is permitted to state his or her opinion on those technical or business matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

### 1.10 <u>DEPOSITION TESTIMONY</u>

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played. This testimony must be given the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with the evidence. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

## 1.11    BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." Your verdict depends on whether you find certain facts have been proved either by a preponderance of the evidence or by clear and convincing evidence.

EIS, Inc. and WOW Tech each have the burden of proving their case and the amount of any monetary damages by a preponderance of the evidence. EIS has the burden of proving its attempted monopolization, Lanham Act, deceptive trade practices, unfair competition, and tortious interference with business relations claims by a preponderance of the evidence. Similarly, WOW Tech has the burden of proving its patent infringement claims by a preponderance of the evidence. This means that EIS, Inc. and WOW Tech have to prove to you, in light of all the evidence, that what they claim is more likely true than not true.

In addition, the EIS/Triple A Defendants are challenging the validity and the enforceability of the patents-in-suit and have the burden of proving by clear and convincing evidence that the patents-in-suit are unenforceable or invalid. EIS, Inc. must also prove by clear and convincing evidence that WOW Tech fraudulently obtained one or more asserted patents in order to prove its attempted monopolization claim. Clear and convincing evidence means that it is highly probable that the fact is true. Proof by clear and convincing evidence is a higher burden of proof than a preponderance of the evidence.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this. You should therefore not consider that burden of proof in this case.

2.     **THE PARTIES AND THEIR CONTENTIONS**

    2.1     **THE PARTIES**

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiff is EIS, Inc. and I will refer to Plaintiff as "EIS." Counterclaim Defendants are EIS, Inc., EIS GmbH, Triple A Import GmbH, and Triple A Marketing GmbH. I will refer to these parties collectively as the "EIS/Triple A Defendants."

Defendants are IntiHealth Ger GmbH, WOW Tech USA, Ltd., WOW Tech Canada, Ltd., and Novoluto GmbH, and I will refer to these parties collectively as "WOW Tech."

Novoluto GmbH, who I will refer to as "Novoluto," is the Counterclaim Plaintiff. Novoluto is the owner of five patents at issue in this case: U.S. Patent Nos. 9,763,851, 9,849,061, 9,937,097, 11,090,220 and 11,103,418. As you have heard during this trial, we have referred to those patents as the '851, '061, '097, '220, and '418 patents, respectively. Sometimes we referred to them collectively as the asserted patents or patents-in-suit.

## 2.2   CONSIDER DEFENDANTS AND COUNTERCLAIM DEFENDANTS INDIVIDUALLY

There are four defendants and four counterclaim defendants in this lawsuit. When determining liability and damages, make sure you answer the questions for each defendant and counterclaim defendant as though the lawsuits were being tried separately. Each defendant and counterclaim defendant must be judged separately. Do not let your judgment about one defendant influence your judgment about the other(s).

3.      **ANTITRUST INSTRUCTIONS**

### 3.1    SHERMAN ACT: ATTEMPTED MONOPOLIZATION

EIS contends in this case that Novoluto has violated Section 2 of the Sherman Act by attempted monopolization. The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress. The antitrust laws were enacted to protect competition, not competitors. The antitrust laws were not enacted to protect individual businesses from having to compete with one another, or to protect them from successful competition by others. The antitrust laws do not guarantee that every business will be profitable or that it will even survive.

EIS alleges that it was injured by WOW Tech's unlawful attempt to monopolize the market in violation of Section 2 of the Sherman Act. To prevail on its claim of attempted monopolization, EIS must prove each of the following elements by a preponderance of the evidence:

1.      that WOW Tech engaged in predatory or anticompetitive conduct;

2.      that WOW Tech had a specific intent to achieve monopoly power in a relevant market;

3.      that there was a dangerous probability that WOW Tech would achieve their goal of monopoly power in the relevant market;

4.      that WOW Tech's conduct occurred in or affected interstate and foreign commerce; and

5.      that EIS was injured in its business or property by WOW Tech's anticompetitive conduct.

**3.2    ANTICOMPETITIVE    CONDUCT:    PROCUREMENT    AND
ENFORCEMENT OF FRAUDULENT PATENTS.**

A patent gives the patent owner the legal right to exclude others from using the patented invention. But this legal right to exclude is not always the same thing as monopoly power. For example, there may be products not covered by the patent that compete with products covered by the patent, and the competition from those other products may prevent the patent holder from having monopoly power.  When the patented product represents merely one of many products that effectively compete in a given relevant market, no monopoly power is created by the patent.  Even if a patent or group of patents gives monopoly power to the owner of the patent or patents, it is not usually a violation of the law to own the patent or patents. For example, it is not a violation of the antitrust laws to invent and obtain a patent on a product or products that give the inventor monopoly power. Additionally, another party may purchase that patent or patents so long as that party has no preexisting market power in the relevant market. However, the purchase of such patent or patents by a party who has preexisting market power for the purpose of obtaining or retaining monopoly power may be a violation of Section 2 of the Sherman Act.

Fraud upon the Patent and Trademark Office and enforcement of fraudulently procured patents are recognized forms of anticompetitive conduct.

EIS contends that WOW Tech's patents were procured through knowing and willful fraud on the Patent Office and that WOW Tech has enforced or attempted to enforce the patents knowing they had been procured by fraud. EIS alleges that this conduct is predatory or anticompetitive conduct that violates Section 2 of the Sherman Act.  To evaluate this contention, you first must determine whether WOW Tech defrauded the Patent Office. EIS must prove by clear and convincing evidence that WOW Tech intentionally withheld or deliberately falsified information that, had the Patent Office known about it, would have resulted in the Patent Office denying one

or more issued claims of the patents to WOW Tech's patent applications. EIS must also prove that WOW Tech withheld or falsified the material information with intent to deceive the patent examiner. Inadvertent errors or honest mistakes by WOW Tech do not constitute fraud. By the same token, even deliberate falsification of information is not sufficient to support a Section 2 Sherman Act charge if you determine that the Patent Office would have issued the patents even if it knew the truth.

### 3.3     SPECIFIC INTENT TO MONOPOLIZE A RELEVANT MARKET

The second element that EIS must prove for its antitrust claim is that WOW Tech had a specific intent to monopolize a relevant market. To do so, EIS must first prove that the market it is talking about—in this case, the market for "sexual wellness devices incorporating pulsating air for clitoral stimulation" in the United States—is a relevant market for antitrust purposes. EIS must then prove that WOW Tech had a specific intent to monopolize this market. I will begin by instructing you on the relevant market inquiry, and I will then discuss specific intent. If EIS proves that "sexual wellness devices incorporating pulsating air for clitoral stimulation" in the United States is a relevant market and that WOW Tech had a specific intent to monopolize this market, you must find that EIS has proven this element of its attempted monopolization claim and you should consider the other elements of the claim. If you find that EIS fails to prove either of these points, then you must find for WOW Tech on EIS's attempted monopolization claim.

EIS must prove by a preponderance of the evidence that WOW Tech had attempted to gain monopoly power in a relevant market. Monopoly power is generally defined as the power to control prices or exclude competition in a relevant market.  Defining the relevant market is essential because you are required to make a judgment about whether WOW Tech has attempted to gain monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain EIS's or WOW Tech's freedom to set prices for or restrict the output of the product in question. The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act as restraints on EIS's or WOW Tech's power to set prices as they please. All the firms and products that exert this restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether EIS has met its burden to

prove the relevant markets by a preponderance of the evidence. The first is the relevant product market; the second is the relevant geographic market.

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping materials—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue. If you find that such switching would occur, then you may conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized vendors ; (4) the perception of either industry or the public as to whether the products are in separate markets; (5) the views of EIS and WOW Tech regarding

who their respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

In this case, EIS contends that the relevant product market is sexual wellness devices incorporating pulsating air for clitoral stimulation in the United States. By contrast, WOW Tech asserts that EIS has failed to allege a proper relevant product market. If you find that EIS has proven a relevant product market comprised of products that are reasonably interchangeable, then you should continue to evaluate the remainder of EIS's claim. However, if you find that the EIS has failed to prove such a market, then you must find in WOW Tech's favor on this claim.

If, in determining the parameters of the relevant product market, you find that there are manufacturers that have the ability to alter their production to manufacture products that can reasonably be substituted with EIS's or WOW Tech's, you may consider whether the existence of these potential alternative suppliers can influence the prices that EIS or WOW Tech charge for their product and, if so, that amount of the product that these suppliers are likely to produce. However, if you find that manufacturers would not shift their resources to producing another product in response to an increase in EIS's or WOW Tech's prices, you may define the market solely on your evaluation of whether the allegedly competing products are reasonable substitutes for each other from the consumer's perspective.

The relevant geographic market is the area in which WOW Tech faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or

even smaller.

EIS has the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, EIS claims that the relevant geographic market is the United States. In determining whether EIS has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including (1) the geographic area in which WOW Tech sells the products at issue and where WOW Tech's customers are located; (2) the geographic area to which customers turn for supply of the products at issue; (3) the geographic area to which customers have turned or have seriously considered turning; (4) the geographic area that suppliers view as potential sources of competition; and (5) whether government licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

If, after considering all the evidence, you find that EIS has proven by a preponderance of the evidence both a relevant product market and a relevant geographic market, then you must find that EIS has met the relevant market requirement and you must consider the remaining elements of this claim. Specifically, you must then decide whether WOW Tech had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that WOW Tech acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market.

If you find that EIS has failed to prove by a preponderance of the evidence either a relevant product market or a relevant geographic market, then you must find for WOW Tech and against EIS on this claim.

Even if you decide that the evidence does not prove directly that WOW Tech actually intended to obtain a monopoly, specific intent may be inferred from what WOW Tech did. For example, if the evidence shows that the natural and probable consequence of WOW Tech's

conduct in the relevant markets was to give WOW Tech control over prices and to exclude or destroy competition, and that this was plainly foreseeable by WOW Tech, then such evidence may support an inference (or may not, in your view of the evidence as a whole) that WOW Tech specifically intended to acquire monopoly power.

### 3.4   DANGEROUS PROBABILITY OF SUCCESS

If you find that WOW Tech had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that WOW Tech would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

In determining whether there was a dangerous probability that WOW Tech would acquire the ability to control price in the market, you should consider such factors as:

- WOW Tech's market share;

- the trend in WOW Tech's market share;

- whether the barriers to entry into the market made it difficult for competitors to enter the market; and

- the likely effect of any anticompetitive conduct on WOW Tech's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that WOW Tech would ultimately acquire monopoly power. A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that WOW Tech would ultimately acquire monopoly power.

### 3.5     ANTITRUST DAMAGES – GENERALLY

If you find that WOW Tech violated the antitrust laws and that this violation caused injury to EIS, then you must determine the amount of damages, if any, EIS is entitled to recover. The fact that I am giving you instructions concerning the issue of EIS's damages does not mean that I believe EIS should, or should not, prevail in this case. If you reach a verdict for WOW Tech on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that EIS should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust case is to put injured plaintiffs as near as possible in the position in which they would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer - what we sometimes refer to as punitive damages - or to deter defendants from particular conduct in the future or to provide a windfall to someone who has been the victim of an antitrust violation. Antitrust damages are compensatory only. In other words, they are designed to compensate plaintiffs for the particular injuries they suffered as a result of the alleged violation of the law.

### 3.6     <u>ANTITRUST DAMAGES – ATTORNEYS' FEES</u>

EIS claims that it was harmed because it was forced to incur attorneys' fees in response to WOW Tech's enforcement of the asserted patents, which is the alleged antitrust violation. It is the abuse of the legal process by a defendant that makes the attorney fees incurred by the plaintiff during that legal process appropriate antitrust damages. If you find that WOW Tech committed an antitrust violation and that this violation caused injury to EIS, you may award EIS the attorneys' fees that it incurred as a result of WOW Tech's antitrust violation. EIS bears the burden of proving by a preponderance of the evidence that fees it incurred were attributable to WOW Tech's enforcement of its patents. You should not concern yourselves with the amount of attorneys' fees that EIS may recover as antitrust damages. If you find that EIS is entitled to recover its attorneys' fees as antitrust damages, I will determine the amount of attorneys' fees that EIS should be awarded.

### 3.7    ANTITRUST DAMAGES – INJURY AND CAUSATION

If you find that WOW Tech has violated Section 2 of the Sherman Act as alleged by EIS, then you must decide if EIS is entitled to recover damages from WOW Tech.

EIS is entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation:

First, that EIS was in fact injured as a result of WOW Tech's alleged violation of the antitrust laws;

Second, that WOW Tech's alleged illegal conduct was a material cause of EIS's injury; and

Third, that EIS's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact." For EIS to establish that they are entitled to recover damages, they must prove by a preponderance of the evidence that they were injured as a result of WOW Tech's alleged violation of the antitrust laws. Proving the fact of damage does not require EIS to prove the dollar value of their injury. It requires only that EIS prove that they were in fact injured by WOW Tech's alleged antitrust violation. If you find that EIS has established that they were in fact injured, you may then consider the amount of EIS damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that it was in fact injured.

EIS must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that WOW Tech's alleged illegal conduct was a material cause of EIS's injury. This means that EIS must have proved that some damage occurred to them as a result of WOW Tech's alleged antitrust violation, and not some other cause. EIS is not required to prove that WOW Tech's

alleged antitrust violation was the sole cause of its injury; nor need EIS to eliminate all other possible causes of injury. It is enough if EIS has proved that the alleged antitrust violation was a material cause of its injury. However, if you find that EIS's injury was caused primarily by something other than the alleged antitrust violation, then you must find that EIS has failed to prove that they are entitled to recover damages from WOW Tech.

Finally, EIS must establish that their injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If EIS's alleged injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then EIS's injuries are antitrust injuries. On the other hand, if EIS's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then EIS's injuries are not antitrust injuries and EIS may not recover damages for those injuries under the antitrust laws. You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against - such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit - and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

However, if EIS can establish that they were in fact injured by WOW Tech's conduct, that WOW Tech's conduct was a material cause of EIS's injury, and that EIS's injury was the type that the antitrust laws were designed to prevent, then EIS is entitled to recover damages for the injury to its business or property.

4.      **LANHAM ACT UNFAIR COMPETITION**

EIS alleges that WOW Tech unfairly competed with EIS in violation of the Lanham Act, by making a false or misleading statement regarding EIS, its business, and its Satisfyer products.

To prove unfair competition under the Lanham Act, EIS must prove, by a preponderance of the evidence, each of the following elements:

1.      WOW Tech has made a false or misleading statement or representation about EIS's products;

2.      WOW Tech's statement constituted actual deception or was likely to deceive a substantial portion of the intended audience;

3.      WOW Tech's false or misleading statement was material to the purchasing decision of customers in that it was likely to influence purchasing decisions;

4.      The advertised goods and services travel in and/or affect interstate commerce; and,

5.      As a result of WOW Tech's statement, EIS was harmed or was likely to be harmed.

As to the second element, actual deception or a tendency to deceive is presumed if a plaintiff proves that a statement is unambiguous and literally false. If the message conveyed by the statement is literally true or ambiguous, however, the plaintiff must prove actual deception or a tendency to deceive.

If you find that all of the above elements have been proven by a preponderance of the evidence, your verdict should be for EIS on the Lanham Act unfair competition claim. On the other hand, if any of these elements has not been proven by a preponderance of the evidence, your verdict should be for WOW Tech.

### 4.1   LANHAM ACT – MEANING OF COMMERCIAL ADVERTISING

For any statement to be considered commercial advertising or promotion, it must be part of an organized campaign to penetrate the relevant market. Normally, this requires proof of sufficient dissemination to the relevant purchasing public.

### 4.2   LANHAM ACT – LITERAL FALSITY IN CONTEXT

A determination of literal falsity rests on an analysis of the challenged claim in the context of the commercial advertisement or promotion in which it appears. Only an unambiguous message can be literally false. A literally false message need not be express; if the words or images, considered in context, necessarily imply a false message, the advertisement is literally false. If the challenged claim is susceptible to more than one reasonable interpretation, EIS cannot establish literal falsity.

### 4.3   LANHAM ACT – MISLEADING CLAIMS

Earlier, I told you that both literally false and impliedly false advertising claims are actionable under the Lanham Act.

If EIS cannot show that an advertising claim made by WOW Tech is literally false, in order to recover under the Lanham Act, EIS must prove that the advertisement claim conveyed an impliedly false message that was misleading to consumers. To do this, EIS must prove, by evidence of actual consumer reaction that the representation actually deceived a substantial portion of the intended audience. Additionally, because materiality is a separate inquiry from deception, even when EIS proves a statement is misleading, EIS must still show that the misrepresentation was likely to influence consumers.

### 4.4   LANHAM ACT – ACTUAL DECEPTION

EIS must show that there was actual deception or a tendency to deceive a substantial portion of the intended audience. Whether an advertising statement is deceptive "depends on the

message that is conveyed to consumers." Survey evidence is needed to demonstrate a tendency to deceive a substantial portion of the intended audience. If EIS is able to prove that a statement is completely unsubstantiated or literally false, survey evidence is not needed. If, however, a challenged advertising statement is not literally false, a party cannot obtain relief under the Lanham Act by arguing how consumers could react; it must show how consumers actually do react.

### 4.5      LANHAM ACT – DIFFERENCE BETWEEN FALSE AND MISLEADING

If you decide that EIS has met its burden of showing that one or more of the challenged claims is literally false, EIS is not required to introduce evidence that the challenged claim or claims misled consumers. There is a presumption that the claim or claims misled consumers.

If you decide that EIS has not shown that any of the challenged claims are literally false, you must then decide whether the claim or claims considered in the context of the advertisement in which it appeared nevertheless misled consumers. Under these circumstances, you may not assume that the claim or claims misled consumers. Instead, you must decide whether EIS has proved, by a preponderance of the evidence, that the claim or claims made by WOW Tech were likely to mislead consumers.

5.     **<u>DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT</u>**

EIS alleges that WOW Tech violated the Delaware Uniform Deceptive Trade Practices Act. The Act is intended to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business. To prevail on a claim under the Delaware Uniform Deceptive Trade Practices Act, EIS must prove both of the following propositions by a preponderance of the evidence:

1.     WOW Tech disparaged the goods, services, or business of EIS, by false or misleading representation of fact.

2.     The disparagement occurred in the course of the business, vocation, or occupation of the Defendants.

EIS is not required to prove that there was competition between EIS and WOW Tech, or that there was any actual confusion or misunderstanding.

6.      **DELAWARE UNFAIR COMPETITION**

EIS alleges that WOW Tech unfairly competed with it in violation of the Delaware common law by making false or misleading statements. To recover on a claim of unfair competition under Delaware common law, EIS must prove by a preponderance of the evidence:

1.      EIS had a valid  reasonableexpectancy of entering a valid business relationship;

2.      WOW Tech wrongfully interfered with that relationship;

3.      WOW Tech's wrongful interference defeated EIS's legitimate expectancy of entering the valid business relationship; and

4.      EIS was injured as a result of WOW Tech's alleged unfair competition.

Some amount of interference is justified and encouraged in a free market system and companies have a right to compete in the market. Types of interference that are wrongful and which may therefore constitute unfair competition include, for example, using deceptive representations in connection with products or services; representing that products or services have characteristics or benefits that they do not have; or disparaging the products of others by false or misleading representations of fact. The essential element separating unfair competition from legitimate market participation is an unfair action on the part of an accused party that prevents the party asserting the claim from legitimately earning revenue.

7.    **DELAWARE TORTIOUS INTEFERENCE WITH BUSINESS RELATIONS**

EIS contends that WOW Tech tortiously interfered with its business opportunities. To recover on a claim of tortious interference with business relations, EIS must prove by a preponderance of the evidence the following elements:

1.      EIS had a reasonable probability of a business opportunity or expectancy;

2.      WOW Tech knew of the opportunity or expectancy;

3.      WOW Tech intentionally interfered with EIS's business opportunity or expectancy; and

4.      WOW Tech's interference damaged EIS.

If you find that EIS has proven, by a preponderance of the evidence, all of the above listed elements, your verdict will be for EIS. If you find one or more of the elements has not been proven, your verdict will be against EIS on this claim.

### 7.1    DELAWARE TORTIOUS INTEFERENCE WITH BUSINESS RELATIONS – BONA FIDE BUSINESS RELATION

A claim of tortious interference with business relations requires a bona fide business relation or expectancy with a third party.  To be bona fide, the facts must show that the third party was prepared to enter into a business relationship with EIS but was dissuaded from doing so by WOW Tech.

8.    **NON-PATENT CLAIM DAMAGES**

If you find based on the instructions you have been given that WOW Tech violated the Lanham Act, unfairly competed with EIS and/or tortiously interfered with EIS's business relations, then you may award EIS damages in an amount you determine to be fair and equitable, consisting of the sum of (1) EIS's actual damages attributable to the WOW Tech's unfair competition and/or tortious interference with business relations; (2) EIS's lost profits due to Defendants' unfair competition and/or tortious interference with business relations; and (3) any punitive damages.

**8.1    UNFAIR COMPETITION AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS DAMAGES – ACTUAL DAMAGES**

If you find for EIS on its unfair competition and/or tortious interference with business relations claims, you must determine EIS's actual damages. EIS has the burden of proving actual damages by a preponderance of the evidence. If you find that EIS has not met this burden, then you can ignore this instruction.

Damages means the amount of money which will reasonably and fairly compensate EIS for any injury you find was caused by WOW Tech's unfair competition and/or tortious interference with business relations.  In addition, EIS is entitled to recover any reasonable costs it incurred in an effort to mitigate or reduce its damages and to recover business it lost due to WOW Tech's wrongful conduct. As a result, you may consider EIS's expenses in determining the amount of damages necessary to compensate EIS for its losses.

You should consider the following: (1) the injury to or loss of EIS's reputation; (2) the injury to or loss of EIS's goodwill, including injury to EIS's general business reputation; (3) the expense of preventing customers from being deceived; and (4) the cost of future corrective actions required to correct WOW Tech's wrongful conduct. In measuring the harm to EIS's goodwill or reputation, you should consider EIS's expenditures in building its reputation to estimate the harm to its reputation after the WOW Tech's bad acts.

Furthermore, if you find for EIS on its claims for unfair competition and/or tortious interference, you should be guided by the rule that EIS is entitled to any profits which it would, with reasonable certainty, have enjoyed, were it not for WOW Tech's unfair competition or tortious interference. In arriving at the amount of profits lost by EIS, you are entitled to consider EIS's past earnings in its business. You should also consider all the other evidence concerning general economic and competitive conditions that you may find to have a bearing on the issue of

lost profits.

EIS's lost profits are the revenues which EIS would have received but for WOW Tech's conduct, reduced by the direct expenses which EIS would have incurred to receive those revenues, but without any reductions for fixed overhead expenses.

EIS is not required to prove its loss of profits with mathematical precision. An element of uncertainty is permitted in calculating damages. However, EIS still must establish a reasonable estimate of lost profits, and show the portion of its losses, at least in general terms, that were attributable to Defendants' misconduct.

**8.2** **UNFAIR COMPETITION AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS DAMAGES – PUNITIVE DAMAGES**

If you find that WOW Tech proximately caused actual damages to EIS and you have determined that WOW Tech must pay damages because of that conduct, then you should consider whether the conduct that led to your decision also subjects WOW Tech to punitive damages.

If you find that the conduct of WOW Tech was outrageous, you may award punitive damages, as well as any compensatory damages, in order to punish WOW Tech for its conduct and to deter them and others from committing similar acts.

A person's conduct is outrageous when it is malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others.

9.     **PATENTS**

9.1    **PATENT CLAIMS GENERALLY**

Before you can decide many of the issues in this case, you will need to understand the role of the patent "claims." The patent claims are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage.

Here, you will need to understand what each of the asserted claims covers in order to decide whether or not that claim is infringed and to decide whether or not that claim is invalid.

### 9.2     <u>DEPENDENT AND INDEPENDENT CLAIMS</u>

Claims can be stated in two different ways in a patent. The first way a patent claim can be stated is in the form of an "independent" claim. An "independent" claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

For example, claim 1 of the '851 Patent is an independent claim. You know this because claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

The second way a claim can be stated is in the form of a "dependent" claim. A "dependent" claim does not itself recite all the requirements of the claims, but instead, incorporates the requirements of another claim or claims and adds its own additional requirements. In this way, the claim "depends" on another claim or claims. Accordingly, to determine what a dependent claim covers, it is necessary look at both the dependent claim and any other claims from which it depends.

For example, claim 2 of the '851 Patent is a dependent claim. If you look at claim 2, it refers to claim 1. Therefore, to determine what claim 2 of the '851 Patent covers, you must consider both the words of claims 1 and 2 together.

### 9.3 OPEN ENDED OR "COMPRISING" CLAIMS

The beginning portions, or preamble, of the asserted claims have the word "comprising." The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to products or methods having only the elements that are recited in the claim, but also covers products and methods that have additional elements.

If you find, for example, that the accused products include all of the elements of a particular claim, the fact that the accused products might include additional element(s) would not avoid infringement of the claim. Similarly, if you find that an accused method includes all of the steps of a particular claim, additional step(s) would not avoid infringement of that claim.

### 9.4    CLAIM CONSTRUCTION

It is my job as a judge to define what the terms of the asserted claims mean and to instruct you about these meanings. You must accept the meanings I give you and apply those meanings to the issues that you are asked to decide. You must ignore any different interpretation given to these terms by the witnesses or by attorneys. I instruct you that the following claim terms of the Asserted Patents have the following definitions.

| Claim Term | Court's Construction |
|---|---|
| "connection element" | "structure that connects two structures" |
| "stimulation device" | "a device that is capable of sexually arousing or exciting" |
| "opening" | "hole" |
| "flexible wall"/"flexible wall portion" | "a wall that is able to bend or to be bent easily without breaking" |
| "pressure field generator" | "a component that generates a pressure field" |
| "chamber" | "compartment" |
| "based on modulated frequencies" | "based on changes in drive unit speed" |
| "sealingly engage a portion of the body of a user including a clitoris" | "a sufficient enough seal, which does not have to be a perfect 100 percent seal, on a portion of a body of a user including a clitoris to allow the creation of positive and negative pressures relative to ambient pressure" |
| "reference pressure" | "a prevailing pressure acting on the device prior to placing the stimulation device on the area of skin to be stimulated" |

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

10.     **OTHER PROCEEDINGS IN THE UNITED STATES**

You heard a number of statements about proceedings involving the United States Patent and Trademark Office and other U.S. courts.  During your deliberations, you must independently determine whether or not the asserted claims of the patents-in-suit are invalid. EIS's claims of the invalidity of WOW Tech's patents are not based entirely on the same arguments already made to the United States Patent Office or other judges in those proceedings and are not conclusive of EIS's claims of invalidity.

The *inter partes* review ("IPR") proceedings that occurred in the United States Patent and Trademark Office have different standards and procedures as compared to the applicable standards and procedures in litigation in this court.  As a result, the prior decisions of the United States Patent and Trademark Office in the IPR proceedings are not binding on this court or on you, the jury. You get to make the decision of whether the claims of the patents-in-suit—the '851, '220, '418, '061, and '097 patents—are invalid based on the evidence presented.

**11.** **PATENT UNENFORCEABILITY**

**11.1** **INEQUITABLE CONDUCT**

Every applicant for a patent and each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office. This is important because the PTO has limited resources.

When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and the only reasonable explanation for their actions is that they intended to deceive the PTO, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness. This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent. Whether there has been inequitable conduct is ordinarily a question that I, as the judge, must decide. However, in this case, I've requested that you offer an advisory opinion on your views as to the evidence, and whether EIS has met its burdens.

To prove inequitable conduct, EIS/Triple A Defendants must prove by clear and convincing evidence both that (1) a patent prosecutor of record, a named inventor, or any person who was substantively involved in the prosecution of the patent at issue withheld material information or submitted materially false information or statements to the PTO during the examination of the asserted patents, with specific intent to deceive the PTO and (2) that the single most reasonable explanation is that he or she intended to deceive the PTO into issuing the asserted patents. I will now explain to you what "material" and "specific intent to deceive" mean.

**Material**

Information or statements are material if the Examiner would not have granted the claims

of a patent if it had been aware of the information alleged to be material. This is known as "but-for" materiality. To assess whether omitted information or an incorrect statement is but-for material, you must decide whether the Examiner would have refused to issue a claim of the patent if it had been aware of the withheld information or the accurate statement. Omitted or incorrect material information may include prior art references and foreign patent proceedings, or may relate to continuation and priority disclosures. In the case of egregious misconduct, for example, filing an unmistakably false affidavit, as opposed to mere nondisclosure, the but-for materiality is presumed.  You may only find information or statements to be material if there is clear and convincing evidence that they are but-for material.

### **Specific Intent to Deceive**

In order for inequitable conduct to have occurred, EIS/Triple A Defendants must establish that the most reasonable explanation for any failure to disclose but-for material information or for making false or misleading statements that were but-for material is that the actions were done with an intent to deceive the Examiner. Specifically, for information EIS/Triple A Defendants contend a patent prosecutor, named inventor, or other individual who was substantively involved in the prosecution of the patent or patent at issue failed to disclose, EIS/Triple A Defendants must demonstrate that the individual knew of the information, knew it was but-for material, and nevertheless made a deliberate decision to withhold it with specific intent to deceive the Patent Office. Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct. However, for intent to deceive be inferred, the single most reasonable inference from the evidence must be that the individual intended to deceive the Examiner into issuing the asserted patents. If you believe it is reasonably possible there was deceptive intent, but

also believe it is equally reasonably possible there was not deceptive intent, then you should conclude that there was no intent to deceive. You may only find intent to deceive if EIS/Triple A Defendants prove by clear and convincing evidence that the single most reasonable explanation is deceptive intent.

## 11.2    INFECTIOUS ENFORCEABILITY

If you determine that EIS/Triple A Defendants have proven by clear and convincing evidence that inequitable conduct renders any of the '851, '061, '097, '220, and/or '418 patents unenforceable, you must determine whether they have proven that the '418, '220, and/or '097 patents are unenforceable because the inequitable conduct relates to the asserted claims of the '418, '220, and/or '097 patents.

A patent that issues from a divisional or continuation application may be held unenforceable where:

1.    There is inequitable conduct with respect to the prosecution of an earlier related application in the chain leading to the challenged patent; and

2.    the inequitable conduct relates to the asserted claims of that patent.

Were this not the rule, a party committing inequitable conduct could avoid the consequences of that conduct through a scheme of divisional and continuation applications. The law does not countenance such a manipulation of the patent process.

### 11.3   PATENT MISUSE

If you have decided that Novoluto's conduct restricts EIS/Triple A Defendants' right to make and sell their Satisfyer products beyond the scope of Novoluto's patent grants, you then must decide whether all of Novoluto's alleged conduct, taken together, is procompetitive or anticompetitive.

To prevail on their patent misuse defense, EIS/Triple A Defendants must prove by a preponderance of the evidence that Novoluto's alleged conduct unreasonably restrained competition in a relevant market. EIS/Triple A Defendants may do that by proving the following three elements, by a preponderance of evidence:

1.     Novoluto has market power in a relevant market for the patent or patented product;

2.     Novoluto's conduct unreasonably restrained competition in the relevant market; and

3.     The effect of Novoluto's restraint resulted in an overall harm to competition.

In determining whether Novoluto's conduct unreasonably restrained competition in the relevant market, you may take into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect. The key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects.

Patent misuse is viewed as a broader wrong than an antitrust violation because of the economic power that may be derived from the patentee's right to exclude. Thus misuse may arise when the conditions of an antitrust violation are not met.

### 11.4 **UNCLEAN HANDS**

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, deceitfully, or in a manner offensive to the dictates of natural justice towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. This is referred to as "unclean hands," and it is a defense that EIS/Triple A Defendants contend precludes any recovery by Novoluto in this lawsuit. You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, Novoluto acted in such an inequitable way towards EIS/Triple A Defendants or the Court in the matters relating to the controversy between EIS/Triple A Defendants and Novoluto that Novoluto should be denied the relief it seeks in this lawsuit. EIS/Triple A Defendants must prove unclean hands by clear and convincing evidence.

12.   **PATENT INFRINGEMENT**

   12.1   **PATENT INFRINGEMENT GENERALLY**

   I will now instruct you as to the rules you must follow when deciding whether Novoluto has proven that EIS/Triple A Defendants have infringed any of the asserted claims of the patents-in-suit.

   United States patent law gives the owner of a valid patent the right to exclude others from importing, making, using, selling, or offering to sell a patented product, or performing a patented method, within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the patent owner's permission, infringes the patent.

   In order to prove infringement, Novoluto must prove that the requirements for infringement are met by a preponderance of the evidence. Infringement is assessed on a claim-by-claim basis. Therefore, you, the jury, must determine infringement for each claim separately. As a result, you may find that there is infringement for one claim but no infringement as to another.

   I will now explain each type of infringement in more detail.

## 12.2    DIRECT INFRINGEMENT

In order to prove direct infringement, Novoluto must prove by a preponderance of the evidence that EIS/Triple A Defendants have made, used, sold, or offered for sale in the United States, or imported into the United States, the requirements of a claim of at least one Asserted Patent.

To determine infringement, you must compare each Accused Product with each asserted claim to determine whether each and every one of the requirements of that claim is satisfied. If any of the accused products does not contain one or more elements recited in a claim, there is no literal infringement with respect to that claim.  It is not enough that the products are highly similar or function in similar ways.  You should note, however, that the presence of other elements in the accused product beyond those claimed does not avoid infringement as long as every claimed element is present.

If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product or method meets the additional requirements of any claims that depend from the independent claim, i.e., whether those dependent claims have also been infringed.

One may directly infringe a patent unknowingly—that is, without knowledge that what one is doing is an infringement of the patent. One may also infringe while believing in good faith that a particular action is not an infringement of any patent. One's product may also infringe even if there are other patents covering the product.

In addition, Novoluto need not always have direct evidence of infringement, infringement may be established by circumstantial evidence.

## 12.3   **REPRESENTATIVENESS**

In this case, multiple products are accused of infringing each of the Asserted Patents. The patent owner bears the burden of proving infringement for every product it alleges infringes.

A patent owner can meet its burden to prove by a preponderance of the evidence that the accused products infringe by showing that a representative product infringes. To establish representativeness, the patent owner must prove that each of the accused products conforms to the representative product. In other words, the patent owner needs to establish that, for every limitation, the representative product and each accused product are sufficiently similar such that each accused product would also meet each claim limitation.

### 12.4    INFRINGEMENT DESPITE OTHER PATENTS

You may hear evidence that each party in this case owns other patents and also uses its own technology in those other patents. Ownership of or a license to separate patents is not a defense to patent infringement. The parties in this case can still infringe the patents asserted by the other party, even if it has its own patents in the same area.

### 12.5    WILLFUL INFRINGEMENT

WOW Tech contends that EIS/Triple A Defendants' infringement of the Asserted Patent was willful.

If you determine that EIS/Triple A Defendants infringed one or more of the asserted claims of any of the Asserted Patents, you must then decide whether, at the time EIS/Triple A Defendants infringed those claims, that infringement was willful.

Willful infringement is knowing infringement. In other words, a person willfully infringes a patent only if the person knows that the patent has been issued and knows that its product infringes the patent. Therefore, for you to find that EIS/Triple A Defendants willfully infringed one or more of the asserted claims of the Asserted Patents, WOW Tech must prove by a preponderance of the evidence that, at the time EIS/Triple A Defendants infringed those claims, (1) EIS/Triple A Defendants knew the Asserted Patent had been issued, and (2) EIS/Triple A Defendants knew that the accused products infringed the claims of the Asserted Patent.

Under the law, to prove that a defendant knows something, a plaintiff must show actual knowledge or willful blindness on the part of the defendant. A defendant cannot avoid liability by deliberately shielding itself from clear evidence of critical facts that are strongly suggested by the circumstances. A defendant is willfully blind to a fact if (1) it subjectively believes that there is a high probability that the fact exists, and (2) the defendant took deliberate actions to avoid learning of that fact.

Proof that EIS/Triple A Defendants should have known the accused products infringed the asserted claims is not sufficient. In other words, proof that EIS/Triple A Defendants was negligent or reckless in infringing the asserted claims is not sufficient to prove willful infringement.

To determine whether EIS/Triple A Defendants' infringement was willful, you must consider all facts and assess EIS/Triple A Defendants' knowledge at the time the challenged

conduct occurred. Facts that may be considered include, but are not limited, to:

(1) Whether EIS/Triple A Defendants acted consistently with the standards of behavior for its industry;

(2) Whether EIS/Triple A Defendants intentionally copied a product of WOW Tech that is covered by an Asserted Patent;

(3) Whether EIS/Triple A Defendants reasonably believed it did not infringe an Asserted Patent;

(4) Whether any effort to avoid infringement, if any, was made in good-faith; and

(5) Whether EIS/Triple A Defendants tried to cover up its infringement.

## 13. __PATENT INVALIDITY__

### 13.1 __PATENT INVALIDITY – GENERALLY__

I will now instruct you on the rules you must follow in deciding whether or not the EIS/Triple A Defendants have proven that the asserted claims of the patents-in-suit are invalid. As I previously told you, to prove that a claim of a patent is invalid, the party challenging validity must persuade you by clear and convincing evidence. The law presumes that the patent claims are valid.

Like infringement, you must determine whether each asserted claim is invalid on a claim-by-claim basis. As a result, one claim may be invalid, but another claim may not be invalid.

As I instructed you earlier, there are independent claims and dependent claims in a patent. Finding the broader independent claim to be invalid does not mean the narrower dependent claims are also invalid. However, if you find a narrower dependent claim to be invalid, you must find the broader independent claim from which it depends to also be invalid.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.

## 13.2   **EFFECTIVE FILING DATE**

For the purposes of analyzing certain questions of validity, you need to determine whether the asserted claims of the '220 and '418 patents are sufficiently supported by the specification of the earlier '851 patent; and whether the asserted claims of the '097 patent are sufficiently supported by the specification of the earlier '061 patent.

Novoluto contends (1) that the asserted claims of the '220 and '418 patents are entitled to an effective filing date of September 23, 2013, based on the disclosures of German Patent Application No. 10 2013 110 501 ("the German '501 application") and the '851 patent, and (2) that the asserted claims of the '097 patent are entitled to an effective filing date of March 13, 2015, based on the disclosures of German Patent Application No. 10 2015 103 694 ("the German '694 application") and the '061 patent. EIS/Triple A Defendants contend (1) that the asserted claims of '220 and '418 patents are at best entitled to an effective filing date of November 17, 2016, the filing date of the '599 application that issued as the '063 patent, and (2) that the asserted claims of '097 patent are at best entitled to an effective filing date of April 13, 2017, the filing date of the application that issued as the '097 patent.

Novoluto may rely on the filing date of the application that issued as the '851 patent to establish the effective filing date for the claims of the '220 and '418 patents if the specification of the earlier '851 patent provides written description for the claims of the '220 and '418 patents. It may also rely on the filing date of the application that issued as the '061 patent to establish the effective filing date for the claims of the '097 if the specification of the earlier '061 patent provides written description for the claims of the '097 patent.

If the '851 patent does not provide written description for the claims of the '220 and '418 patents, then the latter patents are not entitled to the effective date of the '851 patent. Likewise, if

the specification of the earlier '061 patent does not provide written description for the claims of the '097 patent, then that patent is not entitled to the effective date of the '061 patent.

The test for "written description" is whether an earlier disclosure reasonably conveys to a person of ordinary skill in the art that the inventor had possession of the claimed subject matter as of the filing date. In other words, if a person having ordinary skill in the art at the time of the effective filing date would have recognized that the specifications describe the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor possessed the subject matter finally claimed in the patent on or before the effective filing date, then the written description requirement is satisfied. When an applicant broadens its claims or otherwise amends his specification via a continuation application, the new claims or other added material must find support in the original specification. The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification and the exact words found in the claim need not be used. The level of required disclosure depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.  The written description requirement does not demand either examples or an actual reduction to practice.

In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

(1)     The nature and scope of the patent claims;

(2)     The complexity, predictability, and maturity of the technology at issue;

(3)     The existing knowledge in the relevant field; and

(4)     The scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

If you determine that Novoluto has met its burden of coming forward with evidence showing that the '220 and '418 patents are entitled to an effective filing date of the earlier '851 patent, then EIS/Triple A Defendants must prove by clear and convincing evidence that Novoluto is not entitled to that date for the '220 and '418 patents.

Similarly, if you determine that Novoluto has met its burden of coming forward with evidence showing that the '097 patent is entitled to an effective filing date of the earlier '061 patent, then EIS/Triple A Defendants must prove by clear and convincing evidence that Novoluto is not entitled to that date for the '097 patent.

### 13.3    PERSON OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the time of invention.

In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

1.    the levels of education and experience of persons working in the field;

2.    the types of problems encountered in the field; and

3.    the sophistication of the technology.

The EIS/Triple A Defendants contend that a person of ordinary skill in the art around the time of the purported inventions would have had a bachelor's degree in mechanical engineering, biomechanical engineering, or the equivalent, and three or more years of experience in fluid mechanics- and pump-based personal use devices and/or medical devices.  More experience could offset less education, and *vice versa.*

Novoluto contends that a person of ordinary skill in the art around the time of the purported inventions would have had a bachelor's degree or the equivalent practical experience in mechanical engineering, biomechanical engineering, biomedical engineering, sexual health, or human sexuality.

### 13.4   **PRIOR ART GENERALLY**

I will now instruct you on a challenge to the patents-in-suit based on prior art. Under the patent laws, in order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as prior art. Prior art is considered in, amongst other things, determining whether the asserted claims of the patents-in-suit are anticipated or obvious. Prior art may include items that were publicly known or that have been publicly used or offered for sale before the priority date, or references, such as publications or patents, published before the priority date that disclose the claimed invention or elements of the claimed invention.

The party alleging that something constitutes prior art has the burden to prove so by clear and convincing evidence. Because a party must prove something is prior art by clear and convincing evidence, the testimony of a single witness is insufficient to prove that something is prior art. A party seeking to prove that something is prior art must provide evidence that corroborates a single witness's oral testimony. You do not need to find that every single detail of the oral testimony is independently supported by the corroborating evidence; you just need to find that, considering the evidence as a whole, the evidence shows the witness's testimony to be credible.

### 13.5    **ANTICIPATION**

Under the patent laws, an invention must be new to be entitled to patent protection. If a device or process has been previously invented and disclosed to the public, then it is not new and, therefore, the claimed invention is "anticipated" by the prior art. To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim.

In this case, EIS/Triple A Defendants contend that the asserted claims of the patents-in-suit are invalid because the claimed inventions are anticipated. To prove anticipation, EIS/Triple A Defendants must show by clear and convincing evidence that a single prior art reference alone discloses each and every element of the patent claim. You may not combine two or more items of prior art to find anticipation. Anticipation must be determined on a claim-by-claim basis. In determining whether every one of the claimed limitations is found in the prior art, all of the requirements of the claim must be there, either stated expressly or inherently, so that a person of ordinary skill in the art looking at that one reference could make and use the claimed invention.

### 13.6   **OBVIOUSNESS**

As I explained previously, under the patent laws a person is granted a patent only if the invention claimed in the patent is both new and not obvious in light of what came before. Even though an invention has not been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art at the time the invention was made. Obviousness may be proven by considering more than one item of prior art. In this case, EIS/Triple A Defendants contend the asserted claims of the patents-in-suit are invalid as being obvious.

EIS/Triple A Defendants must prove by clear and convincing evidence that the asserted claims of the patents-in-suit would have been obvious to a person of ordinary skill in the art at the time the invention was made. In determining whether the claimed invention was obvious, consider each claim separately.

The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you must consider (1) the scope and content of the prior art, (2) the level of ordinary skill in the pertinent art; and (3) the differences between the claimed invention and the prior art.

To determine the scope and content of the prior art, you should determine what prior art was reasonably pertinent to the particular problems the inventor faced. A person of ordinary skill in the art is presumed to have knowledge of the pertinent prior art.

I have already instructed you on the level of ordinary skill in the art. You are to apply that definition when deciding whether the asserted claims would have been obvious.

You must next consider the differences, if any, between the prior art and asserted claims. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.

A claim is not proven obvious merely by demonstrating that each of the elements in a claim was known in the prior art. You must consider the invention as a whole. Most, if not all, inventions rely on known building blocks, and inventions are very often - almost of necessity - combinations of what is already known.

If you find that the available prior art shows each of the limitations of the asserted claims, you consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art to combine the known elements in the same manner as the asserted claims. This is often referred to as "motivation to combine." The motivation to modify the prior art to arrive at the asserted claim need not be the same motivation that the inventor had. Additionally, a person of ordinary skill in the art must have had a reasonable expectation of success in combining the known elements in the way the asserted claim does.

In arriving at your decision on the issue of whether the asserted claims would have been obvious to a person of ordinary skill in the art, you may take into account such factors as:

1.    Whether the asserted claims were merely the predictable result of using prior art elements according to their known functions;

2.    Whether the asserted claims provide an obvious solution to a known problem in the relevant field;

3.    Whether the prior art teaches or suggests the desirability of combining elements in the asserted claims;

4.      Whether the prior art teaches away from combining elements in the asserted claims;

5.      Whether the proposed modification of the prior art would render the prior art inoperable for its intended purpose; and

6.      Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

You should not consider what is known today or use what is taught in the patent as a road map for selecting and combining items of prior art. Do not use hindsight; instead, apply the perspective of a person of ordinary skill in the art as of the date of the invention.

### 13.7    OBJECTIVE INDICIA OF NON-OBVIOUSNESS

In your determination of obviousness, you should also consider what are called "objective indicia" or secondary considerations, that may show that the claimed invention is not obvious. These indicia of non-obviousness include:

- whether the claimed invention was commercially successful as a result of the claimed invention (rather than design needs, market-pressure, advertising, or similar activities);

- whether others had tried and failed to make the claimed invention;

- whether the industry had expressed skepticism of the claimed invention;

- whether others copied the claimed invention;

- whether the claimed invention satisfied a long-felt need;

- whether others in the field praised the claimed invention;

- whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

- whether the claimed invention achieved unexpected results;

- whether others sought or obtained rights to the patent from the patent holder; and

- whether the inventor proceeded contrary to accepted wisdom in the field.

These factors should be considered along with all the other evidence in the case in determining whether the asserted claims would have been obvious. In considering this kind of evidence, you should consider whether the objective indicia were attributable to the features of the asserted claims as opposed to features already found in the prior art.

14.      **PATENT CLAIM DAMAGES**

14.1      **PATENT INFRINGEMENT DAMAGES – GENERALLY**

I will now give you some instructions related to patent damages. By instructing you on damages, I am not suggesting which party should win this case on any issue. These instructions are only to guide you in case you find that the EIS/Triple A Defendants infringed a valid and enforceable claim of any of the patents-in-suit.

If you find that the EIS/Triple A Defendants infringed any of the claims of the patents-in-suit, and that those claims are not invalid and not unenforceable, you must determine the amount of damages to be awarded to Novoluto. On the other hand, if you find that each of the asserted claims of the patents-in-suit are either invalid, unenforceable, or not infringed, then you should not consider patent damages in your deliberations.

Novoluto has the burden to prove each element of its damages—including the amount of the damages—by a preponderance of the evidence. While Novoluto is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork. Damages are not meant to punish an infringer.

## 14.2   DATE OF COMMENCEMENT OF DAMAGES – PRODUCTS

The dates that Novoluto first notified EIS/Triple A Defendants of its claim for patent infringement of each of the '851, '061, '097, '220, and '418 patents are the dates for the start of damages. The parties do not agree on these dates, and it is up to you to determine them. They should be determined on a patent-by-patent basis. It is Novoluto's burden to prove it provided notice to the EIS/Triple A Defendants.

Novoluto can provide notice to the EIS/Triple A Defendants of their infringement by giving notice to the public in general. Novoluto can provide this public notice by marking substantially all of the products it sold. "Marking" is placing either the word "patent" or the abbreviation "PAT" with the patent's number on substantially all of the products that included the patented invention, or by including with the product an internet address to a posting that associates the patented articles with the patent number of the Asserted Patents.

When from the character of the product the physical product itself cannot be marked, marking may be accomplished by including on the product package a similar label containing the patent number. Novoluto has the burden of establishing that it substantially complied with the marking requirement. This means that Novoluto must show that substantially all of the products made, offered for sale, or sold under the Asserted Patents have been marked. Novoluto contends that it substantially complied with the marking requirement at least by September 19, 2017, and Novoluto continued their marking of products with the Asserted Patents.

Another way Novoluto could have given notice of its patents is to directly notify the EIS/Triple A Defendants with a specific claim that the allegedly infringing products infringed the '851, '061, '097, '220, and '418 patents. This type of notice requires a specific identification of each patent that is allegedly infringed. Furthermore, general knowledge of a patent alone does not provide notice because a patent owner must have taken an affirmative act to give notice and inform

a defendant of its infringement. This type of notice starts from the date the EIS/Triple A Defendants actually received the notice.

If Novoluto failed to substantially mark either the products using the patented invention or their packaging and the EIS/Triple A Defendants did not have actual notice of their alleged infringement,, then Novoluto can recover damages for infringement that occurred by EIS GmbH, Triple A Import GmbH, and Triple A Marketing GmbH no earlier than September 28, 2021; and Novoluto can recover damages for infringement that occurred by EIS, Inc. no earlier than January 12, 2021 for the '851, '061, and '097 patents and no earlier than September 28, 2021 for the '220 and '418 patents.

### 14.3    REASONABLE ROYALTY

If you find that a patent claim is infringed and not invalid and not unenforceable, Novoluto is entitled to at least a reasonable royalty to compensate it for that infringement.

Novoluto is seeking damages in the amount of a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing devices have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The royalty rate must reflect the value attributable to the infringing features, and no more.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations.

In determining this, you must assume that both parties to the hypothetical negotiation believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement. In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.

In this case, the parties agree that the hypothetical negotiation would have occurred on or about September 19, 2017.

### 14.4    REASONABLE ROYALTY – FACTORS

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

1.    Any royalties received by WOW Tech for licensing others under the Asserted Patents, proving or tending to prove an established royalty;

2.    The rates paid by the EIS/Triple A Defendants to license other patents comparable to the Asserted Patents;

3.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold;

4.    WOW Tech's established policy and marketing program to maintain its patent exclusivity and right to exclude others from using the patented inventions by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between WOW Tech and the EIS/Triple A Defendants, such as whether or not they are competitors in the same territory in the same line of business;

6.    The effect of selling the patented product in promoting sales of other products of the EIS/Triple A Defendants, the existing value of the invention to Novoluto as a generator of sales of its non-patented items, and the extent of such collateral sales;

7.    The duration of the Asserted Patents and the term of the hypothetical license;

8.    The established profitability of the products made under the Asserted Patents, their commercial success, and their popularity;

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results;

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by WOW Tech, and the benefits to those who have used the invention;

11.     The extent to which the EIS/Triple A Defendants have made use of the invention, and any evidence probative of the value of that use;

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     The portion of the realizable profit that should be credited to the patented invention itself as opposed to non-patented elements, such as the manufacturing process, business risks, or significant features or improvements added by the EIS/Triple A Defendants;

14.     The opinion testimony of qualified experts, and

15.     The amount that WOW Tech and the EIS/Triple A Defendants would have agreed upon (on or about September 19, 2017) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been

willing to pay and the patent holder would have been willing to accept, acting as normally prudent

business people.

### 14.5    REASONABLE ROYALTY – USE OF COMPARABLE LICENSES

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. An agreement need not be perfectly comparable to a hypothetical license that would be negotiated between WOW Tech and the EIS/Triple A Defendants in order for you to consider it. However, if you choose to rely upon evidence from any other agreements, you must account for any differences between those agreements and the hypothetically negotiated license between WOW Tech and the EIS/Triple A Defendants, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

### 14.6    REASONABLE ROYALTY – LUMP SUM VS. RUNNING ROYALTY

A reasonable royalty can be paid either in the form of a one time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you to decided, based on the evidence, what type of royalty, if any, is appropriate in this case.

**14.7**   **AVAILABILITY OF NON-INFRINGING ALTERNATIVES**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. There is no requirement for a party to demonstrate that a non-infringing alternative is "acceptable," but you may consider safety.

**14.8**   **DAMAGES APPORTIONMENT**

Where there are multiple components in an accused product, patent damages must only reflect the value attributable to the infringing features of the accused product. In other words, noninfringing features should not be included in the damages calculation and must be separated out. In addition, the patent damages must also reflect only the accused features' improvement, and not the conventional components of the multicomponent product.

15.   **<u>DELIBERATION AND VERDICT</u>**

15.1   **<u>INTRODUCTION</u>**

I have completed my instructions on the law. All of the instructions I gave you previously today—as well as earlier this week—still apply, and you will have a copy of the instructions with you in the jury room.

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

### 15.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. I will review that document with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

And I will remind you that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

### 15.3    **DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

I am going to remind you now if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess. You may not read or listen to any news about the case in a newspaper, online, through any news apps, on the radio, through any social media, in blogs, or on television during the evening recess.

### 15.4   **SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 15.5   <u>COURT HAS NO OPINION</u>

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.