IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EIS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1227 (GBW) |
| | ) |
| INTIHEALTH GER GMBH, | ) |
| WOW TECH USA, LTD., | ) |
| WOW TECH CANADA, LTD. and | ) |
| NOVOLUTO GMBH, | ) |
| | ) |
| Defendants. | ) |
| NOVOLUTO GMBH, | ) |
| | ) |
| Counterclaimant, | ) |
| | ) |
| v. | ) |
| | ) |
| EIS, INC., EIS GMBH, | ) |
| TRIPLE A IMPORT GMBH, | ) |
| and TRIPLE A MARKETING GMBH, | ) |
| | ) |
| Counterclaim Defendants. | ) |

**PLAINTIFF'S AND COUNTERCLAIM DEFENDANTS' REPLY BRIEF IN SUPPORT
OF THEIR INEQUITABLE CONDUCT AND UNCLEAN HANDS DEFENSES**

# TABLE OF CONTENTS

    Page

I. INTRODUCTION ................................................................................................................. 1

II. WOW'S INEQUITABLE CONDUCT RELATING TO THE CHILD PATENTS .......... 1

    A. WOW's Counsel Failed to Disclose But-For Material Information ...................... 1

    B. Specific Intent to Deceive Is the Only Reasonable Inference ............................... 2

III. WOW'S INEQUITABLE CONDUCT RELATING TO THE PARENT PATENTS ................................................................................................................. 3

    A. Failure to Disclose But-For Material Prior Art and Ecoaction Opposition ........... 3

    B. Specific Intent to Deceive Is the Only Reasonable Inference ............................... 4

IV. EIS PROVED THAT WOW TECH HAS UNCLEAN HANDS ..................................... 6

    A. WOW's Multi-Factor Test Requiring Injury Is Incorrect ..................................... 7

    B. WOW's Prosecution Misconduct Supports Finding Unclean Hands .................... 7

    C. WOW's UPNE-Related Misconduct Supports Finding Unclean Hands ............... 8

    D. WOW Is Unable To Identify Support For Its Challenged Statements ................... 9

    E. WOW's Other Arguments Fail to Rebut EIS's Showing of Unclean Hands ...... 10

V. CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
　768 F.3d 1185 (Fed. Cir. 2014) ................................................................................................4

*Amstar Corp. v. Envirotech Corp.*,
　730 F.2d 1476 (Fed. Cir. 1984) ................................................................................................9

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
　No. 2:15-CV-1202-WCB, 2017 WL 275465 (E.D. Tex. Jan. 20, 2017) ...............................7, 8

*Gilead Sciences, Inc. v. Merck & Co. Inc.*,
　888 F.3d 1231 (Fed. Cir. 2016) ................................................................................................6

*J.P. Stevens & Co. v. Lex Tex Ltd., Inc.*,
　747 F.2d 1553 (Fed. Cir. 1984) ................................................................................................7

*Keystone Driller Co. v. General Excavator Co.*,
　290 U.S. 240 (1933) ..................................................................................................................9

*Monsanto Co. v. Rohm & Haas Co.*,
　456 F.2d 592 (3d Cir. 1972) ..................................................................................................6, 9

*Praxair, Inc. v. ATMI, Inc.*,
　445 F. Supp. 2d 460 (D. Del. 2006) ........................................................................................10

*Regents of the Univ. of California v. Eli Lilly & Co.*,
　119 F.3d 1559 (Fed. Cir. 1997) ................................................................................................7

*Scherer Design Grp., LLC v. Ahead Eng'g LLC*,
　764 F. App'x 147 (3d Cir. 2019) ..............................................................................................7

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*,
　204 F.3d 1368 (Fed. Cir. 2000) ................................................................................................4

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Counterclaim Plaintiff Novoluto GmbH and Defendants IntiHealth Ger GmbH; WOW Tech USA, Ltd.; WOW Tech Canada, Ltd.; and Novoluto GmbH | "WOW" |
| Plaintiff EIS, Inc. and Counterclaim Defendants EIS, Inc.; EIS GmbH; Triple A Import GmbH; and Triple A Marketing GmbH | "EIS" |
| U.S. Patent Nos. 9,763,851; 9,849,061; 9,937,097; 11,103,418; and 11,090,220 | "Patents-in-Suit" |
| U.S. Patent Nos. 9,763,851 and 9,849,061 | "Parent Patents" |
| U.S. Patent Nos. 9,937,097; 11,103,418; 11,090,220; and 10,857,063 | "Child Patents" |
| U.S. Patent No. 9,763,851 | "the '851 Patent" |
| U.S. Patent No. 9,849,061 | "the '061 Patent" |
| U.S. Patent No. 9,937,097 | "the '097 Patent" |
| U.S. Patent No. 11,103,418 | "the '418 Patent" |
| U.S. Patent No. 11,090,220 | "the '220 Patent" |
| U.S. Patent No. 10,857,063 | "the '063 Patent" |
| U.S. Patent and Trademark Office | "PTO" |
| Patent Trial and Appeal Board | "PTAB" |
| *Inter Partes* Review | "IPR" |
| German Patent and Trademark Office | "GPTO" |
| Opposition proceeding of German Patent No. 10 2013 110 501 B4 before the German Patent and Trademark Office | "GPTO Opposition Proceeding" |
| Notice of opposition of German Patent No. 10 2013 110 501 B4, filed on November 17, 2016, by Ecoaction GmbH at the German Patent and Trademark Office | "Ecoaction Opposition" |
| German Patent No. 10 2013 110 501 B4 (Revoked) Assigned to Novoluto | "'501 German Patent" |
| Australian Patent Office | "APO" |
| Chinese Utility Model Patent CN2153351Y | "*Guan*" |
| U.S. Patent Publication No. US2017/0281457 | "*Witt*" |
| Chinese Utility Model Patent CN201139737 | "*Yang*" |
| U.S. Patent No. 6,964,643 | "*Hovland*" |

iii

| U.S. Patent No. 5,725,473 | "*Taylor*" |
|---|---|
| Manual of Patent Examining Procedure | "MPEP" |
| Federal Rules of Civil Procedure | "FRCP" |
| ABA Model Rules of Professional Conduct | "MRPC" |
| Plaintiff's and Counterclaim Defendants' Brief in Support of Their Inequitable Conduct and Unclean Hands Defenses (D.I. 676) | "EOB" |
| Plaintiff's and Counterclaim Defendants' Proposed Findings of Fact and Conclusions of Law Regarding Defendants' Inequitable Conduct and Unclean Hands Defenses (D.I. 677) | "EFF" |
| Exhibits to the declaration of Allan M. Soobert filed with EOB (D.I. 678-1) | "Ex. 1"–"Ex. 10" |
| Exhibits to the declaration of Allan M. Soobert, filed herewith | "Ex. 11"–"Ex. 14" |
| Defendants' and Counterclaimant's Response to Plaintiff's Opening Brief on its Unenforceability Defenses (D.I. 682) | "WRB" |
| Exhibits to the declaration of Califf Cooper filed with WRB (D.I. 684-1) | "Ex. A"–"Ex. D" |

I.      INTRODUCTION

WOW fails to address the key arguments and evidence presented by EIS. WOW also emphasizes the jury verdicts it has prejudicially influenced by its trial misconduct, including when WOW repeatedly told the jury that by finding inequitable conduct the jury could end the careers of WOW's prosecution counsel, while urging the Court to ignore the majority verdict advising a finding of unclean hands. WOW's appeals to the jury's sympathy improperly pressured jurors to exercise subjective judgment and disregard the evidence. Verdicts aside, clear and convincing evidence shows that WOW secured the Patents-in-Suit through affirmative egregious misconduct, and that none of the patents would have issued had counsel not intentionally withheld but-for material information. That misconduct during prosecution, and WOW's misconduct throughout this case, also supports a finding of unclean hands and dismissal of WOW's claims in their entirety.

II.     WOW'S INEQUITABLE CONDUCT RELATING TO THE CHILD PATENTS

A.      **WOW's Counsel Failed to Disclose But-For Material Information**

The only dispute regarding but-for materiality is whether the as-filed Child Patents included new matter. They did. EOB, 3-4. The added matter is not mere "grammatical corrections" as WOW contends, citing the conclusory testimony of Mr. Stoll. WRB, 12-13. Mr. Stoll is admittedly "not a technical expert" in the field. Tr. 652:3-24. The Court should instead credit EIS's technical expert, Dr. Abraham, who established that the Child Patents included an added "Summary" and claims describing a never-before-described device having only "a chamber" and replaced or removed references to a two-chamber device as the "invention." EFF ¶¶ 27-30, 35-39.

WOW's technical expert, Dr. Cameron, failed to rebut this testimony. WRB, 13-14. Every Parent Patent disclosure she characterized as a single-chamber device *explicitly* describes two chambers. Tr. 395:4-397:2 (discussing Ex. 11). Nor did Dr. Cameron address the Parent Patents' disclosures (i) attributing the device's benefits to its two-chamber design and (ii) describing the

1

device's operation solely with respect to its two-chamber design. EFF ¶¶ 35-37. Indeed, as the APO concluded when analyzing a related, substantively identical Australian application, there is "no enabling disclosure of a single chamber" and "there is not a single hint or suggestion . . . that the invention would work . . . with only the first chamber." EFF ¶¶ 38-39. WOW also points to an Examiner's characterization of the '851 Patent's Figure 8 as disclosing one chamber in a rejection during prosecution of *Witt*—which was excluded from evidence—but ignores that the Examiner withdrew the rejection when informed that Figure 8 teaches "two separate and distinct chambers." *See* EOB, 4 (quoting Tr. 984:14-986:14). Mr. Cheng's conclusory testimony (WRB, 12) merely expresses a legal conclusion that no new matter was added, without any analysis.

Importantly, the jury's verdict on invalidity applying the clear and convincing standard is not determinative of whether the Examiner applying the lower preponderance standard would not have allowed at least one claim. Even under the clear and convincing standard, for the reasons discussed above, substantial evidence does not support a finding that no new matter was added. WOW further prejudiced the jury with its trial misconduct, including its improper and unsubstantiated statements that by finding inequitable conduct it could end the careers of WOW's prosecution counsel (Tr. 135:20-22, 1219:15-18, 1220:13-15), wrongly appealing to the jury's sympathy and pressuring jurors to disregard the evidence in its verdict.

### B. Specific Intent to Deceive Is the Only Reasonable Inference

WOW and its counsel intentionally concealed the new matter and the APO's decision because that was the only way it could obtain claims directed to EIS's single-chamber redesign. EOB, 4-6. WOW's contention that Mr. Cheng was not obligated to file preliminary amendments identifying the changes and that he had filed revised continuation applications in the past without preliminary amendments ignores evidence to the contrary. WRB, 14-15. Even Mr. Stoll testified that "an underlined section that indicates . . . the changes" "***should*** be provided" if "a substantial

2

number of changes" are made (Tr. 653:24-654:21 (emphasis added)), as indisputably was the case in the Child Patents (e.g., Ex. 10). And Mr. Cheng failed to provide ***any*** proof that he ***ever*** filed a continuation application with changes but no preliminary amendment showing those changes, despite EIS's request for such proof. *See* Ex. 12. The ***only*** evidence establishes his practice was to file a preliminary amendment indicating changes, from which he inexplicably deviated when filing the Child Patents. Tr. 328:24-331:23 (discussing PTX-0077-0080).

WOW also wrongly contends that Ms. Buckley did not bury the highly relevant APO decision. WRB, 15-16. Ms. Buckley identified the APO decision in one of over 30 voluminous IDSs without bringing its relevance to the Examiner's attention. EFF ¶¶ 40-42. The Examiner could not meaningfully review such a large number of documents, and therefore warned Ms. Buckley that "forcing the Examiner to find 'a needle in a haystack' is 'probative of bad faith.'" *id.* The Examiner's admonishment is not "'boilerplate' language that did not specifically relate to this case," as WOW and Mr. Stoll contend. WRB, 15. Indeed, in the years of prosecution of the Patents-in-Suit, only in this instance did an Examiner admonish WOW's counsel. EFF ¶ 42.

## III. WOW'S INEQUITABLE CONDUCT RELATING TO THE PARENT PATENTS

### A. Failure to Disclose But-For Material Prior Art and Ecoaction Opposition

WOW ignores nearly all of EIS's arguments and evidence establishing that the two withheld complete *Guan* translations and the Ecoaction Opposition are but-for material to the Parent Patents (EOB, 6-9), instead focusing on (i) the prosecution of the Child Patents and the IPRs, where a complete translation of *Guan* was eventually overcome, and (ii) cumulativeness (WRB, 5-6). Whether a reference was later overcome at the PTO, however, is not a litmus test for but-for materiality. As explained in EIS's opening brief (EOB, 7-8), the rejections based on *Guan* during prosecution of the Child Patents were only overcome because the PTO erroneously introduced an "always" limitation into the claims (EFF ¶¶ 19-20). And the PTO, during the IPRs,

3

did not apply the broadest reasonable interpretation standard applied by the Examiner during prosecution. EOB, 8. WOW provides **no** argument or evidence in response. EFF ¶ 21.

Regarding cumulativeness, WOW ignores the admission by its own expert, Dr. Cameron, that the detailed description of the complete *Guan* translations "are not exactly the same" as the abstract, and that the Examiner relied on the detailed description to reject the claims. Tr. 856:15-860:23. That the Examiner had the abstract for years without rejecting any claims but immediately rejected them upon obtaining a complete translation shows non-cumulativeness. EFF ¶ 18.

B. **Specific Intent to Deceive Is the Only Reasonable Inference**

Nor is specific intent to deceive rebutted because a Chinese version of *Guan* and a translated abstract were submitted during prosecution of the Parent Patents. WOW's prosecution counsel in the U.S. and Germany intentionally withheld two complete *Guan* translations (and the Ecoaction Opposition[1]) in their possession, knowing those translations had been submitted in the GPTO Opposition Proceeding that resulted in revocation of the '501 German Patent. EFF ¶¶ 4-16. Selectively disclosing the Chinese version of *Guan* and the less relevant translated abstract demonstrates WOW's counsel's intentional wrongdoing in withholding the complete *Guan* translations and the Ecoaction Opposition. *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1189 (Fed. Cir. 2014); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1375-78 (Fed. Cir. 2000). Ms. Buckley's submission of one of the complete *Guan* translations during prosecution of the Child Patents does not nullify that wrongdoing. Ms. Buckley submitted that translation—which WOW obtained but withheld for years—***only after*** the Examiner obtained his own complete *Guan* translation to reject WOW's claims. EFF ¶¶ 15-16.

---

[1]    WOW's objection to the term "Ecoaction Opposition," WRB, 7 n.7, is meritless. EIS **and WOW** have been using that term because there was a second opposition request by Fun Factory. *E.g.*, D.I. 462 at 6-8; Tr. 368:8-369:5 (EIS), 504:2-4 (WOW).

WOW's remaining excuses for withholding the complete *Guan* translations and the Ecoaction Opposition are unpersuasive. WRB, 8. First, even if Mr. Cheng did not have the complete certified translation of *Guan* or the Ecoaction Opposition, as EIS contends, he did have the complete machine translation of *Guan* and the lawyers at Kuhnen & Wacker (who were also substantively involved in prosecution), *e.g.*, Rainer Kuhnen and others, had both complete *Guan* translations and the Ecoaction Opposition. EFF ¶¶ 4-16.

Second, as explained in EIS's opening brief, WOW has provided no evidence that Mr. Cheng, ***in fact***, had any concerns regarding the accuracy of the complete *Guan* translation in his possession. EOB, 11-12. If anything, the evidence indicates that Mr. Cheng had no accuracy concerns. *Id.* Regardless, Kuhnen & Wacker had a complete ***certified*** translation of *Guan*, which should have been submitted if there truly were such concerns. Tr. 644:20-646:1; EFF ¶¶ 15-16. But Kuhnen & Wacker decided to withhold the certified translation, even though it submitted that translation in the GPTO Opposition Proceeding, which WOW completely ignores. EFF ¶¶ 15-16.

Third, WOW's argument that Mr. Cheng may not have realized he had received a complete translation because he was already processing the IDS with *Guan*'s translated abstract (WRB, 9-10) is unsubstantiated and untrustworthy. EOB, 11. Mr. Cheng testified at trial and his deposition that he did not recall what happened. Tr. 332:6-333:16, 335:22-336:5. At trial, in response to questions from WOW's counsel—who prepared Mr. Cheng for trial (*id.* 285:12-14, 304:11-305:8)—Mr. Cheng for the first time speculated that he may have started preparing an IDS with *Guan*'s translated abstract before he received the complete translation (*id.* at 332:6-333:16).

Finally, WOW's position that Mr. Cheng's standard practice was to submit translated abstracts of foreign references (WRB, 10) is directly contradicted by the file histories of the

5

Patents-in-Suit. In particular, Mr. Cheng in the same IDS that identified *Guan* and included *Guan*'s translated abstract included a complete translation of a Japanese reference. Tr. 316:24-318:14.

In short, WOW's proposed inferences are artificial and unsupported by the record. The only ***reasonable*** inference supported by evidence is that WOW's counsel intentionally withheld the complete *Guan* translations and the Ecoaction Opposition.

## IV.   EIS PROVED THAT WOW TECH HAS UNCLEAN HANDS

EIS demonstrated WOW's pervasive litigation misconduct and unclean hands. EOB, 12-24, *see generally,* EFF. At trial, nearly all jurors found EIS proved "by clear and convincing evidence that Novoluto acted in such an inequitable way towards [EIS] that Novoluto should be denied the relief it seeks." D.I. 665, 6. WOW's other arguments are largely premised on fundamental misunderstandings of unclean hands or unsupported by the record and therefore fail.

For instance, WOW repeatedly contends that it cannot have unclean hands because the jury found for it on the merits of various claims. WRB, 16-17, 20-21, 23, 29. The import of WOW's flawed logic is that if—through misconduct—it successfully tainted the jury in its favor, then it should be absolved of all wrongdoing. WOW cites no case where findings on the merits excused unclean hands, and that is not the law. *See Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 598 (3d Cir. 1972) (explaining that any willful act which transgresses equitable standards of conduct is sufficient to invoke unclean hands, and such act need not alone be an actionable wrong). Indeed, the essence of the "immediate and necessary relation" requirement is that the misconduct has potential to impact the equities between the parties, such as by swaying the outcome of a disputed issue. *See Gilead Sciences, Inc. v. Merck & Co. Inc.*, 888 F.3d 1231, 1240 (Fed. Cir. 2016).

WOW also repeatedly asks the Court to excuse its misconduct by emphasizing that its attorney arguments are not evidence. WRB, 23, 27. That maxim does not give attorneys free license to depart from the evidence and say whatever they like. Indeed, the Rules of Professional

6

Conduct expressly prohibit unsupported statements to the jury. *See* MRPC 3.4(e) ("A lawyer shall not: . . . in trial, allude to any matter that . . . will not be supported by admissible evidence.").

WOW does not even address its incorrect and prejudicial remarks in opening statements, and other unconscionable attempts to prejudice the jury. *See, e.g.*, EOB, 15, 17-18.

### A. WOW's Multi-Factor Test Requiring Injury Is Incorrect

WOW's proposed five-factor unclean hands legal standard is contradicted by precedent. *See* WRB, 18; *Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147, 150 (3d Cir. 2019) ("[A] party seeking to invoke the [unclean hands] doctrine must show: (1) the party seeking equitable relief committed an unconscionable act; and (2) the act is related to the claim upon which equitable relief is sought."); *id.* at 150 n.5 ("proof of injury is not required" (citations omitted)). Even so, the jury's $12.8 million verdict against EIS is an injury meeting WOW's factors 4 and 5.

### B. WOW's Prosecution Misconduct Supports Finding Unclean Hands

WOW contends that Judge Bryson held in *Erfindergemeinschaft* that *Therasense* did not do away with the materiality requirement for unclean hands. WRB, 18-19. Judge Bryson explained that materiality in the context of unclean hands is the "nexus" requirement (called an "immediate and necessary relation" in EIS's cited cases). *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 275465, at *8–9 (E.D. Tex. Jan. 20, 2017); EOB, 22-32. This is not the same "***but-for*** materiality" required for inequitable conduct, as WOW incorrectly suggests. Thus, WOW's cited cases are wholly consistent with EIS's positions.[2] To the extent "materiality" is required, WOW's prosecution misconduct satisfies that standard for unclean

---

[2] WOW's other cited cases hold only that materiality is required to render a patent unenforceable, which is the specific remedy for the inequitable conduct species of unclean hands, and are therefore inapplicable to the broader unclean hands defense EIS presents here with its different remedy. *See Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1571 (Fed. Cir. 1997); *J.P. Stevens & Co. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1560 n.7 (Fed. Cir. 1984); EOB, 13-14.

hands, regardless of whether it also meets the "but-for materiality" requirement for inequitable conduct. EOB, 13-14. For similar reasons, the jury's finding of no invalidity is irrelevant. *See id.*

WOW's arguments also fail for other reasons. For instance, its representations about the prosecution history are incorrect for the reasons explained in EIS's opening brief and above. WOW is also incorrect to speculate from the jury's **general** verdict on *Walker Process* fraud (D.I. 665 at 1) that it found any **particular** element of that claim lacking. WRB, 20.

### C. WOW's UPNE-Related Misconduct Supports Finding Unclean Hands

The crux of WOW's response regarding the UPNE program conflates its success on the merits with proper conduct in reaching that outcome. WOW (1) wrongfully withheld responsive documents for months during fact discovery to hide its participation in the UPNE program until after orchestrating the notice-and-takedown of EIS's products (EOB, 19-20), (2) did so while litigating alleged infringement by EIS in this Court, which concerned Judge Stark (Ex. 7, 9:23-25), and (3) made representations to the court regarding the UPNE program that were "not supported by the record" (D.I. 156, EFF ¶ 73). Further, Ms. Terry gave evasive testimony at trial, and testimony that was either incorrect or revealed that WOW violated its discovery obligations by concealing and withholding responsive UPNE-related documents related to removing "thousands" of products off Amazon. EOB, 19-20; EFF ¶ 75.[3] WOW did not simply notify Amazon (WRB, 21), Ms. Terry's emails show she repeatedly demanded Amazon take EIS's products down during the holiday season (EFF ¶¶ 68-74). WOW's inequitable action and failure

---

[3] WOW contends it complied with its discovery obligations and there are no responsive documents, but the fact that it has documents showing its infringement allegations submitted to Amazon against EIS's products belies its representation that it somehow has no similar documents for other products it accused of infringement. WRB. 25-26; PTX-215. This is not waived because EIS was unaware of the withheld documents until Ms. Terry's trial testimony revealed them.

8

to be "frank and fair with the court" demonstrates unclean hands. *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 (1933); *see Monsanto*, 456 F.2d at 598.

Ms. Terry's emails with Amazon also support a finding that she—after using the UPNE program for two years (Ex. 7, 12:17-20)—intentionally selected sellers that she expected would not respond to her first two infringement allegations in order to get "portal" access on WOW's desired schedule. EOB, 19-20, EFF ¶¶ 67-75. WOW does not dispute that it always intended to accuse several products of infringing the '220 patent (EOB, 19; Tr. 576:23-577:4), but provides no other explanation as to why it selected non-EIS sellers first (until it had portal access).

### D. WOW Is Unable To Identify Support For Its Challenged Statements

WOW does not address many of the unsupported and otherwise improper representations WOW made during this case. *See* EOB, 14-20. Its partial attempt to do so in Exhibit D[4] highlights the fact that WOW's counsel made numerous misstatements about the evidence.

For example, contrary to WOW's post-hoc argument to justify its statement that Dr. Abraham admitted infringement (WRB, 23), Dr. Abraham mapped *Witt*'s **specification** to the asserted patents, not *Witt*'s **claims** (Tr. 400:4-411:4). The specification is broader, and therefore even if the accused products practice *Witt*'s narrower claims, that is far from an admission they infringe the asserted claims. This legally erroneous argument, on its own, suffices to support a new trial. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481-82 (Fed. Cir. 1984) (infringement must be determined by comparing the claims, not specification, with accused products). Also, the mere presence of clip art demonstratives does not support WOW's representation that Dr. Abraham's **analysis** was "based on clip art" (Tr. 1236:18-1237:3). WRB, 23; EOB, 16; Ex. 13 at

---

[4] EIS submits that WOW's argumentative Exhibit D circumvents the page limits and is improper. However, to the extent the Court considers that exhibit, it demonstrates the lack of support for WOW's statements as explained in the annotated version attached hereto as Exhibit 13.

9

3. Mr. Geske's opinion that customers would buy other products if he stopped selling the accused products is far from him saying he does not care about consequences from the lawsuit. WRB, 24; Ex. 13 at 13-14. Nor is it EIS's burden to use its limited trial time exposing the lack of evidentiary support for WOW's misstatements (WRB, 24-25), when WOW was prohibited from making such statements in the first place (*see* MRPC 3.4(e)). Regardless, this briefing is a proper time for EIS to expose WOW's misconduct, because unclean hands is an equitable issue for the Court.

E.    **WOW's Other Arguments Fail to Rebut EIS's Showing of Unclean Hands**

WOW's argument that it did not need to disclose the *Witt* prosecution history to EIS because *Witt* is EIS's own patent (WRB, 26) does not absolve WOW from complying with the discovery rules and pretrial order to "surprise[ EIS] at trial." *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 473 (D. Del. 2006) (vacated in part on other grounds); EOB, 21. That the Court ultimately permitted WOW to use the document at trial does not excuse its pre-trial misconduct.

On the issue of WOW's misstatements regarding the IPRs and failure to comply with the Court's orders, the trial record speaks for itself. *See* EOB, 21-22; EFF ¶¶ 47-48, 77-79. It is for the Court to decide whether it found WOW's repeated line-crossing offensive or inequitable.

WOW can rely on the prosecution history, but not in the same misleading way that the Court previously excluded. WRB, 28; EOB, 22. WOW should not be rewarded for deliberately circumventing the Court's prior ruling on the exact same excluded argument. EOB, 22; EFF ¶ 78.

WOW makes a conclusory argument that EIS did not show a connection between the misconduct and the claims at trial. WRB, 28-29. But EIS demonstrated in its opening brief how the totality of WOW's conduct tainted the jury and prejudiced EIS, and thus indisputably has a close connection the claims and jury verdict. EOB, 22-23; EFF ¶¶ 95-96.

V.    **CONCLUSION**

This Court should grant the relief requested in EIS's opening brief.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Naveen Modi<br>Allan M. Soobert<br>Phillip W. Citroen<br>Chetan Bansal<br>David Valente<br>James Razick<br>Stephen Kinnaird<br>Kevin Stewart<br>PAUL HASTINGS LLP<br>2050 M Street NW<br>Washington, DC  20036<br>(202) 551-1700<br><br>Chad J. Peterman<br>PAUL HASTINGS LLP<br>200 Park Avenue<br>New York, NY  10166<br>(212) 318-6000<br><br>Andrea Pallios Roberts<br>PAUL HASTINGS LLP<br>1117 S. California Avenue<br>Palo Alto, CA  94304-1106<br>(650) 320-1800<br><br>December 22, 2023 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Cameron P. Clark*<br><br>Jack B. Blumenfeld (#1014)<br>Brian P. Egan (#6227)<br>Cameron P. Clark (#6647)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>began@morrisnichols.com<br>cclark@morrisnichols.com<br><br>*Attorneys for EIS, Inc., EIS GmbH, Triple A Import GmbH, and Triple A Marketing GmbH* |

# CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Paul D. Brown, Esquire<br>Joseph B. Cicero, Esquire<br>Gregory E. Stuhlman, Esquire<br>CHIPMAN BROWN CICERO & COLE, LLP<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, DE  19801<br>*Attorneys for Defendants IntiHealth Ger GmbH, WOW Tech USA, Ltd., WOW Tech Canada, Ltd. and Novoluto GmbH* | *VIA ELECTRONIC MAIL* |
| Tammy J. Terry, Esquire<br>Califf T. Cooper, Esquire<br>Lisa E. Margonis, Esquire<br>Peter C. Schechter, Esquire<br>Gopal R. Gannamraj, Esquire<br>OSHA BERGMAN WATANABE & BURTON LLP<br>1100 Louisiana Street, Suite 4900<br>Houston, TX  77002<br>*Attorneys for Defendants IntiHealth Ger GmbH, WOW Tech USA, Ltd., WOW Tech Canada, Ltd. and Novoluto GmbH* | *VIA ELECTRONIC MAIL* |

*/s/ Cameron P. Clark*
_____
Cameron P. Clark (#6647)